United States District Court
Southern District of Texas
FILED

SEP 1 2 2005

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| LUIS C. MUNOZ AND | § | CAUSE NO B-04-141 |
| CARMELA MUNOZ | § | |
| | § | |
| VS. | § | |
| | § | |
| STATE FARM LLOYDS | § | |

## DEFENDANT STATE FARM LLOYDS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS AND SUPPORTING BRIEF

TAYLOR & TAYLOR
Warren Taylor
State Bar No. 19727200
Federal I.D. No. 1354
Beth M. Taylor
State Bar No. 13336787
Federal I.D. No. 14601
815 Walker Street, Suite 250
Houston, Texas 77002

Rene O. Oliveira
State Bar No. 15254700
Federal I.D. No. 4033
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520-8718

ATTORNEYS FOR DEFENDANT
STATE FARM LLOYDS

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

I.     NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ISSUES TO BE RULED UPON AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . 2

III.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    SUMMARY JUDGMENT EVIDENCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.     BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI.    ARGUMENTS AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      1.     Independent experts and governmental agencies determined
          that the fire had been intentionally set.  . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      2.     The Munozes were in poor financial condition at the time of the fire, raising
          sufficient questions as to their motive to set the fire to justify State Farm's
          investigation; likewise, State Farm's liability on the claim never became
          reasonably clear. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      3.     Given Mr. Munoz's actions prior to the fire and his account of events the
          night of the fire, a person could reasonably believe Mr. Munoz had prior
          knowledge of and the opportunity to set the fire; as a result, State Farm's
          liability never became reasonably clear.  . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      4.     The Munozes' DTPA and Insurance Code Article 21.21 claims fail as
          a matter of law because, absent a viable bad faith claim, the Munozes
          cannot sustain a cause of action for violations of either statute. . . . . . . . . . . . . 16

VII.   CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allstate Texas Lloyds v. Mason*, 123 S.W.3d 690
(Tex. App.—Ft. Worth 2003, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505,
91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex. 1988) . . . . . . . . . . . . . . 8

*Beaumont Rice Mills v. Mid-American Indemnity Insurance Co.*,
848 F.2d 950, 952 (5th Cir., 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . . . . . . . . . . . . 3

*Charter Roofing v. Tri-State Ins. Co.*, 841 S.W.2d 903, 906-7
(Tex. App.—Houston [14th Dist.] 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) . . . . . . . . . 17

*Love of God Holiness Temple Church v. Union Standard Ins. Co.*,
860 S.W.2d 179, 192 (Tex. App.—Texarkana 1993, writ denied) . . . . . . . . . . . . . . . . . 16

*Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 600 (Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . 8-9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . . . . . . . 3

*Progressive County Mut. Ins. Co. v. Boman*, 780 S.W.2d 436, 440-1
(Tex. App.—Texarkana 1989, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524, 526
(Tex. App.—Houston [14th Dist.] 1991, writ denied) . . . . . . . . . . . . . . . . . . . . . . . 8-9, 16

*Saunders v. Commonwealth Ins. Co.*, 928 S.W.2d 322, 324
(Tex. App.—San Antonio 1996, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tucker v. State Farm Fire & Cas. Co.*, 981 F.Supp. 461 (S.D. Tex. 1997) . . . . . . . 3, 8-10, 16-17

*United States Fire Ins. Co. v. Williams*, 955 S.W.2d 267 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . 3

*Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex. 1998) . . . . . . . . . . . 16-17

*Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . 8, 16

*Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442, 454
    (Tex. App.—San Antonio 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 3

## RULES

Federal Rule of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

## STATUTES

TEX. INS. CODE Art. 21.21 (Vernon 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. BUS. & COMM. CODE § 17.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| LUIS C. MUNOZ AND | § | CAUSE NO B-04-141 |
| CARMELA MUNOZ | § | |
| | § | |
| VS. | § | |
| | § | |
| STATE FARM LLOYDS | § | |

**DEFENDANT STATE FARM LLOYDS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ON PLAINTIFFS' EXTRA-CONTRACTUAL
CLAIMS AND SUPPORTING BRIEF**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant State Farm Lloyds ("State Farm") files this Motion for Partial Summary Judgment and Supporting Brief, seeking dismissal of Plaintiffs Luis and Carmela Munoz's extra-contractual claims, as follows:

### I. NATURE AND STAGE OF THE PROCEEDING

1.     This suit is an insurance dispute arising out of an intentionally set fire at the Munozes' residence. The Munozes have sued their insurer for breach of the insurance contract. Additionally, the Munozes have alleged violations of Texas Insurance Code Article 21.21 and the Deceptive Trade Practices Act ("DTPA"), and breach of the duty of good faith and fair dealing (collectively the "extra-contractual" claims). TEX. INS. CODE Art. 21.21 (Vernon 2004); TEX. BUS. & COMM. CODE § 17.41, *et seq.* State Farm seeks partial summary judgment on these extra-contractual claims.[1]

---
[1]     Plaintiff Luis C. Munoz has also asserted a claim for slander per se, which is being addressed in a separate motion.

