

NFPA, 1 Batterymarch Park, PO Box 9101, Quincy, MA 02269-9101, USA
An International Codes and Standards Organization

Exhibit X, Page 1

Copyright © 2001 NFPA, All Rights Reserved

# NFPA 921

## Guide for

## Fire and Explosion Investigations

### 2001 Edition

This edition of NFPA 921, *Guide for Fire and Explosion Investigations,* was prepared by the Technical Committee on Fire Investigations and acted on by the National Fire Protection Association, Inc., at its November Meeting held November 12–15, 2000, in Orlando, FL. It was issued by the Standards Council on January 13, 2001, with an effective date of February 9, 2001, and supersedes all previous editions.

This edition of NFPA 921 was approved as an American National Standard on February 9, 2001.

### Origin and Development of NFPA 921

NFPA 921, *Guide for Fire and Explosion Investigations,* was developed by the Technical Committee on Fire Investigations to assist in improving the fire investigation process and the quality of information on fires resulting from the investigative process. The guide is intended for use by both public sector employees who have statutory responsibility for fire investigation and private sector persons conducting investigations for insurance companies or litigation purposes. The goal of the committee is to provide guidance to investigators that is based on accepted scientific principles or scientific research.

The first edition of the document, issued by NFPA in 1992, focused largely on the determination of origin and cause of fires and explosions involving structures. The second edition of the document included revised chapters on the collection and handling of physical evidence, safety, and explosions. NFPA 907M, *Manual for the Determination of Electrical Fire Causes,* was withdrawn as an individual document and was integrated with revisions into this document as a separate chapter. Elements of NFPA 907M that relate to other chapters of this document were relocated appropriately. New chapters dealing with the investigation of motor vehicle fires, management of major investigations, incendiary fires, and appliances were added.

The third edition of the document included a new chapter on fuel gas systems in buildings and the impact of fuel gases on fire and explosion investigations. The chapter on electricity and fire was rewritten to improve organization, clarify terminology, and add references. In the chapter on fire patterns, several sections were revised. Other revisions were made in the chapter on physical evidence on the subject of preservation of the fire scene and of physical evidence. The edition also included new text regarding ignitable liquid detection canine/handler teams.

The fourth edition of this document includes new chapters on building systems, fire-related human behavior, failure analysis and analytical tools, fire and explosion deaths and injuries, and wildfire investigations. An updated chapter on motor vehicle fires has been written. The document has been organized to group chapters into subjects that will make the document more usable.

## Technical Committee on Fire Investigations

**Daniel L. Churchward,** *Chair*
Kodiak Enterprises, Inc., IN [SE]

**Richard L. P. Custer,** *Secretary*
Custer Powell, Inc., MA [SE]

**Craig Beyler,** Hughes Assoc., Inc., MD [SE]

**Michael R. Bouchard,** U.S. Bureau of Alcohol, Tobacco, and Firearms, MD [E]

**Russell K. Chandler,** Dept. of Fire Programs, VA [E]

**Michael DiMascio,** Solutions Engr, Inc., MA [SE]

**Richard A. Dyer,** Lee's Summit Fire Dept., MO
    Rep. Int'l Assn. of Fire Chiefs [E]

**Bruce V. Ettling,** T F I Services, WA [SE]

**Andrew M. Giglio,** U.S. Fire Administration, MD [U]

**Terry-Dawn Hewitt,** McKenna Hewitt, Canada [C]

**Ronald L. Hopkins,** Eastern Kentucky University, KY [U]
    Rep. Int'l Society of Fire Service Instructors

**David J. Icove,** Tennessee Valley Authority, TN [U]

**Carolyn S. Kelly,** State of WI, Division of Criminal Investigation, WI [E]
    Rep. Nat'l Assn. of State Fire Marshals

