United States District Court
Southern District of Texas
FILED

SEP 1 2 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUIS C. MUNOZ AND CARMELA MUNOZ | § § § | CAUSE NO B-04-141 |
| VS. | § § § | |
| STATE FARM LLOYDS | § | |

### DEFENDANT STATE FARM LLOYDS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant State Farm Lloyds ("State Farm") files this Motion for Summary Judgment and Supporting Brief, seeking dismissal of all of Plaintiffs Luis and Carmela Munoz's claims, as follows:

### I. NATURE AND STAGE OF THE CASE

1. This suit is an insurance dispute arising out of an intentionally set fire at the Munoz residence. The Munozes have sued their insurer for breach of the insurance contract, violations of Texas Insurance Code Article 21.21 and the Deceptive Trade Practices Act ("DTPA"), breach of the duty of good faith and fair dealing, and slander per se.[1] TEX. INS. CODE Art. 21.21 (Vernon 2004); TEX. BUS. & COMM. CODE § 17.41, *et seq.* State Farm seeks summary judgment on all of the Munozes' claims based on the Munozes' failure to comply with policy conditions.

---

[1] The Munozes' claims for statutory violations, bad faith, and slander per se are being addressed in State Farm's separate motions for partial summary judgment.

2.  The parties have exchanged written discovery and are currently scheduling oral depositions. Counsel have agreed to extend the deadline to complete discovery. Trial is set for December 5, 2005.

## II. ISSUES TO BE RULED UPON AND SUMMARY OF ARGUMENT

3.  The Munozes have failed to comply with all conditions precedent to coverage set forth in their homeowner's policy, and specifically failed to provide financial documents relevant to the fire. Because the Munozes repeatedly failed to provide those relevant documents, in violation of their duties under the policy, there was no coverage and State Farm is entitled to summary judgment.

## III. STANDARD OF REVIEW

4.  Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A defendant seeking summary judgment on the plaintiff's claim must demonstrate the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To survive the defendant's motion for summary judgment, the plaintiff must establish a genuine issue of material fact as to every element of its cause of action. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact issue is genuine only if the evidence is such that a reasonable jury could find the fact in favor of the non-movant. *Id.* Speculations, unsubstantiated assertions, or conclusory allegations are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). When the defendant shows there is no evidence to support

an essential element of the plaintiff's claim or claims, the burden shifts to the plaintiff to go beyond the pleadings and produce evidence raising a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

### IV. SUMMARY JUDGMENT EVIDENCE

5.  Defendant State Farm hereby incorporates by reference, as if copied *in extenso*, the documents attached to its Motion for Summary Judgment and Supporting Brief.

### V. BACKGROUND FACTS

6.  This dispute arose from a fire at the Munoz residence on January 1, 2003, and the Munozes subsequent claim for insurance benefits under their State Farm homeowner's policy. Because state and local authorities, as well as an independent investigator retained by State Farm, had determined the fire was intentionally set,[2] State Farm conducted an investigation into the Munozes' claim.

7.  On January 24, 2003, State Farm sent the Munozes a letter advising them of their duties under the policy following a claimed loss. Exhibit B. One of those duties was as follows:

"Section I - CONDITIONS

2.  **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:

    * * *
    d.  as often as we reasonably require:
        * * *
        (2) provide us with records and documents we request and permit us to make copies..."

Exhibit B, p. 2

---

[2] These expert investigations are discussed more fully in State Farm Lloyds' motions for partial summary judgment and supporting briefs.

8. On January 28, 2003, State Farm claim representative Tom Reed met with Mr. Munoz and explained that State Farm's preliminary investigation had led State Farm to conclude the fire at the Munoz house was intentionally set. Exhibit A, ¶ 5. Mr. Reed further explained that because of the intentional nature of the fire, State Farm would need to conduct additional investigation, including an examination of the Munozes' financial condition. *Id.* Mr. Reed also hand delivered to Mr. Munoz a letter explaining that State Farm's investigation was being conducted under a reservation of rights. Exhibit C, p. 1.

