IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUIS C. MUNOZ AND<br>CARMELA MUNOZ | §<br>§<br>§ | CAUSE NO B-04-141 |
| VS. | §<br>§<br>§ | |
| STATE FARM LLOYDS | § | |

## AFFIDAVIT OF TOM REED

| | |
|---|---|
| STATE OF TEXAS | §<br>§ |
| COUNTY OF NUECES | § |

On this day, TOM REED appeared before me, the undersigned notary public, and after I administered an oath to him, upon his oath, he said:

1. "My name is Tom Reed. I am over the age of eighteen, I have never been convicted of a felony or crime involving moral turpitude, and I am otherwise competent to make this Affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am an insurance adjuster licensed to handle claims in Texas, and have been since 1986.

3. I am a State Farm Claim Representative. On January 3, 2003, I began working on behalf of State Farm Lloyds on Mr. and Mrs. Munoz's claim resulting from the January 1, 2003, fire at 829 West White Avenue, Raymondville, Texas 78580.

4. On January 24, 2003, I sent Mr. and Mrs. Munoz a letter informing them of their duties after loss under the policy. A true and correct copy of this letter is attached as Exhibit B.

5. On January 28, 2003, I met with Mr. Munoz at Munoz Roofing. At the meeting, I explained to Mr. Munoz that State Farm's preliminary investigation had led State Farm to conclude the fire at the Munoz house was intentionally set. I explained to Mr. Munoz that because of the intentional nature of the fire, State Farm would need to conduct additional investigation into the claim, including an examination of the Munozes' financial condition. I also hand delivered a letter to Mr. Munoz explaining the results of the preliminary investigation and reserving State Farm's rights under the policy. A true and correct copy of this letter is attached as Exhibit C.

6. On February 19, 2003, I met with Mr. Munoz at Munoz Roofing to explain coverage under the policy. I also requested that Mr. Munoz provide a signed Authorization form. Mr. Munoz advised he would provide me with the signed Authorization and other documents at our already scheduled meeting on February 24, 2005. However, when I met with Mr. Munoz on February 24, 2005, he did not provide the signed Authorization.

7. On March 18, 2003, I sent Mr. and Mrs. Munoz a letter which included a numbered list of documents and information State Farm was requesting. Among the documents requested were the Authorization forms I had previously provided (and provided again with this letter) and Mr. and Mrs. Munoz's personal and business tax records for 1998 to 2002. A true and correct copy of this letter is attached as Exhibit D. I received no documents or information from the Munozes in response to this letter.

8. On April 14, 2003, I sent Mr. and Mrs. Munoz another letter and repeated State Farm's request that the Munozes provide the documents and information enumerated in the letter of March 18, 2003. I enclosed the Authorization forms for a third time, and requested additional financial documents. A true and correct copy of this letter is attached as Exhibit E.

9. On April 22, 2003, I received various documents from Mr. and Mrs. Munoz. Mr. and Mrs. Munoz indicated that the signed Authorization forms were being provided along with those documents; however those forms were not among the documents State Farm received on April 22. On April 25, 2003, I sent Mr. and Mrs. Munoz a letter confirming receipt of the documents and returning their original documents. I also provided a fourth set of Authorization forms, and again requested Mr. and Mrs. Munoz sign and return the Authorizations. A true and correct copy of this letter is attached as Exhibit F.

10. By letter dated May 5, 2003, I requested that Mr. and Mrs. Munoz provide additional information regarding various items of personal property listed on the Personal Property Inventory Forms the Munozes submitted. Mr. and Mrs. Munoz claimed these items were damaged as a result of the fire, and I requested documentation for the items in order to determine their replacement value. I also asked Mr. and Mrs. Munoz to answer additional question raised by the investigation to date. A true and correct copy of this letter is attached as Exhibit G.

11. On May 14, 2003, Mr. Laurence Kurth, an attorney retained by State Farm in relation to Mr. and Mrs. Munoz's claim, formally communicated State Farm's request for Mr. and Mrs. Munoz to submit to Examinations Under Oath, pursuant to their duties under the policy. Mr. Kurth also asked Mr. and Mrs. Munoz to bring specific documents, as well as any documents they believed supported their claim, with them to their Examinations Under Oath. A true and correct copy of this letter is attached as Exhibit H.

12. On May 28, 2003, I sent Mr. and Mrs. Munoz another request for them to sign and return the Authorization forms by June 7, 2003. I also asked that they provide the documents previously requested if they had not already done so. A true and correct copy of this letter is attached as Exhibit I. State Farm received the signed Authorizations from Mr. and Mrs. Munoz on June 10, 2003.

13. State Farm received no response from Mr. and Mrs. Munoz regarding Mr. Kurth's May 14, 2003, correspondence. On June 5, 2003, Mr. Kurth sent another letter on behalf of State Farm, repeating State Farm's request for Mr. and Mrs. Munoz's Examinations Under Oath and the production of documents. A true and correct copy of this letter is attached as Exhibit J.

