# EXHIBIT A

STATE OF TEXAS
WILLACY COUNTY

AFFIDAVIT OF LUIS C. MUNOZ

My name is Luis C. Munoz; I am 41 years old with a date of birth of 02/01/1964. I reside in Willacy County, Texas with my 12-year-old son, Carlos Munoz. I am the owner of Munoz Roofing and Construction in Raymondville, Texas. I have not been convicted of any felony or misdemeanor involving moral turpitude.

A true and correct copy of State Farm Lloyds Policy No. 83-J4-5565-2 is attached as Exhibit A.

On March, 1990 I married Carmela Munoz. In 1992 Carmela and I bought a small wood frame home located at 829 W. White St., Raymondville, Texas. I completed remodeling our home in 2002. Our house was originally approximately 1000 square feet living area which I enlarged to approximately 3400 square feet, with central air and heating. I redesigned the entire roof, redid the electrical and plumbing, added a second floor, bricked the exterior and enlarged the garage. At the time of the fire, our home was completely furnished and paid off. At the time of the fire, the value of our home was in excess of $150,000.00.

I was divorced from Carmela Munoz on April 19, 2004.

During the months of October, November and December of 2002, my business, Munoz Roofing and Construction was profitable. My former wife, Carmela, was employed at Watson's City Drug and our bills were minimal. We had paid off our house in March of 2002. Prior to January 1, 2003, our bills were under $1750.00 per month. Carmela and I had an excess of $2350.00 per month to pay our bills.

On January 1, 2003, I was not under any financial stress. In the months of September, October, November and December 2002, I had sufficient cash from my business to buy a new 2003 Ford Expedition for my wife, after trading in our Tahoe on which we owed no money, I bought a color television with cash from at Janos Superstore, and because my former wife, Carmela, and I had finished remodeling and enlarging our home, we bought new dinning room and living room furniture with our good credit.

During December 2002, the Internal Revenue Service filed a tax lien against my business and me. I did not learn of the lien until February 2003, several months after the fire, because the Internal Revenue Service had been sending the notices regarding the lien to a post office box, P.O. Box 280, Raymondville, Texas 78580, which belongs to Karen Barnett, my bookkeeper. Mrs. Barnett did not advise me of this tax lien until February 2003.

On December 26, 2002 my former wife, Carmela Munoz, and my son, Carlos Munoz, left Raymondville for a vacation in Florida in the company of a business associate and friend, Ben Capetillo, and his family. Munoz Roofing employed Mrs.

Capetillo, and Mr. Capetillo and I were working on putting together a partnership. Carmela and Carlos were in Orlando, Florida with the Capetillos on January 1, 2003.

On January 1, 2003 I went to Willamar with my men and finished a roofing job for Mr. Quintanilla. I left Willamar to return to Raymondville, TX shortly after midday. After the roofing job in Willamar, I returned to my shop located at 363 W. Kimball St., Raymondville, Texas 78580. That afternoon while at my shop, my brother Omel Munoz and my employee Jose Trevino grilled some meat. I watched a movie in my office.

During the afternoon of January 1, 2003, at approximately 5:30 p.m., I went to my home at 829 W. White St. in Raymondville, Texas 78580 to feed and water the dogs and to turn on the outside lights. I returned to my shop. Between 7:00 p.m. and 8:45 p.m., I was at my shop.

I did not burn my home at 829 W. White St., nor did I have anyone burn it for me. Carmela did not burn our home nor did she have anyone burn it for her.

On January 2, 2003, I went to the office of Mark Brown, my State Farm Insurance agent. I met and spoke to one of the secretaries and informed her that my home at 829 W. White St., Raymondville, Texas had burned on January 1, 2003. I watched her type my report of the fire and notice of claim into her computer. I was not provided with any written forms or asked to sign a written notice of the claim. I answered the questions asked of me by the secretary, but at no time did I ask or demand insurance benefits.

Later on the same day, Mark Brown visited me at my office. He offered me a check for cloths, food, shelter and incidentals. I did not accept his check and told him that I would wait for the adjuster and the investigation. I appreciated his offer, but I did not need the money at the time.

On January 6, 2003, I met Mr. Lee Olivo, Detective Samuel Adame, Mack Fuller and other individuals at my house. The people with Mack Fuller and Lee Olivo inspected the house. They used a dog to help in the investigation. I was interviewed and recorded by Mack Fuller with Lee Olivo present. At the end of the interview Lee Olivo presented me a $2,500.00 check for clothing. I provided consent to search my home.

On January 13, 2003, I spoke to Lee Olivo regarding the rental expense. I traveled to McAllen, Texas and hand delivered to Mr. Olivo's office the personal property inventory forms that State Farm had requested I complete and return.

On January 17, 2003, I met Lee Olivo at my house. Mr. Olivo asked for my surveillance camera videotape which I gave him. Mr. Olivo also gave me a check for my families' cost of living expenses.

On January 24, 2003, I received a letter from Tom Reed which explained my duties after loss and advised that my claim had been reassigned to him.

On January 28, 2003 I met with Tom Reed. He gave me a letter from Greg Drott. Tom Reed did not tell me that my financial situation was an issue, and he did not ask me to provide any information about my financial conditions or tax returns.

On February 18, 2003, Tom Reed requested a proof of loss and lease agreement.

On February 24, 2003, Tom Reed tape-recorded an interview of Carmela Munoz. On February 25, 2003, Tom Reed tape-recorded an interview of me. On this date, Tom Reed advised me that he would be requesting more information such as receipts, names of witnesses, addresses, phone numbers and financial information. Mr. Reed said he would give me a letter with the list of items he needed.

