United States District Court
Southern District of Texas
FILED

OCT 2 6 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUIS C. MUNOZ and | ) | |
| CARMELA MUNOZ | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. B-04-141 |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM LLOYDS, | ) | |
| | ) | JURY DEMANDED |
| Defendants, | ) | |

## PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT STATE FARM LLYODS' PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS

Plaintiffs Luis C. Munoz and Carmela Munoz[1] ("Munoz") respond to Defendant State Farm Llyods' Motion for Partial Summary Judgment on Plaintiffs' Extra-Contractual Claims ("State Farm's Motion") as follows:

### A.

### INTRODUCTION

1.  Defendant State Farm Llyods ("State Farm") seeks a ruling that it has no liability for the extra-contractual claims of Mr. and Mrs. Munoz on the grounds that its liability never became reasonably clear as a result of their investigation into the matter. In doing so State Farm seeks to avoid the true issue -- the bad faith of State Farm arises from State Farm's sham investigation conducted to construct a pretextual basis for denial.

2.  Specifically, the summary judgment evidence proves that State Farm's lead investigator, Tom Reed ("Reed"), of State Farm's 'Special Investigation Unit': (a) fabricated

---

[1] Carmela Munoz and Luis C. Munoz were divorced on April 19, 2004. Carmela Munoz has since remarried and taken the name the last name of her subsequent husband.

148106v1 097/24101

witness interviews and statements of the police, disinterested witnesses, a creditor of Mr. and Mrs. Munoz, and a person with knowledge of their financial affairs; (b) fabricated requests for documents State Farm claims Mr. and Mrs. Munoz purportedly did not produce in alleged violation of their duties to State Farm; (c) failed to pursue likely suspects and concentrated solely on Munoz; and (d) failed to investigate the financial condition of Munoz at the time of the fire.

3.     Because State Farm's investigation was a pretext for denying the claim of Mr. and Mrs. Munoz, what little competent, unobjectionable summary judgment evidence State Farm did proffer to the Court is focused on the wrong issue -- whether its liability ever became reasonably clear as a result of its investigation – and cannot support a ruling in favor of State Farm on this motion.

B.

## DEFENDANT STATE FARM LLYODS' SUMMARY JUDGMENT EVIDENCE IS INCOMPETENT

4.     The critical summary judgment evidence submitted by State Farm in support of this motion is flatly incompetent.[2] Such incompetent summary judgment evidence cannot negate any essential element of Munoz's claim – which State Farm acted in bad faith by conducting a sham investigation as a pretext for denying Mr. and Mrs. Munoz's claim -- nor shift the burden of proof to Munoz to go beyond the pleadings and produce evidence raising a genuine issue for trial.

5.     Exhibit A to State Farm's Motion, the Affidavit of Tom Reed ("Reed Affidavit"), and specifically paragraphs 6, 7, and 10 of the Reed Affidavit, is hearsay. The Reed Affidavit testimony proffers unsworn, out-of-court statements of *non-party declarants* Raul Pena, Sr.

---

[2] See also Plaintiffs' Objections to Defendant State Farm Llyods' Evidence for Partial Summary Judgment on Plaintiffs' Extra-Contractual Claims.

("Pena"), Karen Barnett of Barnett's Bookkeeping ("Barnett"), and Detective Armin Martinez of the Raymondville Police Department ("Detective Martinez") to Tom Reed. Such affidavit testimony is hearsay under Fed. R. Civ. Evid. 802, and is not admissible under any provision of Fed. R. Civ. Evid. 803 or 804, nor subject to the residual exception under Fed. R. Civ. Evid. 807.

6. Exhibit F of State Farm's Motion, the Fire Origin and Cause Investigation of National Loss Consultants ("NLC Report"), and specifically the statements of Ms. Minnie Cavasos contained at page 7-9 of Exhibit F, are hearsay. The NLC Report contains unsworn, out-of-court statements by *non-party declarants* Mack L. Fuller and Ms. Minnie Cavasos. Such statements are hearsay under Fed. R. Civ. Evid. 802, and are not admissible under any provision of Fed. R. Civ. Evid. 803 or 804, and are not subject to the residual exception under Fed. R. Civ. Evid. 807.

