


# FRANCESCON REPORTING SERVICE

1506 East Broadway, Suite 200 • Pearland, Texas 77581 • (281) 996-7881 • Fax (281) 996-7882

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LUIS C. MUNOZ AND          : CAUSE NO. B-04-141
CARMELA MUNOZ              :
                          :
                          :
VS.                       :
                          :
STATE FARM LLOYDS         :

---

COPY

ORAL DEPOSITION OF

THOMAS LEE REED

VOLUME 1

OCTOBER 20TH, 2005

---

    ORAL DEPOSITION of THOMAS LEE REED, VOLUME 1, taken on

the 20th of October, 2005, from 9:52 a.m. to 4:28 p.m.,  at the

offices of Taylor & Taylor, 815 Walker, Suite 250, Houston,

Harris County, Texas, pursuant to Notice and the Federal Rules

of Civil Procedure, Rule No. 30.

```
 1                   I N D E X
 2
 3                                              PAGE
 4  Appearances ...................................  3
 5  THOMAS LEE REED
 6      Examination by Mr. David L. Rusnak ..........  4
 7  Changes and Signature .........................174
 8  Reporter's Certification ......................176
 9
10
                     E X H I B I T S
11
    NO.        DESCRIPTION                         PAGE
12  1 ............................................   45
               Insurance policy
13  2 ............................................   47
               Affidavit of Tom Reed
14  3 ............................................   63
               Statement
15  4 ............................................   75
               Recorded statement of Ben Capetillo
16  5 ............................................  131
               Phone call information
17  6 ............................................  143
               Statement
18
19
20
21
22
23
24
25
```

```
 1                    A P P E A R A N C E S

 2
   FOR THE PLAINTIFFS:
 3      Mr. David L. Rusnak
        SCOGGINS & GOODMAN, P.C.
 4      2800 Marquis One Tower
        245 Peachtree Center Avenue, N.E.
 5      Houston, Texas 30303
               - and -
 6      Mr. Gustavo Ch. Garza
        ATTORNEY AT LAW
 7      705 W. Highway 100, Suite A
        Los Fresnos, Texas 78566

 8

 9 FOR THE DEFENDANT:
        Mr. Warren Taylor
10      TAYLOR & TAYLOR
        815 Walker, Suite 250
11      Houston, Texas 77002

12

13 ALSO PRESENT:
        Mr. Kyle Hambright
14

15

16

17

18

19

20

21

22

23

24

25
```

**THOMAS LEE REED,**

having been first duly sworn, testified as follows:

09:51:52    MR. RUSNAK:  This will be the deposition

09:51:53 of Tom Reed in Civil Action No. B-04-141.  The style of

09:52:01 the case is Luis C. Munoz and Carmela Munoz versus State

09:52:06 Farm Lloyds.

09:52:06    EXAMINATION

09:52:06 BY MR. RUSNAK:

09:52:09    Q.    Mr. Reed, would you state your full name for

09:52:12 the record, please?

09:52:13    A.    Thomas Lee Reed.

09:52:14    Q.    Do you spell that with an "H"?

09:52:18    A.    Spell what?

09:52:19    Q.    Do you spell "Thomas" with an "H"?

09:52:21    A.    Correct.  T-h-o-m-a-s.

09:52:24    Q.    And let me start by going over a few rules of

09:52:29 the road.

09:52:30    Well, first of all, how many times have

09:52:32 you been deposed?

09:52:33    A.    Six or eight.

09:52:33    Q.    Well, let me be brief, then, about the rules

09:52:36 of the road.  The rules of the road are simply designed

09:52:39 to ensure that we have a clear deposition.

09:52:41    First, if for any reason you do not

09:52:43 understand my question, a phrase that I've used, a term

09:52:46  1  that's needs to be defined, anything, please ask me to

09:52:49  2  restate it, define, or refine my question.  Is that

09:52:54  3  okay?

09:52:54  4      A.   Okay.

09:52:55  5      Q.   I would ask you to allow me to complete my

09:52:58  6  question before you start answering.  I may pause for a

09:53:00  7  moment; but give me a moment, if you will, to complete

09:53:03  8  my question.  Is that okay?

09:53:05  9      A.   Sure.

09:53:05  10     Q.   And if for any reason you need to complete

09:53:08  11 your answer, if I have started to ask a question before

09:53:10  12 you were done, let me know so we can have your full

09:53:13  13 answer on the record.  Is that okay?

09:53:15  14     A.   Okay.

09:53:16  15     Q.   Also, I would ask that you answer in words as

09:53:23  16 opposed to gestures or noises such as "uh-huh" or

09:53:26  17 "huh-uh" so we can be sure what, in fact, you meant when

09:53:30  18 you answered.  Is that all right?

09:53:31  19     A.   Okay.

09:53:32  20     Q.   When and where were you born?

09:53:36  21     A.   I was born June 4th, 1958, in Kingsville,

09:53:41  22 Texas.

09:53:41  23     Q.   What county is Kingsville in?

09:53:48  24     A.   Kleberg.

09:53:50  25     Q.   And you understand here that your testimony

09:53:54   1  here today is under the penalty of perjury?

09:53:56   2       A.   Correct.

09:53:57   3       Q.   Are you on any medications or any other

09:54:00   4  physical treatment that might interfere with your giving

09:54:03   5  a deposition here today?

09:54:05   6       A.   No, sir.

09:54:05   7       Q.   Are you aware of any reason why you can't give

09:54:09   8  a full, truthful, and complete deposition here today?

09:54:12   9       A.   No, sir.

09:54:13  10       Q.   Some abbreviations.  If I say "State Farm," I

09:54:20  11  mean the defendant, State Farm Lloyds.  Is that

09:54:23  12  understood?

09:54:23  13       A.   Correct.

09:54:24  14       Q.   If I refer to Munoz Roofing, I mean the sole

09:54:28  15  proprietorship of Luis C. Munoz.

09:54:30  16       A.   Okay.

09:54:31  17       Q.   If I refer to policy, I'm referring to State

09:54:35  18  Farm Lloyds Policy No. 83-J4-5565-2, which I'll

09:54:41  19  represent to you is the policy in this case.

09:54:42  20       A.   I see it on the claim form.

09:54:44  21       Q.   So, my definition is correct?

09:54:47  22            MR. TAYLOR:  Yeah.  You're specifying the

09:54:49  23  policy in effect at the time of the fire?

09:54:52  24            MR. RUSNAK:  Yes, I am.

09:54:54  25       Q.   (BY MR. RUSNAK) And when I refer to the house

09:54:55  1  or the home, I mean the structure at 829 West White

09:54:59  2  Avenue, Raymondville, Texas.  Is that understood?

09:55:02  3       A.    Correct.

09:55:02  4       Q.    Have you ever been a party to a lawsuit,

09:55:06  5  Mr. Reed?

09:55:07  6       A.    Yes, I have.

09:55:08  7       Q.    How many times?

09:55:09  8       A.    I don't know how many times.

09:55:18  9       Q.    Have you been a party to a lawsuit as a

09:55:21  10 defendant?

09:55:22  11      A.    Yes, sir.

09:55:24  12      Q.    Have you been a party to a lawsuit as a

09:55:28  13 defendant outside of your insurance adjusting practice?

09:55:34  14      A.    No, sir.

09:55:36  15      Q.    Have you been a defendant more or less than

09:55:41  16 ten times?

09:55:42  17      A.    Probably ten times; roughly, ten times.

09:55:47  18      Q.    Okay.  State or Federal court?

09:55:49  19      A.    Both.

