```
16:10:40   1        Q.    So, the Munozes agreed to a polygraph and
16:10:43   2   submitted themselves, correct?
16:10:45   3        A.    That, I wouldn't know.  I don't know if they
16:10:49   4   agreed to it.  I know they did -- I know a polygraph was
16:10:56   5   taken, but I don't know the circumstances.
16:11:00   6        Q.    Did you ask the Cavazoses for fingerprints?
16:11:03   7        A.    No, sir.
16:11:07   8        Q.    You're aware that there were fingerprints
16:11:10   9   found on the windows on the east side of the Munoz
16:11:13  10   house?
16:11:13  11        A.    Correct.
16:11:14  12        Q.    Did you ask the Cavazoses for fingerprints to
16:11:18  13   compare them to the fingerprints found on the windows on
16:11:21  14   the east side of the house?
16:11:22  15        A.    No, sir.
16:11:23  16        Q.    Why not?
16:11:24  17        A.    Because we don't know when those fingerprints
16:11:28  18   were placed on the window or why they were on the
16:11:32  19   window.
16:11:34  20        Q.    Would it not be suspicious if Mr. or
16:11:39  21   Mrs. Cavazos or their children's fingerprints were on
16:11:42  22   the windows near the point of entry, apparently?
16:11:45  23        A.    It would be, but the police department had
16:11:48  24   taken the fingerprints and they were running them
16:11:51  25   through their system.
```

```
16:11:52   1         Q.    The police department took Mr. and
16:11:55   2   Mrs. Cavazos' fingerprints?
16:11:56   3         A.    The fingerprints from the window.
16:11:58   4         Q.    Okay.  And according to the criminal check you
16:12:03   5   ran on Mr. and Mrs. Cavazos, they had never been
16:12:07   6   arrested before.  So, it was unlikely that they would
16:12:09   7   have fingerprints on file?
16:12:12   8         A.    And I don't -- that's correct.
16:12:14   9         Q.    Okay.  You took a surveillance tape -- or,
16:12:22  10   rather, a surveillance tape was delivered in January
16:12:28  11   from the Munoz home that had been running at the time of
16:12:30  12   the fire, correct?
16:12:33  13         A.    I believe Mr. Munoz said that it was from the
16:12:37  14   day before.  I'm not sure.  I would have to go back and
16:12:41  15   look, but we do have a tape.
16:12:45  16         Q.    A person that comes to the -- did you pick up
16:13:21  17   a copy of the Cavazos videotape from their security
16:13:24  18   camera?
16:13:26  19         A.    No, sir.
16:13:26  20         Q.    Did you know they had a security camera?
16:13:29  21         A.    Yes, sir.
16:13:30  22         Q.    Why didn't you pick up their tape?
16:13:32  23         A.    I just didn't.
16:13:35  24         Q.    Did you go to HEB where the lighter fluid was
16:13:42  25   purchased and ask for their security tapes?
```

| | | | |
|---|---|---|---|
| 16:13:44 | 1 | A. | No, sir. |
| 16:13:45 | 2 | Q. | Did you intend to and you just didn't do it? |
| 16:13:48 | 3 | A. | I didn't think about it. |
| 16:13:49 | 4 | Q. | Well, sir, I'll represent to you that I found |
| 16:13:51 | 5 | a note in your handwriting -- | |
| 16:13:54 | 6 | A. | Oh, I did -- go ahead. |
| 16:13:55 | 7 | Q. | -- that indicated that you were going to go |
| 16:13:58 | 8 | get those tapes. Does that jog your memory now, that | |
| 16:14:02 | 9 | you intended to go get those tapes? | |
| 16:14:05 | 10 | A. | That may have been a thought, but I didn't do |
| 16:14:08 | 11 | it. | |
| 16:14:08 | 12 | Q. | And you didn't follow up with Watson City |
| 16:14:11 | 13 | Drugs to get Ms. Munoz's employment records after you | |
| 16:14:14 | 14 | sent the initial letter? | |
| 16:14:16 | 15 | A. | I would have to go back and look, but I |
| 16:14:18 | 16 | thought I sent a second request. | |
| 16:14:20 | 17 | Q. | I find none in the file, sir; and if there |
| 16:14:23 | 18 | isn't one in the file, you didn't follow up, correct? | |
| 16:14:26 | 19 | A. | I would have to look through it. |
