United States District Court
Southern District of Texas
FILED

OCT 2 6 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUIS C. MUNOZ and<br>CARMELA MUNOZ<br>　　　Plaintiffs,<br><br>v.<br><br>STATE FARM LLOYDS,<br><br>　　　Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. B-04-141<br><br><br><br>JURY DEMANDED |

**PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT STATE FARM LLYODS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Luis C. Munoz and Carmela Munoz ("Munoz") respond to Defendant State Farm Llyods' Motion for Summary Judgment ("State Farm's Motion") as follows:

**A.**

**PLAINTIFFS' OBJECTIONS TO DEFENDANT STATE FARM LLYODS' SUMMARY JUDGMENT EVIDENCE**

1.　　Exhibit A to State Farm's Motion, the Affidavit of Tom Reed ("Reed Affidavit"), and specifically paragraph 32 of the Reed Affidavit, is offered by Defendant State Farm Lloyds ("State Farm") to prove the truth of the matters asserted. Said affidavit testimony purportedly recounts unsworn, out-of-court oral or written assertions or non-verbal conduct by *non-party declarant* Karen Barnett of Barnett's Bookkeeping ("Barnett"). Such affidavit testimony is hearsay under Fed. R. Civ. Evid. 802, and is not admissible under any provision of Fed. R. Civ. Evid. 803 or 804. Moreover, such affidavit testimony is not subject to the residual exception under Fed. R. Civ. Evid. 807 because the unsworn statements offered by Tom Reed do not have

148105v1  097/24101

equivalent circumstantial guarantees of trustworthiness, and are not more probative than other evidence that State Farm Lloyds could have procured through reasonable efforts, such as an affidavit or deposition.

## B.

## STATEMENT OF FACTS

2.  State Farm issued State Farm Lloyds Policy No. 83-J4-5565-2 ("Policy") to Munoz insuring their home at 829 West White Ave., Raymondville, Texas ("Insured Premises") against loss by fire. On January 1, 2003 the Policy was in full force and effect. A true and correct copy of the Policy is attached to the Affidavit of Luis Munoz ("Munoz Aff.") as Exhibit AA. On January 1, 2003 a fire was set at the Insured Premises. Munoz reported the fire to his State Farm agent on January 2, 2003, and made a claim, in person, at the office of his State Farm agent, Mark Brown, Munoz Aff. p.2.

3.  Munoz did not set the fire, and was not responsible for setting it. See the Affidavit of Willacy County, Texas District Attorney, Juan Angel Guerra, p.1; Munoz Aff., p. 2; Affidavit of Carmela Munoz, p.1; and Affidavit of Omel Munoz, p.1. State Farm's own lead investigator, Tom Reed ("Reed"), admitted that no credible person[1] has alleged that Luis C. Munoz, Carmela Munoz, their son, or anyone acting on their behalf, was known to be at the Insured Premises for hours of the fire, and the fire was not started with any known delayed ignition devise. **Reed Depo. p.167 *L.17*, p.184 *L.21*, p.184 *L.25*, p.185 *L.5*, and p.185 *L.9*.**

4.  At the time of the fire, the next-door neighbors of Munoz, Harry and Minerva Cavazos and their sons ("Cavazos"), were present at the Insured Premises. The Cavazos were

---

[1] Reed noted in his deposition that Minerva Cavazos, a suspect in the arson, claims to have seen Luis Munoz approximately 45 minutes before she noticed the fire. **Reed Depo. p.187 *L.9 to L.17*.**

involved in a bitter, two-year long dispute with Munoz involving Cavazos failure to pay Munoz for renovations to their home and the resulting foreclosure of a mechanics lien by Munoz, which resulted in over twenty calls to the Raymondville police. Prior to the fire Munoz had reported both death and arson threats by Cavazos to the police, and Cavazos were suspected in prior damage to Munoz's business premises a fire at the Insured Premises 8 months earlier, at night while Munoz were asleep in their home. The Cavazos knew that Munoz were not home at the time of the fire, and cannot produce a single independent alibi witnesses. Moreover, Cavazos, earlier on the day of the fire, admits to shopping at the grocery store from which the incendiary agent was likely purchased, and the 17-year old son, Michael Cavazos, shortly after the fire, was reportedly bragging at school of involvement in the fire. Cavazos were the first to report the fire, after having noticed it as much as 17 minutes earlier, and gave conflicting stories to the police and State Farm regarding their behavior and the existence of open and broken windows at the Insured Premesis. Cavazos were also the first and principal witnesses to report purportedly 'suspicious' activity by Munoz. **Tom Reed Depo. p.193 *L. 17* to p. 199 *L. 3*; p. 145 *L. 25* and p. 162 *L. 16 to L. 23*; Ex. Q (Cert. Raymondville Police Department Reports).**

