


# FRANCESCON REPORTING SERVICE

1506 East Broadway, Suite 200 • Pearland, Texas 77581 • (281) 996-7881 • Fax (281) 996-7882

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LUIS C. MUNOZ AND    : CAUSE NO. B-04-141
CARMELA MUNOZ    :
   :
   :
VS.    :
   :
STATE FARM LLOYDS    :

---

COPY

ORAL DEPOSITION OF

THOMAS LEE REED

VOLUME 1

OCTOBER 20TH, 2005

---

ORAL DEPOSITION of THOMAS LEE REED, VOLUME 1, taken on the 20th of October, 2005, from 9:52 a.m. to 4:28 p.m., at the offices of Taylor & Taylor, 815 Walker, Suite 250, Houston, Harris County, Texas, pursuant to Notice and the Federal Rules of Civil Procedure, Rule No. 30.

I N D E X

                                                          PAGE

Appearances ....................................... 3

THOMAS LEE REED

     Examination by Mr. David L. Rusnak ............ 4

Changes and Signature .............................174

Reporter's Certification ..........................176


E X H I B I T S

NO.        DESCRIPTION                            PAGE
1 ................................................ 45
           Insurance policy
2 ................................................ 47
           Affidavit of Tom Reed
3 ................................................ 63
           Statement
4 ................................................ 75
           Recorded statement of Ben Capetillo
5 ................................................ 131
           Phone call information
6 ................................................ 143
           Statement

```
 1                      A P P E A R A N C E S

 2

   FOR THE PLAINTIFFS:
 3       Mr. David L. Rusnak
         SCOGGINS & GOODMAN, P.C.
 4       2800 Marquis One Tower
         245 Peachtree Center Avenue, N.E.
 5       Houston, Texas 30303
               - and -
 6       Mr. Gustavo Ch. Garza
         ATTORNEY AT LAW
 7       705 W. Highway 100, Suite A
         Los Fresnos, Texas 78566

 8

 9   FOR THE DEFENDANT:
         Mr. Warren Taylor
10       TAYLOR & TAYLOR
         815 Walker, Suite 250
11       Houston, Texas 77002

12


13   ALSO PRESENT:
         Mr. Kyle Hambright
14

15

16

17

18

19

20

21

22

23

24

25
```

**THOMAS LEE REED,**

having been first duly sworn, testified as follows:

09:51:52     MR. RUSNAK:  This will be the deposition

09:51:53  of Tom Reed in Civil Action No. B-04-141.  The style of

09:52:01  the case is Luis C. Munoz and Carmela Munoz versus State

09:52:06  Farm Lloyds.

09:52:06     EXAMINATION

09:52:06  BY MR. RUSNAK:

09:52:09     Q.    Mr. Reed, would you state your full name for

09:52:12  the record, please?

09:52:13     A.    Thomas Lee Reed.

09:52:14     Q.    Do you spell that with an "H"?

09:52:18     A.    Spell what?

09:52:19     Q.    Do you spell "Thomas" with an "H"?

09:52:21     A.    Correct.  T-h-o-m-a-s.

09:52:24     Q.    And let me start by going over a few rules of

09:52:29  the road.

09:52:30     Well, first of all, how many times have

09:52:32  you been deposed?

09:52:33     A.    Six or eight.

09:52:33     Q.    Well, let me be brief, then, about the rules

09:52:36  of the road.  The rules of the road are simply designed

09:52:39  to ensure that we have a clear deposition.

09:52:41     First, if for any reason you do not

09:52:43  understand my question, a phrase that I've used, a term

09:52:46  1  that's needs to be defined, anything, please ask me to
09:52:49  2  restate it, define, or refine my question.  Is that
09:52:54  3  okay?
09:52:54  4      A.    Okay.
09:52:55  5      Q.    I would ask you to allow me to complete my
09:52:58  6  question before you start answering.  I may pause for a
09:53:00  7  moment; but give me a moment, if you will, to complete
09:53:03  8  my question.  Is that okay?
09:53:05  9      A.    Sure.
09:53:05  10      Q.    And if for any reason you need to complete
09:53:08  11  your answer, if I have started to ask a question before
09:53:10  12  you were done, let me know so we can have your full
09:53:13  13  answer on the record.  Is that okay?
09:53:15  14      A.    Okay.
09:53:16  15      Q.    Also, I would ask that you answer in words as
09:53:23  16  opposed to gestures or noises such as "uh-huh" or
09:53:26  17  "huh-uh" so we can be sure what, in fact, you meant when
09:53:30  18  you answered.  Is that all right?
09:53:31  19      A.    Okay.
09:53:32  20      Q.    When and where were you born?
09:53:36  21      A.    I was born June 4th, 1958, in Kingsville,
09:53:41  22  Texas.
09:53:41  23      Q.    What county is Kingsville in?
09:53:48  24      A.    Kleberg.
09:53:50  25      Q.    And you understand here that your testimony

09:53:54  1  here today is under the penalty of perjury?

09:53:56  2      A.   Correct.

09:53:57  3      Q.   Are you on any medications or any other

09:54:00  4  physical treatment that might interfere with your giving

09:54:03  5  a deposition here today?

09:54:05  6      A.   No, sir.

09:54:05  7      Q.   Are you aware of any reason why you can't give

09:54:09  8  a full, truthful, and complete deposition here today?

09:54:12  9      A.   No, sir.

09:54:13  10      Q.   Some abbreviations.  If I say "State Farm," I

09:54:20  11  mean the defendant, State Farm Lloyds.  Is that

09:54:23  12  understood?

09:54:23  13      A.   Correct.

09:54:24  14      Q.   If I refer to Munoz Roofing, I mean the sole

09:54:28  15  proprietorship of Luis C. Munoz.

09:54:30  16      A.   Okay.

09:54:31  17      Q.   If I refer to policy, I'm referring to State

09:54:35  18  Farm Lloyds Policy No. 83-J4-5565-2, which I'll

09:54:41  19  represent to you is the policy in this case.

09:54:42  20      A.   I see it on the claim form.

09:54:44  21      Q.   So, my definition is correct?

09:54:47  22          MR. TAYLOR:  Yeah.  You're specifying the

09:54:49  23  policy in effect at the time of the fire?

09:54:52  24          MR. RUSNAK:  Yes, I am.

09:54:54  25      Q.   (BY MR. RUSNAK) And when I refer to the house

09:54:55  1  or the home, I mean the structure at 829 West White

09:54:59  2  Avenue, Raymondville, Texas.  Is that understood?

09:55:02  3      A.    Correct.

09:55:02  4      Q.    Have you ever been a party to a lawsuit,

09:55:06  5  Mr. Reed?

09:55:07  6      A.    Yes, I have.

09:55:08  7      Q.    How many times?

09:55:09  8      A.    I don't know how many times.

09:55:18  9      Q.    Have you been a party to a lawsuit as a

09:55:21  10 defendant?

09:55:22  11     A.    Yes, sir.

09:55:24  12     Q.    Have you been a party to a lawsuit as a

09:55:28  13 defendant outside of your insurance adjusting practice?

09:55:34  14     A.    No, sir.

09:55:36  15     Q.    Have you been a defendant more or less than

09:55:41  16 ten times?

09:55:42  17     A.    Probably ten times; roughly, ten times.

09:55:47  18     Q.    Okay.  State or Federal court?

09:55:49  19     A.    Both.

