| | |
|---|---|
| | 1   A   Well, it -- it could either be casting |
| | 2   doubt or she was just misinformed or uninformed |
| | 3   about the agreement on the -- on the pick up. |
| 13:09:03 | 4   Q   Well, she says here, "Wrecker driver said |
| | 5   he was there to repossess." |
| | 6         It would be pretty easy to check if |
| | 7   somebody actually came to repossess the vehicles. |
| | 8   There was supposedly a human being there.  There is |
| | 9   no misunderstanding.  Would there be? |
| | 10  A   Well, that's -- this is just information |
| | 11  that she had -- had provided.  But the records were |
| | 12  never provided by Rodriguez Ford to determine one |
| | 13  way or the other. |
| 13:09:33 | 14  Q   You never -- you never went over there |
| | 15  yourself or sent Mr. Lerma, Mr. Kemp, Mr. Robinson |
| | 16  or Mr. Levo to just go ask? |
| | 17  A   That is correct. |
| 13:10:11 | 18  Q   Now, if you'll look at page 3120.  Tell me |
| | 19  when you're there. |
| | 20  A   I'm there. |
| 13:10:16 | 21  Q   This is a part of a 6/22/03 interview with |
| | 22  Harry J. Cavazos.  Is it not? |
| | 23  A   Yes, sir. |
| 13:10:22 | 24  Q   And in the middle of the page it says, |
| | 25  "Harry and neighbor tried to connect the water hose |

|  |  |
|---|---|
| 1 | in a faucet at the Munoz residence.  They were |
| 2 | unable to connect the hose.  Saw a hole in the glass |
| 3 | window about the size of a baseball." |
| 4 | See where I'm reading from, sir? |
| 5 | A    Yes, sir. |
| 13:10:48   6 | Q    What window? |
| 7 | A    I would have to make an assumption on |
| 8 | that. |
| 13:11:00   9 | Q    Well, what's your assumption? |
| 10 | A    The window near the -- near the fire. |
| 13:11:03  11 | Q    A hole big enough to reach through and |
| 12 | unlock a window? |
| 13 | A    That I don't know.  I didn't see the -- I |
| 14 | didn't see the hole. |
| 13:11:13  15 | Q    You didn't ask Mr. Munoz the proximity of |
| 16 | the hole to the latch? |
| 17 | A    No, sir. |
| 13:11:20  18 | Q    Isn't it convenient that Mr. Munoz saw a |
| 19 | broken window? |
| 20 | MR. GARZA:  Mr. Cavazos. |
| 13:11:26  21 | Q    (BY MR. RUSNAK)  I'm sorry.  Mr. Cavazos? |
| 22 | Isn't that a convenient story, sir? |
| 23 | A    No, sir. |
| 13:11:35  24 | Q    Why not? |
| 25 | A    He -- he can break glass due to a fire. |

| | | | |
|---|---|---|---|
| 11:39 | 1 | Q | He testified in another statement to the police that he was told by a 911 operator -- rather he stated that he was told by a 911 operator not to try and open a window because it would let air into the fire and might fan it. |
| | 2 | | |
| | 3 | | |
| | 4 | | |
| | 5 | | |
| | 6 | | Do you recall that, sir, from his statement to one of the police officers? |
| | 7 | | |
| | 8 | A | I would have to look it up. |
| 13:12:09 | 9 | Q | So the answer is you don't recall? |
| | 10 | A | I don't recall. |
| 13:12:11 | 11 | Q | If it's there it's there? |
| | 12 | A | Correct. |
| 12:15 | 13 | Q | Correct? |
| | 14 | A | Correct. |
| 13:12:15 | 15 | Q | And on that same page, sir, just above it notes, "Went to H.E.B., went in his brother's truck, came home, Minerva cooked burgers." |
| | 16 | | |
| | 17 | | |
| | 18 | | Did you ask him whether he was using a barbecue or they were cooking inside? |
| | 19 | | |
| | 20 | A | I -- I don't recall. |
| 13:14:05 | 21 | Q | Now, if you'll go to page 2675. Tell me when you're there, sir. |
| | 22 | | |
| | 23 | A | Okay. Almost there. Okay. |
| 13:14:18 | 24 | Q | All right. This is from a 1/28/03 interview you conducted with Luis Munoz. Is it not? |
| | 25 | | |