1

2.     The parties have exchanged written discovery and are currently scheduling oral depositions.  Counsel have agreed to extend the deadline to complete discovery.  Trial is set for December 5, 2005.

## II.  ISSUES TO BE RULED UPON AND SUMMARY OF ARGUMENT

3.     Because of the intentional nature of the fire at the Munoz residence, State Farm conducted a thorough investigation of the Munozes' claim.  Throughout that investigation, State Farm paid the Munozes' additional living expenses.  The Munozes, however, filed suit before State Farm had made a decision on their claim and at a time State Farm was waiting for the Munozes to provide business records that would show their financial condition at the time of the fire.

4.     State Farm is entitled to partial summary judgment on the Munozes' extra-contractual claims because liability on the claim has never become reasonably clear.  Specifically:

1.     Independent experts and governmental agencies determined that the fire was intentionally set;

2.     The Munozes were in poor financial condition at the time of the fire, raising sufficient questions as to their motive to set the fire to justify State Farm's investigation; likewise, State Farm's liability on the claim never became reasonably clear;

3.     Given Mr. Munoz's actions prior to the fire and his account of events the night of the fire, a person could reasonably believe Mr. Munoz had prior knowledge of and the opportunity to set the fire; as a result, State Farm's liability never became reasonably clear; and

4.     The Munozes' DTPA and Insurance Code Article 21.21 claims fail as a matter of law because, absent a viable bad faith claim, the Munozes cannot sustain a cause of action for violations of either statute.

2

### III. STANDARD OF REVIEW

5.      Summary judgment is proper when there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A defendant seeking summary

judgment on the plaintiff's claim must demonstrate the absence of a genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To

survive the defendant's motion for summary judgment, the plaintiff must establish a genuine issue

of material fact as to every element of its cause of action. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact issue is genuine

only if the evidence is such that a reasonable jury could find the fact in favor of the non-movant. *Id.*

Speculations, unsubstantiated assertions, or conclusory allegations are not competent summary

judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). When the defendant

shows there is no evidence to support an essential element of the plaintiff's claim or claims, the

burden shifts to the plaintiff to go beyond the pleadings and produce evidence raising a genuine issue

for trial. *See Anderson*, 477 U.S. at 249; *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.

1996). Summary judgment is appropriate in cases involving allegations of an insurer's breach of the

duty of good faith and fair dealing. *See, e.g., Tucker v. State Farm Fire & Cas. Co.*, 981 F.Supp.

461 (S.D. Tex. 1997); *United States Fire Ins. Co. v. Williams*, 955 S.W.2d 267 (Tex. 1997).

### IV. SUMMARY JUDGMENT EVIDENCE

6.      Defendant State Farm hereby incorporates by reference, as if copied *in extenso*, the

documents attached to its Motion for Partial Summary Judgment and Supporting Brief.

3

## V. BACKGROUND FACTS

7.    At 8:49 p.m. on January 1, 2003, the Raymondville Volunteer Fire and Police Departments responded to a 911 call from Harry Cavazos reporting a fire at 829 West White Avenue, the Munoz residence. Exhibit B, p. 1. The first responding officers reported that the fire was located at the south side of the house. Exhibit D, p. 1. Omel Munoz, Mr. Munoz's brother, was the first non-official person to arrive at the house after the fire was reported. Exhibit E, p. 2. Omel told police officers that he just came by to check up on the house and Mr. Munoz was at his roofing shop having a barbeque. *Id.* Mr. Munoz arrived at the house shortly afterwards and advised that he had learned of the fire via a phone call from Robert Perez, one of his workers' sons. Exhibit F, p.16. Ruben Perez had been driving by the home, noticed the fire, and called his son Robert to contact Mr. Munoz. Exhibits E, p. 3. Mr. Munoz indicated that his wife and son were vacationing with friends in Florida. Exhibit E, p. 2.