**Patrick M. Kennedy,** John A. Kennedy & Assoc., IL [SE]
    Rep. Nat'l Assn. of Fire Investigators

**Michael E. Knowlton,** New York State Office of Fire Prevention and Control, NY [E]

**Hunter B. Lacy,** Royal & Sun Alliance Group, NC [I]

**John J. Lentini,** Applied Technical Services, Inc., GA [SE]

**Jeffrey D. Long,** Salt Lake City Fire Dept., UT [U]

**Hal C. Lyson,** Robins, Kaplan, Miller & Ciresi, MN [C]

**James N. Macdonald,** Travelers Property Casualty Co., CT [I]

**Leo Marchand,** Insurance Crime Prevention Bureau, Canada [I]

**L. Jeffrey Mattern,** FM Global, PA [I]

**Willard F. Preston, III,** Delaware State Fire Marshal's Office, DE [E]
    Rep. Int'l Fire Marshals Assn.

**Anthony D. Putorti, Jr.,** Nat'l Inst. of Standards and Technology, MD [RT]

**Richard J. Roby,** Combustion Science & Engr, Inc., MD [SE]

**Stuart A. Sklar,** Fabian, Sklar & Davis, P.C., MI [C]

**David M. Smith,** Associated Fire Consultants, AZ
    Rep. Int'l Fire Service Training Assn. [M]

**Joseph P. Toscano,** American Re-Insurance, CT [I]
    Rep. Int'l Assn. of Arson Investigators Inc.

**Charles R. Watson,** S.E.A, Inc., MO [SE]

### Alternates

**Randall E. Bills,** S.E.A., Inc., OH [SE]
    (Alt. to C. R. Watson)

**Douglas J. Carpenter,** Combustion Science & Engr, Inc., MD [SE]
    (Alt. to R. J. Roby)

**David S. Evinger,** Robins, Kaplan, Miller & Ciresi, MN [C]
    (Alt. to H. C. Lyson)

**Michael H. Fabian,** Fabian, Sklar & Davis, P.C., MI [C]
    (Alt. to S. A. Sklar)

**John F. Goetz,** Royal & Sun Alliance Group, NC [I]
    (Alt. to H. B. Lacy)

**Gerald Haynes,** U.S. Dept. of the Treasury, DC [E]
    (Alt. to M. R. Bouchard)

**John Machnicki,** Travelers Property Casualty Co., CT [I]
    (Alt. to J. N. Macdonald)

**Charles F. Mellafont,** Insurance Crime Prevention Bureau, Canada [I]
    (Alt. to L. Marchand)

**Harold E. Nelson,** Hughes Assoc., Inc., VA [SE]
    (Alt. to C. Beyler)

**Dennis W. Smith,** Kodiak Enterprises, Inc., IN [SE]
    (Alt. to D. L. Churchward)

**William D. Walton,** Nat'l Inst. of Standards and Technology, MD [RT]
    (Alt. to A. D. Putorti)

**Larry E. West,** West Investigations, PA [I]
    (Alt. to J. P. Toscano)

**Christopher B. Wood,** Custer Powell, Inc., MA [SE]
    (Alt. to R. L. P. Custer)

**Frank E. Florence,** NFPA Staff Liaison

*This list represents the membership at the time the Committee was balloted on the final text of this edition. Since that time, changes in the membership may have occurred. A key to classifications is found at the back of the document.*

NOTE: Membership on a committee shall not in and of itself constitute an endorsement of the Association or any document developed by the committee on which the member serves.

**Committee Scope:** This Committee shall have primary responsibility for documents relating to techniques to be used in investigating fires, and equipment and facilities designed to assist or be used in developing or verifying data needed by fire investigators in the determination of the origin and development of hostile fires.

The distance as well as the direction of significant pieces of evidence from the apparent center of the explosion may be critical. The location of all significant pieces should be completely documented on the explosion scene diagram, along with notes as to both distance and direction. This procedure allows the investigator to reconstruct the trajectories of various components. In some cases, it is desirable to weigh and make geometric measurements of significant missiles, especially large ones. This can then be used in a more complete engineering analysis of trajectories.