9. On February 19, 2003, Mr. Reed met with Mr. Munoz to explain coverage under the policy and also requested that Mr. Munoz provide a signed Authorization form. Exhibit A, ¶ 6. Mr. Munoz advised he would provide the signed form on February 24, 2005; however, Mr. Munoz did not provide the signed Authorization at that time. *Id.*

10. On March 18, 2003, State Farm sent the Munozes a letter including a numbered, detailed list of documents and information that State Farm was requesting. Exhibit D. Among the documents requested were the signed Authorization forms previously provided by Mr. Reed (and provided again with the March 18, 2003, letter), the name and current address of the Munozes' accountant, and the Munozes' personal and business tax records for 1998 to 2002. Exhibit D, p. 1-2. A month later, State Farm had received no documents or information from the Munozes in response to State Farm's March 18, 2003, letter. Exhibit A, p. 2; Exhibit E, p. 1. By letter dated April 14, 2003, State Farm repeated its request to the Munozes for the documents and information enumerated in the March 18 letter, provided the Authorization forms for a third time, and requested additional financial documents. Exhibit E, p. 1-3.

4

11.     On April 22, 2003, State Farm received various documents from the Munozes. Exhibit A, ¶ 9; Exhibit F, p. 1. Though the Munozes had indicated the signed Authorization forms were being provided, they were not among the documents State Farm received on April 22. Exhibit A, ¶ 9; Exhibit F, p. 1. On April 25, 2003, State Farm photocopied and returned the Munozes' original documents, provided another set of Authorization forms, and again requested the Munozes sign and return the Authorizations. Exhibit F, p. 1.

12.     On May 5, 2003, State Farm requested the Munozes provide additional information regarding various items of personal property they claimed were damaged as a result of the fire and answer additional question raised by the investigation to date. Exhibit G, p. 1-4.

13.     On May 14, 2003, Mr. Laurence Kurth, an attorney retained by State Farm to take the Examinations Under Oath of the Munozes, formally communicated State Farm's request for the Munozes to submit to Examinations Under Oath, pursuant to their duties under the policy. Exhibit H, p. 1. Mr. Kurth asked the Munozes to bring specific documents, as well as any documents they believed supported their claim, with them to their Examinations Under Oath. Exhibit H, p. 3.

14.     On May 28, 2003, State Farm requested for the fifth time that the Munozes sign and return the Authorization forms by June 7, 2003. Exhibit I, p. 1. State Farm also asked the Munozes to provide the documents previously requested if they had not already done so. *Id.* State Farm finally received the signed Authorizations from the Munozes on June 10, 2003. Exhibit A, ¶ 12. However, these Authorizations were limited in their scope and did not enable State Farm to obtain all the relevant documents it had requested.

15. Having received no response from the Munozes regarding his May 14 correspondence, on June 5, 2003, Mr. Kurth sent another letter on behalf of State Farm, repeating State Farm's request for the Munozes' Examinations Under Oath and the production of documents. Exhibit J, p. 1-3.

16. On June 11, 2003, State Farm received a response from the Munozes in the form of Mr. Gustavo Ch. Garza's letter of representation of the Munozes sent to Mr. Kurth.[3] Exhibit K, p. 1. In his letter, Mr. Garza requested all further correspondence be directed to him and stated that he and the Munozes were gathering the requested documents. *Id.* Additionally, Mr. Garza requested State Farm provide him with copies of the recorded interviews State Farm had conducted with the Munozes. *Id.* State Farm sent copies of the interviews to Mr. Garza on June 18, 2003. Exhibit L, p. 1.

17. After learning from Mr. Garza that the Munozes did not wish to submit to Examinations Under Oath, on June 27, 2003, Mr. Kurth reiterated that the examinations were a condition precedent under the Munozes' policy and again requested the examinations and production of documents. Exhibit M, p. 1.

18. On July 1, 2003, State Farm asked the Munozes to sign and return two Form 4506 Requests for Copy or Transcript of Tax Form in order to allow State Farm to request copies of the Munozes' personal and business Internal Revenue Service tax returns. Exhibit N, p.1. State Farm also asked the Munozes to obtain current credit reports for themselves and Munoz Roofing, comment on any inaccuracies, and provide State Farm with the reports and comments. *Id.*

---

[3] Though Mr. Garza's letter of representation states only that he represents Mr. Luis Munoz, Mr. Garza arranged for both of the Munozes' Examinations Under Oath, made references to the Munozes as his "clients" in later correspondence, and represented both Mr. and Mrs. Munoz at their respective Examinations Under Oath.