14. On June 11, 2003, State Farm received Mr. Gustavo Ch. Garza's letter of representation of Mr. and Mrs. Munoz. In his letter, Mr. Garza requested all further correspondence be directed to him and stated that he and the Munozes were gathering the requested documents. Additionally, Mr. Garza requested State Farm provide him with copies of the recorded interviews State Farm had conducted with the Munozes. A true and correct copy of this letter is attached as Exhibit K.

15. On behalf of State Farm, I sent copies of Mr. and Mrs. Munoz's recorded interviews to Mr. Garza on June 18, 2003. A true and correct copy of this letter is attached as Exhibit L.

16. On June 27, 2003, Mr. Kurth reiterated that the Examinations Under Oath were a condition precedent under Mr. and Mrs. Munoz's policy and again requested the examinations and production of documents. A true and correct copy of this letter is attached as Exhibit M.

17. On July 1, 2003, I sent Mr. and Mrs. Munoz a letter asking them to sign and return two Form 4506 Requests for Copy or Transcript of Tax Form so that State Farm could request copies of Mr. and Mrs. Munoz's personal and business tax returns from the Internal Revenue Service. I also asked that Mr. and Mrs. Munoz obtain current credit reports for themselves and Munoz Roofing, comment on any inaccuracies, and provide State Farm with the reports and comments. A true and correct copy of this letter is attached as Exhibit N. Mr. and Mrs. Munoz never provided the requested credit reports.

18. Mr. and Mrs. Munoz appeared for their Examinations Under Oath on August 5, 2003.

19. On August 26, 2003, Mr. Kurth sent a letter to Mr. Garza that outlined additional documents and information being requested by State Farm as a result of information provided by Mr. and Mrs. Munoz during their Examinations Under Oath. Mr. Kurth repeated State Farm's request for a number of financial documents that had been previously requested, but never provided by the Munozes, including personal and business tax returns, current credit reports, contracts for roofing jobs Mr. Munoz claimed he had in 2002 and 2003, and receipts documenting Mrs. Munoz's vacation in Florida at the time of the fire. A true and correct copy of this letter is attached as Exhibit O.

20. State Farm received no response to Mr. Kurth's August 26, 2003, correspondence for over one month.

21. On September 29, 2003, Mr. Kurth sent another letter to Mr. Garza to remind him of the documents Mr. and Mrs. Munoz had yet to provide. A true and correct copy of this letter is attached as Exhibit P.

22. On October 6, 2003, I met with Mr. Munoz. Mr. Munoz provided cash receipts he stated were from Mrs. Munoz's trip to Florida and a handwritten note regarding the person from whom he purchased a replacement barbeque grill. Mr. Munoz had given away the barbeque pit he was using the day of the fire, and had purchased a replacement grill at a garage sale. Mr. Munoz did not provide me with any other documents at that time.

23. On October 9, 2003, Mr. Kurth sent Mr. Garza another letter reminding him of Mr. and Mrs. Munoz's duties under the policy and their failure to date to provide documents. Mr. Kurth asked that Mr. and Mrs. Munoz respond by October 20, 2003. A true and correct copy of this letter is attached as Exhibit Q.

24. On October 14, 2003, Mr. Garza responded that Mr. and Mrs. Munoz were reviewing their Examinations Under Oath, that he expected to have the signed examinations returned within two weeks, and that Mr. and Mrs. Munoz had already provided the requested records. A true and correct copy of this letter is attached as Exhibit R.

25. State Farm did not receive the signed signature page for Mrs. Munoz's Examination Under Oath until December 9, 2003. A true and correct copy of Mr. Kurth's letter confirming receipt of Mrs. Munoz's signature page is attached as Exhibit S. State Farm did not receive the signed signature page for Mr. Munoz's Examination Under Oath until January 26, 2004. A true and correct copy of Mr. Kurth's letter confirming receipt of Mr. Munoz's signature page is attached as Exhibit X.

26. On December 17, 2003, Mr. Kurth sent Mr. and Mrs. Munoz copies of all the documents they had provided to State Farm to date. Mr. Kurth advised Mr. and Mrs. Munoz that State Farm would extend its deadline for Mr. and Mrs. Munoz to comply with their duties under the policy to January 6, 2004. A true and correct copy of this letter is attached as Exhibit T.

27. On January 6, 2004, Mr. Garza sent Mr. Kurth a facsimile, stating he needed ten more days to respond to Mr. Kurth's request. A true and correct copy of this facsimile is attached as Exhibit U.