On March 18, 2003, I received a letter from Tom Reed requesting the information he had mentioned on February 24, 2003. Carmela and I collected all of the responsive information we had and provided it to Mr. Tom Reed on April 22, 2003. That letter was the first specific request for financial information and tax returns.

On April 22, 2003 when Carmela and I provided Tom Reed the information he asked for in his March 18, 2003 letter, I explained that my tax returns were not available and I would give him a copy as soon as my bookkeeper, Karen Barnet, had the tax returns prepared.

On May 14, 2003, I received a letter from Mr. Laurence Kurth in which he explained that my tax returns were not required.

Carmela and I have signed several authorization forms that Tom Reed requested. The first was in February 2003. Mr. Reed provided us with a second authorization form, Carmela and I signed it, and gave it to him during one of our interviews with him. Tom Reed did not take it because he already had one. I kept the signed authorization form. At no time did Carmela or I delay or refuse to sign any authorization forms requested by Tom Reed.

On August 5, 2003, Carmela and I provided State Farm a sworn statement under oath. This statement was conducted by State Farm lawyer, Lawrence Kurth at the office of Mr. Gustavo Ch. Garza. After the depositions were transcribed, Mr. Garza gave me my copy of my statement, and gave Carmela a copy of her statement. During this time Carmela was contemplating divorce. After I read the statement I returned it to Mr. Garza. Carmela did the same. We both signed and approved the statements and returned them to Mr. Garza.

During the 18 months that State Farm investigated the fire at my home prior to the filing of suit, Carmela and I provided State Farm and Tom Reed with all the information we possessed. I could not provide my income tax returns for the years of 1999, 2000, 2001, 2002 and 2003, because I did not have them. I did however produce to State Farm, its accountant, and Tom Reed, all of my business receipts for the same years.

145484v1   097/24101

State Farm did not request any financial information from me needed for the investigation within 15 days from the date I gave their agent personal notice of the claim, and did not specify what information it wanted for over 50 days after I gave them personal notice of the claim and had been interviewed by Mack Fuller, Lee Olivo and Tom Reed.

I fully cooperated with the Raymondville Police Department and the State Fire Marshall's office.

This Statement is true and correct to the best of my knowledge.

Luis C. Munoz

SWORN TO AND SUBSCRIBED BEFORE ME by Luis C. Munoz on this the 29th day of September, 2005.

VERONICA ANN CORONADO
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
SEPTEMBER 2, 2007

Notary Public:
Commission Expires: 9-2-07

# EXHIBIT A

State Farm Lloyds
A LLOYDS COMPANY IN DALLAS, TEXAS
8900 Amberglen Boulevard
Austin, Tx 78729-1110

**DECLARATIONS PAGE**

| POLICY NUMBER | 83-J4-5565-2 |
| --- | --- |

HOMEOWNERS POLICY
DEC 29 2002 TO DEC 29 2003  *The policy period begins and ends at 12:01 am standard time at the residence premises.*

6935-F116 S

MUNOZ, LUIS C & CARMELA S
829 W WHITE AVE
RAYMONDVILLE TX    78580-2824

| DATE DUE | PLEASE PAY THIS AMOUNT |
| --- | --- |
| | BILLED THROUGH SFPP |

**Coverages and Limits**
**Section I**

| | | |
| --- | --- | --- |
| A Dwelling | | $139,600 |
| Dwelling Extension | Up To | 13,960 |
| B Personal Property | | 104,700 |
| C Loss of Use | | Actual Loss Sustained |

**Deductibles – Section I**

| | |
| --- | --- |
| Other Losses | 1,500 |
| Wind or Hail    1% | 1,396 |

Location:    Same as Mailing Address

SFPP NO:    0384918425

**Loss Settlement Provisions (See Policy)**
A1: Replacement Cost - Similar Construction
B1: Limited Replacement Cost - Coverage B

**Section II**

| | |
| --- | --- |
| L  Personal Liability | $100,000 |
| Damage to Property of Others | 500 |
| M  Medical Payments to Others (Each Person) | $1,000 |

| | | |
| --- | --- | --- |
| Annual Premium | $ | 1,005.00 |

**Forms, Options, and Endorsements**

| | |
| --- | --- |
| Homeowners Policy | FP-7955.TX |
| Fungus (Including Mold) Excl | FE-5398 |
| Ordinance/Law 10%/$13,960 | OPT  OL |
| Dwelling Foundation Endorsement | FE-5368 |
| Water Damage Endorsement | FE-5369 |
| Increase Dwelling up to $27,920 | OPT  ID |
| Special Limits Endorsement | FE-5258 |

* Effective:DEC 29 2002

**Premium Reductions**
Your premium has already been reduced
by the following:

| | |
| --- | --- |
| Renewal Discount | 221.00 |
| Utility Rating Cr | 251.00 |

Inflation Coverage Index: 150.2

NOTICE: Information concerning changes in your coverage is included.  Please call your agent if you have any questions.

Please read the enclosed Policy Booklet and inserts.

*Thanks for letting us serve you . . .*
Agent  MARK BROWN
Telephone 956-689-6463

*See reverse side for important information*
*Please keep this part for your record.*

Prepared FEB 24 2003

-------------------- Cut on this line and mail the portion below with your payment --------------------

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.

6935-F116  S

| INSURED | MUNOZ, LUIS C & CARMELA S | |
| --- | --- | --- |
| POLICY NUMBER | 83-J4-5565-2 | HOMEOWNERS |

NOTE: DO NOT PAY - PREMIUM BILLED THROUGH STATE FARM PAYMENT PLAN.

| DATE DUE | PLEASE PAY THIS AMOUNT |
| --- | --- |
| | |

Please contact your State Farm
Agent to make any policy
changes.