7. Exhibit F of State Farm's Motion is offered as expert witness testimony admissible, if at all, under Fed. R. Civ. P. 702. State Farm Lloyds has failed to lay a proper predicate for admission of this testimony.

8. Exhibit S to State Farm's Motion, the Affidavit of Lee Olivo ("Olivo Affidavit"), and specifically paragraph 5 of the Olivo Affidavit, is hearsay. Said affidavit testimony purportedly recounts unsworn, out-of-court statements of *an unnamed employee* of State Farm Llyod's agent Mark Brown to Mark Brown of which Lee Olivo has *no personal knowledge*. Such affidavit testimony constitutes hearsay and hearsay within hearsay under Fed. R. Civ. Evid. 802 and 805, and is not admissible under any provision of Fed. R. Civ. Evid. 803 or 804, and is not subject to the residual exception under Fed. R. Civ. Evid. 807.

9. Exhibit W to State Farm's Motion, the Affidavit of Bryan Robinson ("Robinson Affidavit"), and specifically paragraph 4 of the Robinson Affidavit, is hearsay. Said affidavit

testimony purportedly recounts unsworn, statements of *non-party declarant* Benino Capetillo. Such affidavit testimony constitutes hearsay under Fed. R. Civ. Evid. 802 and 805, and is not admissible under any provision of Fed. R. Civ. Evid. 803 or 804, and is not subject to the residual exception under Fed. R. Civ. Evid. 807.

10. Exhibit X to State Farm's Motion, the NFPA 921 Guide for Fire and Explosion Investigations 2001 Edition, is offered by State Farm Lloyds as a purported learned treatise which can only be read into evidence when relied upon by an expert witness on direct or called to the attention of an expert witness on cross examination under Fed. R. Civ. Evid. 803(18). Exhibit X is not admissible and cannot be received as an exhibit.

11. Exhibit G to State Farm's Motion, the Armstrong Forensic Laboratory Report is hearsay containing unsworn statements by *non-party declarants* Andrew T. Armstrong and John M Corn. Such affidavit testimony constitutes hearsay under Fed. R. Civ. Evid. 802 and 805, and is not admissible under any provision of Fed. R. Civ. Evid. 803 or 804, and is not subject to the residual exception under Fed. R. Civ. Evid. 807.

12. Exhibit G of State Farm's Motion is offered as expert witness testimony admissible, if at all, under Fed. R. Civ. P. 702. State Farm Lloyds has failed to lay a proper predicate for admission of this testimony.

13. Exhibits B, C, D, E, H, I, J, K, L, M, N, O, and P to State Farm's Motion are offered, in paragraphs 11 – 26 of the Reed Affidavit, Exhibit A, for the truth of the matters asserted. Said documents are unsworn, uncertified, out-of-court oral or written assertions or non-verbal conduct by *non-party declarants*. Such affidavit testimony constitutes hearsay under Fed. R. Civ. Evid. 802 and 805, and are not admissible under Fed. R. Civ. Evid. 803(6) because State Farm Lloyds has failed to comply with the statutes of the State of Texas permitting certification

of Exhibits B, C, D, E, H, I, J, K, L, M, N, O, and P, or present the proper predicate for admission by competent testimony of the custodian or other qualified witness of the practices of the third-parties making such documents, or complied with Fed. R. Civ. P. 902 (11).

14. Exhibit Y (Plaintiff' Original Petition), Z and AA to State Farm's Motion is offered, *without any competent, sponsoring witness or certification*, for the truth of the matters asserted. Said documents are out-of-court oral or written assertions or non-verbal conduct by a *non-party declarants*. Such exhibits constitute hearsay under Fed. R. Civ. Evid. 802 and 805.

## C.

## STATEMENT OF FACTS

15. State Farm issued State Farm Lloyds Policy No. 83-J4-5565-2 ("Policy") to Mr. and Mrs. Munoz insuring their home at 829 West White Ave., Raymondville, Texas ("Insured Premises") against loss by fire. On January 1, 2003 the Policy was in full force and effect. A true and correct copy of the Policy is attached to the Affidavit of Luis Munoz ("Munoz Aff.") as Exhibit AA.