09:55:50  20      Q.    Have you been a defendant in the United States

09:55:54  21 District Court for the Southern District of Texas,

09:55:57  22 Brownsville Division?

09:55:59  23      A.    I believe I have, yes, sir.

09:56:02  24      Q.    Do you have any sort of lists or record of the

09:56:05  25 cases to which you've been a party as a defendant while

09:56:10  1  acting as an insurance adjuster?

09:56:13  2       A.   No, sir, I don't.

09:56:14  3       Q.   Were any of these lawsuits while you were

09:56:17  4  working for State Farm?

09:56:18  5       A.   Yes.

09:56:19  6       Q.   Were they all for State Farm?

09:56:21  7       A.   Yes, sir.

09:56:22  8       Q.   How would we go about finding the cases you've

09:56:35  9  been a defendant in?  Is there any records at State Farm

09:56:39  10 that would reflect this?

09:56:40  11      A.   That, I wouldn't know.

09:56:42  12      Q.   Have you been a plaintiff before?

09:56:44  13      A.   I don't know if you would call it a

09:56:46  14 "plaintiff," but I filed a Lemon Law action with the

09:56:50  15 state of Texas.

09:56:51  16      Q.   Any other time in which you filed a lawsuit?

09:56:57  17      A.   Not that I remember, no, sir.

09:57:00  18      Q.   Any records you would need to consult in order

09:57:05  19 to determine that?

09:57:06  20      A.   Other than that one -- that one incidence, I

09:57:13  21 can't think of any.

09:57:14  22      Q.   Do you recall the counties of the State law

09:57:16  23 actions where you were in Federal court where you were a

09:57:21  24 defendant?

09:57:22  25      A.   It would have been the Brownsville and

FRANCESCON REPORTING SERVICE (281) 996-7881

09:57:33  1  San Antonio.

09:57:36  2      Q.   Any other counties?

09:57:37  3      A.   Not that I remember.

09:57:38  4      Q.   The counties incorporating --

09:57:46  5      A.   Plus Nueces.

09:57:54  6      Q.   So, that would be Cameron and Bexar counties?

09:57:59  7      A.   Correct.

09:58:11  8      Q.   And when you were a defendant in Federal

09:58:14  9  court, where were these actions held, in Brownsville in

09:58:19  10 Houston?  Where were these cases being conducted?

09:58:24  11     A.   One of them was to be tried in Brownsville,

09:58:29  12 one was in Corpus, and another was to be tried in

09:58:39  13 San Antonio.

09:58:40  14     Q.   Any other Federal actions?

09:58:43  15     A.   Can you redefine your question?

09:58:53  16     Q.   Certainly.

09:58:54  17         You've identified three Federal lawsuits:

09:58:56  18 one in Brownsville, one ine Corpus Christi, and one in

09:59:00  19 San Antonio, leaving approximately seven State court

09:59:02  20 actions.  Is that about right?

09:59:04  21     A.   That's -- that's what I remember, yes, that's

09:59:10  22 correct.

09:59:10  23     Q.   Who was the plaintiff in the Brownsville

09:59:13  24 action?

09:59:13  25     A.   Brenda Hamilton.

| | | |
|---|---|---|
| 09:59:16 | 1 | Q. Why was she suing you? |
| 09:59:19 | 2 | A. It was an intentionally set fire that was |
| 09:59:22 | 3 | denied by State Farm. |
| 09:59:24 | 4 | Q. What did she allege you did wrong? |
| 09:59:27 | 5 | A. She alleged that there was bad faith. |
| 09:59:33 | 6 | Q. What did she allege you personally did that |
| 09:59:38 | 7 | led to this lawsuit with Ms. Hamilton? |
| 09:59:42 | 8 | A. I don't remember the specifics of the |
| 09:59:43 | 9 | petition. |
| 09:59:44 | 10 | Q. What year was that? |
| 09:59:45 | 11 | A. It would have been between '90 and '93, I |
| 09:59:54 | 12 | think. |
| 09:59:54 | 13 | Q. What was the outcome of that lawsuit? |
| 09:59:59 | 14 | A. The plaintiff filed a -- he withdrew the |
| 10:00:06 | 15 | lawsuit. |
| 10:00:06 | 16 | Q. Was it settled or withdrawn? |
| 10:00:08 | 17 | A. Withdrawn a week before trial. |
| 10:00:11 | 18 | Q. It was dismissed? |
| 10:00:12 | 19 | A. Correct. He filed a dismissal. |
| 10:00:14 | 20 | Q. Was your deposition taken in that case? |
| 10:00:16 | 21 | A. Yes, it was. |
| 10:00:17 | 22 | Q. Do you remember the attorney who took your |
| 10:00:20 | 23 | deposition? |
| 10:00:21 | 24 | A. I remember the last names, Ellis and Ash. |
| 10:00:26 | 25 | Q. That was the plaintiff's firm? |

10:00:31  1          A.    Correct.

10:00:32  2          Q.    Okay.  In the Corpus Christi action, who was

10:00:37  3    the plaintiff?

10:00:37  4          A.    It was Delma Donovan.

10:00:41  5          Q.    Del?

10:00:42  6          A.    Delma, D-e-l-m-a, Donovan.

10:00:48  7          Q.    And why was Ms. Donovan suing you?

10:00:56  8          A.    Basically, the same.  Well, she was suing

10:00:58  9    State Farm.

10:00:59  10         Q.    Did she sue you as an individual person?

10:01:01  11         A.    I don't believe she did, no, sir.

10:01:03  12         Q.    Did you give a deposition in that case?

10:01:05  13         A.    Yes, I did.

10:01:06  14         Q.    Do you recall who the plaintiff's attorneys

10:01:07  15    were?

10:01:07  16         A.    It was -- right off, I don't remember.

10:01:15  17         Q.    When was that case?

10:01:17  18         A.    It was last year or -- let me think.  It

10:01:23  19    was -- may have been the first -- it was rescheduled a

10:01:28  20    couple of times.  I believe it was January or February

10:01:30  21    of this year.

10:01:31  22         Q.    Was it filed in 2004?  The case started in

10:01:35  23    2004?

10:01:36  24         A.    I believe it was, yes, sir.

10:01:37  25         Q.    Is that case ongoing?

| | | |
|---|---|---|
| 10:01:39 | 1 | A.   No, it's not. |
| 10:01:40 | 2 | Q.   And you gave your deposition? |
| 10:01:41 | 3 | A.   Yes, I did. |
| 10:01:42 | 4 | Q.   Did you testify in court? |
| 10:01:43 | 5 | A.   No, I did not. |
| 10:01:44 | 6 | Q.   And has that case not resolved yet? |
| 10:01:47 | 7 | A.   It's resolved. |
| 10:01:48 | 8 | Q.   How was it resolved? |
| 10:01:50 | 9 | A.   The plaintiff's attorney filed a -- he |
| 10:01:55 | 10 | withdrew the -- he withdrew the lawsuit after the first |
| 10:02:01 | 11 | day of trial. |
| 10:02:02 | 12 | Q.   Was it settled? |
| ?:02:04 | 13 | A.   What's your definition of "settled"? |
| 10:02:07 | 14 | Q.   Did State Farm agree to a resolution of the |
| 10:02:10 | 15 | case that caused the case to end, pay money or agree to |
| 10:02:13 | 16 | some sort of compensation for Ms. Donovan? |
| 10:02:17 | 17 | A.   No, sir.  He went down and filed with the |
| 10:02:20 | 18 | court to withdraw while we were at lunch. |
| 10:02:23 | 19 | Q.   The third Federal case in San Antonio, what |
| 10:02:26 | 20 | was the name of the plaintiff in that case? |
| 10:02:28 | 21 | A.   That was -- I believe it was Sparks. |
| 10:02:33 | 22 | Q.   Do you remember the first name? |
| 10:02:35 | 23 | A.   Cheryl, Cheryl Sparks. |
| 10:02:40 | 24 | Q.   And when was that case started? |
| :02:48 | 25 | A.   It would have been '93 -- '92 to '93, I |