| 16:14:27 | 20 | Q. | It's a fair assumption that if there's not a |
| 16:14:31 | 21 | follow-up letter in the file, then you didn't follow | |
| 16:14:34 | 22 | you? | |
| 16:14:34 | 23 | A. | That's a possibility. |
| 16:14:34 | 24 | Q. | Is it a fair assumption? |
| 16:14:36 | 25 | A. | If it's not in there, it's a fair assumption. |

| | | |
|---|---|---|
| 16:14:38 | 1 | Q. And you failed to copy the financial records |
| 16:14:40 | 2 | of Mr. Garza's office by bringing a copier down with |
| 16:14:45 | 3 | personnel and copying them after Mr. Garza offered to |
| 16:14:49 | 4 | let that happen? |
| 16:14:49 | 5 | A. To me to bring a copier down there and copy |
| 16:14:52 | 6 | them? |
| 16:14:53 | 7 | Q. Yes, yes. |
| 16:14:54 | 8 | A. That's correct. I did not go -- I did not |
| 16:14:56 | 9 | take a copier down there, but I agreed to pay for the |
| 16:14:59 | 10 | copies to be made. |
| 16:15:00 | 11 | Q. That's not what I asked you, sir. |
| 16:15:02 | 12 | You just didn't go down and make the |
| 16:15:02 | 13 | copies? |
| 16:15:05 | 14 | A. I didn't make them personally, no, sir. |
| 16:15:06 | 15 | Q. And you didn't send anyone from State Farm |
| 16:15:08 | 16 | with a copier down there to do it? |
| 16:15:10 | 17 | A. No, sir. |
| 16:15:11 | 18 | Q. Do you know why Ms. Yolanda Perez at Jano's |
| 16:15:26 | 19 | Super Store is denying that you interviewed her? |
| 16:15:29 | 20 | A. Did you say did I know? |
| 16:15:30 | 21 | Q. Yes. Do you know why? |
| 16:15:31 | 22 | A. Do I know why? No, sir. |
| 16:15:33 | 23 | Q. Do you know go talk to anyone at Alamo Lumber |
| 16:15:43 | 24 | concerning Mr. Munoz's credit? |
| 16:15:44 | 25 | A. Not that I remember, no, sir. |

```
16:15:47   1          Q.   Do you know who Alamo Lumber is with respect
16:15:50   2    to Mr. Munoz?
16:15:51   3          A.   I believe that's where he bought some of his
16:15:53   4    materials for his house.
16:15:54   5          Q.   For the Cavazos' house?
16:15:56   6          A.   I think that was -- what I remember is that's
16:16:04   7    where he bought materials.  I'm not certain what job it
16:16:08   8    was for.
16:16:08   9          Q.   Did you talk to anyone at Alamo Lumber
16:16:12  10    concerning his credit worthiness?
16:16:13  11          A.   Not that I remember, no, sir.
16:16:16  12          Q.   And you didn't actually go over and talk to
16:16:20  13    Homer Rodriguez?
16:16:20  14          A.   Not in person, no, sir.
16:16:22  15          Q.   Now, if you directed an investigation
16:16:42  16    specifically towards the prosecution of Mr. Munoz, that
16:16:46  17    would be in violation of State Farm's own policies,
16:16:50  18    would it not?
16:16:51  19          A.   That was not done, no, sir.
16:16:53  20          Q.   But it would be a violation of State Farm's
16:16:55  21    own policies?
16:16:56  22          A.   That is not a policy of State Farm, to go
16:16:59  23    after anybody.
16:16:59  24          Q.   So, if you intentionally directed in a
16:17:02  25    malicious manner an investigation towards obtaining the
```

```
16:17:06   1  prosecution of Mr. Munoz and Mrs. Munoz -- now
16:17:08   2  Mrs. Villareal -- then that would be a violation of
16:17:11   3  State Farm's policies, correct?
16:17:14   4       A.   The policies of State Farm are not to go after
16:17:17   5  anybody.
16:17:17   6       Q.   So, if you did that, you would be in violation
16:17:19   7  of your employer's own policies?
16:17:22   8       A.   That would not be a proper investigation.
16:17:28   9       Q.   Did you volunteer information to Detective
16:17:35  10  Adame without a subpoena or without a Texas Insurance
16:17:39  11  Code Section 5.46 request?
16:17:42  12       A.   Not that I know of.
 6:17:46  13       Q.   Did you seek the prosecution of Munoz with
16:17:54  14  Detective Adame?
16:17:55  15       A.   No, sir.
16:17:56  16       Q.   Did you seek the prosecution of anyone with
16:17:59  17  Detective Adame?
16:18:01  18       A.   No, sir.