5.  On January 1, 2003, Plaintiffs were not in poor financial condition, and knew of no pressing, material debts or financial obligations which they could not readily pay from their income and assets. Munoz had recently completed, renovation, remodeling and enlarging the Insured Premises, and had paid all outstanding debt relating to their home. Affidavit of Martha Galarza, p.1-2; Affidavit of Karen Barnett, p. 1; Munoz Aff., p. 1.

6.  State Farm, prior to denying the claim of Munoz, failed to investigate and wrongfully assumed, without factual support, that: (a) Munoz had lost the adversary action filed by Cavazos in the United States Bankruptcy Court (later reversed by this Court) concerning the

mechanic's lien eleven months prior to the fire;[2] (b) Munoz knew of an Internal Revenue Service levy for taxes prior to the fire;[3] (c) Munoz knew the amount of federal taxes he would likely owe for 1999 to 2001 prior to the fire; (d) the $70,000.00 advanced to Munoz by Ben Capetillo for partnership to be formed was an obligation that Munoz expected to repay on the date of the fire; and, (e) Munoz knew of a 10-year old judgment for approximately $5,600.00. **Reed Depo. p. 85 l. 5; p. 90 l. 19 to l. 20; p. 93 l. 9 to l. 10; p. 103 l. 4; p. 104 l. 8 to p. 105 l. 25 and p. 109 l.2 to p. 111 l. 9.** In failing to investigate these matters in any fashion, State Farm did not know that Munoz, to his knowledge on the date of the fire, was solvent and capable of paying his known and expected debts from his income and assets.[4]

7.  State Farm, despite having begun its investigation on January 2, 2003,[5] breached the terms, spirit and intent of the Policy by failing to specify information Munoz was required to provide to State Farm within **15 days** of receipt of notice of the claim.[6] State Farm's lead investigator, Tom Reed ("Reed"), could not explain this failure, and was unable to support his claim in deposition[7] that he had specified information to be provided in January 2003. In fact, State Farm failed to specify any information to be provided to State Farm until March 18, 2003, over **70 days** after State Farm commenced its investigation.[8] On March 18, 2003, State Farm

---

[2] The Judgment in Harry J. Cavazos, et ux. V. Luis Munoz d/b/a Munoz Roofing and Construction, Adversary No.: 01-21-1-B was entered January 15, 2003, two weeks after the fire. A true and correct certified copy of the Judgment is attached as **Exhibit Q**. State Farm misstates this fact in Defendant State Farm Llyod's Motion for Partial Summary Judgment on Plaintiff's Extra-Contractual Claims and Supporting Brief, at p. 6, claiming, without factual support, the lien had been deemed unperfected that eleven months before the fire, leaving Munoz unable to collect the money owed by Cavazos at the time of the fire.
[3] Barnett Aff., at 1. Karen Barnett, the bookkeeper for Munoz, received the levy at a post office box controlled by her and did not inform Munoz of the levy until after the fire.
[4] Munoz paid off the mortgage for the Insured Premises in 2002. **Munoz Aff., p. 1**
[5] Exhibit A, State Farm's Motion, p. 1, ¶3.
[6] Exhibit A, State Farm Lloyds Policy No. 83-J4-5565-2, Section I – Conditions, 14. Our Duties After Loss, which states that "[w]ithin 15 days after we receive your written notice of claim, we must: (1) acknowledge receipt of the claim . . . ; (2) begin any investigation of the claim; (3) **specify the information you must provide in accordance with "Your Duties After Loss"** . . .
[7] Ex. A, State Farm's Motion, p.1
[8] Exhibit D, State Farm's Motion, pp. 1-3.

finally requested documents, but failed to request any financial documents, other than tax returns, despite having already determined that arson was the likely cause of the fire.[9] Reed could not explain this delay. **Reed Depo. p.45 *L.25* to p.46 *L.8*, p.51 *L.6* to p.52 *L.1*, p.52 *L.6* to *L.9*, p.53 *L.8* to *L.23*, p.51 *L.20* to p.52 *L25*.**