09:55:50  20     Q.    Have you been a defendant in the United States

09:55:54  21 District Court for the Southern District of Texas,

09:55:57  22 Brownsville Division?

09:55:59  23     A.    I believe I have, yes, sir.

09:56:02  24     Q.    Do you have any sort of lists or record of the

09:56:05  25 cases to which you've been a party as a defendant while

09:56:10   1   acting as an insurance adjuster?

09:56:13   2       A.    No, sir, I don't.

09:56:14   3       Q.    Were any of these lawsuits while you were

09:56:17   4   working for State Farm?

09:56:18   5       A.    Yes.

09:56:19   6       Q.    Were they all for State Farm?

09:56:21   7       A.    Yes, sir.

09:56:22   8       Q.    How would we go about finding the cases you've

09:56:35   9   been a defendant in?  Is there any records at State Farm

09:56:39  10   that would reflect this?

09:56:40  11       A.    That, I wouldn't know.

09:56:42  12       Q.    Have you been a plaintiff before?

09:56:44  13       A.    I don't know if you would call it a

09:56:46  14   "plaintiff," but I filed a Lemon Law action with the

09:56:50  15   state of Texas.

09:56:51  16       Q.    Any other time in which you filed a lawsuit?

09:56:57  17       A.    Not that I remember, no, sir.

09:57:00  18       Q.    Any records you would need to consult in order

09:57:05  19   to determine that?

09:57:06  20       A.    Other than that one -- that one incidence, I

09:57:13  21   can't think of any.

09:57:14  22       Q.    Do you recall the counties of the State law

09:57:16  23   actions where you were in Federal court where you were a

09:57:21  24   defendant?

09:57:22  25       A.    It would have been the Brownsville and

09:57:33  1  San Antonio.

09:57:36  2       Q.    Any other counties?

09:57:37  3       A.    Not that I remember.

09:57:38  4       Q.    The counties incorporating --

09:57:46  5       A.    Plus Nueces.

09:57:54  6       Q.    So, that would be Cameron and Bexar counties?

09:57:59  7       A.    Correct.

09:58:11  8       Q.    And when you were a defendant in Federal

09:58:14  9  court, where were these actions held, in Brownsville in

09:58:19  10  Houston?  Where were these cases being conducted?

09:58:24  11       A.    One of them was to be tried in Brownsville,

09:58:29  12  one was in Corpus, and another was to be tried in

09:58:39  13  San Antonio.

09:58:40  14       Q.    Any other Federal actions?

09:58:43  15       A.    Can you redefine your question?

09:58:53  16       Q.    Certainly.

09:58:54  17            You've identified three Federal lawsuits:

09:58:56  18  one in Brownsville, one ine Corpus Christi, and one in

09:59:00  19  San Antonio, leaving approximately seven State court

09:59:02  20  actions.  Is that about right?

09:59:04  21       A.    That's -- that's what I remember, yes, that's

09:59:10  22  correct.

09:59:10  23       Q.    Who was the plaintiff in the Brownsville

09:59:13  24  action?

09:59:13  25       A.    Brenda Hamilton.

| | | |
|---|---|---|
| 09:59:16 | 1 | Q.    Why was she suing you? |
| 09:59:19 | 2 | A.    It was an intentionally set fire that was |
| 09:59:22 | 3 | denied by State Farm. |
| 09:59:24 | 4 | Q.    What did she allege you did wrong? |
| 09:59:27 | 5 | A.    She alleged that there was bad faith. |
| 09:59:33 | 6 | Q.    What did she allege you personally did that |
| 09:59:38 | 7 | led to this lawsuit with Ms. Hamilton? |
| 09:59:42 | 8 | A.    I don't remember the specifics of the |
| 09:59:43 | 9 | petition. |
| 09:59:44 | 10 | Q.    What year was that? |
| 09:59:45 | 11 | A.    It would have been between '90 and '93, I |
| 09:59:54 | 12 | think. |
| 09:59:54 | 13 | Q.    What was the outcome of that lawsuit? |
| 09:59:59 | 14 | A.    The plaintiff filed a -- he withdrew the |
| 10:00:06 | 15 | lawsuit. |
| 10:00:06 | 16 | Q.    Was it settled or withdrawn? |
| 10:00:08 | 17 | A.    Withdrawn a week before trial. |
| 10:00:11 | 18 | Q.    It was dismissed? |
| 10:00:12 | 19 | A.    Correct.  He filed a dismissal. |
| 10:00:14 | 20 | Q.    Was your deposition taken in that case? |
| 10:00:16 | 21 | A.    Yes, it was. |
| 10:00:17 | 22 | Q.    Do you remember the attorney who took your |
| 10:00:20 | 23 | deposition? |
| 10:00:21 | 24 | A.    I remember the last names, Ellis and Ash. |
| :00:26 | 25 | Q.    That was the plaintiff's firm? |

10:00:31    1         A.    Correct.

10:00:32    2         Q.    Okay.  In the Corpus Christi action, who was

10:00:37    3    the plaintiff?

10:00:37    4         A.    It was Delma Donovan.

10:00:41    5         Q.    Del?

10:00:42    6         A.    Delma, D-e-l-m-a, Donovan.

10:00:48    7         Q.    And why was Ms. Donovan suing you?

10:00:56    8         A.    Basically, the same.  Well, she was suing

10:00:58    9    State Farm.

10:00:59   10         Q.    Did she sue you as an individual person?

10:01:01   11         A.    I don't believe she did, no, sir.

10:01:03   12         Q.    Did you give a deposition in that case?

10:01:05   13         A.    Yes, I did.

10:01:06   14         Q.    Do you recall who the plaintiff's attorneys

10:01:07   15    were?

10:01:07   16         A.    It was -- right off, I don't remember.

10:01:15   17         Q.    When was that case?

10:01:17   18         A.    It was last year or -- let me think.  It

10:01:23   19    was -- may have been the first -- it was rescheduled a

10:01:28   20    couple of times.  I believe it was January or February

10:01:30   21    of this year.

10:01:31   22         Q.    Was it filed in 2004?  The case started in

10:01:35   23    2004?

10:01:36   24         A.    I believe it was, yes, sir.

10:01:37   25         Q.    Is that case ongoing?

10:01:39  1      A.    No, it's not.

10:01:40  2      Q.    And you gave your deposition?

10:01:41  3      A.    Yes, I did.

10:01:42  4      Q.    Did you testify in court?

10:01:43  5      A.    No, I did not.

10:01:44  6      Q.    And has that case not resolved yet?

10:01:47  7      A.    It's resolved.

10:01:48  8      Q.    How was it resolved?

10:01:50  9      A.    The plaintiff's attorney filed a -- he

10:01:55  10 withdrew the -- he withdrew the lawsuit after the first

10:02:01  11 day of trial.

10:02:02  12     Q.    Was it settled?

10:02:04  13     A.    What's your definition of "settled"?

10:02:07  14     Q.    Did State Farm agree to a resolution of the

10:02:10  15 case that caused the case to end, pay money or agree to

10:02:13  16 some sort of compensation for Ms. Donovan?

10:02:17  17     A.    No, sir.  He went down and filed with the

10:02:20  18 court to withdraw while we were at lunch.

10:02:23  19     Q.    The third Federal case in San Antonio, what

10:02:26  20 was the name of the plaintiff in that case?

10:02:28  21     A.    That was -- I believe it was Sparks.

10:02:33  22     Q.    Do you remember the first name?