|  |  |
|---|---|
| 1 | Is that correct? |
| 2 | A    I'm looking at the date, 1/28/03. Yes, |
| 3 | sir. |
| 13:14:33  4 | Q    And at the bottom of the page it says, |
| 5 | "Harry Cavazos's dad called Mrs. Munoz and said they |
| 6 | needed to be careful, not to answer the door and to |
| 7 | watch out for themselves, take care of their little |
| 8 | boy and not to go outside." |
| 9 | You see where I'm reading from at the |
| 10 | bottom of the page? |
| 11 | A    Yes, sir. |
| 13:15:05  12 | Q    Did you or anyone on your behalf ask |
| 13 | Mr. Cavazos whether or not that call occurred? |
| 14 | A    Could you ask that question again? |
| 13:15:13  15 | Q    Yes. Did any -- did you or anyone else on |
| 16 | your behalf, as far as you know, anyone else on |
| 17 | State Farm's behalf speak to Mr. Cavazos' dad and |
| 18 | ask him why he called or if he called Mrs. Munoz to |
| 19 | tell her to be careful, not to open the door, to |
| 20 | watch out for themselves, take care of their little |
| 21 | boy and not to go outside? |
| 22 | A    I don't -- I didn't speak to Mr. Cavazos. |
| 23 | I don't know what was asked or said -- well, we do |
| 24 | have an interview -- I believe two interviews with |
| 25 | Mr. Cavazos, and I will be glad to look those up. |

| | | | |
|---|---|---|---|
| 16:00 | 1 | Q | I can give you page and number, and I'll tell you that there is no question asked about that. |
| | 2 | | |
| | 3 | A | Well -- |
| 13:16:09 | 4 | Q | If you'll accept my representation that that wasn't asked. |
| | 5 | | |
| | 6 | A | I -- I can't because I was not present, and it's not -- it's not -- |
| | 7 | | |
| 13:16:16 | 8 | Q | Wouldn't that be something you would check out, important matter, take a recorded statement? |
| | 9 | | |
| | 10 | A | Mr. Cavazos would not allow a recorded interview. |
| | 11 | | |
| 13:16:26 | 12 | Q | How -- if you weren't there how do you know Mr. Cavazos wouldn't allow a recorded interview? That is the elder Mr. Cavazos? |
| | 13 | | |
| | 14 | | |
| | 15 | A | That is correct. |
| 13:17:15 | 16 | Q | He's a former police officer; is he not? |
| | 17 | A | I'm not aware of that. |
| 13:17:28 | 18 | Q | On page 2677 -- are you there? |
| | 19 | A | I'm -- 2677? |
| 13:17:31 | 20 | Q | Yes. |
| | 21 | A | What am I looking for? |
| 13:17:33 | 22 | Q | I just want you to be at the page so I can ask a question. |
| | 23 | | |
| | 24 | A | Oh. I was looking for the interview with Mr. Cavazos. |
| | 25 | | |

```
17:45       1        Q    No.  This is the notes from the 1/28/03.
            2        A    Because you asked me if -- if Mr. Cavazos
            3   was ever asked, and I was going to review that
            4   because --
13:18:00    5        Q    Well, we can go back to that.  Let me just
            6   go forward with this, page 2677.
            7             This is part of your notes from your
            8   interview with Mr. Munoz, is it not, on 1/28/03?
            9        A    Correct.  I believe it's a continuation.
13:18:22   10        Q    Okay.  And this is your notes concerning
           11   the reported confession of arson as I've termed it
           12   by Michael Cavazos.  Is it not?
           13        A    It's a -- it's a rumor, yes, sir.
13:18:35   14        Q    And that rumor was that he was confessing
           15   to committing arson?
           16        A    I -- it's just a unfounded rumor that he
           17   was bragging about a fire.
13:18:46   18        Q    That he was bragging about starting a fire
           19   at the Munoz home.
           20             Now, this was communicated to you on
           21   1/28/03.  And according to your Entry 176 on the
           22   activity log, you did not go attempt to visit
           23   Ms. Florez until 9/9/03.  Why did you wait between
           24   1/28/03 and 9/9/03 to try and speak to Ms. Florez?
           25        A    That is the only -- that's the first
```