8.    Raymondville police officers were the first to investigate the fire scene. Their arson report indicated: "The residence...had been destroyed by fire **which had been intentionally set**." Exhibit C, p. 1 (emphasis added). The police found an empty bottle of H.E.B.-brand lighter fluid still wrapped in an H.E.B. shopping bag on the floor of the southeast room. Exhibit D, p. 4. They also discovered a partially open window on the east side of the house. Exhibit D, p. 1. The Fire Chief told the reporting officer that the point of ignition was near a Christmas tree; the Fire Chief believed the fire had been intentionally set because the Christmas tree was not plugged in and the fire was not electrical in nature. Exhibit D, p. 1-2. Furthermore, the Christmas tree was artificial, and the officer noted that "[a]rtificial Christmas trees are manufactured to be fire resistant and would need a direct flame or accelerant for it to be consumed." Exhibit D, p. 2.

4

9.      Local authorities then requested assistance from the State Fire Marshal's office in investigating the fire. The State Fire Marshal investigator indicated in his origin and cause summary: "The cause of this fire has been determined to be **incendiary** and this case is to remain active pending further investigation." Exhibit H, p. 7.

10.     On January 2, 2003, Mr. Munoz reported the fire to Mark Brown, the Munozes' State Farm agent, and sought policy benefits under their State Farm insurance contract. Exhibit S, p. 1. State Farm retained an independent cause and origin team from National Loss Consultants to investigate the fire. Exhibit F, p. 2. Accelerant detection dogs aided in the investigation and alerted in several areas. Exhibit F, p. 7. The team from National Loss Consultants collected their fire debris samples and sent them to an independent laboratory, Armstrong Forensic Laboratory, for analysis. *Id.* Two samples of fire debris tested positive for a medium range, isoparaffinic solvent found in some charcoal starters, copier fluids, and paint thinners. Exhibit G, p. 1. Mack Fuller, the lead fire consultant, determined: "The fire originated in the southeast corner of the den (the area with the Christmas tree) and was the result of the intentional distribution and subsequent ignition of an ignitable liquid...No evidence was found to indicate the fire was related to an accidental or natural source of ignition...[I]t is my opinion the fire was intentionally set." Exhibit F, p. 9.

11.     After the fire, Mr. Munoz advised State Farm that he and Mrs. Munoz were now living with his brother Omel and presented State Farm with a lease agreement for $2,400 a month. Exhibit S, p. 2; Exhibit T, p. 1. On February 11, 2003, Mr. Munoz presented State Farm with a lease agreement from Curtis Shed Rentals, also for $2,400 a month. Exhibit A, p. 1; Exhibit U, p. 1. From January 2003 to March 2004, State Farm paid the Munozes a total of $43,124.42 solely for their additional living expenses while the claim was being investigated. Exhibit A, p. 1. On

5

March 30, 2004, the Internal Revenue Service notified State Farm of its levy on any proceeds the Munozes might recover on this claim. Exhibit A, p. 2, Exhibit R, p. 1-2. After receiving notice of the levy, State Farm was required to make all payments it would have made to the Munozes payable to the United States Treasury instead. Exhibit A, p. 2. State Farm continued to make the $2,400 monthly rental payment until July 2004, with the checks now being sent to the IRS. *Id.* Shortly after the fire, Mrs. Munoz filed for a divorce from Mr. Munoz; the final divorce decree was issued on April 19, 2004. Exhibit P, p. 18.

12.    Because of the incendiary nature of the fire, State Farm investigated whether Mr. or Mrs. Munoz had a motive and the opportunity to set the fire. Based on past experience and National Fire Protection Association (NFPA) 921 Guide for Fire and Explosion Investigations 19.4.3 ("Indications of Financial Stress"), State Farm attempted to examine the potential financial motive of the Munozes. Exhibit X, p. 5-6. State Farm requested information regarding the Munozes' personal finances and the business finances of Mr. Munoz's sole proprietorship, Munoz Roofing & Construction. Exhibit A, p. 2; Exhibit Q, p. 1. State Farm found that the Munozes were in extremely poor financial condition. In addition to a $26,269.38 Internal Revenue Service Lien filed approximately one month before the fire, State Farm found several other judgments and liens, dated from January 1992 to November 2002, on file against Mr. Munoz and/or Munoz Roofing. *See, e.g.,* Exhibits I-M. These judgments and liens totaled $33,381.64. Exhibit A, p. 3. Though Mr. Munoz had sought a $23,850.00 mechanic's lien on the Cavazoses' property, about eleven months before the fire, his lien had been deemed unperfected, leaving Mr. Munoz unable to collect this