**18.17.2.2 Relative Structural Damage Analysis.** Investigators should diagram the relative damage to the areas surrounding the explosion site. Such a diagram can be called an *iso-damage contour map*. Criteria for contours may be simple overpressure levels in some cases, or the relative damage ratings for structures. Several techniques are employed for this purpose. Such an analysis will give additional clues to explosion propagation and can be used for further input to a more complete engineering analysis.

**18.17.3\* Correlation of Blast Yield with Damage Incurred.** There are several methods that analysts use to correlate the degree of damage and projectile distance with the type and amount of fuel involved. Due to the great differences in chemical dynamics between solid explosives and gas/vapor deflagrations, it is not possible to directly correlate the amount of fuel involved in one to the weight of explosive used in the other. Weight equivalencies for common condensed-phase explosives can be found in the literature. *(See Appendix A.)*

**18.17.4 Analysis of Damaged Items and Structures.** Frequently, the determination of the cause in explosion incidents requires a multidisciplinary approach to relate damage to the fuels involved. The use of special experts may be necessary. *(See Section 12.5.)*

**18.17.5 Correlation of Thermal Effects.** A collection of articles exhibiting heat damage from an explosive event may be evidence of a fireball or fire during the sequence of events. These articles may be further proof that the explosion involved a BLEVE, a fuel jet fire, or other phenomenon, depending on the character of those articles. Specialized analysis of thermal damage effects can be conducted by a person trained in this area. From this material, an isothermal diagram (i.e., heat damage map) can be developed.

## Chapter 19 Incendiary Fires

**19.1 Introduction.** An incendiary fire is a fire that has been deliberately ignited under circumstances in which the person knows the fire should not be ignited. This section provides guidance to assist the investigator in identifying incendiary fires and documenting evidence regarding their origin and cause. In the event the investigator concludes that a fire was incendiary, other evidentiary factors are addressed regarding suspect development and identification.

The existence of a single indicator or a combination of indicators is not necessarily conclusive proof that a fire is of incendiary cause. However, the presence of indicators may suggest that the fire deserves further investigation.

**19.2 Incendiary Fire Indicators.** There are a number of conditions related to fire origin and spread that may provide physical evidence of an incendiary fire cause.

**19.2.1 Multiple Fires.** Multiple fires are two or more separate, nonrelated, simultaneously burning fires. The investigator should search to uncover any additional fire sets or points of origin that may exist. In order to conclude that there are multiple fires, the investigator should determine that any "separate" fire was not the natural outgrowth of the initial fire.

Fires in different rooms, fires on different stories with no connecting fire, or separate fires inside and outside a building are examples of multiple fires. A search of the fire building and its surrounding areas should be conducted to determine whether there are multiple fires.

Apparent multiple fires can result through spread by the following means:

(1) Conduction, convection, or radiation
(2) Flying brands
(3) Direct flame impingement
(4) Falling flaming materials (i.e., drop down) such as curtains
(5) Fire spread through shafts, such as pipe chases or air-conditioning ducts
(6) Fire spread within wall or floor cavities within "balloon construction"
(7) Overloaded electrical wiring
(8) Utility system failures

Apparent multiple points of origin can also result from continued burning at remote parts of a building during fire suppression and overhaul, particularly when building collapse or partial building collapse is involved.

The earlier a fire is extinguished, the easier it is to identify multiple points of origin. Once full room involvement or room-to-room extension has occurred, identifying multiple fires becomes more difficult and a complete burnout or "black hole" may make identification impossible.

If there has been a previous fire in the building, care should be taken not to confuse earlier damage with a multiple fire situation.

Fire scene reconstruction (*see Section 15.7*), an important aspect of the fire scene examination, is especially important when multiple fires are suspected.

A careful examination of the fire scene may reveal additional fire sets (which are intended to ignite additional fires), particularly in the same type of area. For example, if the investigator observes or discovers an area of origin in a closet, an examination of other closets for additional fires or fire sets is prudent. The investigator may be required to obtain legal authority to conduct a search in areas not affected or involved in the discovered fire. *(See 9.2.2 and 9.2.3.)*

Confirmation of multiple fires is a compelling indication that the fire was incendiary.