19. The Munozes finally agreed to appear for their Examinations Under Oath on August 5, 2003. Exhibit A, ¶ 18. In his August 26, 2003, correspondence to Mr. Garza, Mr. Kurth outlined additional documents and information being requested by State Farm as a result of information provided by the Munozes during their examinations. Exhibit O, p. 1-3. Mr. Kurth repeated State Farm's request for a number of financial documents that had been previously requested, but never provided by the Munozes, including personal and business tax returns, current credit reports, contracts for roofing jobs Mr. Munoz claimed he had in 2002 and 2003, and receipts documenting Mrs. Munoz's vacation in Florida at the time of the fire. *Id.*

20. For over a month, State Farm received no response to Mr. Kurth's August 26 correspondence. Exhibit A, ¶ 20. On September 29, 2003, Mr. Kurth sent another letter to Mr. Garza reminding him of the documents the Munozes had yet to provide. Exhibit P, p. 1. On October 6, 2003, Mr. Munoz met with Mr. Reed and provided cash receipts purportedly from Mrs. Munoz's trip to Florida and a handwritten note regarding the person from whom he purchased a replacement barbeque grill (Mr. Munoz had given away the barbeque pit he was using the day of the fire). Exhibit A, ¶ 22. Mr. Munoz did not provide any other information at that time. *Id.*

21. On October 9, 2003, Mr. Kurth sent Mr. Garza another letter reminding of the Munozes' duties under the policy and failure to provide documents. Exhibit Q, p. 1. Mr. Kurth asked that the Munozes respond by October 20, 2003. *Id.* Mr. Garza responded that the Munozes were reviewing their Examinations Under Oath, that he expected to have the signed examinations returned within two weeks, and that Mr. and Mrs. Munoz had already provided the requested records. Exhibit R, p. 1. State Farm did not receive the signed signature page for Mrs.

Munoz's Examination Under Oath until December 9, 2003. Exhibit A, ¶ 25; Exhibit S., p. 1. State Farm did not receive the signed signature page for Mr. Munoz's Examination Under Oath until January 26, 2004. Exhibit A, ¶ 25; Exhibit X, p. 1.

22.     Mr. Kurth responded to the Munozes' contention that they had already provided all documents requested, in his correspondence of December 17, 2003. Exhibit T, p. 1-2. Along with his letter, Mr. Kurth enclosed copies of all the documents the Munozes had provided to State Farm to date. Exhibit T, p. 1. Mr. Kurth noted that, among other things, Mr. Munoz had failed to sign his Examination Under Oath, failed to fill in the blanks on the errata sheet to his Examination Under Oath, failed to provide personal and business tax returns, failed to provide records from his roofing company evidencing his income, failed to provide copies of contracts for roofing jobs he claimed to have performed in 2002 and 2003, failed to allow access to his bookkeeper, and failed to provide any documentation proving Mrs. Munoz was in Florida at the time of the accident (the receipts provided by Mr. Munoz on October 6, 2003, were cash receipts and did not identify Mrs. Munoz in any way). Exhibit T, p. 2. Mr. Kurth advised the Munozes they had until January 6, 2004, to comply with their duties under the policy. *Id.*

23.     On January 6, 2004, Mr. Garza indicated he needed ten more days to respond to Mr. Kurth's request. Exhibit U, p. 1. On January 20, 2004, Mr. Kurth informed Mr. Garza that neither he nor State Farm had ever received Mr. Munoz's Examination Under Oath signature page, requested the Munozes sign and return the tax authorizations first provided to them in July 2002, and requested that Mr. Garza suggest dates for review of Mr. Munoz's bookkeeper's records. Exhibit V, p. 1. Mr. Kurth forwarded new tax authorization forms for the Munozes on January 26, 2003, and again requested that Mr. Garza suggest dates to review the bookkeeper's

records. Exhibit W, p. 1; Exhibit X, p. 1. Mr. Munoz finally provided a signed tax authorization on February 2, 2004, nearly seven months after it had first been requested.[4] Exhibit Y, p. 1. Mr. Garza suggested Mr. Reed review the bookkeeper's records on February 5, 9, or 12. *Id.*