28. On January 20, 2004, Mr. Kurth informed Mr. Garza that neither his office nor State Farm had ever received Mr. Munoz's Examination Under Oath signature page, requested Mr. and Mrs. Munoz sign and return the tax authorizations first provided to them in July 2002,

and requested that Mr. Garza suggest dates for review of Mr. Munoz's bookkeeper's records. A true and correct copy of this letter is attached as Exhibit V.

29. On January 26, 2003, Mr. Kurth sent new tax authorization forms for Mr. and Mrs. Munoz and again requested that Mr. Garza suggest dates to review the bookkeeper's records. True and correct copies of these letters are attached as Exhibit W and Exhibit X.

30. On February 2, 2004, Mr. Garza sent a letter to Mr. Kurth, suggesting I could review the bookkeeper's records on February 5, 9, or 12. Mr. Garza enclosed with this letter Mr. Munoz's signed tax authorization. A true and correct copy of this letter is attached as Exhibit Y.

31. On February 11, 2004, I spoke to Mr. Garza's secretary. I asked that she communicate to Mr. Garza my suggestion that State Farm arrange for an outside copy service to pick up, copy, and return Ms. Barnett records. After she had done so, Mr. Garza's secretary advised me that Mr. Garza would not agree to this, and that he wanted me to personally review the records.

32. I agreed to meet Mr. Garza on February 12, 2004, to review the records of Mr. Munoz's bookkeeper, Ms. Karen Barnett. When Mr. Garza and I arrived at Ms. Barnett's office, Ms. Barnett said that she had not been informed that we were coming until that morning. She further stated that her computer had crashed and she did not know if she would be able to recreate the records. Ms. Barnett was able to provide me with unsigned copies of tax returns for 1999 and 2000. She stated that the last period Mr. Munoz had filed a tax return was 1999. She stated that she had prepared tax returns for 2000 and 2001, but that Mr. Munoz had not yet filed those, and that Mr. Munoz had just given her the original W-2 forms for 2002. She stated that she has trouble getting the records from Mr. Munoz. Mr. Garza stated that he did not want an outside copy service to take Ms. Barnett's records, but told Ms. Barnett to get the records together. He told me that he would have Ms. Barnett's records copied at his office and then send me the copies.

33. Mr. Kurth documented my trip to Ms. Barnett's office in a February 24, 2004, letter to Mr. Garza. A true and correct copy of this letter is attached as Exhibit Z.

34. On March 16, 2004, Mr. Garza informed Mr. Kurth that the financial records of Munoz Roofing were now in his possession and ready for review. A true and correct copy of this letter is attached as Exhibit AA.

35. I visited Mr. Garza's office on March 29, 2004, to review the financial records. I requested a copy of some of the records I reviewed; however, Mr. Garza refused to allow me to copy those records. Mr. Kurth documented my visit to Mr. Garza's office in his correspondence of April 5, 2004. He repeated State Farm's request for copies of Mr. and Mrs. Munoz's tax returns and supporting financial documents, requested copies of the financial documents I

had reviewed at Mr. Garza's office, and offered to pay reasonable photocopy charges. A true and correct copy of this letter is attached as Exhibit BB.

36. In response to Mr. Kurth's letter, Mr. Garza indicated that the documents would be available when State Farm brought in its own copy machine and personnel. A true and correct copy of this letter is attached as Exhibit CC.

37. After early April 2004, Mr. and Mrs. Munoz provided State Farm with no additional documents in response to State Farm's requests.

38. On May 11, 2004, I received a telephone call from Mark Brown, the local State Farm agent for Mr. and Mrs. Munoz. Mr. Brown informed me that Mr. Garza had just visited his office and informed Mr. Brown that he was filing suit against State Farm on behalf of Mr. and Mrs. Munoz.

39. At the time Mr. and Mrs. Munoz filed suit, State Farm was still waiting for Mr. and Mrs. Munoz to provide copies of their personal and business financial records, Mrs. Munoz's calendar book, all contracts or agreements regarding partnership agreements with Mr. Ben Capetillo, all of Mrs. Munoz's employment records, including requests for vacation or sick leave, and documents specifically identifying Mrs. Munoz and evidencing that she was in Florida at the time of the fire.

40. State Farm denied Mr. and Mrs. Munoz's claim on January 11, 2005. A true and correct copy of this letter is attached as Exhibit DD.

41. All of the above-referenced Exhibits are true and correct copies of documents obtained during the investigation of the Munozes' claim. These documents were kept in the course of State Farm's regularly conducted business activity, and it is the regular practice of State Farm's business activity to make an accurate record of such documents."

FURTHER AFFIANT SAYETH NOT.

_____
Tom Reed

SUBSCRIBED AND SWORN TO BEFORE ME by Tom Reed on this 9th day of September, 2005, to certify which witness my hand and seal of office.



Annabell Maldonado
Notary Public, State of Texas

My Commission Expires: 3/25/2008