250224
State Farm Insurance Companies

| OFFICE USE ONLY | | FIRE REN | |
| --- | --- | --- | --- |
| Prepared FEB 24 2003 | | | |

STATE FARM INSURANCE COMPANIES
State Farm Lloyds
A LLOYDS COMPANY IN DALLAS, TEXAS
8900 Amberglen Boulevard
Austin, Tx 78729-1110

| POLICY NUMBER | 83-J4-5565-2 |
|---|---|
| | |
| | |

6935-F116  S

MUNOZ, LUIS C & CARMELA S
629 W WHITE AVE
RAYMONDVILLE TX   78580-2824

A new State Farm policy similar to the one we sell in most other states has been approved by the Texas Department of Insurance for use as a replacement of your current policy referenced above. Consequently, the policy shown above will be non-renewed as the date shown below. Coverage provided by your current policy will not extend beyond that date.

However, we are offering the new State Farm policy as a replacement of your current policy.

The coverage provided by the new policy is different than that provided by your current policy. Some coverages have been eliminated, some have been restricted, and some have been broadened. And, new coverages have been added. Please review the enclosed Important Notice About Changes To Your Coverage and messages pertaining to specific endorsements attached to your current policy. These messages describe the important differences between coverages provided by your current policy and the new one being offered.

This change in policy contract will not affect the "Good Neighbor" service you have come to know. Because you are a valued policyholder, we have developed a packet of information to help you purchase the new policy. This packet includes:

- A premium bill for your new policy
- The new policy booklet with Important Notice About Changes To Your Coverage
- A declarations page indicating the coverage, limits and deductibles offered
- Any endorsements applicable to the new policy
- Offers to tailor your coverage to meet your needs (see the lower left hand side of the Declaration Page, messages which accompany certain endorsements, and enclosed inserts)
- A notice that the Fungus (Including Mold) Limited Coverage Endorsement is available

To accept the new policy, review all of the enclosed information, and take note of the left hand side of the premium billing notice section of the Declarations Page to determine whether an offer for broader coverage has been made

If you pay your premium, simply pay the premium by the due date shown. Payment by that date will indicate your acceptance of the new policy. If an offer for broader coverage has been made your payment of the premium stated in the offer by the due date will indicate your acceptance of the new policy along with the broader coverage.

If your mortgagee pays your insurance premium, payment by the mortgagee of the annual premium amount shown in the billing by the due date will indicate your acceptance of the new policy. If an offer for broader coverage has been made, you may purchase it by paying the premium amount shown in the offer.

If you make payment through the State Farm Payment Plan (SFPP), continued payment of your SFPP installments will indicate acceptance of the new policy. If an offer for broader coverage has been made, you may purchase the broader coverage by returning the bottom portion of the Declarations Page as instructed, and the amount of your monthly payment will be adjusted.

If you wish to delete the Water Damage Endorsement or the Dwelling Foundation Endorsement for a premium credit please contact your State Farm agent.

If the Fungus (Including Mold) Limited Coverage Endorsement is not listed on the enclosed Declarations Page under Forms, Options and Endorsements, mold remediation coverage is not provided by the new policy. If you want more information about mold remediation coverage or wish to purchase it please contact your State Farm agent.

Thank you for allowing us to provide you with insurance protection.

If you have questions about your insurance, please contact your State Farm agent.

Agent  MARK BROWN
Telephone 956-689-6463

CONTINUED ON BACK SIDE

| HO-HOMEOWNERS |
|---|
| |
| |

| DATE OF NON-RENEWAL |
|---|
| DEC 29 2002    12:01 AM STANDARD TIME |

136-3076LS Rev. 02-2001

OFFICE USE ONLY
Prepared   FEB 24 2003

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

DECLARATIONS CONTINUED ................................................1

DEFINITIONS ........................................................1

SECTION I - YOUR PROPERTY
    COVERAGES..................................................3
        Coverage A - Dwelling ...................................3
        Coverage B - Personal Property ..........................3
        Coverage C - Loss of Use ................................4
        Additional Coverages.....................................5
        Inflation Coverage ......................................7
    LOSSES INSURED ............................................7
    LOSSES NOT INSURED ........................................9
    LOSS SETTLEMENT ..........................................11
    CONDITIONS................................................12

SECTION II - YOUR LIABILITY
    COVERAGES.................................................15
        Coverage L - Personal Liability ........................15
        Coverage M - Medical Payments to Others ................16
        Additional Coverages...................................16
    EXCLUSIONS ...............................................17
    CONDITIONS................................................19

SECTION I AND SECTION II - CONDITIONS ..........................20

OPTIONAL POLICY PROVISIONS ....................................22

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.

FP-7955 TX                                                    Printed in U.S.A.

## HOMEOWNERS POLICY
## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you and the members of your household have not had any losses which were paid under prior policies; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "bodily injury" means physical harm to a person, including any resulting sickness or disease. This includes the required care, loss of services and death resulting therefrom.

    Bodily injury does not include:

    a. the transmission of a **communicable disease** by any **insured** to any other person;

    b. the exposure to any **communicable disease** by any **insured** to any other person; or

    c. emotional distress, mental anguish, humiliation, mental injury, or similar injury unless it arises out of actual physical injury to some person.

2. "business" means a trade, profession or occupation. This includes farming.

3. "business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. "communicable disease" means bacteria, parasite, virus or other organism transmissible from person to person due to direct contact with an affected person or that person's discharges.