16. On January 1, 2003 a fire was set at the Insured Premises. Mr. Munoz reported the fire to his State Farm agent on January 2, 2003, and made a claim, in person, at the office of his State Farm agent, Mark Brown, Munoz Aff. p. 2. Neither Mr. nor Mrs. Munoz set the fire, and neither was responsible for setting it. See the Affidavit of Willacy County, Texas District Attorney, Juan Angel Guerra, p.1; Munoz Aff., p.2; Affidavit of Camela Munoz, p.1; and Affidavit of Omel Munoz, p.1. State Farm's own lead investigator, Reed, admitted that no credible person[3] has alleged that Mr. and Mrs. Munoz, their son, or anyone acting on their

---

[3] Reed noted in his deposition that Minerva Cavazos, a suspect in the arson, claims to have seen Luis Munoz approximately 45 minutes before she noticed the fire. **Reed Depo., p.184 *L.18* to p.185 *L.25*.**

behalf, was known to be at the Insured Premises for hours of the fire, and the fire was not started with any known delayed ignition devise. **Reed Depo., p.184 *L.18* to p.185 *L.25*; p.167 *L.17* to p.169 *L.2*.**

17.     On January 1, 2003, Mr. and Mrs. Munoz were not in poor financial condition, and knew of no pressing, material debts or financial obligations which they could not readily pay from their income and assets. Mr. and Mrs. Munoz had recently completed, renovation, remodeling and enlarging the Insured Premises, and had paid all outstanding debt relating to their home. Affidavit of Martha Galarza, p.1 and p.2; Affidavit of Karen Barnett, p.1; Munoz Aff., p.1. Mr. Munoz's employees reported to State Farm that he was paying them without fail, and his roofing and construction company was busy. None of the creditors that State Farm actually spoke to[4] gave any information to State Farm that Mr. and Mrs. Munoz had poor credit or any known financial difficulties. **Reed Depo., p.123 *L.20* to p.126 *L.10* and p.165 *L.9* to *L.14*.**

18.     State Farm, prior to denying the claim of Mr. and Mrs. Munoz, failed to investigate and wrongfully assumed, without factual support, that: (a) Mr. and Mrs. Munoz had lost the adversary action filed by Cavazos in the United States Bankruptcy Court (later reversed by this Court) concerning the mechanic's lien eleven months prior to the fire;[5] (b) Mr. and Mrs.

---

[4] See Affidavit of Yolanda Perez, at p. 2, denying that Reed or anyone from State Farm spoke to her about the credit of Mr. and Mrs. Munoz. Further, Reed admits in his deposition that he failed to speak with anyone from the Ford dealership that had extended credit to Mr. and Mrs. Munoz for a new vehicle shortly before the fire. **Reed Depo., p.122 *L.19* to p.123 *L.14* and p.165 *L.9* to *L.14*.**
[5] The Judgment in Harry J. Cavazos, et ux. V. Luis Munoz d/b/a Munoz Roofing and Construction, Adversary No.: 01-21-1-B was entered January 15, 2003, two weeks <u>after</u> the fire. **A true and correct certified copy of the Judgment is attached as Exhibit P.** State Farm misstates this fact in Defendant State Farm Llyod's Motion for Partial Summary Judgment on Plaintiff's Extra-Contractual Claims and Supporting Brief, at p. 6, claiming, without factual support, the lien had been deemed unperfected that eleven months before the fire, leaving Mr. and Mrs. Munoz unable to collect the money owed by Cavazos at the time of the fire.

Munoz knew of an Internal Revenue Service levy for taxes prior to the fire;[6] (c) Mr. and Mrs. Munoz knew the amount of federal taxes he would likely owe for 1999 to 2001 prior to the fire; (d) the $70,000.00 advanced to Munoz by Ben Capetillo for partnership to be formed was a debt that Mr. and Mrs. Munoz owed on the date of the fire; and, (e) Mr. and Mrs. Munoz knew of a 10-year old judgment for approximately $5,600.00. **Reed Depo., p.85 *L.5*; p.90 *L.19* to *L.20*; p.93 *L.9* to *L.10*; p.103 *L.4*; p.104 *L.8* to p.105 *L.25*; p.109 *L.2* to p.111 *L.9*.** In failing to investigate these matters, State Farm was ignorant of Mr. and Mrs. Munoz's lack of motivation to commit arson, their solvency and their ability to pay known and expected debts on the date of the fire from income <u>and</u> assets.[7]