FRANCESCON REPORTING SERVICE (281) 996-7881

| | | |
|---|---|---|
| 10:02:57 | 1 | believe. |
| 10:02:57 | 2 | Q. Did you give a deposition in that case? |
| 10:03:00 | 3 | A. Yes, I did. |
| 10:03:01 | 4 | Q. Did you testify at trial in that case? |
| 10:03:02 | 5 | A. No, I did not. |
| 10:03:03 | 6 | Q. How was that case resolved? |
| 10:03:05 | 7 | A. It was negotiated before trial. |
| 10:03:07 | 8 | Q. So, there was a settlement in that case? |
| 10:03:09 | 9 | A. Correct. |
| 10:03:10 | 10 | Q. Who were the plaintiff's attorneys? |
| 10:03:12 | 11 | A. I don't remember right off. |
| 10:03:18 | 12 | Q. Do you remember the names of the plaintiffs in |
| 10:03:21 | 13 | the approximately seven other cases which were in |
| 10:03:24 | 14 | Brownsville, San Antonio, and Nueces?  And if you do |
| 10:03:33 | 15 | remember, name them, please. |
| 10:03:37 | 16 | A. Right off, I don't remember. |
| 10:03:44 | 17 | Q. Were you a individual defendant in those |
| 10:03:47 | 18 | cases, which is to say, you were named as a party; or |
| 10:03:52 | 19 | were you simply appearing as a witness for State Farm? |
| 10:03:55 | 20 | A. Specifically I couldn't tell you on each of |
| 10:03:58 | 21 | them.  I don't remember. |
| 10:04:00 | 22 | Q. Did you deliver reports to State Farm about |
| 10:04:09 | 23 | those cases so we could ask State Farm and then |
| 10:04:12 | 24 | determine who those plaintiffs were? |
| 10:04:14 | 25 | A. When you say "deliver reports," what -- |

10:04:16  1      Q.    You worked on those cases?

10:04:18  2      A.    That's correct.

10:04:18  3      Q.    Okay.  So, if we were to ask State Farm to

10:04:21  4  produce a log of the cases you've worked on, would you

10:04:24  5  be able to identify those plaintiffs?

10:04:26  6      A.    I don't know what records the company keeps.

10:04:29  7      Q.    You produced an activity log for each of these

10:04:32  8  cases?

10:04:32  9      A.    That is correct.

10:04:34  10     Q.    Did you deliver reports in these cases to

10:04:40  11  State Farm, such as to claims review boards or claims

10:04:45  12  committees?

10:04:45  13     A.    There would have been some reports in there.

10:04:49  14  Specifically what reports they were, I don't remember.

10:04:52  15     Q.    But there would have been an activity log for

10:04:55  16  each of these cases?

10:04:56  17     A.    That's correct.

10:04:57  18     Q.    Are you paid a weekly salary as an employee or

10:05:07  19  on a case-by-case basis?

10:05:09  20     A.    Salary.

10:05:10  21     Q.    Did you give your depositions -- give a

10:05:24  22  deposition -- I believe you answered you gave a

10:05:27  23  deposition in each of those cases in Brownsville,

10:05:29  24  San Antonio, and Nueces?

:05:31  25     A.    That is correct.

| | | |
|---|---|---|
| 10:05:32 | 1 | Q.    Do you keep a copy of depositions that you |
| 10:05:37 | 2 | give? |
| 10:05:37 | 3 | A.    No, sir. |
| 10:05:38 | 4 | Q.    Have you ever testified in court? |
| 10:05:48 | 5 | A.    Yes, sir. |
| 10:05:49 | 6 | Q.    In which cases? |
| 10:05:50 | 7 | A.    It wasn't any -- it was a case in Kingsville, |
| 10:05:57 | 8 | and State Farm was not a party. |
| 10:06:00 | 9 | Q.    Why were you giving testimony in that case? |
| 10:06:02 | 10 | A.    It was -- I was brought in as a witness on |
| 10:06:10 | 11 | construction. |
| 10:06:12 | 12 | Q.    Construction of what? |
| 10:06:15 | 13 | A.    Reconstruction of a home, repairs. |
| 10:06:17 | 14 | Q.    Were you an expert witness? |
| 10:06:19 | 15 | A.    That's why I was brought in. |
| 10:06:22 | 16 | Q.    What party brought you in to testify? |
| 10:06:26 | 17 | A.    The defendant. |
| 10:06:27 | 18 | Q.    And their name was what? |
| 10:06:29 | 19 | A.    I don't remember. |
| 10:06:30 | 20 | Q.    When was this? |
| 10:06:31 | 21 | A.    It was between '86 and '88. |
| 10:06:35 | 22 | Q.    Do you have a construction background? |
| 10:06:39 | 23 | A.    Just a claims background. |
| 10:06:41 | 24 | Q.    Have you ever been arrested? |
| :06:45 | 25 | A.    No, sir. |

| | | |
|---|---|---|
| 10:06:46 | 1 | Q.   Have you ever been indicted? |
| 10:06:49 | 2 | A.   No, sir. |
| 10:06:50 | 3 | Q.   Ever pled guilty to a misdemeanor or a felony? |
| 10:06:54 | 4 | A.   No, sir. |
| 10:06:55 | 5 | Q.   What did you do in preparation for your |
| 10:06:58 | 6 | deposition here today? |
| 10:06:59 | 7 | A.   Reviewed file materials and spoke with my |
| 10:07:06 | 8 | attorney. |
| 10:07:07 | 9 | Q.   What file materials did you review? |
| 10:07:11 | 10 | A.   The material that's been produced. |
| 10:07:16 | 11 | Q.   Can you describe it?  Are you talking about |
| 10:07:25 | 12 | the activity log? |
| 10:07:25 | 13 | A.   The claim file itself. |
| 10:07:26 | 14 | Q.   Did you review all approximately 6,000 pages |
| 10:07:29 | 15 | that have been produced to Mr. and Mrs. Munoz in this |
| 10:07:29 | 16 | case? |
| 10:07:32 | 17 | A.   Not all of it, no, sir. |
| 10:07:33 | 18 | Q.   What portion of the file did you specifically |
| 10:07:36 | 19 | review? |
| 10:07:36 | 20 | A.   Correspondence, activity log, most of the |
| 10:07:44 | 21 | recorded interviews. |
| 10:07:51 | 22 | Q.   These are interviews done by both you, |
| 10:07:54 | 23 | Mr. Lerma, Mr. Robinson, others -- |
| 10:07:54 | 24 | A.   Correct. |
| 10:07:57 | 25 | Q.   -- acting at your request? |