16:18:01  19       Q.   Did you provide information to the State Farm
16:18:09  20  marshal without a clear request or a subpoena -- a clear
16:18:15  21  request under Section 5.46 or a subpoena?
16:18:18  22       A.   No, sir.
16:18:19  23       Q.   Did you provide unrequested information to the
16:18:25  24  fire marshal in advance of a subpoena or request under
16:18:29  25  Section 5.46?
```

16:18:31  1      A.   No, sir.
16:18:32  2      Q.   Do you ever inform Mr. and Mrs. Munoz -- now
16:19:02  3   Mrs. Villareal -- that they were a suspect in an arson
16:19:08  4   investigation?
16:19:09  5      A.   During conversations with them, I mentioned
16:19:20  6   that there would be a complete investigation and that we
16:19:25  7   were going to obtain all different kinds of records.  I
16:19:30  8   don't think I ever used "suspect," but that we would be
16:19:33  9   interviewing witnesses and other individuals and
16:19:38  10  following up on information and names that they
16:19:41  11  provided; but I didn't use "suspect."
16:19:45  12     Q.   Did you ever say words to the effect, "Luis
16:19:48  13  Munoz, we think you committed this fire"?
16:19:52  14     A.   No, sir.
16:19:53  15     Q.   "You committed this arson"?
16:19:54  16     A.   No, sir.
16:19:55  17     Q.   Now, there was no delayed ignition device
16:20:01  18  found in the context of this fire, was there?
16:20:04  19     A.   Not that I'm aware of, no, sir.
16:20:05  20     Q.   And witnesses placed Mr. Munoz at his office
16:20:08  21  at the time of the fire; is that correct?
16:20:10  22     A.   There are witnesses that place him when the
16:20:15  23  fire was reported by the -- or when it was acknowledged
16:20:20  24  on the card -- the 9-1-1 card -- at 8:47.
16:20:27  25     Q.   Do those witnesses not also place him there

| | | |
|---|---|---|
| 16:20:30 | 1 | for a period of hours before that time? |
| 16:20:33 | 2 | A.   That's what the witnesses say. |
| 16:20:40 | 3 | Q.   Do you have any reason to disbelieve those |
| 16:20:42 | 4 | witnesses who saw Mr. Munoz at his office? |
| 16:20:45 | 5 | A.   There's a question regarding the exact |
| 16:20:55 | 6 | timeline, yes. |
| 16:20:56 | 7 | Q.   What question? |
| 16:20:57 | 8 | A.   Well, some of the neighbors mentioned that |
| 16:21:02 | 9 | Mr. Munoz was at or around the residence as late as |
| 16:21:10 | 10 | 7:30, within 45 minutes of the fire being reported. |
| 16:21:17 | 11 | Q.   Which witness, sir, because I've only seen a |
| 16:21:20 | 12 | report as late as 6:30? |
| 16:21:22 | 13 | A.   Mrs. Cavazos. |
| 16:21:24 | 14 | Q.   Oh, Mrs. Cavazos. |
| 16:21:26 | 15 | A.   And one of the neighbors said that after dark, |
| 16:21:29 | 16 | she was coming home and noticed Mr. Munoz in the |
| 16:21:35 | 17 | neighborhood.  So, you know, there's some questions |
| 16:21:39 | 18 | regarding timelines.  So, one person is saying one time |
| 16:21:45 | 19 | and another person saying something else. |
| 16:21:47 | 20 | Q.   Mrs. Cavazos is also a suspect in this fire, |
| 16:21:51 | 21 | is she not? |
| 16:21:52 | 22 | A.   We discussed -- or we contacted Ms. Cavazos |
| 16:22:00 | 23 | and questioned her and discussed the fire and where she |
| 16:22:05 | 24 | was at the time of the fire, yes, sir. |
| 16:22:06 | 25 | Q.   And witnesses place Carmela Munoz in Florida |

```
16:22:11   1   at the time of the fire; isn't that true?
16:22:13   2        A.   That's what they've indicated, yes, sir.
16:22:15   3        Q.   Any reason to believe she wasn't in Florida?
16:22:21   4        A.   I don't know; but in one of the police
16:22:25   5   reports, it said that she learned about the fire.  It
16:22:28   6   may have -- I don't know what they're referring to, but
16:22:31   7   in one of the police reports it indicated that she
16:22:35   8   became aware of the fire through a scanner.
16:22:37   9        Q.   Do you have any evidence that she was in Texas
16:22:40  10   at the time of the fire?  Are you aware of any evidence?