8.  On April 22, 2003, while working diligently to provide State Farm with the documents requested, Munoz advised State Farm in writing that his bookkeeper had not prepared the requested tax returns, and that those returns would be provided when they were prepared. At that time, Munoz delivered a signed authorization to State Farm permitting release to State Farm of Munoz's financial, employment and credit information. Munoz Aff., p.3. Three weeks later, on May 14, 2003, after **130 days** had passed since its investigation had commenced, State Farm, requested documents reflecting Munoz's financial condition and income.[10] Between March 18, 2003 and May 14, 2003, State Farm did nothing to investigate the financial condition of Munoz, other than ask for the address and phone number of Munoz's bookkeeper.[11] **Reed Depo. p.53 *L.24* to p.56 *L.10*.**

9.  State Farm, knowing that the requested tax returns were not available, and having advised Munoz that tax returns need not be submitted as proof of income on May 14, 2003,[12] then waited until August 26, 2003,[13] to request specific, additional information from Munoz concerning business income, despite having authority from Munoz to obtain financial, employment and credit information at least 5 weeks beforehand. State Farm did not request to meet with any third party from whom financial documents could be obtained until October 9,

---

[9] Exhibit C, State Farm's Motion, p. 1.
[10] Exhibit E, State Farm's Motion, pp. 1-2.
[11] Exhibit G, State Farm's Motion, p. 1.
[12] Exhibit H, State Farm's Motion, p. 2.
[13] Exhibit O, State Farm's Motion, pp. 1-3.

2003, despite having known the identity of Karen Barnett and having the necessary authorization in hand months prior.[14] **Reed Depo. p.231 *L. 7 to L.20* and p.123 *L. 7.***

10. By the end of 2003, all documents requested regarding the value of the loss had been provided to State Farm. **Reed Depo. p.236 *L.14 to L.18.***

11. On January 20, 2004,[15] State Farm finally asked to review the business records of Luis C. Munoz that were in the possession of the bookkeeper. Munoz promptly offered three dates to State Farm for that review in early February 2004[16]. At that review the bookkeeper failed to present organized records.[17] Thereafter Munoz dismissed the bookkeeper, recovered some of the business records, had the records organized by his counsel, and produced such records to State Farm on March 29, 2004. Munoz Aff., p. 4.

12. No one from State Farm requested the Munoz's counsel send the documents retrieved from Karen Barnett to a third party copy service for reproduction. Affidavit of Veronica Coronado ("Coronado Aff."), p.1. The correspondence of State Farm does not reflect any such request. **Reed Depo. p.68 *L.3* to p.70 *L.9.***

13. Reed, after inspecting the business records at length on March 29, 2004 demanded that all of the documents, which comprised two banker's boxes of receipts, be copied by Munoz and sent to him. Mr. Reed did not attempt to copy any of the business records. Affidavit of Coronado Aff., p.1.

14. On April 5, 2005, Munoz, in response to State Farm's request that Munoz copy the business records themselves, offered to allow State Farm to copy the documents at Munoz's counsel's office using their own equipment and personnel. State Farm did not respond to that

---

[14] Exhibit Q, State Farm's Motion, p. 1.
[15] Exhibit V, State Farm's Motion.
[16] Exhibit Y, State Farm's Motion.
[17] Exhibit Z, State Farm's Motion

offer, request the documents be sent to a third party for copying, or make any other arrangements to copy the business records at issue. At no time did Munoz refuse to allow State Farm to copy the business records that Tom Reed inspected at length on April 29, 2004.[18] **Reed Depo., at p.64 L. 70 to p.65 L.2.**

15. On May 4, 2004, more than thirty days since the inspection of documents at Mr. Garza's office, without any further request for documents forthcoming from State Farm or a decision concerning payment of benefits by State Farm, Plaintiffs filed suit seeking damages for engaging in unfair settlement practices in for, inter alia, failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim; failing to affirm or deny coverage within a reasonable time, and unreasonably delaying an offer of settlement by contending that Munoz was responsible for the loss. Munoz also brought suit for breach of contract and breach of the duty of good faith and fair dealing.