10:02:35  23     A.    Cheryl, Cheryl Sparks.

10:02:40  24     Q.    And when was that case started?

:02:48  25     A.    It would have been '93 -- '92 to '93, I

10:02:57  1  believe.

10:02:57  2      Q.    Did you give a deposition in that case?

10:03:00  3      A.    Yes, I did.

10:03:01  4      Q.    Did you testify at trial in that case?

10:03:02  5      A.    No, I did not.

10:03:03  6      Q.    How was that case resolved?

10:03:05  7      A.    It was negotiated before trial.

10:03:07  8      Q.    So, there was a settlement in that case?

10:03:09  9      A.    Correct.

10:03:10  10      Q.    Who were the plaintiff's attorneys?

10:03:12  11      A.    I don't remember right off.

10:03:18  12      Q.    Do you remember the names of the plaintiffs in

10:03:21  13  the approximately seven other cases which were in

10:03:24  14  Brownsville, San Antonio, and Nueces?  And if you do

10:03:33  15  remember, name them, please.

10:03:37  16      A.    Right off, I don't remember.

10:03:44  17      Q.    Were you a individual defendant in those

10:03:47  18  cases, which is to say, you were named as a party; or

10:03:52  19  were you simply appearing as a witness for State Farm?

10:03:55  20      A.    Specifically I couldn't tell you on each of

10:03:58  21  them.  I don't remember.

10:04:00  22      Q.    Did you deliver reports to State Farm about

10:04:09  23  those cases so we could ask State Farm and then

10:04:12  24  determine who those plaintiffs were?

10:04:14  25      A.    When you say "deliver reports," what --

10:04:16  1        Q.    You worked on those cases?

10:04:18  2        A.    That's correct.

10:04:18  3        Q.    Okay.  So, if we were to ask State Farm to

10:04:21  4   produce a log of the cases you've worked on, would you

10:04:24  5   be able to identify those plaintiffs?

10:04:26  6        A.    I don't know what records the company keeps.

10:04:29  7        Q.    You produced an activity log for each of these

10:04:32  8   cases?

10:04:32  9        A.    That is correct.

10:04:34  10       Q.    Did you deliver reports in these cases to

10:04:40  11  State Farm, such as to claims review boards or claims

10:04:45  12  committees?

10:04:45  13       A.    There would have been some reports in there.

10:04:49  14  Specifically what reports they were, I don't remember.

10:04:52  15       Q.    But there would have been an activity log for

10:04:55  16  each of these cases?

10:04:56  17       A.    That's correct.

10:04:57  18       Q.    Are you paid a weekly salary as an employee or

10:05:07  19  on a case-by-case basis?

10:05:09  20       A.    Salary.

10:05:10  21       Q.    Did you give your depositions -- give a

10:05:24  22  deposition -- I believe you answered you gave a

10:05:27  23  deposition in each of those cases in Brownsville,

10:05:29  24  San Antonio, and Nueces?

:05:31  25         A.    That is correct.

10:05:32  1      Q.    Do you keep a copy of depositions that you

10:05:37  2   give?

10:05:37  3      A.    No, sir.

10:05:38  4      Q.    Have you ever testified in court?

10:05:48  5      A.    Yes, sir.

10:05:49  6      Q.    In which cases?

10:05:50  7      A.    It wasn't any -- it was a case in Kingsville,

10:05:57  8   and State Farm was not a party.

10:06:00  9      Q.    Why were you giving testimony in that case?

10:06:02  10      A.    It was -- I was brought in as a witness on

10:06:10  11   construction.

10:06:12  12      Q.    Construction of what?

10:06:15  13      A.    Reconstruction of a home, repairs.

10:06:17  14      Q.    Were you an expert witness?

10:06:19  15      A.    That's why I was brought in.

10:06:22  16      Q.    What party brought you in to testify?

10:06:26  17      A.    The defendant.

10:06:27  18      Q.    And their name was what?

10:06:29  19      A.    I don't remember.

10:06:30  20      Q.    When was this?

10:06:31  21      A.    It was between '86 and '88.

10:06:35  22      Q.    Do you have a construction background?

10:06:39  23      A.    Just a claims background.

10:06:41  24      Q.    Have you ever been arrested?

:06:45  25      A.    No, sir.

| | | |
|---|---|---|
| 10:06:46 | 1 | Q.   Have you ever been indicted? |
| 10:06:49 | 2 | A.   No, sir. |
| 10:06:50 | 3 | Q.   Ever pled guilty to a misdemeanor or a felony? |
| 10:06:54 | 4 | A.   No, sir. |
| 10:06:55 | 5 | Q.   What did you do in preparation for your |
| 10:06:58 | 6 | deposition here today? |
| 10:06:59 | 7 | A.   Reviewed file materials and spoke with my |
| 10:07:06 | 8 | attorney. |
| 10:07:07 | 9 | Q.   What file materials did you review? |
| 10:07:11 | 10 | A.   The material that's been produced. |
| 10:07:16 | 11 | Q.   Can you describe it?  Are you talking about |
| 10:07:25 | 12 | the activity log? |
| 10:07:25 | 13 | A.   The claim file itself. |
| 10:07:26 | 14 | Q.   Did you review all approximately 6,000 pages |
| 10:07:29 | 15 | that have been produced to Mr. and Mrs. Munoz in this |
| 10:07:29 | 16 | case? |
| 10:07:32 | 17 | A.   Not all of it, no, sir. |
| 10:07:33 | 18 | Q.   What portion of the file did you specifically |
| 10:07:36 | 19 | review? |
| 10:07:36 | 20 | A.   Correspondence, activity log, most of the |
| 10:07:44 | 21 | recorded interviews. |
| 10:07:51 | 22 | Q.   These are interviews done by both you, |
| 10:07:54 | 23 | Mr. Lerma, Mr. Robinson, others -- |
| 10:07:54 | 24 | A.   Correct. |
| 10:07:57 | 25 | Q.   -- acting at your request? |

10:07:58  1      A.    Correct.

10:07:59  2      Q.    What else did you review?

10:08:01  3      A.    I skimmed through most of the file, most of

10:08:11  4  the file itself; but what parts I didn't go through, I

10:08:14  5  don't remember.  I didn't read it word for word, but I

10:08:18  6  just glanced through it.

10:08:19  7      Q.    Did you read the activity log word for word?

10:08:22  8      A.    No, I did not.

10:08:23  9      Q.    Did you read the correspondence word for word?

10:08:25 10      A.    No, sir, I did not.

10:08:26 11      Q.    You did a cursory review?

10:08:28 12      A.    Correct.

10:08:29 13      Q.    Was anyone present when you were talking to

10:08:34 14  your attorney?

10:08:35 15      A.    Not -- yes, sir.

10:08:45 16      Q.    Who was present --

10:08:47 17      A.    Well, by phone.

10:08:48 18      Q.    Who was present by phone?

10:08:52 19            MR. TAYLOR:  Other counsel.

10:08:53 20            MR. RUSNAK:  Other attorney?

10:08:55 21            MR. TAYLOR:  Yes.

10:08:57 22      Q.    (BY MR. RUSNAK) Other than counsel for State

10:09:00 23  Farm or a State Farm representative such as

10:09:01 24  Mr. Hambright, was anybody present during your interview

10:09:03 25  with your attorney?

10:09:03  1          A.    No, sir.

10:09:04  2          Q.    When you say "your attorney," you're referring

10:09:07  3    to State Farm's attorney?