|  |  |
|---|---|
| | 1   recording of it.  I don't know when the first time I |
| | 2   went by was.  But that is -- that is when there is |
| | 3   an activity log entered into the log.  I -- I do |
| | 4   know I went by the police station and they -- they |
| | 5   didn't have any information on that, either. |
| 13:19:45 | 6       Q    And that was the interview with |
| | 7   Mr. Martinez -- rather Detective Martinez? |
| | 8       A    I believe so, yes, sir. |
| 13:20:00 | 9       Q    And that occurred on 8/12, 2004, 1 year, |
| | 10  7 months later, according to the simple math.  Is |
| | 11  that correct? |
| | 12      A    If that's what it figures out, yes, sir. |
| 13:20:16 | 13      Q    Why did you wait a year and seven months |
| | 14  to speak to the police about this report of a |
| | 15  confession of arson? |
| | 16      A    Well, I -- I had spoken to them before |
| | 17  that, but I don't know if that ever came up.  I |
| | 18  don't -- I don't recall.  But specifically I asked |
| | 19  about that incident, and they didn't have anything |
| | 20  to corroborate it.  They also through -- throughout |
| | 21  any conversations with them never appeared to me, |
| | 22  that I recall, very concerned about the Cavazoses. |
| 13:21:01 | 23      Q    And if Detective Adame and |
| | 24  Detective Martinez deny that you ever spoke to them |
| | 25  about this matter, do you know why they would be |

```
 1  denying that?
 2     A    No, sir, I do not.
 3              MR. RUSNAK:  Gentlemen, I'm going to
 4  ask you to hold for one moment while I consult with
 5  my co-counsel.  We may be at the end here.  One
 6  second, please.
 7              MR. TAYLOR:  Yeah.  We'll wait a
 8  minute.
 9              (Short recess.)
10              MR. RUSNAK:  Gentlemen, no further
11  questions at this time.
12              MR. TAYLOR:  Okay.  We'll reserve our
13  questions.  And, David, I appreciate you finishing
14  out today.
15              MR. RUSNAK:  You're welcome.
16              (Conclusion of the deposition.)
17
18
19
20
21
22
23
24
25
```

267

```
 1           CHANGES AND SIGNATURE OF THOMAS LEE REED
 2                   TAKEN OCTOBER 21, 2005
 3   PAGE    LINE    CHANGE                              REASON
 4   _____
 5   _____
 6   _____
 7   _____
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   _____
23   _____
24   _____
25   _____
```

FRANCESCON REPORTING SERVICE 281-996-7881

       I, THOMAS LEE REED, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

                                        _____
                                        THOMAS LEE REED


THE STATE OF TEXAS          )
COUNTY OF _____    )

       Before me, _____, on this day personally appeared THOMAS LEE REED known to me (or proved to me under oath or through _____) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purpose and consideration therein expressed.

       Given under my hand and seal of office this _____ day of _____, _____.

                                        _____
                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF _____

My Commission Expires _____

```
 1   STATE OF TEXAS      )
     COUNTY OF HARRIS    )
 2

 3              REPORTER'S CERTIFICATION
                 TO THE DEPOSITION OF
 4                 THOMAS LEE REED
              TAKEN ON OCTOBER 21, 2005
 5

 6      I, Stacy L. Thomas, Certified Shorthand Reporter

 7   in and for the State of Texas, hereby certify that

 8   this deposition transcript is a true record of

 9   the testimony given by the witness named herein,

10   after said witness was duly sworn by me.

11      I further certify that I am neither attorney

12   nor counsel for, nor related to, nor employed by

13   any of the parties or attorneys in the action in

14   which this proceeding was taken.  Further, I am

15   not a relative or employee of any attorney of

16   record in this cause, nor do I have a financial

17   interest in the action.

18      Certified to by me this   24th   day of

19   _October_, _2005_.

20

21                      _Stacy L. Thomas_
22                      Stacy L. Thomas, Texas CSR 7015
                        Expiration Date: 12/31/2006
23                      FRANCESCON REPORTING SERVICE
                        CRCB Registration Number: 208
24                      1506 East Broadway, Suite 200
                        Pearland, Texas  77581
25                      (281) 996-7881
```