6

money.[2]  Exhibit AA, p. 3.  According to the records of the Internal Revenue Service, the Munozes had not filed tax returns from 1999 to 2002.  Exhibit N, p. 1.  Finally, approximately eight months before the fire, Mr. Munoz had obtained a large business loan from his neighbor Ben Capetillo and had been unable to repay the loan.  Exhibit W, p. 1.  Mr. Capetillo brought legal proceedings against Mr. Munoz to recover the money.  Exhibit W, p. 1; Exhibit Y.  In February of 2004, one year after the fire, Mr. Capetillo and Mr. Munoz settled that suit, with Mr. Munoz agreeing to pay Mr. Capetillo $43,000.00.  Exhibit O, p. 1.  Mr. Munoz has since failed to repay Mr. Capetillo. Exhibit Z, p. 3-4.

13.    Prior to the Munozes providing all of the requested financial records, and therefore before State Farm had the opportunity to make a decision on the Munozes' claim, the Munozes filed this suit, seeking actual, statutory, and punitive damages for State Farm's alleged breach of contract and bad faith.  Not only was State Farm's investigation ongoing, but the Raymondville Police Department and State Fire Marshal's investigations were ongoing as well.  Exhibit A, p. 2; Exhibit H, p. 7.  Mr. Munoz had submitted to a polygraph test; although authorities indicated there were areas of concern, the final results of that test were still pending at the time the Munozes filed suit.  Exhibit A, p. 2.

## VI. ARGUMENTS AND AUTHORITY

14.    Under Texas law, in order to establish an insurer's liability for bad faith, the insured must prove that the insurer failed to attempt, in good faith, to effectuate a prompt, fair and equitable

---

2

The Cavazoses filed for bankruptcy on January 28, 2000, and the bankruptcy court determined that Mr. Munoz did not properly perfect his lien.  The United States District Court for the Southern District of Texas eventually reversed the decision of the bankruptcy court, but not until February of 2004.  Therefore, at the time of the fire, Mr. Munoz's lien had been deemed unperfected.

settlement of a claim **with respect to which the insurer's liability has become reasonably clear.** *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). It is not enough for a claimant to prove that an insurer's denial of a claim was erroneous. In order to establish bad faith, a claimant must prove **both** that the insurer's liability on the claim was reasonably clear **and** that after the liability had become reasonably clear, the insurer failed to attempt to effectuate a prompt, fair and equitable settlement. *Giles*, 950 S.W.2d at 56; *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex. 1988). A court may be entitled to decide as a matter of law whether an insurer's liability has become reasonably clear when there is no conflict in the evidence. *Giles*, 950 S.W.2d at 56. When the insurer possesses evidence reasonably showing that the insured's claim may be invalid, a bad-faith action is not viable. *Tucker*, 981 F.Supp. at 465; *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524, 526 (Tex. App.—Houston [14th Dist.] 1991, writ denied). It is well established that an insurer's contract liability is separate and distinct from its liability for the tort of bad faith. *See Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 600 (Tex. 1993).

15.     Moreover, State Farm's conduct must be judged by the information that was before it at the time it declined to extend any additional payments. *See Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990). Whether an insurer knew or should have known its liability was clear "*must be judged by the facts before the insurer at the time of the denial.*" *Id.* (emphasis added). Throughout its investigation of the Munozes' claim, State Farm continued to pay the Munozes for their additional living expenses. At the time the Munozes brought suit, State Farm had before it overwhelming evidence that the fire had been intentionally set, that the Munozes were in a poor financial state, and that Mr. Munoz had the opportunity to set the fire (all discussed in greater detail, *infra*).

8

16.    The present case is markedly similar to *Tucker*. 981 F.Supp. 461. In *Tucker*, the court granted partial summary judgment to State Farm on Tucker's bad faith and extra-contractual claims on facts extremely similar to those in this case, including independent investigations concluding the fire was intentionally set, the plaintiff's poor financial condition, an extensive claims history, and the opportunity to set the fire. *Id.* at 466. Given the facts alleged in that case, the court concluded that liability on the claim had not yet become reasonably clear. *Id.* at 466-67. The court noted that it was not deciding whether Tucker had set fire to his property, but instead whether State Farm acted reasonably once its liability, or absence thereof, became reasonably clear. *Id.* at 465. Without commenting on the strength of Tucker's remaining breach of contract action, the court found that, given the facts before it, State Farm had a reasonable factual basis for denying Tucker's claim and no reasonable jury could conclude that State Farm was unreasonable in denying the claim. *Id.* at 466. The court found the summary judgment evidence overwhelming in favor of State Farm and dismissed Tucker's extra-contractual claims. *Id.* at 465-66.