**19.2.2 Trailers.** After incendiary fires, when fuels have been intentionally distributed or "trailed" from one area to another, elongated patterns may be visible. Such fire patterns, known as *trailers*, can be found along floors to connect separate fire sets, or up stairways to move fires from one story or level within a structure to another. Fuels used for trailers may be ignitable liquids, solids, or combinations of these. *(See Figure 4.18.1.)*

Materials such as clothing, paper, straw, and ignitable liquids are often used. Remnants of solid materials frequently are left behind and should be collected and documented.

Ignitable liquids may leave linear patterns, particularly when the fires are extinguished early. Radiant energy from the extension of flame or hot gases through corridors or up stairways can also produce linear patterns. As with suspected solid accelerants, samples of possible liquid accelerants should be collected and analyzed. *(See Section 14.5.)*

Often, when the floor area is cleared of debris to examine damage, long, wide, straight patterns will be found showing

construction, lack of maintenance, systems shutdown for maintenance, improper design, or equipment or structural assembly failure.

**19.3.5.1 Damage to Fire-Resistive Assemblies.** Fire-resistive design, accomplished through the construction of various fire resistance–rated assemblies (e.g., walls, ceilings, and floors) and the proper protection of openings (e.g., fire doors, windows and shutters, and fire dampers) is intended to separate portions of a structure into "compartments" or "fire areas" that confine a fire within the "compartment" in which the fire originated, preventing smoke and fire movement to other portions of the building.

Penetrations in fire-resistant assemblies may be an indication that the firesetter attempted to spread the fire from one area to another. The investigator should try to determine whether the penetrations occurred with the intent of spreading the fire. Penetrations of fire resistance–rated construction may be the result of poor initial construction, renovations, service wiring, or cables, or may be the result of fire-fighting activities, such as ventilation or overhaul.

Open doors are the most common method of fire travel through a structure. Sabotage to fire or smoke doors (e.g., wedging doors open) or fire shutters can increase fire and smoke spread throughout the structure. Sabotage to stairway doors can further increase rapid smoke and fire spread. However, frequently these doors are held or propped open by building occupants to improve ventilation or access during regular building operations. The investigator should determine whether the doors and other opening protection were intentionally opened by the firesetter or were open as a normal operational use of the building.

**19.3.5.2 Damage to Fire Protection Systems.** Fire protection systems include heat, smoke, or flame detection; alarm and signaling systems; sprinkler and standpipe systems; special extinguishing systems, such as those using carbon dioxide, foam, or halon; and private water mains and fire hydrants.

Sabotage to fire protection systems or components can delay notification to occupants and the fire department and can prevent the control or extinguishment of the fire. Such sabotage is intended to allow the fire to develop fully and to create greater destruction.

Sabotage can include removing or covering smoke detectors; obstructing sprinkler heads; shutting off control valves; damaging threads on standpipes, hose connections, or fire hydrants; and obstructing or placing debris in fire department Siamese connections or fire hydrants.

Another type of sabotage, although more subtle, is igniting multiple fires (see 19.2.1). In addition to increased destruction from additional fires, multiple fires can have the effect of overtaxing the fire suppression system beyond its design capabilities. Assistance may be needed to determine the design limitations on the fire protection system. (See Section 12.5.)

**19.3.6 Open Windows and Exterior Doors.** Open windows and exterior doors can speed the growth and spread of a fire. When these conditions exist during cold weather or in violation of normal building security, it may be an indicator that someone attempted to provide extra ventilation for the fire. Windows may have been broken out for the same purpose.

**19.4 Other Evidentiary Factors.** Once the investigator has completed the fire scene examination and has concluded that the fire was incendiary, there are other evidentiary factors that should be recorded and examined, which may be critical regarding future suspect development and identification.

These evidentiary factors regarding the identification of a suspected firesetter, or the "motive" or opportunity for the fire, cannot be substituted for a properly conducted investigation and determination of the fire's origin and cause.