24.  On February 11, 2004, Mr. Reed suggested to Mr. Garza that an outside copy service could pick up and copy the records from Ms. Karen Barnett, Mr. Munoz's bookkeeper, and then return the records to Ms. Barnett. Exhibit A, ¶ 31. However, Mr. Garza's secretary advised Mr. Reed that Mr. Garza would not agree to this, and that he wanted Mr. Reed to personally review the records. *Id.* Mr. Reed agreed to meet Mr. Garza on February 12, 2004, to review Ms. Barnett's records. Exhibit A, ¶ 32. When Mr. Reed and Mr. Garza arrived at Ms. Barnett's office, Ms. Barnett advised that she had not been informed that Mr. Reed and Mr. Garza were coming until that morning. *Id.* She further advised that her computer had crashed and she did not know if she would be able to recreate the records. *Id.* Ms. Barnett was able to provide unsigned copies of tax returns for 1999 and 2000; however, she stated that the last period Mr. Munoz had filed a tax return was 1999. *Id.* She informed Mr. Reed and Mr. Garza that she had prepared returns for 2000 and 2001, but that Mr. Munoz had not yet filed those, and that Mr. Munoz had just given her the original W-2 forms for 2002. *Id.* Mr. Garza reiterated that he did not want an outside copy service to copy the records, but told Mr. Reed that once Ms. Barnett gathered the records, he would have them copied at his office and send Mr. Reed the copies. *Id.* Mr. Kurth documented this unsuccessful trip to Ms. Barnett's office in a February 24, 2004, letter to Mr. Garza. Exhibit Z, p. 1.

---

[4] Mrs. Munoz has never provided a signed tax authorization.

25.   On March 16, 2004, Mr. Garza informed Mr. Kurth that the financial records of Munoz Roofing were now in his possession and ready for review. Exhibit AA, p. 1. Mr. Reed visited Mr. Garza's office on March 29, 2004, to review the financial records. Exhibit A, ¶ 35. Mr. Reed requested a copy of some of the records reviewed; however, Mr. Garza refused to allow those records to be copied. *Id*.; Exhibit BB, p. 1. Therefore, on April 5, 2004, State Farm again requested copies of the Munozes tax returns and supporting financial documents, as well as the financial documents of Munoz Roofing that Mr. Reed had reviewed at Mr. Garza's office, and offered to pay the reasonable photocopy charges. *Id*. In response, Mr. Garza indicated that the documents would be available if State Farm brought in its own copy machine and personnel. Exhibit CC, p. 1. The Munozes provided State Farm with no additional documents, and filed suit against State Farm in May 2004. Exhibit A, ¶ 37-38.

26.   At the time the Munozes filed suit, State Farm was still waiting for the Munozes to provide copies of their personal and business financial records, Mrs. Munoz's calendar book, all contracts or agreements regarding partnership agreements with Mr. Ben Capetillo, all of Mrs. Munoz's employment records, including requests for vacation or sick leave, and documents specifically identifying Mrs. Munoz and evidencing that she was in Florida at the time of the fire. Exhibit A, ¶ 39. State Farm denied the Munozes' claim on January 11, 2005. Exhibit DD, p. 1.

## VI. ARGUMENTS AND AUTHORITY

27.   Failure to comply with a condition precedent to coverage is fatal to an insured's claim. *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990); *American Teacher Life Ins. Co. V. Brugette*, 728 S.W.2d 763, 764 (Tex. 1987); *General American Life Ins. Co. v.*

*Rodriguez*, 641 S.W.2d 264, (Tex. App.–Houston [14th Dist.] 1983, no writ); *Milton v. Preferred Risk Ins. Co.*, 511 S.W.2d 83, 85 (Tex. Civ. App.–Houston [14th Dist.] 1974, writ ref'd n.r.e.).

28. Insurance contracts are subject to the same rules of construction as other contracts. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). The courts are to give effect to the written expression of the parties' intent. *Beaston*, 907 S.W.2d at 433. All parts of the contract must be read together striving to give meaning to every sentence, clause and word to avoid rendering any portion inoperative. *Id.*; see also *United Serv. Auto Ass'n v. Miles*, 161 S.W.2d 1048, 1050 (Tex. 1942).

29. The Munozes' homeowner's policy provides, in pertinent part:

"Section I - CONDITIONS

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:

\* \* \*
d. as often as we reasonably require:
\* \* \*
(2) provide us with records and documents we request and permit us to make copies..."

Exhibit EE.