5. "Declarations" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

6. "insured" means you and, if residents of your household:

    a. your relatives; and

    b. any other person under the age of 21 who is in the care of a person described above.

    Under Section II, "insured" also means:

    c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in

1

6.a. or 6.b. A person or organization using or having custody of these animals or watercraft in the course of a business, or without permission of the owner, is not an insured; and

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 6.a. or 6.b.

7. "insured location" means:

a. the residence premises;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 7.a. or 7.b.;

d. any part of a premises not owned by an insured but where an insured is temporarily residing;

e. land owned by or rented to an insured on which a one or two family dwelling is being constructed as a residence for an insured;

f. individual or family cemetery plots or burial vaults owned by an insured;

g. any part of a premises occasionally rented to an insured for other than business purposes;

h. vacant land owned by or rented to an insured. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

8. "motor vehicle", when used in Section II of this policy, means.

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 8.a. is not a motor vehicle;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an insured and designed or used for recreational or utility purposes off public roads, while off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle; and

d. any vehicle while being towed by or carried on a vehicle included in 8.a., 8.b. or 8.c.

9. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

10. "property damage" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any insured is not property damage.

11. "residence employee" means an employee of an insured who performs duties, including household or domestic services, in connection with the maintenance or use of the residence premises. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the business of an insured.

12. "residence premises" means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the Declarations.

FP-7955 TX

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.**

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

## COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the residence premises occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured.**

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,000 on property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, while on the residence premises. This coverage is limited to $250 on such property away from the residence premises.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

3

FP-7955 TX

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

   (1) used solely to service the **insured location**; or

   (2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts, except model or hobby aircraft not used or designed to carry people or cargo;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

**COVERAGE C - LOSS OF USE**

1. **Additional Living Expense.** When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the residence premises rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of

4

the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3, Trees, Shrubs and Other Plants.

We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft,

Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the Declarations for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

5. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

a. We will pay up to $1,000 for:

(1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an insured has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

(2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

5

FP-7955 TX

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

6. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

7. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

8. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

9. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

10. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

6

FP-7955 TX

f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

11. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the Declarations.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the Declarations.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location.**

7

Property of a student who is an insured is covered while located at a residence away from home, if the theft is committed by a person who is not an insured;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a residence premises rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

(c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the residence premises of:

(1) property while at any other residence owned, rented to, or occupied by an insured, except while an insured is temporarily residing there. Property of a student who is an insured is covered while at a residence away from home;

(2) watercraft of all types, including their furnishings, equipment and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the residence premises is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the residence premises for the first 30 days after the inception of this policy.

10. Falling objects. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. Weight of ice, snow or sleet which causes damage to property contained in a building.

12. Sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. Sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

8

FP-7955 TX

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Collapse;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

      which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

9

FP-7955 TX

l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Volcanic Action.

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect,** meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause,

FP-7955 TX

contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

**COVERAGE A - DWELLING**

1. **A1 - Replacement Cost Loss Settlement - Similar Construction.**

a. We will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences.

We will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for **COVERAGE A - DWELLING EXTENSION.**

2. **A2 - Replacement Cost Loss Settlement - Common Construction.**

a. We will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

(2) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for **COVERAGE A - DWELLING EXTENSION.**

FP-7955 TX

## COVERAGE B - PERSONAL PROPERTY

1. **B1 - Limited Replacement Cost Loss Settlement.**

   a. We will pay the cost to repair or replace property covered under SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY, except for property listed in item b. below, subject to the following:

      (1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

      (2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

      (3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

   b. We will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

      (3) property not useful for its intended purpose.

   However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

2. **B2 - Depreciated Loss Settlement.**

   a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY, except for property listed in item b. below.

   b. We will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

      (3) property not useful for its intended purpose.

   However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the insured for an amount greater than the insured's interest; or

   b. for more than the applicable limit of liability.

Article 6.13. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

FP-7955 TX

a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

   (1) exhibit the damaged property;

   (2) provide us with records and documents we request and permit us to make copies;

   (3) submit to and subscribe, while not in the presence of any other insured:

      (a) statements; and

      (b) examinations under oath; and

   (4) produce employees, members of the insured's household or others for examination under oath to the extent it is within the insured's power to do so; and

e. submit to us, within 91 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) the time and cause of loss;

   (2) interest of the insured and all others in the property involved and all encumbrances on the property;

   (3) other insurance which may cover the loss;

   (4) changes in title or occupancy of the property during the term of this policy;

   (5) specifications of any damaged building and detailed estimates for repair of the damage;

   (6) an inventory of damaged or stolen personal property described in 2.c.;

   (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

   (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

FP-7955 TX

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years and one day after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

   If we notify you that we will pay your claim or part of your claim, we must pay within 5 **business days** after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 **business days** after the date you perform the act.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured.**

10. **Mortgage Clause** (without contribution).

    a. The word "mortgagee" includes trustee.

    b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the Declarations as interests appear.

    c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

    d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

       (1) at our request, pays any premiums due under this policy, if you have failed to do so;

       (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so; and

       (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

       All of the terms of this policy will then apply directly to the mortgagee.

Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   (1) the mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

   At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If this policy is cancelled, we will give the mortgagee specifically named in the Declarations written notice of cancellation.

   If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

   If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

   We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g. If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

   The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

FP-7955 TX

h. If we elect not to renew this policy, the mortgagee specifically named in the **Declarations** will be given 30 days written notice of the nonrenewal.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void as to you and any other **insured** that caused or contributed to the loss or its procurement.

13. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

14. **Our Duties After Loss.**

a. Within 15 days after we receive your written notice of claim, we must:

(1) acknowledge receipt of the claim.

If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment;

(2) begin any investigation of the claim;

(3) specify the information you must provide in accordance with "Your Duties After Loss" (item 2. above).

We may request more information, if during the investigation of the claim such additional information is necessary.

b. After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

(1) within 15 **business days;** or

(2) within 30 days if we have reason to believe the loss resulted from arson.

c. If we do not approve payment of your claim or require more time for processing your claim, we must:

(1) give the reasons for denying your claim; or

(2) give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

15. **Catastrophe Claims.** If a claim results from a weather related catastrophe or major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a. is declared a disaster under the Texas Disaster Act of 1975; or

b. is determined to be a catastrophe by the State Board of Insurance.

## SECTION II - LIABILITY COVERAGES

**COVERAGE L - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obliga-

15

FP-7955 TX

tion to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

   c. We will not pay for **property damage**:

      (1) if insurance is otherwise provided in this policy;

      (2) caused intentionally by an **insured** who is 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

      (4) arising out of:

         (a) **business pursuits**;

         (b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

         (c) the ownership, maintenance, or **use of a motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

16

FP-7955 TX

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. bodily injury or property damage:

      (1) which is either expected or intended by the insured; or

      (2) which is the result of willful and malicious acts of the insured;

   b. bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured. This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-business pursuits;

      (2) with respect to Coverage L to the occasional or part-time business pursuits of an insured who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for the exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

         (c) in part, as an office, school, studio or private garage;

      (4) when the dwelling on the residence premises is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

      (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

   c. bodily injury or property damage arising out of the rendering or failing to render professional services;

   d. bodily injury or property damage arising out of any premises currently owned or rented to any insured which is not an insured location. This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured;

   e. bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:

      (1) an aircraft, except model or hobby aircraft not used or designed to carry people or cargo;

      (2) a motor vehicle owned or operated by or rented or loaned to any insured; or

      (3) a watercraft:

         (a) owned by or rented to any insured if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

         (b) owned by or rented to any insured if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

         (c) powered by one or more outboard motors with more than 25 total horsepower owned by any insured;

         (d) designated as an airboat, air cushion, or similar type of craft; or

         (e) owned by any insured which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

      This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured. Exclusion e.(3) does not apply while the watercraft is on the residence premises;

   f. bodily injury or property damage arising out of:

      (1) the entrustment by any insured to any person;

      (2) the supervision by any insured of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an insured under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

18

FP-7955 TX

3. Coverage M does not apply to bodily injury:

   a. to **a residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

   b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

   c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

   d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations.** This is our limit for **all** damages from **each occurrence** regardless of the number of **insureds,** claims made or persons injured.

   The Coverage M limit is shown in the **Declarations.** This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition shall not increase our limit of liability for any one **occurrence.**

3. **Duties After Loss.** In case of an accident or **occurrence,** the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

     (1) the identity of this policy and **insured;**

     (2) reasonably available information on the time, place and circumstances of the accident or **occurrence;** and

     (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence;**

   c. at our request, assist in:

     (1) making settlement;

     (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured;**

     (3) the conduct of suits and attend hearings and trials; and

     (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - **Damage to Property of Others,** exhibit the damaged property if within the **insured's** control; and

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury.**

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

FP-7955 TX

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Notice of Settlement of Liability Claim.**

a. We will notify the **insured** in writing of any initial offer to compromise or settle a claim against the **insured**. We will give the **insured** notice within 10 days after the date the offer is made.

b. We will notify the **insured** in writing of any settlement of a claim against the **insured**. We will give the insured notice within 30 days after the date of the settlement.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to **you** and any other **insured**, if **you** or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

a. **You** may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send **you** any refund due when the policy is returned to us.

b. We may cancel this policy for the reasons stated in this condition by mailing **you** notice in writing of the date cancellation takes effect.

(1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel for any reason.

The effective date of cancellation cannot be before:

(a) the 10th day after we mail notice if we cancel for nonpayment of premium;

(b) the 30th day after we mail notice if we cancel for any other reason.

(2) If this policy has been in effect 90 days or more, we may not cancel this policy unless:

(a) **you** do not pay the premium or any portion of the premium when due;

(b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

(c) **you** submit a fraudulent claim;

(d) there is an increase in the hazard covered by this policy that is within **your** control and that would produce an increase in the premium/rate of this policy.

20

FP-7955 TX

The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

d. We may not cancel this policy solely because you are an elected official.

6. **Nonrenewal.**

a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

b. We may not refuse to renew this policy solely because you are an elected official.

c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown in the Declarations and any mortgagee named in the Declarations, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

11. **Right to Inspect.** We have the right but are not obligated to make inspections and surveys at any time, give you reports on conditions we find and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

a. make safety inspections;

b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c. warrant that conditions are safe or healthful; or

FP-7955 TX

d. warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations.**

**Option BP - Business Property.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits. SECTION II - EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

         (a) draft or saddle animals, including vehicles for use with them; or

         (b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an

22

internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the insured or employer of the insured or used by the insured for the purpose of instruction in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured.**

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations.** The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling or explosion of firearms;

   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations.**

**Option HC - Home Computer.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under COVERAGE A - DWELLING according to the SECTION I - LOSS SETTLEMENT provision shown in the **Declarations.**

If the reasonable and necessary cost to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations,** we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under COVERAGE A - DWELLING, Dwelling Extension.