19.     State Farm, despite having begun its investigation on January 3, 2003,[8] breached the terms, spirit and intent of the Policy by failing to specify information Mr. and Mrs. Munoz was required to provide to State Farm within **15 days** of receipt of notice of the claim.[9] State Farm's lead investigator, Reed, could not explain this failure, and was unable to support his claim in deposition[10] that he had specified information to be provided in January 2003. In fact, State Farm failed to specify any information to be provided to State Farm until March 18, 2003, over **70 days** after State Farm commenced its investigation.[11] On March 18, 2003, State Farm finally requested documents, but failed to request any financial documents, other than tax returns, despite having already determined that arson was the likely cause of the fire.[12] Reed

---

[6] Barnett Aff., at 1. Karen Barnett, the bookkeeper for Munoz, received the levy at a post office box controlled by her and did not inform Mr. and Mrs. Munoz of the levy until after the fire.
[7] Munoz paid off the mortgage for the Insured Premises in 2002. **Munoz Aff., p.1.**
[8] Exhibit A, State Farm's Motion, p. 1, ¶3.
[9] Exhibit A, State Farm Lloyds Policy No. 83-J4-5565-2, Section I – Conditions, 14. Our Duties After Loss, which states that "[w]ithin 15 days after we receive your written notice of claim, we must: (1) acknowledge receipt of the claim . . . ; (2) begin any investigation of the claim; (3) **specify the information you must provide in accordance with "Your Duties After Loss"** . . .
[10] Ex. A, State Farm's Motion, p.1
[11] Exhibit D, State Farm's Motion, pp. 1-3.
[12] Exhibit C, State Farm's Motion, p. 1.

could not explain this delay either. **Reed Depo., p.52** *L.6 to L.9*; *p.53 L.8 to L.23*; *p.51 L.20 to p.52 L.25 and p.45 L.25 to p.46 L.8.*

20.   On April 22, 2003, while working diligently to provide State Farm with the documents requested, Mr. Munoz advised State Farm in writing that his bookkeeper had not prepared the requested tax returns, and that those returns would be provided when they were prepared. At that time, Mr. Munoz delivered a signed authorization to State Farm permitting release to State Farm of Mr. and Mrs. Munoz's financial, employment and credit information. Three weeks later, on May 14, 2003, after **130 days** had passed since its investigation had commenced, State Farm, requested documents reflecting Mr. and Mrs. Munoz's financial condition and income.[13] Between March 18, 2003 and May 14, 2003, State Farm did nothing to investigate the financial condition of Mr. and Mrs. Munoz, other than ask for the address and phone number of Munoz's bookkeeper.[14] **Reed Depo. p. 53** *L. 24 to p. 56 L. 10.*

21.   State Farm, knowing that the requested tax returns were not available, and having advised Mr. and Mrs. Munoz that tax returns need not be submitted as proof of income on May 14, 2003,[15] then waited until August 26, 2003,[16] to request specific, additional information from Mr. Munoz concerning business income. Despite having authority from Mr. and Mrs. Munoz to obtain financial, employment and credit information at least 5 weeks beforehand and knowing the identity of Karen Barnett, State Farm did not request to meet with any third party from whom financial documents could be obtained until October 9, 2003.[17] **Reed Depo., p.231** *L.7 to L.20.*

---

[13] Exhibit E, State Farm's Motion, pp. 1-2.
[14] Exhibit G, State Farm's Motion, p. 1.
[15] Exhibit H, State Farm's Motion, p. 2.
[16] Exhibit O, State Farm's Motion, pp. 1-3.
[17] Exhibit Q, State Farm's Motion, p. 1.

22. By the end of 2003, all documents requested regarding the value of the loss had been provided to State Farm. **Reed Depo. p.236 *L.14* to *L.18*.** On January 20, 2004,[18] State Farm finally asked to review the business records of Munoz Roofing and Construction in the possession of the bookkeeper. Mr. Munoz promptly offered three dates to State Farm for that review in early February 2004[19]. At that review the bookkeeper failed to present organized records.[20] Thereafter Mr. Munoz recovered his business records, had the records organized by his counsel, and produced such records to State Farm on March 29, 2004. Munoz Aff., p. 2.