| | | |
|---|---|---|
| 10:07:58 | 1 | A. Correct. |
| 10:07:59 | 2 | Q. What else did you review? |
| 10:08:01 | 3 | A. I skimmed through most of the file, most of |
| 10:08:11 | 4 | the file itself; but what parts I didn't go through, I |
| 10:08:14 | 5 | don't remember. I didn't read it word for word, but I |
| 10:08:18 | 6 | just glanced through it. |
| 10:08:19 | 7 | Q. Did you read the activity log word for word? |
| 10:08:22 | 8 | A. No, I did not. |
| 10:08:23 | 9 | Q. Did you read the correspondence word for word? |
| 10:08:25 | 10 | A. No, sir, I did not. |
| 10:08:26 | 11 | Q. You did a cursory review? |
| 10:08:28 | 12 | A. Correct. |
| 10:08:29 | 13 | Q. Was anyone present when you were talking to |
| 10:08:34 | 14 | your attorney? |
| 10:08:35 | 15 | A. Not -- yes, sir. |
| 10:08:45 | 16 | Q. Who was present -- |
| 10:08:47 | 17 | A. Well, by phone. |
| 10:08:48 | 18 | Q. Who was present by phone? |
| 10:08:52 | 19 | MR. TAYLOR: Other counsel. |
| 10:08:53 | 20 | MR. RUSNAK: Other attorney? |
| 10:08:55 | 21 | MR. TAYLOR: Yes. |
| 10:08:57 | 22 | Q. (BY MR. RUSNAK) Other than counsel for State |
| 10:09:00 | 23 | Farm or a State Farm representative such as |
| 10:09:01 | 24 | Mr. Hambright, was anybody present during your interview |
| 10:09:03 | 25 | with your attorney? |

| | | |
|---|---|---|
| 10:09:03 | 1 | A.   No, sir. |
| 10:09:04 | 2 | Q.   When you say "your attorney," you're referring |
| 10:09:07 | 3 | to State Farm's attorney? |
| 10:09:07 | 4 | A.   And he's also my attorney as well. |
| 10:09:09 | 5 | Q.   He's your personal attorney? |
| 10:09:11 | 6 | A.   Correct. |
| 10:09:11 | 7 | Q.   Do you have a contract with Mr. Taylor to |
| 10:09:14 | 8 | represent you? |
| 10:09:14 | 9 | A.   Not a written contract. |
| 10:09:17 | 10 | Q.   Then why do you say he's your attorney? |
| 10:09:19 | 11 | A.   I've asked him to represent me. |
| 10:09:21 | 12 | Q.   And when did you do this? |
| 10:09:23 | 13 | A.   Yesterday. |
| 10:09:29 | 14 | MR. TAYLOR:  No, that's not right.  You |
| 10:09:32 | 15 | were sued in the case. |
| 10:09:33 | 16 | THE WITNESS:  Oh, that's correct. |
| 10:09:38 | 17 | MR. RUSNAK:  The State court suit? |
| 10:09:39 | 18 | MR. TAYLOR:  Yeah, he was an original |
| 10:09:41 | 19 | defendant in the case, and I've represented him since |
| 10:09:43 | 20 | then. |
| 10:09:43 | 21 | THE WITNESS:  That's correct. |
| 10:09:46 | 22 | MR. TAYLOR:  And then we discussed it |
| 10:09:46 | 23 | again yesterday to go over it. |
| 10:09:48 | 24 | Q.   (BY MR. RUSNAK) Are you paying for your |
| 10:09:59 | 25 | representation out of your own pocket? |

| | | |
|---|---|---|
| 10:10:04 | 1 | A.    No, sir. |
| 10:10:04 | 2 | Q.    Other than State Farm's attorneys, who have |
| 10:10:27 | 3 | you spoken with about your deposition? |
| 10:10:29 | 4 | A.    My boss. |
| 10:10:32 | 5 | Q.    Who is? |
| 10:10:33 | 6 | A.    Cary Tuscon. |
| 10:10:34 | 7 | Q.    Anyone else? |
| 10:10:36 | 8 | A.    I'm sure that -- when you say "talked with," |
| 10:10:45 | 9 | what -- in what capacity? |
| 10:10:49 | 10 | Q.    Have you had a discussion with someone other |
| 10:10:53 | 11 | than your attorney concerning matters relating to this |
| 10:10:56 | 12 | case? |
| 0:10:56 | 13 | A.    Any matters or -- |
| 10:11:01 | 14 | Q.    Anything. |
| 10:11:02 | 15 | A.    Well, I know there are those that know that |
| 10:11:05 | 16 | I'm here for my deposition today. |
| 10:11:07 | 17 | Q.    Okay.  Such as? |
| 10:11:08 | 18 | A.    My wife. |
| 10:11:11 | 19 | Q.    Outside of your family. |
| 10:11:13 | 20 | A.    My co-workers. |
| 10:11:15 | 21 | Q.    Which co-workers have you spoken with? |
| 10:11:17 | 22 | A.    Scott Kemp in Corpus knows I'm here; Danny |
| 10:11:25 | 23 | Lerma knows I'm here; my secretary, Annabelle Maldonado, |
| 10:11:31 | 24 | knows I'm here. |
| 0:11:32 | 25 | Q.    Anybody outside the State Farm employ? |

| | | |
|---|---|---|
| 10:11:35 | 1 | A.    Not that I'm aware of.  Well, I should say, |
| 10:11:43 | 2 | you know, friends, like people at church know I'm out of |
| 10:11:47 | 3 | town. |
| 10:11:47 | 4 | Q.    Have you talked about the facts of this case |
| 10:11:49 | 5 | with anybody -- |
| 10:11:50 | 6 | A.    No, sir. |
| 10:11:51 | 7 | Q.    -- whether it be a friend or somebody you went |
| 10:11:53 | 8 | to church with? |
| 10:11:54 | 9 | A.    No, sir. |
| 10:11:55 | 10 | Q.    Have you talked about the facts of this case |
| 10:11:57 | 11 | with your wife? |
| 10:11:58 | 12 | A.    She knows that there was a fire in the valley |
| 9:12:00 | 13 | and that's about it. |
| 10:12:01 | 14 | Q.    Now, how long have you been an investigator |
| 10:12:09 | 15 | for State Farm? |
| 10:12:11 | 16 | A.    What do you classify as investigator? |
| 10:12:17 | 17 | Q.    How long have you provided investigatory |
| 10:12:20 | 18 | services to State Farm in any capacity? |
| 10:12:21 | 19 | A.    Well, I started with State Farm in 1986; and |
| 10:12:27 | 20 | in 1996, I went to Bloomington and then returned to the |
| 10:12:38 | 21 | Special Investigative Unit in 2000 and then up to today. |
| 10:12:46 | 22 | Q.    From 2000 to today, you were with SIU? |
| 10:12:49 | 23 | A.    Correct. |
| 10:12:50 | 24 | Q.    And that is Special Investigative Unit? |
| 9:12:52 | 25 | A.    Correct. |

10:12:52  1      Q.    What's the purpose of that unit?

10:12:54  2      A.    To investigate claims.

10:12:56  3      Q.    All claims or a specific category of claims?

10:12:58  4      A.    Claims that are assigned to SIU.

10:13:01  5      Q.    Does SIU get every claim?

10:13:05  6      A.    (Nodding)

10:13:06  7      Q.    Why would someone within the State Farm

10:13:09  8  organization refer a case to SIU?

10:13:10  9      A.    It depends on the circumstances; but in this

10:13:14 10  particular case, when there's a cause and origin that

10:13:18 11  comes back that it's an incendiary or intentional fire,

10:13:23 12  those are generally sent over to SIU.

10:13:26 13      Q.    Are cases where fraud is suspected sent to

10:13:31 14  SIU?

10:13:31 15      A.    They could be, yes, sir.

10:13:33 16      Q.    Would a fraud case not be sent to SIU?