16:22:44  11        A.   At one time Mr. Cavazos that lives on the
16:22:49  12   corner, Harry's father, said that he saw Ms. Munoz at
16:22:58  13   the residence -- it was either the day before or the day
16:23:02  14   of the fire.
16:23:04  15        Q.   And he later corrected that in a subsequent
16:23:07  16   statement to be 10:00 p.m. the date following the fire,
16:23:10  17   did he not?
16:23:10  18        A.   Correct.
16:23:11  19        Q.   Any witnesses to the removal of personal
16:23:18  20   property prior to the fire other than the four-wheeler
16:23:23  21   that was with Mr. Pena or the truck that he swapped out?
16:23:29  22        A.   The Expedition and his F-250?
16:23:32  23        Q.   Yes.
16:23:32  24        A.   A neighbor noticed the Ford Expedition backed
16:23:37  25   into the garage.
```

```
16:23:37   1        Q.   That was the Cavazoses, was it not?
16:23:40   2        A.   Correct.
16:23:41   3        Q.   And they claim that they were loading things
16:23:44   4   into it a couple of days before?
16:23:45   5        A.   That's correct, or sometime before the fire.
16:23:47   6        Q.   And you confirmed that Mr. Munoz was doing
16:23:53   7   work on January 1st and January 2nd, as he had stated he
16:23:58   8   was?
16:23:58   9        A.   He submitted affidavits from the owner of the
16:24:01  10   home and also the tenants.
16:24:02  11        Q.   You have no reason to believe that he wasn't
16:24:05  12   doing work on those days?
16:24:06  13        A.   No, sir.
16:24:07  14        Q.   There was also evidence that there was broken
16:24:07  15   windows -- I'm sorry.  Let me start again.
16:24:30  16             There was evidence there were broken
16:24:31  17   windows on the east side of the house --
16:24:37  18             MR. GARZA:   South side.
16:24:39  19        Q.   (BY MR. RUSNAK) -- south side?  I'm sorry.
16:24:41  20        A.   There were windows that the glass was out of,
16:24:44  21   yes, sir.
16:24:44  22        Q.   Has an investigation been conducted as to how
16:24:47  23   those windows were broken?
16:24:48  24        A.   My understanding from the firemen was that
16:24:51  25   they thought it was from the heat, heat of the fire.
```

```
16:24:53   1        Q.   Did State Farm conduct an investigation to
16:24:56   2   determine whether or not those windows had been broken
16:24:58   3   by the fire or someone had broken those windows to get
16:25:01   4   entry into the house?
16:25:02   5        A.   There was a cause and origin expert that
16:25:05   6   looked at the fire, and he did not -- he determined that
16:25:08   7   he could not find any forced entry into the home.
16:25:11   8        Q.   Was there a specific determination as to
16:25:14   9   whether those windows had been broken in or broken out?
16:25:17  10        A.   I wasn't there at the time of that
16:25:21  11   investigation.  So, it would be contained in his report.
16:25:28  12        Q.   By the way, as there evidence of an open
16:25:31  13   window?
16:25:31  14        A.   Yes, there was.
16:25:32  15        Q.   Okay.  And was that near the point of
16:25:34  16   ignition?
16:25:36  17        A.   It was in a separate room.
16:25:38  18        Q.   In the opening days of this investigation on
16:25:57  19   January 2nd or January 3rd, you made a comment to Lee
16:26:05  20   Levo that he shouldn't attend a police interview of
16:26:10  21   Mr. Munoz to avoid malicious prosecution.  Why did you
16:26:15  22   tell Mr. Levo -- why did you warn Mr. Levo about
16:26:21  23   malicious prosecution?