16. On January 11, 2005, Defendant finally denied Plaintiffs' claim[19] stating that, among other purported reasons, Munoz had not complied with policy conditions in providing pertinent documents and information. Reed, State Farm's lead investigator, swore under oath[20] on September 9, 2005 that the only documents that State Farm was "still waiting for Mr. and Mrs. Munoz to provide copies of" were "personal and financial records, Mrs. Munoz's calendar book, all contracts or agreements regarding partnership agreements with Ben Capetillo, all of Mrs. Munoz's employment records, including requests for vacation or sick leave, and documents

---

[18] Exhibit CC, State Farm's Motion, pp. 1-2.
[19] Exhibit DD, State Farm's Motion, pp. 1-3.
[20] See Affidavits of Non-parties Raul Pena, Sr. ("Pena"), Karen Barnett of Barnett's Bookkeeping ("Barnett"), and Detective Armin Martinez of the Raymondville Police Department ("Detective Martinez") evidencing that Tom Reed swore falsely in paragraphs 6, 7, and 10 of the Affidavit of Tom Reed ("Reed Affidavit"), which is Exhibit A to Defendant State Farm Llyods' Motion for Partial Summary Judgment on Plaintiffs' Extra-Contractual Claims.

specifically identifying Mrs. Munoz and evidencing that she was in Florida at the time of the fire.[21]

17. The "personal and financial records" were provided to State Farm for review or, in the case of the tax returns, were not available to be copied. State Farm was provided all existing, requested financial documents, but chose not to copy them. Munoz Aff., p.4. The Policy only requires that State Farm be permitted to copy records; it does not require that the insured make copies.[22] Moreover, Reed, on deposition, could not identify any specific personal or financial record within the possession, custody or control of Munoz that Munoz had not previously provided to State Farm. **Reed Depo.p.64 *L.17 to L.25;* p.221 *L.17* to p.223 *L.3.***

18. State Farm never requested the calendar of Carmela Munoz. In deposition, Reed, could not identify when or how State Farm had previously requested her calendar. **Reed Depo. p.227 *L.16* to p.229 *L.16.***

19. There are no partnership agreements with Ben Capetillo, a fact that State Farm knew months earlier by reason of the statement under oath given to State Farm by Munoz. In deposition, Reed, alleged that what he meant in his affidavit was drafts and work papers, but could not identity where or how State Farm had requested drafts and work papers.[23] **Reed Depo. p.211 *L.12* to p.215 *L.23.***

20. Carmela Munoz, as requested by State Farm, signed and delivered several releases permitting State Farm to directly obtain the employment records of Mrs. Munoz, including any requests for vacation or sick leave. Munoz Aff., p.3. In deposition, Reed, admitted

---

[21] See Exhibit A, State Farm's Motion, p. 6, ¶39.
[22] Exhibit A, State Farm Lloyds Policy No. 83-J4-5565-2, Section I – Conditions, 2. Your Duties After Loss, which states that "After a loss to which this insurance may apply, you shall see that the following duties are performed . . . provide us with records and documents we request and **permit us to make copies** . . .
[23] See Exhibit O to State Farm Motion, p.1, requesting "Partnership agreement between Luis Munoz and Ben Capetillo and Partnership contract between Luis Munoz and Ben Capetillo. State Farm's attorney, Lawrence Kurth, in that letter, made no request for drafts or work papers.

that he had not followed up on State Farm's own written request for these documents to Watson City Drugs, among other written requests made by State Farm. **Reed Depo. p.231** *L.3 to L.25.*

21. Finally, Munoz did provide documents specifically identifying Mrs. Munoz and evidencing that she was in Florida at the time of the fire. Moreover, State Farm had already obtained a witness statement from an individual it had no reason to disbelieve that Carmela Munoz was not in Florida at the time of the fire. **Reed Depo. p.233** *L.24* **to p.234** *L.14.*

## C.

## ARGUMENT AND AUTHORITY

22. As an initial matter, the construction of the Policy is generally against the insurer. *Ramsay v. Maryland American General Ins. Co.*, 533 S.W.2d 344 (Tex.1976) (The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation).

23. State Farm asks the Court, based on its lengthy interpretation of *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999), to declare that the Policy requires that Munoz was required to provide any document requested by State Farm, of any kind, whether related to the value of the loss or otherwise, and that failure to meet this open-ended 'condition precedent' bars Munoz from policy benefits. State Farm Motion, pp. 11-14.

24. *Griggs* stands only for the proposition that failure to provide documents supporting the *value of a loss under a personal articles policy* is a condition precedent to receiving benefits under a personal articles policy for that loss. See, *Griggs*, 181 F.3d at 703. If the holding in Griggs were as State Farm claims, State Farm (and every other insurer) would never be required to pay a claim, so long as any document requested by it, of any kind, whether

148105v1  097/24101

related to the value of the loss or otherwise, relevant or otherwise, had not been provided to it and copied. Griggs does not stand for that proposition, and there is no authority for that proposition. Accordingly, State Farm has failed to establish that Munoz failed to meet any condition precedent to payment of benefits under the Policy.