10:09:07  4          A.    And he's also my attorney as well.

10:09:09  5          Q.    He's your personal attorney?

10:09:11  6          A.    Correct.

10:09:11  7          Q.    Do you have a contract with Mr. Taylor to

10:09:14  8    represent you?

10:09:14  9          A.    Not a written contract.

10:09:17  10         Q.    Then why do you say he's your attorney?

10:09:19  11         A.    I've asked him to represent me.

10:09:21  12         Q.    And when did you do this?

10:09:23  13         A.    Yesterday.

10:09:29  14               MR. TAYLOR:  No, that's not right.  You

10:09:32  15   were sued in the case.

10:09:33  16               THE WITNESS:  Oh, that's correct.

10:09:38  17               MR. RUSNAK:  The State court suit?

10:09:39  18               MR. TAYLOR:  Yeah, he was an original

10:09:41  19   defendant in the case, and I've represented him since

10:09:43  20   then.

10:09:43  21               THE WITNESS:  That's correct.

10:09:46  22               MR. TAYLOR:  And then we discussed it

10:09:46  23   again yesterday to go over it.

10:09:48  24         Q.    (BY MR. RUSNAK) Are you paying for your

10:09:59  25   representation out of your own pocket?

| | | |
|---|---|---|
| 10:10:04 | 1 | A.    No, sir. |
| 10:10:04 | 2 | Q.    Other than State Farm's attorneys, who have |
| 10:10:27 | 3 | you spoken with about your deposition? |
| 10:10:29 | 4 | A.    My boss. |
| 10:10:32 | 5 | Q.    Who is? |
| 10:10:33 | 6 | A.    Cary Tuscon. |
| 10:10:34 | 7 | Q.    Anyone else? |
| 10:10:36 | 8 | A.    I'm sure that -- when you say "talked with," |
| 10:10:45 | 9 | what -- in what capacity? |
| 10:10:49 | 10 | Q.    Have you had a discussion with someone other |
| 10:10:53 | 11 | than your attorney concerning matters relating to this |
| 10:10:56 | 12 | case? |
| 0:10:56 | 13 | A.    Any matters or -- |
| 10:11:01 | 14 | Q.    Anything. |
| 10:11:02 | 15 | A.    Well, I know there are those that know that |
| 10:11:05 | 16 | I'm here for my deposition today. |
| 10:11:07 | 17 | Q.    Okay.  Such as? |
| 10:11:08 | 18 | A.    My wife. |
| 10:11:11 | 19 | Q.    Outside of your family. |
| 10:11:13 | 20 | A.    My co-workers. |
| 10:11:15 | 21 | Q.    Which co-workers have you spoken with? |
| 10:11:17 | 22 | A.    Scott Kemp in Corpus knows I'm here; Danny |
| 10:11:25 | 23 | Lerma knows I'm here; my secretary, Annabelle Maldonado, |
| 10:11:31 | 24 | knows I'm here. |
| ):11:32 | 25 | Q.    Anybody outside the State Farm employ? |

10:11:35  1        A.    Not that I'm aware of.  Well, I should say,
10:11:43  2   you know, friends, like people at church know I'm out of
10:11:47  3   town.
10:11:47  4        Q.    Have you talked about the facts of this case
10:11:49  5   with anybody --
10:11:50  6        A.    No, sir.
10:11:51  7        Q.    -- whether it be a friend or somebody you went
10:11:53  8   to church with?
10:11:54  9        A.    No, sir.
10:11:55  10       Q.    Have you talked about the facts of this case
10:11:57  11  with your wife?
10:11:58  12       A.    She knows that there was a fire in the valley
0:12:00  13   and that's about it.
10:12:01  14       Q.    Now, how long have you been an investigator
10:12:09  15  for State Farm?
10:12:11  16       A.    What do you classify as investigator?
10:12:17  17       Q.    How long have you provided investigatory
10:12:20  18  services to State Farm in any capacity?
10:12:21  19       A.    Well, I started with State Farm in 1986; and
10:12:27  20  in 1996, I went to Bloomington and then returned to the
10:12:38  21  Special Investigative Unit in 2000 and then up to today.
10:12:46  22       Q.    From 2000 to today, you were with SIU?
10:12:49  23       A.    Correct.
10:12:50  24       Q.    And that is Special Investigative Unit?
J:12:52  25        A.    Correct.

| | | |
|---|---|---|
| 10:12:52 | 1 | Q.    What's the purpose of that unit? |
| 10:12:54 | 2 | A.    To investigate claims. |
| 10:12:56 | 3 | Q.    All claims or a specific category of claims? |
| 10:12:58 | 4 | A.    Claims that are assigned to SIU. |
| 10:13:01 | 5 | Q.    Does SIU get every claim? |
| 10:13:05 | 6 | A.    (Nodding) |
| 10:13:06 | 7 | Q.    Why would someone within the State Farm |
| 10:13:09 | 8 | organization refer a case to SIU? |
| 10:13:10 | 9 | A.    It depends on the circumstances; but in this |
| 10:13:14 | 10 | particular case, when there's a cause and origin that |
| 10:13:18 | 11 | comes back that it's an incendiary or intentional fire, |
| 10:13:23 | 12 | those are generally sent over to SIU. |
| 10:13:26 | 13 | Q.    Are cases where fraud is suspected sent to |
| 10:13:31 | 14 | SIU? |
| 10:13:31 | 15 | A.    They could be, yes, sir. |
| 10:13:33 | 16 | Q.    Would a fraud case not be sent to SIU? |
| 10:13:34 | 17 | A.    There could be a -- I wouldn't say every fraud |
| 10:13:36 | 18 | case is submitted to SIU.  I'm sure there's occasion |
| 10:13:39 | 19 | where they may not be. |
| 10:13:40 | 20 | Q.    Is there a policy manual or document of any |
| 10:13:43 | 21 | kind generated by State Farm that you could refer me to |
| 10:13:47 | 22 | that would define the purpose of SIU? |
| 10:13:49 | 23 | A.    There is a guideline for SIU. |
| 10:13:52 | 24 | Q.    We'll get back to that. |
| 0:13:57 | 25 | Now, you've been with SIU from 2000 to the |

| | | |
|---|---|---|
| 10:14:00 | 1 | present? |
| 10:14:01 | 2 | A.    No, sir. |
| 10:14:01 | 3 | Q.    You were with SIU before that? |
| 10:14:03 | 4 | A.    Correct. |
| 10:14:04 | 5 | Q.    And when did you start with SIU? |
| 10:14:06 | 6 | A.    In -- I believe it was 1989. |
| 10:14:08 | 7 | Q.    And you were with SIU in Bloomington in 1996 |
| 10:14:17 | 8 | through 2000? |
| 10:14:17 | 9 | A.    No, sir. |
| 10:14:18 | 10 | Q.    Why don't we start with:  Did you go to |
| 10:14:22 | 11 | college? |
| 10:14:23 | 12 | A.    Yes, sir. |
| 0:14:23 | 13 | Q.    Where did you go to college? |
| 10:14:25 | 14 | A.    Abilene Christian University. |
| 10:14:28 | 15 | Q.    And when did you graduate? |
| 10:14:30 | 16 | A.    December of '80. |
| 10:14:31 | 17 | Q.    What was your degree? |
| 10:14:32 | 18 | A.    Degree in management; degree in marketing. |
| 10:14:35 | 19 | Q.    After that, who employed you? |
| 10:14:39 | 20 | A.    Luby's. |
| 10:14:40 | 21 | Q.    What did you do with Luby's? |
| 10:14:42 | 22 | A.    I was a manager. |
| 10:14:42 | 23 | Q.    How long were you a manager with Luby's? |
| 10:14:45 | 24 | A.    I was a manager from '81 to about '82, I |
| 0:14:51 | 25 | believe. |