17.    As in *Tucker*, in the present case State Farm had a reasonable factual basis for its claim handling process and liability never became reasonably clear. Therefore, as a matter of law, the Munozes' bad faith and statutory actions must fail.

### 1.    Independent experts and governmental agencies determined that the fire had been intentionally set.

18.    As a matter of law, reliance on the opinion of an independent expert is a reasonable basis for denial of a claim. *See Lyons,* 866 S.W.2d at 601; *Fong Chun Huang,* 808 S.W.2d at 526. In the present case, State Farm relied on the conclusions of three independent investigators in handling the claim, and denied the claim in its Answer, as well as by letter post-suit. The

Raymondville Police Department Fire Chief, the Texas State Fire Marshal's office, and an independent investigator retained by State Farm all determined that the fire was intentionally set. Exhibit C, p. 1, Exhibit F, p. 9; Exhibit H, p. 7. Analysis by an independent laboratory found traces of charcoal starter in fire debris samples collected near the point of origin. Exhibit G, p. 1. The investigation also indicated there were no signs of forced entry. (One window had been left open, but there was no evidence it had been forced open.) Exhibit F, p. 5. At the time the Munozes filed suit, investigations by both the police department and the State Fire Marshal's offices were still ongoing. Exhibit A, p. 2; Exhibit H, p. 7.

19.    Though these experts had not concluded at that time who set the fire, their separate conclusions that the fire was intentional made it clear that someone intentionally set the fire. The only persons with a financial motive were the Munozes. The fire was not associated with a burglary, and there was no evidence of a fire-setter in the area. These factors raised the possibility that the Munozes were involved in setting the fire. At the very least, multiple findings that the fire was intentional warranted a cautious and thorough investigation by State Farm before it made a final claims decision. Given the opinions of these experts, liability to pay never became reasonably clear.

**2.    The Munozes were in poor financial condition at the time of the fire, raising sufficient questions as to their motive to set the fire to justify State Farm's investigation; likewise, State Farm's liability on the claim never became reasonably clear.**

20.    Poor financial status or condition was one of the factors the *Tucker* court considered in determining whether coverage had become reasonably clear. *Tucker*, 981 F. Supp. at 466. In *Tucker*, State Farm had learned that Tucker was in poor financial condition. *Id.* at 463. In this case, State Farm's investigation of the Munozes' personal and business finances led State Farm to believe

10

that the Munozes were in poor financial condition. At the time of the fire, the Munozes had several outstanding debts to the government and individuals. The State of Texas held various liens and judgments against Mr. Munoz for unpaid employment taxes for 1999, 2000, and 2001. Exhibits I, J, K, M. One month before the fire, the Internal Revenue Service filed a lien against Mr. Munoz totaling $24,269.38 for 940 and 941 taxes on employee wages. Exhibit L, p. 1. According to the Internal Revenue Service, there was no record that the Munozes had filed either personal or business income tax returns for 1999, 2000, 2001, or 2002. Exhibit N, p. 1. Additionally, approximately eight months before the fire, Mr. Capetillo loaned Mr. Munoz about $93,000, which Mr. Munoz had failed to repay. Exhibit W, p. 1. As a result of Mr. Munoz's failure to repay the loan, Mr. Capetillo brought suit against Mr. Munoz. *Id.* In January 2004, after the fire, Mr. Munoz and Mr. Capetillo settled the suit. Exhibit O, p. 1. Mr. Munoz agreed to pay Mr. Capetillo $43,000, in acknowledgment of his pre-fire debt to Mr. Capetillo. *Id.* Finally, in her interview with National Loss Consultants, Ms. Cavazos reported that while the Cavazoses were engaged in a payment dispute with Mr. Munoz over work on their home, Mr. Munoz had offered to have someone burn down the Cavazoses' home in order to collect on the insurance policy Mr. Munoz had taken out on their home while doing the remodeling work. Exhibit F, p. 8. This information alone would indicate that Mr. Munoz was aware that he could recoup insurance proceeds after a loss and thereby obtain ready cash to address his poor financial condition.

21.    It is evident that the Munozes owed more money than they were making at the time of the fire. The Munozes' poor financial condition was one factor State Farm could reasonably consider in handling the Munozes' claim, and was sufficient to raise enough questions that State Farm's liability to pay never became reasonably clear.