In the absence of physical evidence of an incendiary fire, the investigator is strongly cautioned against using the discovery or presence of these other evidentiary factors in developing an hypothesis, forming opinions, or drawing conclusions concerning the cause of the fire.

**19.4.1 Analysis of Confirmed Incendiary Fires.** It is through the analysis of confirmed incendiary fires that trends or patterns in repetitive firesetting behaviors may be detected. The key to this analysis is whether the firesetting is repetitive or not. This analysis may assist the investigator in the development and identification of possible suspects. Repetitive firesetting, sometimes called *serial fire setting* or *serial arson*, refers to a series of two or more (incendiary) fires, where the ignition is attributed to the individual or a group acting together. There are three principal trends that may be identified through analysis; these are geographic area or "clusters," temporal frequency, and materials and methods.

**19.4.1.1\* Geographic Area, Clusters.** Repetitive firesetting activities tend to group within the same geographic location (i.e., same neighborhood), or cluster. Locating incendiary fires by utilizing computer-assisted pattern recognition systems such as the Arson Information Management System (AIMS) or by looking at a map of the local area can assist the investigator in identifying clusters.

**19.4.1.2 Temporal Frequency.** Incendiary fires set by the same individual often occur during the same time period of the day or on the same day of the week. This may have several reasons, including the level of activity in the area, the firesetter's assessment of his or her chances of success, or the firesetter's routine. For example, the firesetter may pass the location (e.g., to or from work or to or from a bar) during a certain period of the day or on a certain day of the week.

**19.4.1.3 Materials and Method.** The method and material used in the ignition of incendiary fires vary according to the firesetter. Generally, however, once a firesetter begins repetitive firesetting behavior, the materials and method tend to remain similar, as do the locations of the incendiary fires.

**19.4.2 Evidence of Other Crimes, Crime Concealment.** An incendiary fire may be an attempt to conceal other crimes, such as homicides and burglaries. In other cases, a staged burglary may occur to disguise an incendiary fire. The issue of which occurred first, the other crime or the fire, is more related to the motive for the fire and has little to do with the cause of the fire.

Though possible motives are not determinative in investigating a fire's cause (i.e., if the motive was to burglarize the structure and to conceal the burglary with a fire, or if the motive was to set a fire but make it appear as a burglary), motives may lead the investigator to approach the investigation (and the search for evidence) and possible suspects differently.

**19.4.3 Indications of Financial Stress.** The investigation may reveal indicators of financial stress. These indicators may include the following: liens, attachments, unpaid taxes, mortgage payments in arrears, real estate for sale (inability to sell, property is nonmarketable, etc.), poor business location, or new competition.

Financial stress may also be indicated by factors associated with the use or type of occupancy of the building. For business occupancies, indicators may include periods of economic decline, particularly within that industry; changes within an industry, in either product or equipment; obsolescence of equipment; and new competition within the industry. Other indicators can include factors such as the need to relocate or new competition in the same geographic region or area.

Examples of financial stress for residential properties can include landlords who cannot collect rent or who cannot rent out vacant units, rent control, the owner's need to relocate, and mass loss of jobs within the region resulting from industrial cutbacks or closings.

**19.4.4 Existing or History of Code Violations.** Closely related to, and possibly another indication of financial stress, is the existence of or a history of building, fire safety, housing, or maintenance code violations. This may indicate either the financial inability to maintain the building or the intentional choice to let the building deteriorate (refusal to reinvest in the structure).

Where the deterioration of a building is intentional, other indicators related to financial stress, such as overinsurance or the inability to sell the property, may be discovered during the investigation.

**19.4.5 Owner with Fires at Other Properties.** If a structure is owned by persons who have had incendiary fires at other properties, especially if they have collected insurance as a result of those fires, there is a possibility they will experience another incendiary fire.

**19.4.6 Overinsurance.** Another indicator closely related to financial stress is overinsurance. Overinsurance is a condition whereby the insurance coverage is greater than the value of the property in a valued policy state or whereby there are multiple insurance policies on the property.