30. In *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999), the Fifth Circuit affirmed the district court's decision to grant summary judgment in favor of State Farm when the insured failed to comply with his duty under the policy to document his claimed losses. 181 F.3d at 703. The policy at issue in *Griggs* required the insured to comply with the following duties, among others, after a loss: to furnish a complete inventory of damaged personal property showing quantity, description, and amount of loss, and related documents to justify the figures in

11

the inventory; to provide pertinent records and documents requested and permit State Farm to make copies; and upon request, to send a signed, sworn proof of loss within ninety-one of the request. *Id.* at 697. In construing this provision, similar to the provision in the Munozes' policy, the Fifth Circuit indicated that there was "no dispute about the fact that the policy is worded in such a way that the insured's compliance with each of these duties is a condition precedent to coverage." *Id.*

31.   Mr. Griggs sought benefits under his State Farm Lloyds homeowner's insurance policy in February 1993, claiming he lost valuable sports memorabilia as a result of two burglaries at his home and a leased public storage facility. *Id.* at 696. At the time Mr. Griggs filed a claim, State Farm requested he submit a sworn proof of loss. *Id.* In March and April of 1993, Mr. Griggs informed State Farm that he was in the process of documenting what he knew to be stolen and attempting to recover stolen property. *Id.* After receiving no sworn proof of loss or supporting documentation from Mr. Griggs since he made his claim in February 1993, State Farm closed its file in July 1993, informing Mr. Griggs it would be happy to reopen the file when he was able to provide the requested documents. *Id.*

32.   Mr. Griggs informed State Farm in January 1994, March 1994, and July 1994, that he was still trying to recover stolen property and would have more information shortly. *Id.* In August 1994, Mr. Griggs delivered three boxes of documents to State Farm's office, claiming they contained the sworn proof of loss and inventories of the stolen property with estimated values. *Id.* State Farm claimed the sworn proof of loss was not among the documents provided. *Id.* Approximately a year later, State Farm again requested that Mr. Griggs provide a sworn proof of loss and documentation to support the losses he claimed, and also provided a personal

inventory form for his use. *Id.* In October 1995, Mr. Griggs informed State Farm the information was being copied by a third party. *Id.* In November 1995, Mr. Griggs met with a State Farm claim representative to discuss the claim. *Id.* at 697. In late November 1995, State Farm sent Mr. Griggs a reservation of rights letter and informed him it had not received requested and required documentation. *Id.* In December 1995, Mr. Griggs met with a State Farm claim representative, who explained the documentation that would be required in order to process his claim. *Id.*

33.    Three years after his loss, in mid-December 1995, Mr. Griggs provided State Farm with a 1,000 page inventory based on Mr. Griggs' own system. *Id.* State Farm hired an accountant and sports memorabilia expert to assist in interpreting Mr. Griggs' inventory. *Id.* The accountant requested additional documents from Mr. Griggs to substantiate his claim. *Id.* Mr. Griggs refused to tender all of the documents, but instead provided twenty boxes of personal financial records that included a variety of receipts that were unrelated to Mr. Griggs' claim. *Id.* In the end, neither State Farm nor the experts it had retained were able to document Mr. Griggs' claim from the documents provided. *Id.*

34.    On January 22, 1996, State Farm advised Mr. Griggs that he had not complied with his duties under the policy, and offered to extend his deadline to properly document his claim and provide a sworn and notarized proof of loss for an additional ninety-one days. *Id.* State Farm's letter explained why the documents submitted failed to conform to policy requirements and detailed the types of documentation that would be appropriate. *Id.* at 698. Through April and May 1996, State Farm twice extended Mr. Griggs' deadline to provide proper documentation of his loss. *Id.* Finally, State Farm denied Mr. Griggs' claim in June 1996 on the

basis of his failure to comply with his contractual duties to provide a sworn proof of loss, to produce an accurate and itemized inventory of the items stolen, and to permit reasonable access to records and documentation in support of his claim. *Id.*

35.   In affirming the district court's decision, the Fifth Circuit noted that while there was a genuine fact dispute concerning whether Mr. Griggs submitted a sworn proof of loss, Mr. Grigg's failure to comply with his other duties under the policy was sufficient to support summary judgment in favor of State Farm:

> [N]o reasonable trier of fact could find that Griggs documented his losses as required by conditions precedent in the applicable insurance policy. **Absent Griggs' compliance with this independently sufficient condition precedent to coverage, State Farm Lloyds had no duty to provide benefits under the contract.** Likewise, no reasonable trier of fact could find that State Farm Lloyds' handling of Griggs' claim was characterized by bad faith. State Farm Lloyds repeatedly extended, with reservation of rights, its own deadlines for Griggs' compliance.

*Id.* at 703 (emphasis added).