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations,** if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. COVERAGE A - DWELLING, Dwelling Extension, item 2.b. is deleted.

2. COVERAGE B - PERSONAL PROPERTY is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic

23

FP-7955 TX

data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the Declarations. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered business property because an **insured** occupies a part of it as an incidental **business**.

4. SECTION II - EXCLUSIONS, item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

      (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

         (c) in part, as an incidental **business** or private garage;

      (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

   d. any claim made or suit brought against any **insured** by:

      (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**; or

      (2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**.

24

FP-7955 TX

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the Declarations. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

**Option OL - Building Ordinance or Law.**

1. **Coverage Provided.**

   The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the Declarations of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation

coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

   b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same Loss Insured;

      (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

      (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

   c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

25

FP-7955 TX

**4. Building Ordinance or Law Coverage Limitations.**

We will not pay more under this coverage than:

a. the reasonable and necessary increased cost to repair or rebuild the dwelling at the same premises, or if relocation is required by ordinance or law, at another premises in the same general vicinity; and

b. the reasonable and necessary cost to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

If the dwelling is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

**Option SG - Silverware and Goldware Theft.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

SERVICE OF PROCESS - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds, Inc. is licensed in such state; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds, Inc. at Dallas, Texas. Underwriters at State Farm Lloyds, Inc. have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds, Inc. supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds, Inc. shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

IN WITNESS WHEREOF, the Company has executed and attested these presents.

State Farm Lloyds

By: *Laura P. Sullivan*                                    *Edward B Rust, Jr*

Secretary
State Farm Lloyds, Inc.
Attorney-in-Fact

President
State Farm Lloyds, Inc.
Attorney-in-Fact

FP-7955 TX

FP-7955 TX
R

# IMPORTANT NOTICE...



### About Changes To Your Coverage
### PLEASE READ ALL INFORMATION



Enclosed with this message is your new State Farm Homeowners Policy which replaces your current Texas Homeowners Policy. We strongly encourage you to carefully review the new policy, and the endorsements included with it, and familiarize yourself with the new policy.

You will notice the format and design of the new policy are quite different from the Texas Homeowners Policy. More significant, however, are the many differences in coverage between the two policies. While a careful review of the new policy is critical for a thorough understanding of the coverage provided, we are providing the following summary, which highlights some of the changes to the coverage provided in your Homeowners Policy. We have tried to itemize the differences in coverage between the two policies, but may not have identified every instance where, depending on individual circumstances, the change in language could have coverage implications.

It's important to review each of the following sections:

- IMPORTANT INFORMATION ABOUT YOUR POLICY DEDUCTIBLE
- FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT
- COVERAGES MOVED FROM THE BASIC TEXAS HOMEOWNERS POLICY TO AN ENDORSEMENT
- REDUCTIONS OR ELIMINATIONS OF COVERAGE
- NOTABLE DIFFERENCES IN CONTRACT LANGUAGE
- BROADENINGS OR ADDITIONS OF COVERAGE

Also please review the messages included with the new policy pertaining to specific endorsements attached to your current policy. These messages describe the important differences between coverages provided by your current policy, including the endorsements attached to it, and the new policy being offered.

We encourage you to review these changes in coverage and examine other insurance policies you have to ensure your overall package of protection meets your insurance needs. If you have any questions, please contact your State Farm agent.

IMPORTANT INFORMATION ABOUT YOUR POLICY DEDUCTIBLE

The deductible applicable to the new policy you received may be different than the deductible applicable to your current policy. Please refer to the enclosed Declarations to determine the deductibles that will now apply. The minimum deductibles available under the new policy are:

- for wind and hail losses, 1% of the COVERAGE A - DWELLING limit of liability (but not less than $500) stated in the Declarations; and
- $500 for all perils other than wind and hail.

If your previous deductibles were smaller than these new minimums, they have been increased.

FP-7955 TX
R

(CONTINUED INSIDE)

Printed in U.S.A.

There are also OTHER DEDUCTIBLE AMOUNTS THAT ARE NO LONGER AVAILABLE. If one of them applied to your curren policy it has been replaced by the next larger deductible now available.

## FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

The SECTION I - LOSSES NOT INSURED of the new policy exclude losses caused by fungus, including mold, mildew, myc-otoxins, spores, scents or byproducts produced or released by fungi. This exclusion, added to the policy in the **FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT**, states we will not cover any loss of use or delay in rebuilding, repairing or replacing covered property due to interference by fungus. We do not cover any remediation of fungus, or the cost of testing or monitoring of air or property to confirm the type, absence, presence or level of fungus. Fungus (including mold) limited coverage may be purchased for an additional premium charge.

Please note that the presence of mold on covered property damaged by an otherwise covered loss (including covered water losses that include hidden and undetected damage that you report to us within 30 days of its detection) will not prevent us from paying for the damage caused by the covered loss.

## COVERAGES MOVED FROM THE BASIC TEXAS HOMEOWNERS POLICY TO AN ENDORSEMENT

The new policy includes two endorsements that add coverage to the State Farm policy that was provided in your base Texas Homeowners Policy. Please review both endorsements carefully. You can delete one or both of these endorsements from the new policy and your premium will be reduced. HOWEVER, IF YOU CHOOSE TO DELETE ONE OR BOTH OF THE ENDORSEMENTS, YOU WILL NOT BE ABLE TO PURCHASE EITHER ENDORSEMENT IN THE FUTURE TO COVER THE PROPERTY INSURED UNDER THE POLICY.