23. No one from State Farm requested Mr. and Mrs. Munoz's counsel send the documents retrieved from Karen Barnett to a third party copy service for reproduction. Affidavit of Veronica Coronado ("Coronado Aff."), p. 1. The correspondence of State Farm does not reflect any such request, **Reed Depo., p.64 *L.17* to p.65 *L.2* and p.68 *L.13* to *L.25*.**

24. Reed, after inspecting the business records at length on March 29, 2004 demanded that all of the documents, which comprised two banker's boxes of receipts, be copied by Mr. and Mrs. Munoz's counsel and sent to him. Mr. Reed did not attempt to copy any of the business records. Affidavit of Coronado Aff., p. 1.

25. On April 5, 2005, Mr. and Mrs. Munoz, in response to State Farm's request that their attorney copy the business records, offered to allow State Farm to copy the documents at their counsel's office using State Farm's equipment and personnel. State Farm did not respond to that offer, request the documents be sent to a third party for copying, or make any other arrangements to copy the business records at issue. At no time did Mr. and Mrs. Munoz refuse to

---

[18] Exhibit V, State Farm's Motion.
[19] Exhibit Y, State Farm's Motion.
[20] Exhibit Z, State Farm's Motion

allow State Farm to copy the business records that Reed inspected at length on April 29, 2004.[21] **Reed Depo., at p.64 *L.17* to p.65 *L.2*.**

26.    At the time of the fire, the next-door neighbors of Mr. and Mrs. Munoz, Harry and Minverva Cavazos and their sons ("Cavazos"), were present at the Insured Premises. The Cavazos were involved in a bitter, two-year long dispute with Mr. and Mrs. Munoz involving Cavazo's failure to pay Mr. Munoz for renovations to the Cavazos' home and the resulting foreclosure of a mechanics lien by Mr. Munoz, which resulted in over twenty calls to the Raymondville police. Prior to the fire Mr. and Mrs. Munoz had reported both death and arson threats by the Cavazos to the police. The Cavazos were suspected in prior damage to Mr. Munoz's business premises and fire at the Insured Premises 8 months earlier, which was ignited at night while Mr. and Mrs. Munoz and their son were asleep in their home. The Cavazos knew that Mr. and Mrs. Munoz were not home at the time of the fire, and cannot produce a single independent alibi witnesses. Moreover, the Cavazos, earlier on the day of the fire, admit to shopping at the grocery store from which the incendiary agent was likely purchased, and the 17-year old son, Michael Cavazos, shortly after the fire, was reportedly bragging at school of involvement in the fire. The Cavazos were the first to report the fire, after having noticed it as much as 17-minutes earlier, and gave conflicting stories to the police and State Farm regarding their behavior and the existence of open and broken windows at the Insured Premises. The Cavazos were also the first and principal witnesses to report purportedly 'suspicious' activity by Munoz. **Tom Reed Depo., at p.145 *L.25*; P.162 *L.16* to *L.23* and P.193 *L.17* to P.199 *L.3*; Ex. P, Cert. Raymondville Police Department Reports.**

27.    Despite the foregoing, prior to denying the claim of Munoz, State Farm failed to investigate the likelihood that one or more of the Cavazos had committed the arson. State Farm

---

[21] Exhibit CC, State Farm's Motion, pp. 1-2.

did not investigate the threats made by the Cavazos. State Farm did not investigate the Cavazos involvement in prior acts of violence and arson directed at Munoz. State Farm did not follow up on Harry Cavazos's father's statement that he could not rule out that his son was responsible. State Farm did not investigate whether or not the Cavazos, earlier on the day of the fire, had purchased the likely incendiary agent at the HEB grocery store. State Farm did not investigate the reported confession of arson[22] by the 17-year old son, Michael Cavazos. State Farm did not investigate a lengthy gap in time between the Cavazos noticing the fire and reporting the fire, or conflicting stories given to the police and State Farm about their behavior and the existence of broken and open windows. State Farm did not investigate the veracity of the Cavazos raised by unfounded allegations of 'suspicious' activity or statements by Mr. and Mrs. Munoz. Nor did State Farm obtain the Cavazos's security camera tape from the time of the fire, seek a polygraph from the Cavazos, or ask for their fingerprints to compare to prints taken from windows at the Insured Premises or the incendiary agent. **Tom Reed Depo., p.159 *L.25* to P.160 *L.25*;p. 161 *L.12* to *L.15*; p.162 *L.16* to *L.23*; p.170 *L.14* to *L.25*; p.171 *L.12* to *L.14* and p.264 *L.10* to *L.25*.**