10:13:34 17      A.    There could be a -- I wouldn't say every fraud

10:13:36 18  case is submitted to SIU.  I'm sure there's occasion

10:13:39 19  where they may not be.

10:13:40 20      Q.    Is there a policy manual or document of any

10:13:43 21  kind generated by State Farm that you could refer me to

10:13:47 22  that would define the purpose of SIU?

10:13:49 23      A.    There is a guideline for SIU.

10:13:52 24      Q.    We'll get back to that.

10:13:57 25            Now, you've been with SIU from 2000 to the

| | | |
|---|---|---|
| 10:14:00 | 1 | present? |
| 10:14:01 | 2 | A. No, sir. |
| 10:14:01 | 3 | Q. You were with SIU before that? |
| 10:14:03 | 4 | A. Correct. |
| 10:14:04 | 5 | Q. And when did you start with SIU? |
| 10:14:06 | 6 | A. In -- I believe it was 1989. |
| 10:14:08 | 7 | Q. And you were with SIU in Bloomington in 1996 |
| 10:14:17 | 8 | through 2000? |
| 10:14:17 | 9 | A. No, sir. |
| 10:14:18 | 10 | Q. Why don't we start with: Did you go to |
| 10:14:22 | 11 | college? |
| 10:14:23 | 12 | A. Yes, sir. |
| 0:14:23 | 13 | Q. Where did you go to college? |
| 10:14:25 | 14 | A. Abilene Christian University. |
| 10:14:28 | 15 | Q. And when did you graduate? |
| 10:14:30 | 16 | A. December of '80. |
| 10:14:31 | 17 | Q. What was your degree? |
| 10:14:32 | 18 | A. Degree in management; degree in marketing. |
| 10:14:35 | 19 | Q. After that, who employed you? |
| 10:14:39 | 20 | A. Luby's. |
| 10:14:40 | 21 | Q. What did you do with Luby's? |
| 10:14:42 | 22 | A. I was a manager. |
| 10:14:42 | 23 | Q. How long were you a manager with Luby's? |
| 10:14:45 | 24 | A. I was a manager from '81 to about '82, I |
| 0:14:51 | 25 | believe. |

10:14:51  1      Q.   Why did you leave Luby's?

10:14:53  2      A.   The life-style, the hours.  Most of the

10:14:59  3  managers were divorced and remarried, and that just was

10:15:04  4  not -- that was not the life-style that I nor my family

10:15:09  5  wanted to be involved with.

10:15:11  6      Q.   What did you do after Luby's for a living?

10:15:14  7      A.   I became a stockbroker.

10:15:17  8      Q.   Where?

10:15:18  9      A.   In Beeville, Texas.

10:15:19 10      Q.   How long were you a stockbroker in Beeville,

10:15:22 11  Texas?

10:15:23 12      A.   From about '82 to about the middle of '83, I

0:15:26 13  believe.

10:15:26 14      Q.   Did you receive your Series 7 certification?

10:15:30 15      A.   Yes, I did.

10:15:31 16      Q.   When did you receive that?

10:15:32 17      A.   It would have been in -- before I opened the

10:15:38 18  office.

10:15:39 19      Q.   First of all, for whom did you work?

10:15:41 20      A.   Edward Jones.

10:15:42 21      Q.   And you said you opened an office for Edward

10:15:45 22  Jones?

10:15:45 23      A.   Correct.

10:15:46 24      Q.   And you worked there until 1987?

0:15:48 25      A.   No, sir.  Until about mid-'83, I believe.

10:15:52  1       Q.    Why did you leave that employ?

10:15:54  2       A.    In the early Eighties or right after I opened

10:15:58  3  the business, that's when oil field and cattle prices

10:16:01  4  went down; and that was the main income of Beeville.

10:16:05  5  And, so, financially it was not a real good -- not a

10:16:09  6  real good situation.  So, I closed that office.

10:16:12  7       Q.    After you closed that office, what did you do

10:16:14  8  for a living?

10:16:15  9       A.    I went to work as a manager for a grocery

10:16:18  10  store in Oklahoma.

10:16:19  11      Q.    What store?

10:16:20  12      A.    Cantwell's Grocery.

10:16:22  13      Q.    Where in Oklahoma?

10:16:23  14      A.    It was in Ratliff City, Oklahoma.

10:16:28  15      Q.    How long were you there?

10:16:29  16      A.    It was less than a year.

10:16:32  17      Q.    What did you do after?

10:16:34  18      A.    I bought a grocery store.

10:16:35  19      Q.    The name of which is what?

10:16:38  20      A.    Circle R Foods.

10:16:39  21      Q.    Did you run that store?

10:16:40  22      A.    Correct.

10:16:41  23      Q.    How long did you run that store?

10:16:43  24      A.    From approximately -- sometime in late '80 --

10:16:49  25  or sometime in '84 to about '86 or close to the end

| | | |
|---|---|---|
| 10:16:55 | 1 | of -- beginning of '86. |
| 10:16:56 | 2 | Q.    What happened to that store? |
| 10:16:58 | 3 | A.    I sold it. |
| 10:16:59 | 4 | Q.    What did you do after you sold it? |
| 10:17:01 | 5 | A.    Went to work for State Farm. |
| 10:17:03 | 6 | Q.    Prior to going to work for State Farm, did you |
| 10:17:05 | 7 | have any investigative training or background? |
| 10:17:08 | 8 | A.    No, sir. |
| 10:17:09 | 9 | Q.    That would be 1986? |
| 10:17:11 | 10 | A.    Correct. |
| 10:17:12 | 11 | Q.    Where were you first employed by State Farm? |
| 10:17:17 | 12 | A.    In Corpus. |
| 10:17:18 | 13 | Q.    And what were you doing for them in 1986 in |
| 10:17:22 | 14 | Corpus? |
| 10:17:22 | 15 | A.    When I was first hired, I investigated -- I |
| 10:17:28 | 16 | handled claims. |
| 10:17:29 | 17 | Q.    What kind of claims? |
| 10:17:31 | 18 | A.    Water losses, roof claims, slip-and-falls, |
| 10:17:39 | 19 | foundation, just any claim that came in that needed to |
| 10:17:44 | 20 | be handled. |
| 10:17:44 | 21 | Q.    Did you handle fire claims? |
| 10:17:45 | 22 | A.    Yes, sir. |
| 10:17:46 | 23 | Q.    How long did you do that general investigative |
| 10:17:49 | 24 | work? |
| 0:17:49 | 25 | A.    Until '89. |

| | | |
|---|---|---|
| 10:17:50 | 1 | Q.    And then in 1989, you moved to the SIU unit? |
| 10:17:54 | 2 | A.    Correct. |
| 10:17:55 | 3 | Q.    Why did you move to the SIU unit? |
| 10:17:57 | 4 | A.    There was an opening, and I applied for it. |
| 10:18:00 | 5 | Q.    And you worked in the SIU unit at what |
| 10:18:06 | 6 | location? |
| 10:18:07 | 7 | A.    At the Bandera office in San Antonio -- well, |
| 10:18:12 | 8 | first it was Westlake's office and then we were moved |
| 10:18:15 | 9 | over to the Bandera office in San Antonio. |
| 10:18:17 | 10 | Q.    How long were you in the office in |
| 10:18:19 | 11 | San Antonio? |
| 10:18:20 | 12 | A.    Until the summer of 1996. |
| 10:18:33 | 13 | Q.    In 1996, you previously testified you went to |
| 10:18:38 | 14 | Bloomington? |
| 10:18:38 | 15 | A.    Correct. |
| 10:18:38 | 16 | Q.    That's the home office? |
| 10:18:39 | 17 | A.    Correct. |
| 10:18:39 | 18 | Q.    What did you do in the home office? |
| 10:18:41 | 19 | A.    I worked for general claims, doing various |
| 10:18:45 | 20 | projects. |
| 10:18:45 | 21 | Q.    What kind of projects? |
| 10:18:46 | 22 | A.    One was the computer system.  We were going |
| 10:18:50 | 23 | from desktop computers to laptops.  I worked on that |
| 10:18:54 | 24 | project.  I worked on our E-mail system, worked on -- we |
| 10:18:59 | 25 | had a -- at one time there was a program called |

10:19:03  1  Discovery.  It was ideas that could be submitted to the

10:19:06  2  company for various things.  I worked on that project.