16:26:22  24        A.   Mr. Levo had called and said that the
16:26:25  25   detective was going to be visiting with Mr. Munoz and he
```

| | | |
|---|---|---|
| 16:26:29 | 1 | wanted -- Mr. Levo wanted to know if it would be proper |
| 16:26:32 | 2 | for him to attend.  And I told Mr. Levo that, no, that |
| 16:26:37 | 3 | the police the police and fire, they conduct their own |
| 16:26:42 | 4 | investigation; and State Farm, we conduct our own |
| 16:26:46 | 5 | investigation; and I said it would not be proper for him |
| 16:26:50 | 6 | to attend any proceedings involving the police |
| 16:26:56 | 7 | investigation. |
| 16:26:56 | 8 | Q.    You don't depend on the police investigation |
| 16:26:59 | 9 | to make your own determinations, do you? |
| 16:27:01 | 10 | A.    Not our own determination, but it is a -- if |
| 16:27:07 | 11 | they have any evidence that they share with us, then |
| 16:27:11 | 12 | that could be part of the -- used in the evaluation, but |
| 6:27:19 | 13 | not their determination. |
| 16:27:21 | 14 | Q.    But it's State Farm's obligation under the |
| 16:27:23 | 15 | policy to make its own independent determination, |
| 16:27:26 | 16 | correct? |
| 16:27:26 | 17 | A.    Correct. |
| 16:27:41 | 18 | MR. RUSNAK:  It is now approximately |
| 16:27:43 | 19 | 4:30.  I have run out of time, and I still have more to |
| 16:27:49 | 20 | go. |
| 16:27:50 | 21 | MR. TAYLOR:  I recognize the court |
| 16:27:51 | 22 | reporter has to leave and that you have a flight to |
| 16:27:53 | 23 | catch.  Are you in the office tomorrow? |
| 16:27:55 | 24 | MR. RUSNAK:  I am. |
| 16:27:56 | 25 | My proposition is this, is that we |

```
16:28:04   1  continue this by telephone.
16:28:06   2              MR. TAYLOR:  When?
16:28:07   3              MR. RUSNAK:  Friday or Monday.
16:28:10   4              MR. TAYLOR:  Can you stay an extra day,
16:28:15   5  or can you do it from Corpus?
16:28:22   6              THE WITNESS:  I can stay.
16:28:23   7              MR. TAYLOR:  Let's just pick up in the
16:28:25   8  morning.
16:28:28   9              MR. RUSNAK:  I think that's the only
16:28:30  10  reasonable way.  If you would return in the morning
16:28:35  11  and --
16:28:36  12              MR. TAYLOR:  What time do you want to
16:28:38  13  start?
16:28:40  14              MR. RUSNAK:  How about 11:00 o'clock,
16:28:44  15  10:00 o'clock your time?
16:28:46  16              MR. TAYLOR:  10:00 o'clock is fine.
16:28:51  17              MR. RUSNAK:  I don't see another way to
16:28:53  18  do that.
16:28:54  19              MR. TAYLOR:  Off the record.
          20          (Deposition adjourned at 4:28 p.m.)
          21
          22
          23
          24
          25
```

```
 1              CHANGES AND SIGNATURE OF THOMAS LEE REED
 2                              VOLUME 1
 3                     TAKEN OCTOBER 20TH, 2005
 4  PAGE    LINE      CHANGE                              REASON
 5  _____
 6  _____
 7  _____
 8  _____
 9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____
```

1        I, THOMAS LEE REED, have read the foregoing
2   deposition and hereby affix my signature that same is
3   true and correct, except as noted above.
4
5
6                            _____
                                    THOMAS LEE REED
7
8   THE STATE OF _____ )
9   COUNTY OF _____ )
10
11        Before me, _____ on this
12  day personally appeared THOMAS LEE REED, known to me (or
13  proved to me under oath or through _____
14  _____)(description of identity card or
15  other document) to be the person whose name is
16  subscribed to the foregoing instrument and acknowledged
17  to me that they executed the same for the purposes and
18  consideration therein expressed.
19
          Given under my hand and seal of office this
20  _____ day of _____, _____.
21
22                           _____
                             NOTARY PUBLIC IN AND FOR
23                           THE STATE OF _____
24
25  My Commission Expires_____

```
 1  STATE OF TEXAS          )
 2  COUNTY OF HARRIS        )
 3                REPORTER'S CERTIFICATION
 4                 TO THE DEPOSITION OF
 5                    THOMAS LEE REED
 6                       VOLUME 1
 7              TAKEN ON OCTOBER 20TH, 2005
 8       I, Karen M. Kane, Certified Shorthand Reporter in
 9  and for the State of Texas, hereby certify that this
10  deposition transcript is a true record of the testimony
11  given by the witness named herein, after said witness
12  was duly sworn by me.
13       I further certify that I am neither attorney nor
14  counsel for, nor related to, nor employed by any of the
15  parties or attorneys in the action in which this
16  proceeding was taken.  Further, I am not a relative or
17  employee of any attorney of record in this cause, nor do
18  I have a financial interest in the action.
19       Certified to by me this 24th day of
20  October, 2005.
21
22                         _____
                           Karen M. Kane, CSR
23                         Texas CSR 4186
                           Expiration Date: 12-31-2005
24                         FRANCESCON REPORTING SERVICE
                           1506 East Broadway, Suite 200
25                         Pearland, Texas 77581
                           (281) 996-7881
```