25.     Notably, State Farm also misstates other authority cited in its motion.[24] The principal case cited by State Farm for the proposition that failure to comply with a condition precedent is fatal to an insured's claim[25] actually holds that failure to comply with the policy's requirement as to proof of loss may constitute a reasonable basis for denial of the claim, and the question of reasonable basis for denial must be judged by the facts before the insurer at the time the claim was denied. *Viles* further holds that "[w]hile the failure to file a proof of loss, if not waived by the insurer, bars a breach of contract claim, it is not controlling as to the question of breach of the duty of good faith and fair dealing," and the "special relationship" between the insured and insurer imposes on the insurer a duty to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals there is a reasonable basis to do so. Id. It does not hold, as State Farm claims, that failure to comply with a condition precedent is fatal to an insured's claim.

26.     State Farm's competent summary judgment evidence, in combination with the summary judgment proof of Munoz, actually establishes that Mr. Munoz did provide and permit State Farm to copy all requested documents within their possession, custody and control, all be it slowly at times while he and his then wife were attempting to earn a living, and did not fail to provide any document related to *the value of their loss from fire*. Moreover, the summary judgment evidence of State Farm shows that State Farm breached its own duties to promptly

---

[24] State Farm's Motion, pp. 10-11.
[25] *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).

specify and request documents, and repeatedly delayed, sometimes for months, asking for documents that it now claims were critical to its investigation.

27.   There is no term in the Policy that requires Munoz to produce the documents in a time frame acceptable to State Farm, no term that requires Munoz to provide documents that they do not have, and no term that requires Munoz to copy documents themselves. The gist of State Farm's Motion is that Munoz was not prompt, did not provide documents that he did not have, and did not copy documents for them. These are not grounds, at summary judgment or trial, to deny Munoz the benefits of the Policy.

### E.

### CONCLUSION

28.   The summary judgment evidence of Munoz raises material fact questions concerning State Farm's unfounded conclusion that Munoz failed to comply with any policy condition claimed by State Farm to be a condition precedent to coverage, and specifically raise material fact questions concerning State Farm's claim that Munoz failed to provide State Farm with an opportunity to review and obtain any documents relevant to the fire. Said affidavits and deposition testimony show that: (a) State Farm breached its own obligation under the insurance policy by failing to timely request documents relevant to the fire; (b) State Farm was given an opportunity to review and obtain copies of all documents relevant to the fire within the possession, custody and control of Munoz; and (c) Munoz complied to the best of their ability with every request made by State Farm for documents relevant to the fire. Accordingly, State Farm's Motion does not establish, by competent summary judgment evidence, or as a matter of

law based on the evidence available to this Court, that Munoz failed to comply with a policy condition excusing State Farm from its duty to provide benefits to Munoz under the Policy.

### F.
### PRAYER

29. Plaintiffs Luis C. Munoz and Carmela Munoz pray that State Farm's Motion be denied, and for all other relief to which Plaintiffs Luis C. Munoz and Carmela Munoz are entitled.

Respectfully submitted,

_____
Gustavo Ch. Garza
705 West Highway 100
Suite A
Los Fresnos, Texas 78566
(956) 233-5614 Tel.
(956) 233-6596 Fax.
State Bar No. 07731700
Federal Id No. 3946

David L. Rusnak
Of Counsel
Scoggins & Goodman, P.C.
2800 Marquis One Tower
245 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303-1227
(404) 659-1000 Tel.
(404) 659-1000 Fax
TX State Bar No. 17404500
GA State Bar No. 620170
Admitted Pro Hoc Vice

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT STATE FARM LLYODS' MOTION FOR SUMMARY JUDGMENT upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

> Warren Taylor, Esq.
> Taylor & Taylor
> 815 Walker Street
> Suite 250
> Houston, TX 77002-6707
>
> Rene O. Oliveira
> Roerig, Oliveira & Fisher, LLP
> 855 West Price Road
> Suite 9
> Brownsville, TX 78250-8718

This 26th day of October 2005.

> _/s/ Gustavo Ch. Garza_
> Gustavo Ch. Garza
> 705 West Highway 100
> Suite A
> Los Fresnos, Texas 78566
>
> (956) 689-9040 Tel.
> (956) 689-6468 Fax.
> State Bar No. 07731700
> Federal Id No. 3946

148105v1  097/24101