| | | |
|---|---|---|
| 10:14:51 | 1 | Q.   Why did you leave Luby's? |
| 10:14:53 | 2 | A.   The life-style, the hours.  Most of the |
| 10:14:59 | 3 | managers were divorced and remarried, and that just was |
| 10:15:04 | 4 | not -- that was not the life-style that I nor my family |
| 10:15:09 | 5 | wanted to be involved with. |
| 10:15:11 | 6 | Q.   What did you do after Luby's for a living? |
| 10:15:14 | 7 | A.   I became a stockbroker. |
| 10:15:17 | 8 | Q.   Where? |
| 10:15:18 | 9 | A.   In Beeville, Texas. |
| 10:15:19 | 10 | Q.   How long were you a stockbroker in Beeville, |
| 10:15:22 | 11 | Texas? |
| 10:15:23 | 12 | A.   From about '82 to about the middle of '83, I |
| 0:15:26 | 13 | believe. |
| 10:15:26 | 14 | Q.   Did you receive your Series 7 certification? |
| 10:15:30 | 15 | A.   Yes, I did. |
| 10:15:31 | 16 | Q.   When did you receive that? |
| 10:15:32 | 17 | A.   It would have been in -- before I opened the |
| 10:15:38 | 18 | office. |
| 10:15:39 | 19 | Q.   First of all, for whom did you work? |
| 10:15:41 | 20 | A.   Edward Jones. |
| 10:15:42 | 21 | Q.   And you said you opened an office for Edward |
| 10:15:45 | 22 | Jones? |
| 10:15:45 | 23 | A.   Correct. |
| 10:15:46 | 24 | Q.   And you worked there until 1987? |
| 0:15:48 | 25 | A.   No, sir.  Until about mid-'83, I believe. |

10:15:52  1      Q.    Why did you leave that employ?

10:15:54  2      A.    In the early Eighties or right after I opened

10:15:58  3  the business, that's when oil field and cattle prices

10:16:01  4  went down; and that was the main income of Beeville.

10:16:05  5  And, so, financially it was not a real good -- not a

10:16:09  6  real good situation.  So, I closed that office.

10:16:12  7      Q.    After you closed that office, what did you do

10:16:14  8  for a living?

10:16:15  9      A.    I went to work as a manager for a grocery

10:16:18 10  store in Oklahoma.

10:16:19 11      Q.    What store?

10:16:20 12      A.    Cantwell's Grocery.

0:16:22 13      Q.    Where in Oklahoma?

10:16:23 14      A.    It was in Ratliff City, Oklahoma.

10:16:28 15      Q.    How long were you there?

10:16:29 16      A.    It was less than a year.

10:16:32 17      Q.    What did you do after?

10:16:34 18      A.    I bought a grocery store.

10:16:35 19      Q.    The name of which is what?

10:16:38 20      A.    Circle R Foods.

10:16:39 21      Q.    Did you run that store?

10:16:40 22      A.    Correct.

10:16:41 23      Q.    How long did you run that store?

10:16:43 24      A.    From approximately -- sometime in late '80 --

0:16:49 25  or sometime in '84 to about '86 or close to the end

| | | |
|---|---|---|
| 10:16:55 | 1 | of -- beginning of '86. |
| 10:16:56 | 2 | Q.   What happened to that store? |
| 10:16:58 | 3 | A.   I sold it. |
| 10:16:59 | 4 | Q.   What did you do after you sold it? |
| 10:17:01 | 5 | A.   Went to work for State Farm. |
| 10:17:03 | 6 | Q.   Prior to going to work for State Farm, did you |
| 10:17:05 | 7 | have any investigative training or background? |
| 10:17:08 | 8 | A.   No, sir. |
| 10:17:09 | 9 | Q.   That would be 1986? |
| 10:17:11 | 10 | A.   Correct. |
| 10:17:12 | 11 | Q.   Where were you first employed by State Farm? |
| 10:17:17 | 12 | A.   In Corpus. |
| 10:17:18 | 13 | Q.   And what were you doing for them in 1986 in |
| 10:17:22 | 14 | Corpus? |
| 10:17:22 | 15 | A.   When I was first hired, I investigated -- I |
| 10:17:28 | 16 | handled claims. |
| 10:17:29 | 17 | Q.   What kind of claims? |
| 10:17:31 | 18 | A.   Water losses, roof claims, slip-and-falls, |
| 10:17:39 | 19 | foundation, just any claim that came in that needed to |
| 10:17:44 | 20 | be handled. |
| 10:17:44 | 21 | Q.   Did you handle fire claims? |
| 10:17:45 | 22 | A.   Yes, sir. |
| 10:17:46 | 23 | Q.   How long did you do that general investigative |
| 10:17:49 | 24 | work? |
| 10:17:49 | 25 | A.   Until '89. |

10:17:50  1      Q.    And then in 1989, you moved to the SIU unit?

10:17:54  2      A.    Correct.

10:17:55  3      Q.    Why did you move to the SIU unit?

10:17:57  4      A.    There was an opening, and I applied for it.

10:18:00  5      Q.    And you worked in the SIU unit at what

10:18:06  6  location?

10:18:07  7      A.    At the Bandera office in San Antonio -- well,

10:18:12  8  first it was Westlake's office and then we were moved

10:18:15  9  over to the Bandera office in San Antonio.

10:18:17  10     Q.    How long were you in the office in

10:18:19  11  San Antonio?

10:18:20  12     A.    Until the summer of 1996.

10:18:33  13     Q.    In 1996, you previously testified you went to

10:18:38  14  Bloomington?

10:18:38  15     A.    Correct.

10:18:38  16     Q.    That's the home office?

10:18:39  17     A.    Correct.

10:18:39  18     Q.    What did you do in the home office?

10:18:41  19     A.    I worked for general claims, doing various

10:18:45  20  projects.

10:18:45  21     Q.    What kind of projects?

10:18:46  22     A.    One was the computer system.  We were going

10:18:50  23  from desktop computers to laptops.  I worked on that

10:18:54  24  project.  I worked on our E-mail system, worked on -- we

10:18:59  25  had a -- at one time there was a program called

| | | |
|---|---|---|
| 10:19:03 | 1 | Discovery.  It was ideas that could be submitted to the |
| 10:19:06 | 2 | company for various things.  I worked on that project. |
| 10:19:10 | 3 | Q.    Anything other than general administrative |
| 10:19:13 | 4 | work? |
| 10:19:13 | 5 | A.    I worked on a claim review committee. |
| 10:19:24 | 6 | Q.    What did that committee do? |
| 10:19:26 | 7 | A.    It reviewed various claims from different |
| 10:19:30 | 8 | regions. |
| 10:19:30 | 9 | Q.    What kind of claims? |
| 10:19:32 | 10 | A.    All different kinds of claims.  They were |
| 10:19:35 | 11 | randomly selected, and there were just all kinds of |
| 10:19:39 | 12 | claims. |
| 10:19:39 | 13 | Q.    Was it to decide the treatment of the claim, |
| 10:19:44 | 14 | or was it to review the acts of the parties |
| 10:19:48 | 15 | investigating the claims? |
| 10:19:49 | 16 | A.    It was just a review of all the activities |
| 10:19:52 | 17 | involving the claim.  It entailed the investigation; it |
| 10:19:57 | 18 | entailed correspondence; it entailed payments. |
| 10:20:01 | 19 | Q.    What was the purpose of this review body, to |
| 10:20:06 | 20 | do what? |
| 10:20:06 | 21 | A.    Just to make sure that claims were being |
| 10:20:09 | 22 | handled properly and in a reasonable time. |
| 10:20:12 | 23 | Q.    So, this was an internal -- |
| 10:20:14 | 24 | A.    Correct. |
| 10:20:15 | 25 | Q.    That is to say, it was an internal body for |