11

**3.    Given Mr. Munoz's actions prior to the fire and his account of events the night of the fire, a person could reasonably believe Mr. Munoz had prior knowledge of and the opportunity to set the fire; as a result, State Farm's liability never became reasonably clear.**

22.    Mr. Munoz's actions before and on the day of the fire were consistent with knowing that the fire would occur. Given the facts State Farm had before it, it had a reasonable basis for handling the Munozes' claim as it did. Mr. Munoz had filed previous claims with State Farm which State Farm considered to be questionable. Exhibits F, p. 19-21; Exhibit S, p. 1. Additionally, Mr. Munoz changed his holiday vacation plans at the last minute and arranged to be at home alone, ensured his wife and son would be away, ensured his pets would not be exposed to injury, and removed valuable property from his home. He has also continued to argue alternative theories of causation for the fire, despite the unanimous opinions of expert that the fire was intentional.

23.    The Munozes had filed three previous claims with State Farm: one for a fire in the kitchen, one for a fire in the shed at the back of his home, and one for a burglary. Exhibit S, p. 1. At the time the shed fire claim was being handled, Mr. Munoz claimed that he was receiving threats from people that his house would burn down. Exhibit S, p. 1. Two weeks before the fire at issue in this case, Mr. Munoz called his insurance agent's office and asked how much money he would recover if his house burned down. *Id.* Again, he claimed that he was being threatened. *Id.*

24.    On December 26, 2002, Mrs. Munoz and the couple's son left with family friends, the Capetillos, for a holiday trip to Disneyworld. Exhibit S. Mr. Munoz was originally supposed to accompany his family on vacation, but at the last minute decided not to go, telling Mr. Capetillo he had something to do. Exhibit W, p. 1.

12

25.    During the course of its investigation, the National Loss Consultants team interviewed Mr. Munoz, as well as several neighbors who witnessed the fire. Mr. Munoz claimed that on the day of the fire, he had gone to the house at around 6:00 p.m. to feed the dogs. Exhibit F, p. 16. He alleged that the dogs ran away when he went to feed them. *Id*. Mr. Munoz also stated that he exchanged his truck for his wife's Expedition in the garage and took his son's four-wheeler from the home. *Id*., Exhibit V, p. 3, ll. 21– p. 4, ll. 22. Mrs. Munoz's Expedition was newly purchased, while Mrs. Cavazos reported that Mr. Munoz was over the allowed mileage and at the end of his lease term for his truck. Exhibit F, p. 9. Detective Martinez of the Raymondville police stated that the afternoon of the fire, Mr. Munoz also went to H.E.B. and bought charcoal starter fluid, which he alleged was for the barbeque he was having at his shop that evening. Exhibit A, p. 2. Armstrong Forensic Laboratory found that fire debris from the scene contained a medium range, isoparaffinic solvent consistent with charcoal starter fluid. Exhibit G, p. 1. The fire debris at the Munozes' home contained an H.E.B. bag with a burned container of charcoal starter fluid. Exhibit D, p. 4.

26.    After being at the house around 6:00 p.m. on the day of the fire, Mr. Munoz claimed he went to his roofing shop to barbeque with his brother Omel and an employee. Exhibit F, p. 16. Mr. Munoz stated he was about to return to the house with his employee to see if he could catch one of the dogs that had run away when he received the phone call about the fire. *Id.* He reported that Omel was with him when Mr. Munoz received the call. *Id.* Mr. Munoz stated that Omel was "already in the car saying hey your house is on fire...[Omel] takes off this way and I go and get my wife's Expedition and I start coming this way." Exhibit F, p. 16-17. According to Mr. Munoz's version of the events, after learning of the fire, Omel hastened away alone and left Mr. Munoz to drive to the house himself, though the two were together, Omel was already in his own car, and the

13

house is only approximately eight blocks from Munoz Roofing. However, when Omel first arrived at the fire scene, he told police officers that he had just come by to check on the house, which he claimed he did on a daily basis, and did not indicate that he had any knowledge of the fire. Exhibit E, p. 2.