**19.4.7 Timed Opportunity.** Timed opportunity refers to the indicators that a firesetter has timed the fire to coincide with conditions or circumstances that assist the chances of successful destruction of the target (property) or to utilize those conditions or circumstances to increase the chances of not being apprehended.

**19.4.7.1 Fires During Severe Natural Conditions.** Fires during periods of extreme natural conditions such as floods, snowstorms, hurricanes, or earthquakes may delay fire department response or hinder fire-fighting capabilities.

Other natural conditions to note are electrical storms, periods of high winds, low humidity, and freezing or extremely high temperatures.

**19.4.7.2 Fires During Civil Unrest.** This is a type of opportunistic fire. Other indicators such as financial stress often accompany this indicator.

Also, incendiary fires during civil unrest usually do not involve elaborate ignition devices or materials, although "fire bombs" or liquid accelerants are sometimes used. More often, available materials are utilized as an initial fuel.

A similar pattern may develop when *repetitive fires* or a series of incendiary fires occur in the same geographic area (*see 19.4.1.1*). The owners or occupants may attempt to set a fire and have the cause attributed to another firesetter. In these instances, the investigator may discover a difference in the method (such as time of day, days of the week, location of the fire), the materials (such as different fuels) used, or ignition source that does not the established firesetting pattern. *(See 19.4.1.)*

**19.4.7.3 Fire Department Unavailable.** Fires may be set at times when the fire department is unavailable. Examples include deliberately calling in a false alarm to get the fire department away from the area or starting the fire while there is a working fire in progress or when the fire department involved in a parade or other community function.

**19.4.8\* Motives for Firesetting Behavior.** Motive indicator should not be included or substituted as analytical elements of the fire scene for the purpose of determining or classifying the fire cause. The proper use of motive indicators in the fire investigation process is in identifying potential suspects only after the fire origin and cause has been determined and the fire has been classified as incendiary.

*Motive* is defined as an inner drive or impulse that is the cause, reason, or incentive that induces or prompts a specific behavior. The identification of an offender's motive is a key element in crime analysis. Crime analysis is a method of identifying personality traits and characteristics exhibited by an unknown offender. It is the identification and analysis of the personality traits that eventually lead to the classification of a motive. Once a possible motive is identified, the investigator can begin to evaluate potential suspects for the incendiary fire

Behaviors related to the classifications of motive may not be exclusive to one motive classification but may appear to overlap categories and to be similar for different motives. In these instances, it is important to obtain additional information that may clarify the behaviors.

In addition to the identification of a motive, other analyses should be considered that might assist in determining if a serial firesetter exists. Through the analysis of confirmed incendiary fires, trends or patterns in repetitive firesetting behaviors may be detected. The three principal trends that may be identified are geographic clustering, temporal frequency, and methods and materials. *(See 19.4.1.)*

**19.4.8.1 Motive Versus Intent.** There is an important distinction to be made between motive and intent. *Intent* refers to the purposefulness or deliberateness of the person's actions, or in some instances, omissions. It also refers to the state of mind that exists at the time the person acts or fails to act. Intent is generally necessary to show proof of crime. The showing of intent generally means that some substantive steps have been taken in perpetuating the act. *Motive* is the reason that an individual or group may do something. It refers to what causes or moves a person to act or not to act and the stimulus that causes action or inaction. Motive is generally not a required element of a crime.

For example, a person with indications of "financial difficulty" could experience a fire to his insured property that is ignited by his falling asleep with a lit cigarette. While this person may have motive to cause a fire, that person did not intend to have a fire. Thus, no element of intent existed.

**19.4.8.2\* Classifications of Motive.** The classifications discussed in this chapter are those identified in Douglas et al., *Crime Classification Manual* (CCM). The CCM uses a diagnostic system intended to standardize terminology and formally classify the critical characteristics of the perpetrators and the victims of the three major violent crimes: murder, arson, and sexual assault.

The CCM identifies analytical factors that have been identified as essential elements in order to classify the motive of an offense. These factors include information about the victim,