36.   The Fifth Circuit's reasoning and holding in *Griggs* is particularly applicable in the present case. Over the course of a year and a half, from January 2003 to April 2004, State Farm attempted, with limited success, to obtain a number of relevant documents from the Munozes. When the Munozes did provide requested documents to State Farm, the documents were often provided only after repeated requests by State Farm that spanned several months' time. For example, State Farm requested on five separate occasions that the Munozes sign an Authorization form. Exhibit A, ¶ 6-9, 12; Exhibit D, p. 1; Exhibit E; p. 1, Exhibit F, p. 1; Exhibit I, p. 1. The tax authorization form State Farm first sent to the Munozes for signature in July 2003 was not returned until February 2004. Exhibit N, p. 1; Exhibit Y, p. 1. The Munozes did not sign and return their Examinations Under Oath until December 2003 (Mrs. Munoz) and

late January 2004 (Mr. Munoz), several months after their attorney acknowledged that the transcripts had been received. Exhibit A, ¶ 25; Exhibit R, p. 1; Exhibit S, p. 1; Exhibit X, p. 1.

37. State Farm's requests for documents have been listed in a clear and detailed manner, with each of the requested items numbered. *See, e.g.,* Exhibit D, p. 1-3, Exhibit O, p. 1-3. To erase any confusion regarding what documents the Munozes had already provided to State Farm, on December 17, 2003, State Farm provided the Munozes with a complete copy of all the documents received from the Munozes over the course of the claim handling. Exhibit T, p. 1.

38. When the Munozes did agree to let State Farm meet with their bookkeeper, they did not inform her of the meeting until the day of the meeting. Exhibit A, ¶ 32. As a result, she was not prepared for the meeting and was only able to provide limited financial documents in the form of two unsigned, unfiled tax returns. *Id.* Counsel for the Munozes indicated he would provide State Farm with copies of all records in the bookkeeper's possession once she was able to compile them. *Id.* However, once counsel for the Munozes had their financial documents in his possession, he would not allow State Farm to copy the documents unless it was willing to bring its own copy machine and personnel to his office. Exhibit A, ¶ 35; Exhibit BB, p. 1; Exhibit CC, p. 1-2.

39. State Farm allowed the Munozes ample time and opportunity to gather and provide the requested financial documents. Despite this, at the time the Munozes filed suit, many of the pertinent documents requested during the course of the claim handling still had not been provided. The year and a half before the Munozes filed suit was characterized by numerous delays in providing or an outright failure to provide the documents requested by State Farm. The

Munozes' failure to comply with their duties under the policy substantially hindered the investigation and prejudiced State Farm's ability to thoroughly investigate the claim. Because the Munozes failed to comply with this condition precedent of their policy, State Farm had no duty to provide benefits under the contract. Therefore, State Farm is entitled to summary judgment on all of the Munozes' claims.

## VII. CONCLUSION AND PRAYER

40. Accordingly, State Farm respectfully seeks partial summary judgment as a matter of law under Federal Rule of Civil Procedure 56(c). The evidence clearly establishes that the Munozes failed to provide relevant documents requested by State Farm and therefore failed to comply with a condition precedent to coverage. Therefore, State Farm had no duty to provide the Munozes benefits under the insurance policy.

41. WHEREFORE, premises considered, Defendant State Farm Lloyds respectfully asks the Court to grant its Motion for Summary Judgment, rule that State Farm is entitled to judgment as a matter of law on all of Plaintiffs' claims, dismiss Plaintiffs' claims, and for all other relief to which State Farm may show itself justly entitled.

Respectfully submitted,

By: _____
Warren Taylor
State Bar No. 19727200
Federal I.D. No. 1354
Beth M. Taylor
Federal I.D. No. 14601
815 Walker, Suite 250
Houston, Texas 77002
(713) 615-6060 Telephone
(713) 615-6070 Facsimile

Rene O. Oliveira
State Bar No. 15254700
Federal I.D. No. 4033
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520-8718
(956) 542-5666 Telephone
(956) 542-0016 Facsimile

OF COUNSEL:

**TAYLOR & TAYLOR**

ATTORNEYS FOR DEFENDANT
STATE FARM LLOYDS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant State Farm Lloyds' Motion for Summary Judgment and Supporting Brief has been forwarded to all counsel of record by certified mail, return receipt requested, on this 12th day of September, 2005.

Gustavo Ch. Garza
705 W. Highway 100, Suite A
Los Fresnos, Texas 78566

David L. Rusnak
Scoggins & Goodman, P.C.
245 Peachtree Center Ave. NE, Suite 2800
Atlanta, GA 30303-1227

_____
Warren Taylor