1. **DWELLING FOUNDATION ENDORSEMENT, FE-5368**, provides coverage for settling, cracking, shrinking, bulging, or expansion of the foundation, floor slab or footings that support the dwelling caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system. The endorsement includes the cost of tearing out and replacing any part of the building necessary to repair the system from which the leakage or seepage occurred. The limit of liability for this coverage will not exceed an amount equal to 15% of the COVERAGE A - DWELLING limit applicable on the date of the loss.

2. **WATER DAMAGE ENDORSEMENT, FE-5369**, provides coverage for the deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or steam from a heating, air conditioning or automatic fire protective sprinkler system, household appliance, or plumbing system. The endorsement includes the cost of tearing out and replacing any part of the building necessary to repair the system or appliance from which seepage or leakage occurred.

   The endorsement does not modify or increase the coverage provided under the **FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT** described above.

To maintain coverage similar to what was provided under your Texas Homeowners Policy for the perils described above, you must retain these two endorsements. While the Texas Homeowners Policy covered any accidental discharge, leakage or over-flow of water or steam, the base State Farm Policy covers only sudden and accidental losses. Both the Coverage B peril of the new policy, and the Section I exclusion applicable to Coverage A property, exclude continuous or repeated seepage or leakage of water or steam.

## REDUCTIONS OR ELIMINATIONS OF COVERAGE

It's important for you to know that some of the coverages and provisions in the new State Farm Homeowners Policy are not as broad as your coverage under the Texas Homeowners Policy. Please note the following provisions that result in reduced or elim-inated coverage:

1. The Texas Homeowners Policy definition of "insured" included persons using a vehicle, to which the policy applied, on an insured location with your consent for coverage under SECTION II - LIABILITY COVERAGES. This coverage is not included in the new State Farm policy.

(CONTINUED)

2. The new policy covers wall-to-wall carpeting only when attached to the insured dwelling. The Texas Homeowners Policy included coverage for wall-to-wall carpeting attached to any building on the residence premises.

3. Language in COVERAGE A - DWELLING, Dwelling Extension of the new policy:

   a. requires other structures be permanently attached to the realty for Coverage A to apply; and

   b. states we do not cover other structures rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage. The Texas Homeowners Policy excluded other structures wholly rented to any person, unless used solely as a private garage.

4. In the COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability of the new policy:

   a. the limit for business property on the residence premises is $1,000. While the amount of coverage is less than the $2,500 available in the Texas Homeowners Policy, the new policy includes coverage for samples and merchandise held for sale or delivery. Please see item 4.b. that follows in BROADENINGS OR ADDITIONS OF COVERAGE regarding coverage for business property off premises;

   b. coverage for watercraft, outboard motors, their trailers, furnishings and equipment is limited to $1,000. While your Texas Policy did not include a specific coverage limit for watercraft and boat trailers on the residence premises, your coverage now also applies off premises for all perils other than theft;

   c. trailers not used with watercraft are covered up to $1,000. Previously, trailers designed for use principally off public roads were covered up to the Coverage B limit of liability. The new limit applies to all trailers, however trailers and campers away from the residence premises are not covered for loss by theft;

   d. a $2,500 limit now applies to trading cards and comic books, including those that are part of a collection;

   e. a $2,500 limit applies to loss by theft of firearms;

   f. a $2,500 limit applies to loss by theft of silverware and goldware;

   g. electronic data processing equipment and recording or storage media used with that equipment is limited to $5,000. This limit applies to all computer equipment whether or not it is used in a business. The Texas Homeowners Policy did not contain a special limit of liability for data processing equipment; and

   h. a limit has been added for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or similar article. A $5,000 limit applies to any one article, and $10,000 is the aggregate limit.

5. In COVERAGE B - PERSONAL PROPERTY, Property Not Covered, the new policy:

   a. provides property coverage for an engine or motor propelled vehicle, including a golf cart, not licensed for use on public highways if used solely to service the insured location, or designed for assisting the handicapped. The Texas Homeowners Policy provided property coverage for golf carts as long as they are not subject to motor vehicle registration;

   b. provides property coverage for recreational vehicles and farm equipment only if they are used solely to service the insured location, and not licensed for use on public highways;

   c. does not cover property regularly rented or held for rental to others by an insured. We will cover property of an insured in a sleeping room rented to others;

   d. excludes coverage for books of account, abstracts, drawings, card index systems and other records. We will cover the cost of blank materials plus the cost of labor for transcribing or copying such records; and

   e. does not cover recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

(CONTINUED ON REVERSE)

6. Debris Removal coverage will pay up to $500 to cover reasonable expenses incurred to remove tree debris from dence premises when the tree has caused a Loss Insured to Coverage A property. The Texas Policy did not contain limit for this coverage, and required only that covered property be damaged.

7. Coverage for Power Interruption in your new policy requires that power lines off the residence premises must rema gized. The Texas Homeowners Policy paid up to $500 for loss due to change in temperature as a direct result of p damage to any power, heating or cooling equipment not contained in or on the dwelling. The Texas policy also did no a deductible to some change in temperature losses. Your policy deductible now applies to all losses payable un Additional Coverage.

8. The LOSSES INSURED, COVERAGE A - DWELLING Section of the new policy insures for accidental direct physic to described property. The PERILS INSURED AGAINST Section of the Texas Homeowners Policy insured against a of physical loss to described property.

9. The Windstorm or Hail peril in the new policy covers loss to watercraft and their trailers, furnishings, equipment a board motors only while inside a fully enclosed building. The Texas Homeowners Policy provided coverage if the prop located on land on the residence premises.