28. Further, State Farm has falsely claimed that it had not been provided all the documents it had requested from Mr. and Mrs. Munoz. State Farm denied Mr. and Mrs. Munoz's claim in January 2005[23] stating, among other purported reasons, that Mr. and Mrs. Munoz had not provided pertinent documents and information. Reed, State Farm's lead investigator, swore under oath[24] on September 9, 2005 that State Farm was "still waiting for Mr. and Mrs. Munoz to

---

[22] Reed's activity logs show one attempt to speak with a witness concerning the reported confession of arson in September 2003. Reed alleges a conversation with Det. Armin Martinez in August 2004 about the report. **Reed Depo. p.183 *L.22* to *L.24*; p.193 *L.17* to *L.23*; p.264 *L.10* to *L.24*.** Det. Martinez has denied that the alleged conversation in August 2004 ever took place. **See Martinez Aff. P.1, Ex. M.**
[23] Exhibit DD, State Farm's Motion, pp. 1-3.
[24] See Affidavits of Non-parties Raul Pena, Sr. ("Pena"), Karen Barnett of Barnett's Bookkeeping ("Burnett"), and Detective Armin Martinez of the Raymondville Police Department ("Detective Martinez") evidencing that Tom

provide copies of" were "personal and financial records, Mrs. Munoz's calendar book, all contracts or agreements regarding partnership agreements with Ben Capetillo, all of Mrs. Munoz's employment records, including requests for vacation or sick leave, and documents specifically identifying Mrs. Munoz and evidencing that she was in Florida at the time of the fire.[25] In fact, State Farm was not waiting for documents, and especially none relating to the value of the loss.

29. The "personal and financial records" of Mr. and Mrs. Munoz, to the extent they existed, had been provided to State Farm or were known to State Farm to not exist. Reed, on deposition, could not identify any specific document within the possession, custody or control of Munoz that they had not previously provided to State Farm. State Farm never requested the calendar of Mrs. Munoz. State Farm knew that no partnership agreements existed.[26] State Farm had independently requested Mrs. Munoz's employment records in August 2003. State Farm had taken a recorded witness statement that confirmed that Mrs. Munoz was in Florida at the time of the fire from an individual it had no reason to disbelieve. **Munoz Aff., p. 1 and p.3; Reed Depo. p.221 *L.17* to p.223 *L.3* and p.64 *L.17* to *L.25*.**

30. Most importantly, Reed, State Farm's lead investigator, fabricated material portions of State Farm's investigation. Non-parties Raul Pena, Sr. ("Pena") -- the owner of the tire shop to which Munoz took his 4-wheeler for tire repair the day before the fire, Karen Barnett ("Barnett") -- Mr. Munoz's former bookkeeper, Yolanda Perez ("Perez") -- an employee of Jano Superstore, Veronica Coronado -- an administrative assistant to secretary to Gustavo Ch. Garza, Esq., and Detective Armin Martinez ("Det. Martinez") -- one of the detectives of the

---

Reed swore falsely in paragraphs 6, 7, and 10 of the Affidavit of Tom Reed ("Reed Affidavit"), which is Exhibit A to Defendant State Farm Llyods' Motion for Partial Summary Judgment on Plaintiffs' Extra-Contractual Claims.
[25] See Exhibit A, State Farm's Motion, p. 6, ¶39.
[26] In deposition, Tom Reed, alleged that what he meant in his affidavit was drafts and work papers, but could not identity where or how State Farm had requested drafts and work papers. **Reed Depo. p.211 *L.7* to p.215 *L.10*.**

Raymondville Police Department investigating the fire, have all sworn that Reed's interviews of them described in the affidavits filed with this Court by State Farm in support of its motions for summary judgment <u>never occurred or did not happen</u>.[27] Reed has no recorded statements from any of these witnesses, or any handwritten notes of the purported interview or conversations with them, and claims that he may have destroyed his notes in violation of State Farm's own retention policies.[28] **Reed Depo., p.244 *L.2* to p.245 *L.9* and p.81 *L.4* to p.84 *L.1*.**

### D.

### ARGUMENT AND AUTHORITY

31.   To avoid addressing the true issue – that State Farm's investigation was a sham conducted as a pretext -- State Farm's Motion employs two strategies: assert that it was never reasonably clear that State Farm should pay the Munoz's claim; and, impugn Mr. and Mrs. Munoz with hearsay and incompetent evidence.