10:19:10  3      Q.    Anything other than general administrative

10:19:13  4  work?

10:19:13  5      A.    I worked on a claim review committee.

10:19:24  6      Q.    What did that committee do?

10:19:26  7      A.    It reviewed various claims from different

10:19:30  8  regions.

10:19:30  9      Q.    What kind of claims?

10:19:32  10     A.    All different kinds of claims.  They were

10:19:35  11  randomly selected, and there were just all kinds of

10:19:39  12  claims.

10:19:39  13     Q.    Was it to decide the treatment of the claim,

10:19:44  14  or was it to review the acts of the parties

10:19:48  15  investigating the claims?

10:19:49  16     A.    It was just a review of all the activities

10:19:52  17  involving the claim.  It entailed the investigation; it

10:19:57  18  entailed correspondence; it entailed payments.

10:20:01  19     Q.    What was the purpose of this review body, to

10:20:06  20  do what?

10:20:06  21     A.    Just to make sure that claims were being

10:20:09  22  handled properly and in a reasonable time.

10:20:12  23     Q.    So, this was an internal --

10:20:14  24     A.    Correct.

J:20:15  25     Q.    That is to say, it was an internal body for

| | | |
|---|---|---|
| 10:20:18 | 1 | the purpose of reviewing State Farm's own practices? |
| 10:20:21 | 2 | A.   Correct. |
| 10:20:22 | 3 | Q.   And you did that until 2000? |
| 10:20:24 | 4 | A.   I didn't do that full time the whole time I |
| 10:20:29 | 5 | was there.   That was -- |
| 10:20:30 | 6 | Q.   By you did that until 2000, I was referring to |
| 10:20:34 | 7 | you were in Bloomington, working in the home office? |
| 10:20:37 | 8 | A.   Oh, correct. |
| 10:20:38 | 9 | Q.   In 2000 you came back to the SIU unit in |
| 10:20:41 | 10 | Texas? |
| 10:20:41 | 11 | A.   Correct. |
| 10:20:42 | 12 | Q.   Which unit -- which location? |
| 10:20:45 | 13 | A.   I came back to Corpus. |
| 10:20:49 | 14 | Q.   And you've been there ever since? |
| 10:20:51 | 15 | A.   Correct. |
| 10:20:52 | 16 | Q.   Do you have any law enforcement training? |
| 10:20:55 | 17 | A.   Yes, sir. |
| 10:20:55 | 18 | Q.   Have you ever been employed as a law |
| 10:20:59 | 19 | enforcement officer? |
| 10:21:00 | 20 | A.   Not full time, no, sir. |
| 10:21:01 | 21 | Q.   Describe your part-time law enforcement |
| 10:21:05 | 22 | employment. |
| 10:21:05 | 23 | A.   Reserve. |
| 10:21:06 | 24 | Q.   Reserve for whom? |
| 10:21:07 | 25 | A.   I started reserve for a little bit in Nueces |

10:21:11  1  County, Nueces County Sheriff's Department, and also

10:21:16  2  the -- it was Sheriff's posse in Nueces County.  And

10:21:36  3  then in San Antonio it was -- I was with the Constable's

10:21:42  4  office for a short period of time, and then most of my

10:21:46  5  time in reserve was with Leon Valley Police Department.

10:21:50  6      Q.    So, you've been a reserve deputy sheriff in

10:22:00  7  Nueces County; is that correct?

10:22:02  8      A.    Correct.

10:22:03  9      Q.    What is a Sheriff's posse?

10:22:05  10     A.    It's the Nueces County mounted posse.  That's

10:22:11  11  just a different -- it's a reserve part of the Sheriff's

10:22:14  12  department.

0:22:15  13     Q.    What is the purpose of a posse?

10:22:17  14     A.    To assist the Sheriff's department.  Most of

10:22:21  15  them ride horses and they go up and down the beach or go

10:22:27  16  where a vehicle can't go.  They do parades and that sort

10:22:31  17  of thing as well, different functions.

10:22:34  18     Q.    You grew up on a ranch or are familiar with

10:22:37  19  horses?

10:22:38  20     A.    I have a ranch, yes, sir -- or my family has a

10:22:41  21  ranch.

10:22:41  22     Q.    Where is that ranch?

10:22:42  23     A.    Kennedy.

10:22:43  24     Q.    How big a spread?

0:22:45  25     A.    It's 1,000, 1100 acres.

| | | |
|---|---|---|
| 10:22:50 | 1 | Q.    Now, you've been a constable in San Antonio? |
| 10:22:53 | 2 | A.    Just for a short period of time. |
| 10:22:56 | 3 | Q.    Was that the city of San Antonio? |
| 10:22:57 | 4 | A.    Yes, sir. |
| 10:22:57 | 5 | Q.    And you're now a reserve officer with the Leon |
| 10:23:00 | 6 | Valley Police Department? |
| 10:23:01 | 7 | A.    No, sir. |
| 10:23:01 | 8 | Q.    How long were you -- was that the last police |
| 10:23:05 | 9 | entity you were involved with? |
| 10:23:06 | 10 | A.    Correct. |
| 10:23:07 | 11 | Q.    And what did you do for the Leon Valley |
| 10:23:10 | 12 | Police? |
| 10:23:11 | 13 | A.    Whatever the lieutenant or the chief |
| 10:23:17 | 14 | assignment was. |
| 10:23:17 | 15 | Q.    Was it investigative? |
| 10:23:19 | 16 | A.    It was mainly patrol and initial contact with |
| 10:23:23 | 17 | the public. |
| 10:23:24 | 18 | Q.    Did you have investigative duties for any of |
| 10:23:26 | 19 | these police bodies? |
| 10:23:28 | 20 | A.    What do you mean by -- |
| 10:23:28 | 21 | Q.    Did you -- |
| 10:23:31 | 22 | A.    Can you define "investigative"? |
| 10:23:32 | 23 | Q.    Sorry for talking over you. |
| 10:23:33 | 24 |     Were you asked to investigate a crime as a |
| 10:23:37 | 25 | detective would? |

FRANCESCON REPORTING SERVICE (281) 996-7881

10:23:37  1        A.    No, sir.

10:23:38  2        Q.    Were you the officer on the scene

10:23:41  3   investigating certain cases?

10:23:42  4        A.    I made the initial contact.  Say, for

10:23:48  5   instance, if there was a burglary that was reported, I

10:23:51  6   would go and make the initial contact, obtain the

10:23:55  7   information, and then turn it in, and then it would be

10:23:58  8   investigated from that point on; but I didn't do the

10:24:01  9   investigation.

10:24:01  10        Q.    How many years have you been acting as a

10:24:05  11   policeman or a Sheriff's deputy?  How many total years?