| | | |
|---|---|---|
| 10:20:18 | 1 | the purpose of reviewing State Farm's own practices? |
| 10:20:21 | 2 | A.    Correct. |
| 10:20:22 | 3 | Q.    And you did that until 2000? |
| 10:20:24 | 4 | A.    I didn't do that full time the whole time I |
| 10:20:29 | 5 | was there.  That was -- |
| 10:20:30 | 6 | Q.    By you did that until 2000, I was referring to |
| 10:20:34 | 7 | you were in Bloomington, working in the home office? |
| 10:20:37 | 8 | A.    Oh, correct. |
| 10:20:38 | 9 | Q.    In 2000 you came back to the SIU unit in |
| 10:20:41 | 10 | Texas? |
| 10:20:41 | 11 | A.    Correct. |
| 10:20:42 | 12 | Q.    Which unit -- which location? |
| 10:20:45 | 13 | A.    I came back to Corpus. |
| 10:20:49 | 14 | Q.    And you've been there ever since? |
| 10:20:51 | 15 | A.    Correct. |
| 10:20:52 | 16 | Q.    Do you have any law enforcement training? |
| 10:20:55 | 17 | A.    Yes, sir. |
| 10:20:55 | 18 | Q.    Have you ever been employed as a law |
| 10:20:59 | 19 | enforcement officer? |
| 10:21:00 | 20 | A.    Not full time, no, sir. |
| 10:21:01 | 21 | Q.    Describe your part-time law enforcement |
| 10:21:05 | 22 | employment. |
| 10:21:05 | 23 | A.    Reserve. |
| 10:21:06 | 24 | Q.    Reserve for whom? |
| 10:21:07 | 25 | A.    I started reserve for a little bit in Nueces |

10:21:11   1   County, Nueces County Sheriff's Department, and also

10:21:16   2   the -- it was Sheriff's posse in Nueces County.  And

10:21:36   3   then in San Antonio it was -- I was with the Constable's

10:21:42   4   office for a short period of time, and then most of my

10:21:46   5   time in reserve was with Leon Valley Police Department.

10:21:50   6         Q.   So, you've been a reserve deputy sheriff in

10:22:00   7   Nueces County; is that correct?

10:22:02   8         A.   Correct.

10:22:03   9         Q.   What is a Sheriff's posse?

10:22:05   10         A.   It's the Nueces County mounted posse.  That's

10:22:11   11   just a different -- it's a reserve part of the Sheriff's

10:22:14   12   department.

10:22:15   13         Q.   What is the purpose of a posse?

10:22:17   14         A.   To assist the Sheriff's department.  Most of

10:22:21   15   them ride horses and they go up and down the beach or go

10:22:27   16   where a vehicle can't go.  They do parades and that sort

10:22:31   17   of thing as well, different functions.

10:22:34   18         Q.   You grew up on a ranch or are familiar with

10:22:37   19   horses?

10:22:38   20         A.   I have a ranch, yes, sir -- or my family has a

10:22:41   21   ranch.

10:22:41   22         Q.   Where is that ranch?

10:22:42   23         A.   Kennedy.

10:22:43   24         Q.   How big a spread?

10:22:45   25         A.   It's 1,000, 1100 acres.

| | | |
|---|---|---|
| 10:22:50 | 1 | Q. Now, you've been a constable in San Antonio? |
| 10:22:53 | 2 | A. Just for a short period of time. |
| 10:22:56 | 3 | Q. Was that the city of San Antonio? |
| 10:22:57 | 4 | A. Yes, sir. |
| 10:22:57 | 5 | Q. And you're now a reserve officer with the Leon |
| 10:23:00 | 6 | Valley Police Department? |
| 10:23:01 | 7 | A. No, sir. |
| 10:23:01 | 8 | Q. How long were you -- was that the last police |
| 10:23:05 | 9 | entity you were involved with? |
| 10:23:06 | 10 | A. Correct. |
| 10:23:07 | 11 | Q. And what did you do for the Leon Valley |
| 10:23:10 | 12 | Police? |
| 10:23:11 | 13 | A. Whatever the lieutenant or the chief |
| 10:23:17 | 14 | assignment was. |
| 10:23:17 | 15 | Q. Was it investigative? |
| 10:23:19 | 16 | A. It was mainly patrol and initial contact with |
| 10:23:23 | 17 | the public. |
| 10:23:24 | 18 | Q. Did you have investigative duties for any of |
| 10:23:26 | 19 | these police bodies? |
| 10:23:28 | 20 | A. What do you mean by -- |
| 10:23:28 | 21 | Q. Did you -- |
| 10:23:31 | 22 | A. Can you define "investigative"? |
| 10:23:32 | 23 | Q. Sorry for talking over you. |
| 10:23:33 | 24 | Were you asked to investigate a crime as a |
| 0:23:37 | 25 | detective would? |

10:23:37 1      A.    No, sir.

10:23:38 2      Q.    Were you the officer on the scene

10:23:41 3  investigating certain cases?

10:23:42 4      A.    I made the initial contact.  Say, for

10:23:48 5  instance, if there was a burglary that was reported, I

10:23:51 6  would go and make the initial contact, obtain the

10:23:55 7  information, and then turn it in, and then it would be

10:23:58 8  investigated from that point on; but I didn't do the

10:24:01 9  investigation.

10:24:01 10     Q.    How many years have you been acting as a

10:24:05 11  policeman or a Sheriff's deputy?  How many total years?

10:24:10 12     A.    Probably total, if you took all of it

0:24:15 13  together, probably four, maybe five years.

10:24:19 14     Q.    Who was your superior at Nueces County

10:24:29 15  Sheriff's Department?

10:24:30 16     A.    I don't remember.

10:24:30 17     Q.    Who was your superior in the Sheriff's posse?

10:24:35 18     A.    I don't know -- I don't remember who was in

10:24:41 19  charge of it.

10:24:43 20     Q.    Who was in charge of -- who was your superior

10:24:46 21  at the Leon Valley police?

10:24:48 22     A.    It was Bill Standard.

10:24:58 23     Q.    At the San Antonio Constable's office?

10:25:02 24     A.    I don't remember.