27.    In her interview with National Loss Consultants, neighbor Minerva Cavazos revealed that she and her husband Harry have been engaged in a legal dispute with Mr. Munoz over the remodeling of the Cavazoses' home. Exhibit F, p. 8. At one point during the dispute, Mr. Munoz informed the Cavazoses that Mr. Munoz had taken out about $85,000 worth of insurance on the Cavazos house when he was remodeling it and knew someone who would burn it down for them. *Id.* Both families had security cameras installed on their home exteriors to watch the other family; Mr. Munoz had also installed security lights. *Id.* Ms. Cavazos reported that a few days before the fire, they noticed that the light bulbs had been removed from the security lights on the side of the Munoz house facing the Cavazos house. *Id.*

28.    On the day before the fire, Ms. Cavazos reported passing by Munoz Roofing and seeing Mr. Munoz pulling into his shop with his son's four-wheeler. Exhibit F, p. 8. Later, Mr. Munoz claimed he took the four-wheeler to a tire shop in order to have the tires repaired, and that the tire shop would have a record of the repair. Exhibit V, p. 3, ll. 21– p. 4, ll. 22. However, the owner of the tire shop had no receipts on file for Mr. Munoz or Munoz Roofing for the months of December 2002 and January 2003. Exhibit A, p. 2.

29.    Mr. Munoz has continued to argue alternative theories of causation for the fire. When he first spoke to the police on the night of the fire, he told Officer Garcia that he did not recall if he left the Christmas tree lights on. Exhibit E, p. 3. Then, in his interview with National Loss

14

Consultants, he stated twice that he knew he the Christmas tree lights were on. Exhibit F, p. 22. He stated: "But I know I had it on...I know I told the fire department that I had it on for at least three days...[w]ithout turning it off." Exhibit F, p. 22. Though the Christmas tree was determined to be the approximate point of origin of the fire, the lights were not plugged in at the time the fire started. Exhibit D, p. 2. Additionally, the tree was artificial and was not likely to have caught fire without the application of a direct flame or accelerant. *Id.*

30.    Mr. Munoz also immediately began insinuating that the Cavazoses were responsible for setting the fire. In his statement to local police on the night of the fire, Mr. Munoz told police that in the past four months, Harry Cavazos, Mr. Munoz's neighbor and the person who had called 911 to report the fire, had told Mr. Munoz that he (Mr. Cavazos) was going to burn down Mr. Munoz's house. Exhibit E, p. 3. Mr. Munoz indicated to the police that he was having a lot of problems with the Cavazoses. *Id.* Also, Mr. Munoz told National Loss Consultants that he had been having legal trouble with the Cavazoses, but denied that the Cavazoses had a judgment against him. Exhibit F, p. 24. He claimed that Ms. Cavazos and her sister had been threatening and harassing his family and business, and that Ms. Cavazos had threatened to burn down his house about two months prior to the fire. Exhibit F, p. 25-26. Mrs. Munoz told the police that she had a tape containing a threat by Ms. Cavazos. Exhibit A, p. 2. However, when Detective Martinez listened to the tape Mrs. Munoz brought in, he did not hear any threat towards the Munozes or threats to burn down the house. *Id.*

31.    By all accounts, the Cavazos and Munoz families were undoubtedly having problems with one another. Yet Mr. Cavazos was responsible for reporting the January 1, 2003, fire at the Munoz residence. Exhibit B, p. 1. After calling 911, Mr. Cavazos knocked on the door to try to alert

15

Mr. Munoz of the fire. Exhibit E, p. 2. Then he and a neighbor who was a volunteer firefighter jumped over the fence with a water hose and attempted to extinguish the fire themselves while the fire department was en route. *Id.* These actions are inconsistent with someone who supposedly wanted to burn down the Munozes' home.

32.     In light of all the evidence indicating that Mr. Munoz either set the fire himself or caused it to be set, State Farm clearly had a reasonable basis for handling the claim as it did. Further, State Farm possessed evidence reasonably showing that the Munozes' claim might be invalid; therefore a bad-faith action is not viable. *See Tucker,* 981 F.Supp. at 465; *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524, 526 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Based on the information State Farm had at the time it was investigating the claim, it clearly had reason to believe that the Munozes and/or Mr. Munoz may have been involved in setting the fire in violation of their insurance policy. *See Viles*, 788 S.W.2d at 567. As a result, liability to pay the Munozes' claim has never become reasonably clear and the Munozes cannot establish a valid bad faith action.

**4.     The Munozes' DTPA and Insurance Code Article 21.21 claims fail as a matter of law because, absent a viable bad faith claim, the Munozes cannot sustain a cause of action for violations of either statute.**

33.     A number of courts have recognized that when bad faith, Insurance Code, and DTPA claims are premised on the same set of facts, the statutory claims depend on the existence of a valid bad faith claim. *See Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex. 1998); *Allstate Texas Lloyds v. Mason*, 123 S.W.3d 690 (Tex. App.—Ft. Worth 2003, no writ); *Love of God Holiness Temple Church v. Union Standard Ins. Co.*, 860 S.W.2d 179, 192 (Tex. App.—Texarkana 1993, writ denied); *Charter Roofing v. Tri-State Ins. Co.*, 841 S.W.2d 903, 906-7 (Tex.