10. The theft peril of the new policy excludes loss by theft:

    a. in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is pleted and occupied. The Texas Homeowners Policy excluded theft coverage for building materials and supplies from the residence premises; and

    b. of money, silverware, jewelry and other similar items from the part of a residence premises rented to others.

11. The Coverage B - Personal Property peril for sudden and accidental discharge or overflow of water or steam in the ne icy contains an exclusion for water or sewage that enters through sewers or drains, or water which enters into and ove from within a sump pump, sump pump well or any other system designed to remove subsurface water. The SECTIO LOSSES NOT INSURED provision for water damage contains the same exclusion. The LOSSES NOT INSURED prov also excludes water below the surface of the ground, including water which exerts pressure on, or seeps or leaks thro building, sidewalk, driveway, foundation, swimming pool or other structure.

12. The new policy contains an exclusion for freezing, thawing pressure or weight of water or ice to a swimming pool, hot t spa, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock. While both policies contain an e sion for settling, cracking, bulging, shrinkage or expansion, the new exclusion restricts coverage for the named proper

13. The new policy excludes vandalism or malicious mischief or breakage of glass if the dwelling has been vacant for more 30 consecutive days immediately before the loss. The Vacancy condition of the Texas Homeowners Policy suspended erage applicable to the dwelling effective 60 days after the dwelling becomes vacant. Please see item 21 under BROAD INGS OR ADDITIONS OF COVERAGE referencing the change in covered perils for the vacant dwelling.

14. New language in SECTION I - LOSSES NOT INSURED excludes losses caused by marring, scratching, corrosio electrolysis.

15. Language in the new policy excludes loss to property covered under Coverage A caused by:

    a. pressure from or presence of tree, shrub or plant roots; and

    b. birds or domestic animals. The Texas Homeowners Policy excluded only losses caused by animals or birds owne kept by an insured or occupant of the residence premises.

16. The Texas Homeowners Policy excluded loss caused by earthquake, landslide or earth movement. The earth move exclusion in the new policy specifically excludes loss caused by earthquake, landslide, mudflow, mudslide, sinkhole, su ence, erosion or movement resulting from improper compaction, site selection or any other external forces. The T Homeowners Policy covered ensuing loss caused by fire, smoke or explosion. The new policy provides coverage for o loss by fire resulting from earth movement.

(CONTINUED)

17. The SECTION I - LOSSES NOT INSURED of the State Farm policy contains new language which excludes losses caused by the conduct, act, or decision of any person, group, or governmental body whether intentional, wrongful, negligent, or without fault. The new policy also excludes defects or weaknesses in planning, zoning, design, workmanship, materials used in construction or repair and maintenance. The policy will cover any resulting loss unless the resulting loss is itself a Loss Not Insured.

18. The SECTION I - EXCLUSIONS of the Texas Homeowners Policy excluded losses caused by dampness of atmosphere and extremes of temperature. The new policy contains an exclusion for weather conditions.

19. New Loss Settlement Provision A2 - Replacement Cost Loss Settlement - Common Construction, if indicated on the Declarations of the new policy, provides for repair or replacement with common construction. This means the use of common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality.

20. The new policy contains an Intentional Acts Condition. If any person insured under the policy causes or procures a loss to covered property, for the purpose of obtaining insurance benefits, the policy is void as to any other insured that caused or contributed to the loss or its procurement.

21. In the SECTION II - ADDITIONAL COVERAGE, Damage to Property of Others, the new policy excludes property damage to property owned by or rented to an insured. It does, however, provide coverage for a rented golf cart. The Texas Homeowners Policy excluded only property owned by an insured.

22. In SECTION II - EXCLUSIONS of the new policy, watercraft powered by one or more outboard motors with more than 25 total horsepower owned by any insured are excluded. The Texas Homeowners Policy provided coverage for these watercraft for the policy period if specified conditions were met.

23. The SECTION II - EXCLUSION in the new policy for watercraft specifically excludes coverage for watercraft designated as an airboat, air cushion, or similar type of craft, or personal watercraft owned by any insured. These types of watercraft are not specifically excluded in the Texas Homeowners Policy.

24. The SECTION II - EXCLUSION in the new policy for bodily injury or property damage arising out of the entrustment or supervision by any insured of any person with regard to the ownership, maintenance or use of any aircraft, watercraft, or motor vehicle not covered under Section II of the policy, also excludes any liability statutorily imposed on any insured, or any liability assumed through an unwritten or written agreement by any insured. The Texas Homeowners Policy excluded only the entrustment or supervision exposures. The Texas Policy also contained an exception to this exclusion for bodily injury to a residence employee.

25. The new policy contains specific SECTION II - EXCLUSIONS for:

    a. bodily injury or property damage arising out of an insured's participation in, preparation or practice for, any prearranged or organized race, speed or demolition contest or similar competition involving a motorized land vehicle or motorized watercraft. There is no similar exclusion in the Texas Policy; and

    b. liability for the insured's share of any loss assessment charged against all members of an association of property owners. The Texas Homeowners Policy makes no reference to loss assessments.

## NOTABLE DIFFERENCES IN CONTRACT LANGUAGE

Some provisions in the new Homeowners Policy are unique to State Farm Homeowners Policies. Some coverages contained in the policy are similar to those found in other Homeowners Policies, including the Texas Homeowners Policy, but the language used is different. While it is not practicable to outline every difference in language between the two policies, we have identified situations where the potential for reductions or elimination of coverage, and the potential broadening of coverage, exist and may occur within the same policy provision, depending on individual circumstances. We encourage you to review the following items to better understand the differences in contract language found in the new Homeowners Policy.

(CONTINUED ON REVERSE)