30.   While State Farm cites *Universe Life Ins. Co. v. Giles*, 950 SW2d 48, 56 (Tex. 1977) for the proposition that it cannot have acted in bad faith because its liability never became reasonably clear, State Farm fails to address a case it should know well -- *State Farm Fire & Cas. Co. v. Simmons*, 963 SW2d 42 (Tex 1998). In *State Farm*, the Texas Supreme Court upheld a finding of breach of the duty of good faith and fair dealing due to a pretextual investigation, and affirmed the rule that an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial.[29] *Id.*, at 44.

---

[27] See paragraphs 6, 7, and 10 of the Reed's affidavit attached to this motion as Ex. A, and paragraph 31 of Reed's affidavit attached to Defendant State Farm Lloyd's Motion for Summary Judgment as Ex. A.
[28] Notably, the alleged interview of Det. Martinez purportedly occurred on August 12, 2004, after this case was filed in state court and immediately prior to its removal to this Court. The destruction of notes from that interview, if it did occur, which has been denied by Det. Martinez under oath, would be spoliation of evidence.
[29] Where strong leads are ignored about the possible involvement of someone other than the insured, and the insurer concentrates solely on the insured and disregards evidence of a third party's possible involvement, the failure to

31. In *State Farm*, as in the instant matter, the insureds had substantially improved their home, they had financial issues that they were working through, a prior insurance claim had been filed, and serious disputes existed with the neighbors. Like Mr. and Mrs. Munoz, the insureds were away from the home at the time of the fire, the windows and doors were locked when they left, an expert opined that there was no evidence of forced entry and, most strikingly, the 'Special Investigation Unit' which handled the investigation failed to investigate other potential suspects and eliminated a prime suspect on grounds that, the Texas Supreme Court ventured, a jury could have found "inherently incredible." *Id.*, at 43-45.

32. In *State Farm*, as in the instant matter, evidence also existed that State Farm (Fire & Cas. Co.) did not make a good-faith effort to objectively investigate the claim, but instead engaged in an outcome-oriented investigation designed to place their insureds at the center of an "arson triangle."[30] *Id.*, at 45. There was even evidence that State Farm (Fire & Cas. Co.) did not know, as in the instant matter, the actual financial condition of the insured and attempted to point to other evidence of financial strain when their primary reason for claiming financial burden as motive was found to be wrong, which the Texas Supreme Court further ventured could be viewed by a jury as "nothing more than *post hoc* rationalization on State Farm's part." *Id.*, at 47. Based on these facts, and additional proof that State Farm's investigation was "materially deficient," the Texas Supreme Court held that the evidence was legally sufficient to find that State Farm had breached its duty of good faith and fair dealing. *Id.*, at 47.

---

investigate can constitute bad faith. *Aetna Cas. & Surety Co. v. Garza*, 906 S.W.2d 543, 551 (Tex. App. –San Antonio, 1995); *See State Farm Fire & Cas. Co. v. Simmons*, 875 S.W.2d 126, 133 (Tex. App. –Beaumont 1993, writ denied), *Automobile Ins. Co. v. Davila*, 805 S.W.2d 897, 906 (Tex. App.- Corpus Christi 1991, writ denied), *overruled on other grounds*, and *Hines v. Hash*, 843 S.W.2d 464, 469-70 (Tex. 1992).

[30] The Texas Supreme Court explained that the arson triangle consists of circumstantial evidence of motive, opportunity and a fire of incendiary origin. *Id.*, at 45, n1.

33. Munoz has raised serious, material fact questions concerning whether State Farm conducted an investigation as a pretext to denying Mr. and Mrs. Munoz's claim, and thus acted in bad faith. The summary judgment evidence is replete with proof that State Farm conducted an outcome-oriented investigation designed to place their insureds at the center of an "arson triangle," ignored the likely involvement of the Cavazos while concentrating solely on Munoz to avoid effectuating a prompt, fair and equitable settlement. State Farm's only intent in this matter was to delay payment of benefits until an indictment of Munoz could be obtained, which never came.