10:24:10  12        A.    Probably total, if you took all of it

0:24:15  13   together, probably four, maybe five years.

10:24:19  14        Q.    Who was your superior at Nueces County

10:24:29  15   Sheriff's Department?

10:24:30  16        A.    I don't remember.

10:24:30  17        Q.    Who was your superior in the Sheriff's posse?

10:24:35  18        A.    I don't know -- I don't remember who was in

10:24:41  19   charge of it.

10:24:43  20        Q.    Who was in charge of -- who was your superior

10:24:46  21   at the Leon Valley police?

10:24:48  22        A.    It was Bill Standard.

10:24:58  23        Q.    At the San Antonio Constable's office?

10:25:02  24        A.    I don't remember.

10:25:03  25        Q.    Did any of these offices ask you to

| | | |
|---|---|---|
| 0:25:06 | 1 | discontinue service? |
| 10:25:07 | 2 | A.    No, sir. |
| 10:25:08 | 3 | Q.    Did you receive any investigative training |
| 10:25:14 | 4 | from any of these police bodies, training in how to |
| 10:25:18 | 5 | investigate a crime? |
| 10:25:20 | 6 | A.    Nothing more than the initial contact phase, |
| 10:25:26 | 7 | no detective training or anything like that. |
| 10:25:28 | 8 | Q.    What training did you receive from State Farm |
| 10:25:32 | 9 | on how to investigate a matter? |
| 10:25:35 | 10 | A.    Well, from the time a claim is submitted, I |
| 10:25:39 | 11 | guess you could call it you're conducting an |
| 10:25:44 | 12 | investigation; but I went to various claim schools. |
| 0:25:52 | 13 | There are various claim schools to get your license. |
| 10:25:57 | 14 | Also there was -- well, they call it a basic claims |
| 10:26:02 | 15 | school, intermediate claims schools, and then I went to |
| 10:26:07 | 16 | estimating school.  I went to a school that was called |
| 10:26:10 | 17 | SIU 1 and SIU 2, and there were other seminars and |
| 10:26:19 | 18 | continuing education, various schools that I've |
| 10:26:23 | 19 | attended. |
| 10:26:24 | 20 | Q.    Are any of these claims schools basic, |
| 10:26:27 | 21 | intermediate, estimate, SIU 1 or SIU 2, are these |
| 10:26:33 | 22 | pass/fail? |
| 10:26:33 | 23 | A.    When you say pass/fail -- |
| 10:26:37 | 24 | Q.    You either pass out of the course with an |
| 0:26:41 | 25 | approval of some instructor or you are failed and you |

| | | |
|---|---|---|
| 10:26:44 | 1 | have to retake the course. |
| 10:26:45 | 2 | A.   The first school is a -- you have to pass the |
| 10:26:52 | 3 | very first school. |
| 10:26:53 | 4 | Q.   Basic? |
| 10:26:54 | 5 | A.   Correct. |
| 10:26:55 | 6 | Q.   Is there any qualifications, testing involving |
| 10:26:59 | 7 | passing out of these schools? |
| 10:27:00 | 8 | A.   There is, yes, sir. |
| 10:27:02 | 9 | Q.   In basic there is? |
| 10:27:03 | 10 | A.   Correct. |
| 10:27:04 | 11 | Q.   In intermediate? |
| 10:27:06 | 12 | A.   I know there were tests.  I don't know -- if |
| 0:27:13 | 13 | you -- if you say -- I never had to worry about failing. |
| 10:27:17 | 14 | So, I don't know what the ramifications -- if a person |
| 10:27:22 | 15 | failed those tests, I don't know if they had to retake |
| 10:27:25 | 16 | it or what.  I never had to worry about it. |
| 10:27:27 | 17 | Q.   Why didn't you have to worry about it? |
| 10:27:29 | 18 | A.   Because I passed. |
| 10:27:30 | 19 | Q.   You said you have a license? |
| 10:27:32 | 20 | A.   Correct. |
| 10:27:32 | 21 | Q.   A license to do what? |
| 10:27:33 | 22 | A.   To handle claims. |
| 10:27:35 | 23 | Q.   Who issues that license? |
| 10:27:36 | 24 | A.   The State of Texas. |
| 0:27:39 | 25 | Q.   What's that license number? |

10:27:40  1       A.     The license number is 289244.

10:28:08  2       Q.     What body of the State of Texas issues that

10:28:11  3  license?

10:28:12  4       A.     Department of Insurance, Texas Department of

10:28:15  5  Insurance.

10:28:15  6       Q.     May I see the card, please?

10:28:22  7       A.     (Complies) It's the back of it.

10:28:30  8       Q.     You've handed me a photocopy?

10:28:32  9       A.     Correct.

10:28:33  10      Q.     Where is the original currently?

10:28:35  11      A.     The original is in my desk at my office.

10:28:38  12      Q.     What year was this issued?  Well, I don't see

10:28:42  13  it on here.

10:28:44  14             Do you know what year you were issued this

10:28:46  15  license?

10:28:47  16      A.     That license -- I've had a license since 1986.

10:28:57  17      Q.     Very well, then.  Let's move to the particular

10:29:11  18  incident here.

10:29:17  19             You've had an opportunity over the course

10:29:20  20  of approximately a year and four months to investigate

10:29:25  21  this matter prior to the filing of the lawsuit that

10:29:29  22  brought us here today; is that correct, sir?

10:29:32  23      A.     Let's see.  The loss occurred January of

10:29:38  24  '03 -- and what was the time frame?

10:29:40  25      Q.     You had approximately a year and four months

10:29:41  1  to investigate this claim before the lawsuit was filed?

10:29:44  2      A.   Well, I became involved in February of '03;

10:29:51  3  and the lawsuit was filed in May of this year.

10:29:54  4      Q.   Okay.  Didn't you meet with Mr. Munoz in

10:29:56  5  January of '03?  Specifically didn't you have a meeting

10:30:04  6  with him on January 24th and then again on January 28th?

10:30:09  7      A.   January 24th, that's correct.  I was thinking

10:30:12  8  February, but January.

10:30:13  9      Q.   Let me just rephrase the question.

10:30:15  10          You had over a year to investigate this

10:30:18  11  claim before the lawsuit was filed.  Is that not

10:30:20  12  correct, sir?

10:30:20  13     A.   Again, the claim was initiated the first part

10:30:26  14  of the January through -- January, '03 -- and the

10:30:30  15  lawsuit was filed in May of '05.

10:30:33  16     Q.   In fact, Mr. Munoz went to Mr. Brown's office

10:30:36  17  on January 2nd of 2003, and personally made the claim,

10:30:41  18  having previously reported it to Agent Mark Brown the

10:30:45  19  day before?

10:31:27  20          If you'll look at Entry No. 4 on your

10:31:30  21  activity log dated 1-2-03 -- I'm sorry -- Entry No. 7

10:31:42  22  dated 1-3-03.

10:32:18  23          MR. TAYLOR:  What are you looking for?

10:32:21  24          THE WITNESS:  The January activity log.