10:25:03 25     Q.    Did any of these offices ask you to

| | | |
|---|---|---|
| 0:25:06 | 1 | discontinue service? |
| 10:25:07 | 2 | A.    No, sir. |
| 10:25:08 | 3 | Q.    Did you receive any investigative training |
| 10:25:14 | 4 | from any of these police bodies, training in how to |
| 10:25:18 | 5 | investigate a crime? |
| 10:25:20 | 6 | A.    Nothing more than the initial contact phase, |
| 10:25:26 | 7 | no detective training or anything like that. |
| 10:25:28 | 8 | Q.    What training did you receive from State Farm |
| 10:25:32 | 9 | on how to investigate a matter? |
| 10:25:35 | 10 | A.    Well, from the time a claim is submitted, I |
| 10:25:39 | 11 | guess you could call it you're conducting an |
| 10:25:44 | 12 | investigation; but I went to various claim schools. |
| 1:25:52 | 13 | There are various claim schools to get your license. |
| 10:25:57 | 14 | Also there was -- well, they call it a basic claims |
| 10:26:02 | 15 | school, intermediate claims schools, and then I went to |
| 10:26:07 | 16 | estimating school.  I went to a school that was called |
| 10:26:10 | 17 | SIU 1 and SIU 2, and there were other seminars and |
| 10:26:19 | 18 | continuing education, various schools that I've |
| 10:26:23 | 19 | attended. |
| 10:26:24 | 20 | Q.    Are any of these claims schools basic, |
| 10:26:27 | 21 | intermediate, estimate, SIU 1 or SIU 2, are these |
| 10:26:33 | 22 | pass/fail? |
| 10:26:33 | 23 | A.    When you say pass/fail -- |
| 10:26:37 | 24 | Q.    You either pass out of the course with an |
| 0:26:41 | 25 | approval of some instructor or you are failed and you |

|   |   |   |
|---|---|---|
| 10:26:44 | 1 | have to retake the course. |
| 10:26:45 | 2 | A.   The first school is a -- you have to pass the |
| 10:26:52 | 3 | very first school. |
| 10:26:53 | 4 | Q.   Basic? |
| 10:26:54 | 5 | A.   Correct. |
| 10:26:55 | 6 | Q.   Is there any qualifications, testing involving |
| 10:26:59 | 7 | passing out of these schools? |
| 10:27:00 | 8 | A.   There is, yes, sir. |
| 10:27:02 | 9 | Q.   In basic there is? |
| 10:27:03 | 10 | A.   Correct. |
| 10:27:04 | 11 | Q.   In intermediate? |
| 10:27:06 | 12 | A.   I know there were tests.  I don't know -- if |
| 3:27:13 | 13 | you -- if you say -- I never had to worry about failing. |
| 10:27:17 | 14 | So, I don't know what the ramifications -- if a person |
| 10:27:22 | 15 | failed those tests, I don't know if they had to retake |
| 10:27:25 | 16 | it or what.  I never had to worry about it. |
| 10:27:27 | 17 | Q.   Why didn't you have to worry about it? |
| 10:27:29 | 18 | A.   Because I passed. |
| 10:27:30 | 19 | Q.   You said you have a license? |
| 10:27:32 | 20 | A.   Correct. |
| 10:27:32 | 21 | Q.   A license to do what? |
| 10:27:33 | 22 | A.   To handle claims. |
| 10:27:35 | 23 | Q.   Who issues that license? |
| 10:27:36 | 24 | A.   The State of Texas. |
| 10:27:39 | 25 | Q.   What's that license number? |

| | | |
|---|---|---|
| 10:27:40 | 1 | A.    The license number is 289244. |
| 10:28:08 | 2 | Q.    What body of the State of Texas issues that |
| 10:28:11 | 3 | license? |
| 10:28:12 | 4 | A.    Department of Insurance, Texas Department of |
| 10:28:15 | 5 | Insurance. |
| 10:28:15 | 6 | Q.    May I see the card, please? |
| 10:28:22 | 7 | A.    (Complies) It's the back of it. |
| 10:28:30 | 8 | Q.    You've handed me a photocopy? |
| 10:28:32 | 9 | A.    Correct. |
| 10:28:33 | 10 | Q.    Where is the original currently? |
| 10:28:35 | 11 | A.    The original is in my desk at my office. |
| 10:28:38 | 12 | Q.    What year was this issued?  Well, I don't see |
| 1:28:42 | 13 | it on here. |
| 10:28:44 | 14 | Do you know what year you were issued this |
| 10:28:46 | 15 | license? |
| 10:28:47 | 16 | A.    That license -- I've had a license since 1986. |
| 10:28:57 | 17 | Q.    Very well, then.  Let's move to the particular |
| 10:29:11 | 18 | incident here. |
| 10:29:17 | 19 | You've had an opportunity over the course |
| 10:29:20 | 20 | of approximately a year and four months to investigate |
| 10:29:25 | 21 | this matter prior to the filing of the lawsuit that |
| 10:29:29 | 22 | brought us here today; is that correct, sir? |
| 10:29:32 | 23 | A.    Let's see.  The loss occurred January of |
| 10:29:38 | 24 | '03 -- and what was the time frame? |
| J:29:40 | 25 | Q.    You had approximately a year and four months |

| | | |
|---|---|---|
| 10:29:41 | 1 | to investigate this claim before the lawsuit was filed? |
| 10:29:44 | 2 | A.    Well, I became involved in February of '03; |
| 10:29:51 | 3 | and the lawsuit was filed in May of this year. |
| 10:29:54 | 4 | Q.    Okay.  Didn't you meet with Mr. Munoz in |
| 10:29:56 | 5 | January of '03?  Specifically didn't you have a meeting |
| 10:30:04 | 6 | with him on January 24th and then again on January 28th? |
| 10:30:09 | 7 | A.    January 24th, that's correct.  I was thinking |
| 10:30:12 | 8 | February, but January. |
| 10:30:13 | 9 | Q.    Let me just rephrase the question. |
| 10:30:15 | 10 | You had over a year to investigate this |
| 10:30:18 | 11 | claim before the lawsuit was filed.  Is that not |
| 10:30:20 | 12 | correct, sir? |
| 10:30:20 | 13 | A.    Again, the claim was initiated the first part |
| 10:30:26 | 14 | of the January through -- January, '03 -- and the |
| 10:30:30 | 15 | lawsuit was filed in May of '05. |
| 10:30:33 | 16 | Q.    In fact, Mr. Munoz went to Mr. Brown's office |
| 10:30:36 | 17 | on January 2nd of 2003, and personally made the claim, |
| 10:30:41 | 18 | having previously reported it to Agent Mark Brown the |
| 10:30:45 | 19 | day before? |
| 10:31:27 | 20 | If you'll look at Entry No. 4 on your |
| 10:31:30 | 21 | activity log dated 1-2-03 -- I'm sorry -- Entry No. 7 |
| 10:31:42 | 22 | dated 1-3-03. |
| 10:32:18 | 23 | MR. TAYLOR:  What are you looking for? |
| 10:32:21 | 24 | THE WITNESS:  The January activity log. |
| 10:32:27 | 25 | A.    The initial agent acknowledgement was sent on |