16

App.—Houston [14th Dist.] 1992, writ denied); *Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442, 454 (Tex. App.—San Antonio 1992, writ denied); *Progressive County Mut. Ins. Co. v. Boman*, 780 S.W.2d 436, 440-1 (Tex. App.—Texarkana 1989, no writ); *Beaumont Rice Mills v. Mid-American Indemnity Insurance Co.*, 848 F.2d 950, 952 (5th Cir., 1991). In other words, the Munozes' extra-contractual claims live or die depending on whether their bad faith claim has any viability. *Tucker*, 981 F.Supp. at 465. To establish a statutory violation under the Insurance Code or DTPA, the Munozes must prove the elements necessary to demonstrate State Farm's breach of the duty of good faith and fair dealing. *See Vail*, 754 S.W.2d at 135; *Mason*, 123 S.W.3d at 690.

34.     The Munozes' petition fails to state any factual basis for DTPA or Article 21.21 liability other than through State Farm's handling of this claim. *See Plaintiff's Second Amended Complaint.* Additionally, the Munozes' cause of action must be based solely on State Farm's claim handling, as the Munozes instituted the present suit before State Farm made any claim decision. When, as in this case, the insured joins claims for violations of the Insurance Code and DTPA with a bad faith claim, all asserting wrongful denial of benefits, if the bad faith claims fails, there can be no liability for either statutory claim. *See Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997); *Saunders v. Commonwealth Ins. Co.*, 928 S.W.2d 322, 324 (Tex. App.—San Antonio 1996, no writ). As the Munozes cannot establish that State Farm acted in bad faith in handling their claim, the Munozes cannot sustain a claim under either the DTPA or Article 21.21 of the Insurance Code. The Munozes' extra-contractual claims must fail as a matter of law.

## VII. CONCLUSION AND PRAYER

35.    Accordingly, State Farm respectfully seeks partial summary judgment as a matter of law under Federal Rule of Civil Procedure 56(c).  The evidence clearly establishes that State Farm had a reasonable basis for its claim handling and liability to pay the Munozes' claim has never become reasonably clear.  As a result, the Munozes cannot sustain a bad faith claim and, as a matter of law, the Munozes' claims for violations of the DTPA and Texas Insurance Code Article 21.21 cannot stand.

36.    WHEREFORE, Defendant State Farm Lloyds respectfully asks the Court to grant its Motion for Partial Summary Judgment on Plaintiffs' Extra-Contractual Claims, dismiss Plaintiffs' claims for breach of the duty of good faith and fair dealing and violations of Texas Insurance Code Article 21.21 and the Texas Deceptive Trade Practices Act, and for all other relief to which State Farm may show itself justly entitled.

Respectfully submitted,

**OF COUNSEL:**                         By: _____
                                            Warren Taylor
**TAYLOR & TAYLOR**                         State Bar No. 19727200
                                            Federal I.D. No. 1354
                                            Beth M. Taylor
                                            State Bar No. 13336787
                                            Federal I.D. No. 14601
                                            815 Walker, Suite 250
                                            Houston, Texas 77002
                                            (713) 615-6060 Telephone
                                            (713) 615-6070 Facsimile

                                            Rene O. Oliveira
                                            State Bar No. 15254700
                                            Federal I.D. No. 4033
                                            Roerig, Oliveira & Fisher, L.L.P.
                                            855 West Price Road, Suite 9
                                            Brownsville, Texas 78520-8718
                                            (956) 542-5666 Telephone
                                            (956) 542-0016 Facsimile

                                            ATTORNEYS FOR DEFENDANT
                                            STATE FARM LLOYDS

19

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant State Farm Lloyds' Motion for Partial Summary Judgment on Plaintiffs' Extra-Contractual Claims and Supporting Brief has been forwarded to all counsel of record by certified mail, return receipt requested, on this 8th day of September, 2005.

Gustavo Ch. Garza
705 W. Highway 100, Suite A
Los Fresnos, Texas 78566

David L. Rusnak
Scoggins & Goodman, P.C.
245 Peachtree Center Ave. NE, Suite 2800
Atlanta, GA 30303-1227

Warren Taylor

20