34. The affidavits proffered by Munoz and deposition testimony of Reed prove that: (a) State Farm fabricated interviews and statements by Pena, Barnett, Perez, Veronica Coronado, and Det. Martinez to pad its file with information that could, if true, support a denial of Mr. and Mrs. Munoz's claim (b) State Farm fabricated requests for documents never previously requested after this lawsuit was filed to support its delay in deciding to pay Mr. and Mrs. Munoz's claim; (c) failed to pursue likely suspects and concentrated solely on Munoz; (d) State Farm failed to investigate the actual financial condition of Munoz at the time of the fire; and (e) State Farm knowingly acted on unsupported assumptions regarding Munoz's financial condition.

35. Moreover, State Farm cannot prove its allegation of motive -- that the Munozes owed more money than they were making at the time of the fire. State Farm never investigated, and therefore could never have known, the actual, known debts of Mr. and Mrs. Munoz at the time of the fire, and therefore base its claim of financial motive on convenient, unsupported assumption and innuendo. State farm never investigated whether the money advanced by Ben Capetillo for a future partnership interest was a debt at the time of the fire. State Farm never investigated if Mr. or Mrs. Munoz knew of the IRS levy or the likely amount of taxes that they

would owe on the date of the fire. State Farm, apparently, never investigated or considered Mr. and Mrs. Munoz's assets and whether such assets far exceeded their known, actual debts at the time of the fire. Accordingly, State Farm could not reasonably have considered the financial condition of Mr. and Mrs. Munoz as a factor in handling their claim. See State Farm Motion, at 10-11.

38.   Nor does State Farm have evidence of the bulk of its allegations that Mr. and Mrs. Munoz acted suspiciously. State Farm's evidence, to the extent it is competent evidence, are the existence of prior claims that State Farm paid without complaint, the hearsay statements of likely suspects – Harry and Minnie Cavazos, the hearsay statement of Det. Martinez that he has sworn under oath he did not give to State Farm, the hearsay statement of Pena that he has sworn under oath he did not give to State Farm, and the alleged behavior of Harry Cavazos which was more likely intended to prevent the spread of the fire started by him or a member of his family to his adjoining home.

## E.

## CONCLUSION

Mr. and Mrs. Munoz have established the existence of a sham, bad faith investigation by State Farm, which is the basis of all extra-contractual claims in this matter. As admitted by State Farm in it motion,[31] evidence of a bad faith claim supports a claim under Tex. Ins. Code Art. 21.21 and Tex. Bus. & Comm. Code § 17.50(a). Accordingly, State Farm's Motion fails and should be denied.

Respectfully submitted,

---

[31] State Farm's Motion, at 16-17.

148106v1   097/24101

_[signature]_
Gustavo Ch. Garza
705 West Highway 100
Suite A
Los Fresnos, Texas 78566
(956) 233-5614 Tel.
(956) 233-6596 Fax.
State Bar No. 07731700
Federal Id No. 3946

[Signature continued on next page]
    David L. Rusnak
    Of Counsel
    Scoggins & Goodman, P.C.
    2800 Marquis One Tower
    245 Peachtree Center Avenue, N.E.
    Atlanta, Georgia 30303-1227
    (404) 659-1000 Tel.
    (404) 659-1000 Fax
    TX State Bar No. 17404500
    GA State Bar No. 620170
    Admitted Pro Hoc Vice

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the PLAINTIFFS' RESPONSE TO DEFENDANT STATE FARM LLYODS' PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

> Warren Taylor, Esq.
> Taylor & Taylor
> 815 Walker Street
> Suite 250
> Houston, TX 77002-6707
>
> Rene O. Oliveira
> Roerig, Oliveira & Fisher, LLP
> 855 West Price Road
> Suite 9
> Brownsville, TX 78250-8718

This 26th day of October 2005.

_____
Gustavo Ch. Garza
705 West Highway 100
Suite A
Los Fresnos, Texas 78566

(956) 689-9040 Tel.
(956) 689-6468 Fax.
State Bar No. 07731700
Federal Id No. 3946

148106v1   097/24101