10:32:27  25     A.   The initial agent acknowledgement was sent on

| | | |
|---|---|---|
| 10:32:31 | 1 | January the 2nd of '03. |
| 10:32:33 | 2 | Q.    (BY MR. RUSNAK) All right.  So, that's when, |
| 10:32:35 | 3 | to your knowledge, this claim became known to State |
| 10:32:38 | 4 | Farm? |
| 10:32:38 | 5 | A.    Correct. |
| 10:32:38 | 6 | Q.    Now, as a part of your investigation you had |
| 10:32:50 | 7 | an opportunity to determine certain renovations and |
| 10:32:56 | 8 | remodeling and enlarging of the home that Mr. Munoz had |
| 10:33:00 | 9 | performed in the years preceding to the fire, the date |
| 10:33:05 | 10 | of the fire being 1-1-03? |
| 10:33:07 | 11 | A.    Did I see -- |
| 10:33:08 | 12 | Q.    Did you have a chance to determine the extent |
| 10:33:12 | 13 | of the renovations, remodeling, and enlarging of the |
| 10:33:15 | 14 | home that Mr. Munoz had performed in the years preceding |
| 10:33:18 | 15 | the fire? |
| 10:33:19 | 16 | A.    Mr. Munoz did show me what additions and |
| 10:33:27 | 17 | renovations that he had done, yes, sir. |
| 10:33:30 | 18 | Q.    You had a chance to thoroughly investigate |
| 10:33:33 | 19 | that to your satisfaction? |
| 10:33:35 | 20 | A.    Well, I looked at what -- I looked at the home |
| 10:33:40 | 21 | and saw where he had been doing remodeling and he added |
| 10:33:45 | 22 | on to the home and I noticed that was not complete; but |
| 10:33:51 | 23 | up until that point, I saw what he had done. |
| 10:33:56 | 24 | MR. RUSNAK:  Object to the nonresponsive |
| 10:33:57 | 25 | portion of your answer. |

| | | |
|---|---|---|
| 10:33:58 | 1 | Q.    (BY MR. RUSNAK) Mr. Reed, what I asked you, |
| 10:34:00 | 2 | you had an opportunity to investigate the remodeling, |
| 10:34:07 | 3 | renovation, and enlarging of the home? |
| 10:34:08 | 4 | A.    What do you mean by "investigate the |
| 10:34:10 | 5 | renovation" or "remodeling"? |
| 10:34:10 | 6 | Q.    Did you have a chance to look into what |
| 10:34:12 | 7 | Mr. Munoz did? |
| 10:34:13 | 8 | A.    I saw what he had done, yes, sir. |
| 10:34:14 | 9 | Q.    So, you had a full and thorough opportunity -- |
| 10:34:16 | 10 | full and complete opportunity to determine what had been |
| 10:34:19 | 11 | done? |
| 10:34:19 | 12 | A.    I saw what -- he showed me what he had done, |
| 10:34:24 | 13 | and I saw what he -- I saw the work that he had |
| 10:34:26 | 14 | completed up to that point. |
| 10:34:27 | 15 | Q.    My question, sir -- |
| 10:34:28 | 16 | MR. TAYLOR:  He wants to know if you saw |
| 10:34:31 | 17 | everything that you needed to see or if there was more |
| 10:34:34 | 18 | information you wanted that you were not able to get as |
| 10:34:37 | 19 | it pertains to the renovation. |
| 10:34:40 | 20 | MR. RUSNAK:  That's not exactly my |
| 10:34:42 | 21 | question, but I'll -- |
| 10:34:43 | 22 | MR. TAYLOR:  I thought that's what you |
| 10:34:45 | 23 | were trying to ask.  I'm just trying to help. |
| 10:34:47 | 24 | MR. RUSNAK:  I understand.  I will ask |
| 10:34:48 | 25 | you, of course, to obey with the Federal Rules to the |

10:34:51  1  extent that we need to here.  I don't want you to --

10:34:52  2          MR. TAYLOR:  I'll be a potted plant if

10:34:55  3  you want.  I was just trying to help.

10:34:57  4          MR. RUSNAK:  No, I don't need you to be a

10:35:00  5  potted plant.  I just -- my questions are my questions.

10:35:02  6  I appreciate the effort you're trying to make.

10:35:02  7      Q.    (BY MR. RUSNAK) Can you answer your counsel's

10:35:03  8  question?  Did you see everything you needed to see

10:35:03  9  to --

10:35:05  10      A.    I saw the remodeling.  There were some

10:35:14  11  additions that were not finished yet, but -- I guess

10:35:18  12  I -- I guess I still don't understand what you're trying

10:35:20  13  to ask.

10:35:20  14      Q.    Did you see the photographs and the records of

10:35:24  15  the house as it was before he started the remodeling?

10:35:28  16      A.    I don't remember -- I don't remember seeing

10:35:31  17  that.

10:35:31  18      Q.    Did you request any?

10:35:33  19      A.    I don't think so.  I don't remember.

10:35:38  20      Q.    You are aware that he was either completing or

10:35:41  21  in the process of completing renovations to his home?

10:35:44  22      A.    Correct.

10:35:44  23      Q.    And you're aware that Mr. Munoz seven months

10:35:50  24  prior to the date of the fire, which is January 1st,

10:35:54  25  2003, had completed paying the mortgage on the home?

10:35:57  1        A.    Yes, sir.  He had told me that the mortgage
10:35:59  2  was completely paid off.
10:36:01  3        Q.    What did you do to confirm that that fact was
10:36:04  4  true?
10:36:04  5        A.    Well, I noticed on the claim file that there
10:36:12  6  was no mortgage company listed.  So, that told me that
10:36:15  7  the mortgage had been paid off.
10:36:16  8        Q.    So, you believed Mr. Munoz?
10:36:18  9        A.    Correct.  And it was also confirmed by company
10:36:23  10  records.
10:36:24  11        Q.    It's also true that State Farm gave Mr. Munoz
10:36:32  12  in writing the first specification of information that
?:36:35  13  it wanted on March 18th, 2003?
10:36:45  14        A.    What was your question?
10:36:47  15        Q.    It's true that State Farm gave Mr. Munoz its
10:36:50  16  first specification of the information it wanted him to
10:36:54  17  provide on March 18th of 2003?
10:36:57  18        A.    Mr. Munoz was made aware of some of the
10:37:06  19  information that would be requested prior to that, but
10:37:11  20  the list -- that list that you're looking at was
10:37:16  21  provided to him at that time.
10:37:16  22        Q.    There was a letter from you on March 18th,
10:37:19  23  2003, specifying certain information relating to his
10:37:23  24  financial matters and other things, correct, sir?
?:37:24  25        A.    Correct.

10:37:25  1      Q.    And that's the first letter specifying

10:37:27  2  information to Mr. Munoz?

10:38:54  3              Let me help speed this process.  Exhibit D

10:38:57  4  to the Defendant's, State Farm Lloyds, Motion For

10:39:02  5  Summary Judgment and Supporting Brief is the March 18th,

10:39:06  6  2003 letter that is Exhibit D.  Let me show you the

10:39:10  7  letter.  The Bates stamp number on the letter is

10:39:24  8  SF000527 through 530.

10:39:28  9              Is that the letter, sir (indicating)?

10:39:31  10      A.    That is the letter you're making reference to,

10:39:33  11  yes, sir.

10:39:33  12      Q.    And there were no prior letters specifying

10:39:36  13  information?

10:39:37  14      A.    That's what I'm looking for.  You want me to

10:39:40  15  say that there was no information requested prior to

10:39:42  16  that, and I'm looking that up.

10:39:44  17      Q.    In writing, sir.

10:41:19  18      A.    On January the 24th, there was a letter

10:41:23  19  indicating that -- pertinent records and documents.

10:41:29  20      Q.    My question, sir, is specification of

10:41:32  21  particular documents.

10:41:34  22      A.    You're talking -- which were specifically

10:41:38  23  requested?

10:41:38  24      Q.    Yes, in writing.

10:41:39  25      A.    Those were requested on --