| | | |
|---|---|---|
| 10:32:31 | 1 | January the 2nd of '03. |
| 10:32:33 | 2 | Q.    (BY MR. RUSNAK) All right.  So, that's when, |
| 10:32:35 | 3 | to your knowledge, this claim became known to State |
| 10:32:38 | 4 | Farm? |
| 10:32:38 | 5 | A.    Correct. |
| 10:32:38 | 6 | Q.    Now, as a part of your investigation you had |
| 10:32:50 | 7 | an opportunity to determine certain renovations and |
| 10:32:56 | 8 | remodeling and enlarging of the home that Mr. Munoz had |
| 10:33:00 | 9 | performed in the years preceding to the fire, the date |
| 10:33:05 | 10 | of the fire being 1-1-03? |
| 10:33:07 | 11 | A.    Did I see -- |
| 10:33:08 | 12 | Q.    Did you have a chance to determine the extent |
| 10:33:12 | 13 | of the renovations, remodeling, and enlarging of the |
| 10:33:15 | 14 | home that Mr. Munoz had performed in the years preceding |
| 10:33:18 | 15 | the fire? |
| 10:33:19 | 16 | A.    Mr. Munoz did show me what additions and |
| 10:33:27 | 17 | renovations that he had done, yes, sir. |
| 10:33:30 | 18 | Q.    You had a chance to thoroughly investigate |
| 10:33:33 | 19 | that to your satisfaction? |
| 10:33:35 | 20 | A.    Well, I looked at what -- I looked at the home |
| 10:33:40 | 21 | and saw where he had been doing remodeling and he added |
| 10:33:45 | 22 | on to the home and I noticed that was not complete; but |
| 10:33:51 | 23 | up until that point, I saw what he had done. |
| 10:33:56 | 24 | MR. RUSNAK:  Object to the nonresponsive |
| 10:33:57 | 25 | portion of your answer. |

| | | |
|---|---|---|
| 10:33:58 | 1 | Q.    (BY MR. RUSNAK) Mr. Reed, what I asked you, |
| 10:34:00 | 2 | you had an opportunity to investigate the remodeling, |
| 10:34:07 | 3 | renovation, and enlarging of the home? |
| 10:34:08 | 4 | A.    What do you mean by "investigate the |
| 10:34:10 | 5 | renovation" or "remodeling"? |
| 10:34:10 | 6 | Q.    Did you have a chance to look into what |
| 10:34:12 | 7 | Mr. Munoz did? |
| 10:34:13 | 8 | A.    I saw what he had done, yes, sir. |
| 10:34:14 | 9 | Q.    So, you had a full and thorough opportunity -- |
| 10:34:16 | 10 | full and complete opportunity to determine what had been |
| 10:34:19 | 11 | done? |
| 10:34:19 | 12 | A.    I saw what -- he showed me what he had done, |
| 10:34:24 | 13 | and I saw what he -- I saw the work that he had |
| 10:34:26 | 14 | completed up to that point. |
| 10:34:27 | 15 | Q.    My question, sir -- |
| 10:34:28 | 16 | MR. TAYLOR:  He wants to know if you saw |
| 10:34:31 | 17 | everything that you needed to see or if there was more |
| 10:34:34 | 18 | information you wanted that you were not able to get as |
| 10:34:37 | 19 | it pertains to the renovation. |
| 10:34:40 | 20 | MR. RUSNAK:  That's not exactly my |
| 10:34:42 | 21 | question, but I'll -- |
| 10:34:43 | 22 | MR. TAYLOR:  I thought that's what you |
| 10:34:45 | 23 | were trying to ask.  I'm just trying to help. |
| 10:34:47 | 24 | MR. RUSNAK:  I understand.  I will ask |
| :34:48 | 25 | you, of course, to obey with the Federal Rules to the |

10:34:51  1  extent that we need to here.  I don't want you to --

10:34:52  2           MR. TAYLOR:  I'll be a potted plant if

10:34:55  3  you want.  I was just trying to help.

10:34:57  4           MR. RUSNAK:  No, I don't need you to be a

10:35:00  5  potted plant.  I just -- my questions are my questions.

10:35:02  6  I appreciate the effort you're trying to make.

10:35:02  7       Q.   (BY MR. RUSNAK) Can you answer your counsel's

10:35:03  8  question?  Did you see everything you needed to see

10:35:03  9  to --

10:35:05  10      A.   I saw the remodeling.  There were some

10:35:14  11 additions that were not finished yet, but -- I guess

10:35:18  12 I -- I guess I still don't understand what you're trying

10:35:20  13 to ask.

10:35:20  14      Q.   Did you see the photographs and the records of

10:35:24  15 the house as it was before he started the remodeling?

10:35:28  16      A.   I don't remember -- I don't remember seeing

10:35:31  17 that.

10:35:31  18      Q.   Did you request any?

10:35:33  19      A.   I don't think so.  I don't remember.

10:35:38  20      Q.   You are aware that he was either completing or

10:35:41  21 in the process of completing renovations to his home?

10:35:44  22      A.   Correct.

10:35:44  23      Q.   And you're aware that Mr. Munoz seven months

10:35:50  24 prior to the date of the fire, which is January 1st,

10:35:54  25 2003, had completed paying the mortgage on the home?

10:35:57   1        A.    Yes, sir.  He had told me that the mortgage
10:35:59   2   was completely paid off.
10:36:01   3        Q.    What did you do to confirm that that fact was
10:36:04   4   true?
10:36:04   5        A.    Well, I noticed on the claim file that there
10:36:12   6   was no mortgage company listed.  So, that told me that
10:36:15   7   the mortgage had been paid off.
10:36:16   8        Q.    So, you believed Mr. Munoz?
10:36:18   9        A.    Correct.  And it was also confirmed by company
10:36:23  10   records.
10:36:24  11        Q.    It's also true that State Farm gave Mr. Munoz
10:36:32  12   in writing the first specification of information that
10:36:35  13   it wanted on March 18th, 2003?
10:36:45  14        A.    What was your question?
10:36:47  15        Q.    It's true that State Farm gave Mr. Munoz its
10:36:50  16   first specification of the information it wanted him to
10:36:54  17   provide on March 18th of 2003?
10:36:57  18        A.    Mr. Munoz was made aware of some of the
10:37:06  19   information that would be requested prior to that, but
10:37:11  20   the list -- that list that you're looking at was
10:37:16  21   provided to him at that time.
10:37:16  22        Q.    There was a letter from you on March 18th,
10:37:19  23   2003, specifying certain information relating to his
10:37:23  24   financial matters and other things, correct, sir?
10:37:24  25        A.    Correct.

10:37:25　1　　　　Q.　And that's the first letter specifying

10:37:27　2　information to Mr. Munoz?

10:38:54　3　　　　　　　Let me help speed this process.　Exhibit D

10:38:57　4　to the Defendant's, State Farm Lloyds, Motion For

10:39:02　5　Summary Judgment and Supporting Brief is the March 18th,

10:39:06　6　2003 letter that is Exhibit D.　Let me show you the

10:39:10　7　letter.　The Bates stamp number on the letter is

10:39:24　8　SF000527 through 530.

10:39:28　9　　　　　　　Is that the letter, sir (indicating)?

10:39:31　10　　　　A.　That is the letter you're making reference to,

10:39:33　11　yes, sir.

10:39:33　12　　　　Q.　And there were no prior letters specifying

10:39:36　13　information?

10:39:37　14　　　　A.　That's what I'm looking for.　You want me to

10:39:40　15　say that there was no information requested prior to

10:39:42　16　that, and I'm looking that up.

10:39:44　17　　　　Q.　In writing, sir.

10:41:19　18　　　　A.　On January the 24th, there was a letter

10:41:23　19　indicating that -- pertinent records and documents.

10:41:29　20　　　　Q.　My question, sir, is specification of

10:41:32　21　particular documents.

10:41:34　22　　　　A.　You're talking -- which were specifically

10:41:38　23　requested?

10:41:38　24　　　　Q.　Yes, in writing.

10:41:39　25　　　　A.　Those were requested on --