United States District Court
Southern District of Texas
FILED

NOV 2 2 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUIS C. MUNOZ AND | § | C.A. NO B-04-141 |
| CARMELA MUNOZ | § | |
| | § | |
| VS. | § | |
| | § | |
| STATE FARM LLOYDS | § | |

### DEFENDANT STATE FARM LLOYDS' REPLY TO PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT STATE FARM LLOYDS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant State Farm Lloyds Replies to Plaintiffs' Amended Response to Defendant State Farm Lloyds' Motion for Summary Judgment as follows:

### INTRODUCTION

1. This is a fire case in which State Farm has moved for summary judgment based on non-compliance with the policy. The issue is whether, prior to filing suit, Plaintiffs failed to provide meaningful financial records, specifically records showing income for Mr. Munoz in the months leading up to the fire. Since by Mr. Munoz's own testimony it is undisputed he did not, State Farm's Motion for Summary Judgment should be granted.

### ARGUMENT AND AUTHORITIES

2. In their Response, Plaintiffs attempt to create fact questions, alternatively arguing some form of waiver, some form of attempted compliance, and an alternative theory of the fire. However, their response misstates the time in which State Farm could request financial information; misstates the law concerning Plaintiffs' duties after loss; misstates what information was missing, whether it was actually provided, and the extent to which documents that were provided to State

Farm were provided in a meaningful fashion; and argues matter irrelevant to Plaintiffs' duties under the policy. None of Plaintiffs' evidence raises a material question of fact on the central issue: Munoz failed to provide meaningful income information to State Farm on request.

**1.   Plaintiffs' Response misstates the time in which State Farm could request financial information.**

    3.      Without using the word "waiver," Plaintiffs attempt to excuse their non-compliance by claiming State Farm somehow breached the policy by not requesting financial records within fifteen days of the loss. However, there is no such requirement in the policy or in the law.

    4.      Plaintiffs' policy with State Farm states:

> 14.    Our Duties After Loss.
>
> a.    Within 15 days after we receive your written notice of claim, we must:
>
> (1)    acknowledge receipt of the claim.
> \*\*\*
> (2)    begin any investigation of the claim;
> (3)    specify the information you must provide in accordance with "Your Duties After Loss" (item 2. above).
>
> **We may request more information, if during the investigation of the claim such additional information is necessary.**

Exhibit EE to State Farm's Motion for Summary Judgment, page 15 (emphasis added).

    5.      The policy does not require that every record ever to be requested by the carrier must be requested within fifteen days. In fact, such a requirement would be absurd. For example, in this case State Farm did not receive the report of its origin and cause expert until February 6, 2003, thirty-six days after the fire. Under Plaintiffs' argument, every carrier following every fire would have to request extensive financial information without even knowing if the fire was intentional. The policy

clearly provides that State Farm is not limited to the items requested in the first fifteen days, but during the investigation may request further information as it becomes necessary.

6. Not only does the policy not require such an early request, Insurance Code Article 21.55, the "prompt payment of claims" statute,[1] expressly authorizes insurance companies to request additional information and records throughout the investigation as the need becomes apparent. The statute provides:

**Notice of Claim**

... an insurer shall, not later than the 15th day after receipt of notice of a claim . . .:

    (1)    acknowledge receipt of the claim;
    (2)    commence any investigation of the claim; and
    (3)    request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant. **Additional requests may be made if during the investigation of the claim such additional requests are necessary.**

Article 21.55, Section 2, (emphasis added).

7. Thus, not only does the law not impose a duty to request all records needed within fifteen days as alleged by Plaintiffs, the law expressly allows carriers to request records even late in the investigation, if it becomes necessary.

8. Plaintiffs' evidence and argument that State Farm did not timely request the financial records within the first fifteen days does not create a fact question, nor does it excuse Plaintiffs' non-compliance with policy requirements.

---

[1] Texas Insurance Code Article 21.55, Section 2, has now been recodified as Section 542.055. However, the recodification did not go into effect until April 1, 2005, after Plaintiffs' filed suit.

3

**2.   Plaintiffs' Response misstates the law concerning their own duties after loss.**

9.   Not only does the policy and the law allow State Farm to request documents throughout the investigation, it also makes Plaintiffs' compliance with those requests a condition precedent to coverage. The policy states:

> **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:
> \*\*\*
>
> d.   as often as we reasonably require:
>
> \*\*\*
>
> (2)   **provide us with records and documents we request and permit us to make copies.**

Exhibit EE, pp. 12, 13, (emphasis added).

10.   Plaintiffs attempt to create a fact question on compliance by narrowly construing their obligations under the policy and stating they "did not fail to provide any document related to *the value of their loss*." (Plaintiffs' Response, unnumbered page 5, paragraph 26, emphasis in original.) State Farm, however, was not limited to, and did not limit its requests to, obtaining documents on the value of the loss: State Farm was entitled to determine whether Plaintiffs may have had a financial motive to set the fire. *First Bank of Denton v. Maryland Casualty Company*, 918 F.2d 38 (5th Cir. 1990). Even Plaintiff Luis Munoz **agrees** State Farm was entitled to investigate motive. Depo. of L. Munoz, p. 85, ll.8-23.

11.   In their Response, Plaintiffs claim that, "State Farm asks this Court based on ... *Griggs*, to declare that the policy requires that Munoz was required to provide any document

4

requested by State Farm, of any kind, whether related to the value of the loss or otherwise, and that failure to meet this open-ended 'condition precedent' bars Munoz from policy benefits." (Plaintiffs' Response, unnumbered page 8, paragraph 23). Thus, Plaintiffs claim that State Farm could demand any record, whether related in any form or fashion to the fire and the Plaintiffs' claim and, if Plaintiffs failed to produce it, then State Farm could deny the claim. That logic is inane and appears solely to be an attempt to justify Plaintiffs' failure to provide basic, relevant, important information central to the investigation of a claim regarding a fire that was intentionally set – did the Plaintiffs have a motive or reason for setting the fire?

12. State Farm does not seek financial records regarding all claims, or even the majority of claims. In fact, State Farm seeks them solely when they are relevant (*i.e.* to determine the amount of a loss, to determine possible future loss, and to determine whether someone had a financial motive to intentionally set a fire or to try to commit insurance fraud. It is difficult to ascertain financial motive without financial records. Those records would reflect the poliyholders' income and expenses. They would demonstrate whether a policyholder had a financial reason to intentionally set a fire to collect insurance proceeds.

13. In this claim, State Farm was entitled to the most basic of information: what was the Munozes' income at the time of the fire? State Farm requested tax returns, which it did not receive because the Plaintiffs had not filed them. State Farm then requested proof of income, which in the absence of some other record became a request for bank statements for Munoz Roofing, a sole proprietorship owned by Luis Munoz. Once again, Plaintiffs did not provide these records. Interestingly, nowhere in any of the Responses, affidavits or exhibits, do Plaintiffs contend they actually gave income information to State Farm! Even Luis Munoz, when pressed during his

deposition, admitted he did not. (Depo. of L. Munoz, p. 37). It is difficult to ascertain financial motive without financial records.

3. **Plaintiffs' Response misstates what information was missing, whether it was actually provided, and the extent to which documents that were provided to State Farm were provided in a meaningful fashion.**

14. Plaintiffs "dance" around the question of whether they actually provided meaningful financial, specifically income, records to State Farm. Their response states: ". . . Mr. Munoz did provide and permit State Farm to copy all requested documents *within their possession, custody, or control*, albeit slowly at times . . .." (Plaintiffs' Response, unnumbered page 9, paragraph 26, emphasis added). However, behind the conclusory language, the undisputed facts -- as shown by Mr. Munoz own testimony and a letter from his counsel -- reveals that Plaintiffs not only did not provide a meaningful opportunity for State Farm to copy the financial documents Plaintiffs made available for examination at Mr. Munoz's bookkeeper's "office," but Plaintiffs also never provided any record of Mr. Munoz's income before the fire.

15. Plaintiffs' claim they offered to allow State Farm to copy the records it needed. The terms of Plaintiffs' offer to allow State Farm to copy *some* of the requested documents are undisputed and contained in a letter from Plaintiffs' counsel, Mr. Garza, dated April 2, 2004. The offer, in the written words of Mr. Garza himself, was as follows:

> "I instructed Tom to inform you, that the records are available, to **bring your own copier and personnel** . . . and State Farm would have a copy of every receipt for lumber, nails, roofing shingles and other construction materials . . .."

Exhibit CC, State Farm's Motion for Summary Judgment.

16. Setting aside the fact that the records in question were only expense records, not evidence of Mr. Munoz's income before the fire, the gamesmanship demonstrated by Mr. Munoz and

6

his counsel is apparent. There is no copy service in Raymondville and no portable copier. Plaintiffs filed suit about one month after this "offer."

    17.    Even more importantly, Mr. Munoz himself has admitted under oath that he never gave income information to State Farm before filing suit. Mr. Munoz was clearly aware that since he had not filed tax returns, State Farm was requesting bank statements for his business to prove income:

> Q.    Did you have any source of income in 2002 other than Munoz Roofing?
>
> A.    No.

Depo. of L. Munoz, p. 31, ll. 23-25.

> Q.    I'm showing you a two-page letter marked as SF 370 and 371 dated December of 2003. Take a minute. Do you remember getting that letter?
>
> A.    Number 3 -- Number 4 said Mr. Munoz failed to provide any records for the roofing company. We did provide.
>
> Q.    Okay.
>
> A.    We provided receipts.
>
> Q.    Okay. What he said was that you failed to provide records showing any type of income. Okay? And **did you understand from that that he was trying to get bank statements that would show deposits or any kind of ledgers that would show income?**
>
> A.    **Okay.**
>
> Q.    **Did you understand that that's what he was looking for?**
>
> A.    **Yes.**
>
> Q.    Okay. **And until you had the bank redo the records, reissue the records, is it your testimony you didn't have anything to give them?**

7

  A.  **Yes.**[2]

Depo. of L. Munoz, pp. 38, ll. 7-pp. 39, ll. 2 (emphasis added).

  Q.  Well, and I'm not saying it's your fault or Miss Barnett's fault. But **he had asked for the business records for 2002 and for your tax returns. And you couldn't get them, so you didn't give them to State Farm?**

  A.  **Correct.**

  Q.  And Miss Barnett didn't have them, so she didn't give them to State Farm?

  A.  Correct.

  Q.  **So, before you went and got the bank statements remade by the bank, State Farm never got your 2002 financial records, right?**

  A.  **Okay.**

  Q.  **Do you agree?**

  A.  **Yes.**

Depo. of L. Munoz, p. 37, ll. 5-19 (emphasis added).

  Q.  ...You would have had the bank statements for the entire 2002 year by August of 2004?

  A.  We should, yeah, because they would have filed the income tax.

Depo. of L. Munoz, p. 36, ll. 3-6.

---

[2] As set forth on p. 7, Mr. Munoz got the records sometime after suit was filed, probably around August of 2004.

8

18.  Cutting through all of the word games and clever affidavits, Mr. Munoz himself has finally admitted he never gave income records to State Farm.[3] It follows that Plaintiffs filed this suit knowing State Farm did not have those records.

4. **Plaintiffs' Response argues matters irrelevant to Plaintiffs' duties under the policy.**

19.  Throughout their Response, Plaintiffs attempt to persuade the Court they did not set the fire. That question, however, is irrelevant to the Motion. Whether or not they set the fire, State Farm was entitled to investigate, and Plaintiffs were required to provide the income documents as part of that investigation, as a condition precedent to coverage.

20.  They did not:

Q.  Well, let me ask you this: Do you think that if there's an intentionally set fire that State Farm has a right to try to find out who did it?

A.  I understand they have a right to find out.

Q.  And do you agree that -- I mean you're arguing, as I understand it, you're arguing that you didn't have a motive to set the fire because you were in good financial condition in 2002 –

A.  Correct.

Q.  -- right? That's your argument. Wouldn't you believe that State Farm before it has to decide whether to pay the claim or deny the claim, **wouldn't you agree that State Farm has the right to know what your financial condition was in 2002?**

A.  **Yes.**

---

[3] Not only did Plaintiffs not provide that information pre-suit, despite getting all of his statements for 2002, as of today Plaintiffs have still not produced bank records for Munoz Roofing for the two months before the fire. See Production Log and Affidavit of Sharri Winn.

9

> Q. Okay. And wouldn't you agree that, whether it was your bookkeeper's fault or not, you had not given any information to State Farm about what your financial condition was in 2002?
>
> A. I gave State Farm what was available to me.
>
> Q. Okay. I'm not ask -- I'm not blaming you. I just want to talk about the facts. The facts are that, as of the time that you sued State Farm, you had not given State Farm any information about what your income was in 2002, correct?
>
> MR. GARZA: Hold on. Let's take a break. Do you mind?

Depo. of L. Munoz, pp. 85, ll. 8-pp. 86, ll. 11.

21. The break is interesting, because when Plaintiff was being asked the question central to this Motion, his counsel interrupted the deposition and counseled his client.

22. Following the break, State Farm's counsel was unable to get a straight answer:

> Q. Mr. Munoz, without asking you what the substance of the conversation was, did you and your attorney discuss that last question on the record? Without telling me what he said --
>
> A. Yeah.
>
> Q. -- did you and your lawyer discuss that last question on this break?
>
> A. Yes.

Depo. of L. Munoz, pp. 86, ll. 23-pp. 87, ll. 5.

> A. Yes, I had given it.
>
> Q. And what you say you gave them was your testimony and the receipts, right?
>
> A. I gave them testimony. I gave them receipts. I gave them contracts with jobs I was working.
>
> Q. You had not given them any bank statements, correct?
>
> A. Might have been for --

10

Q. For 2002?

A. Might have been a few, what I had.

Q. If their records show that they didn't get any bank statements for 2002, would you argue with that?

A. If they didn't get them because they were at Mr. Garza's office -- if they didn't get them, it's because he -- Mr. Reed didn't make copies of them. But all that stuff was available, what I had, bank statements, some of them were available Mr. Garza's office; receipts, Mr. Garza's office; contracts, they should have available because I sent them to Mr. Reed.

Q. How many bank statements for 2002 were at Mr. Garza's office?

A. I don't recall.

Q. You don't know if it's zero or if it was one, two, three?

A. Might have been two or three.

Q. You don't know?

A. I don't know.

Depo. of L. Munoz, pp. 87, ll. 20-pp. 88, ll. 22.

## CONCLUSION AND PRAYER

23. Plaintiffs have failed to comply with the conditions of the applicable policy issued to them. They failed to provide the requested financial information, even though Mr. Munoz, himself, agreed that it was reasonable for State Farm to examine the motive of persons who might have set this fire, including the Munozes. Plaintiffs provided neither tax returns, apparently because they did not exist and were not filed previously, nor income information. While Plaintiffs did make expense information for Munoz Roofing available for review and copying (if State Farm could make arrangements to copy it on site at Mr. Munoz' bookkeeper's "office," without income information, the expense information is somewhat meaningless.

11

WHEREFORE, Defendant State Farm Lloyds respectfully asks the Court to grant its Motion for Summary Judgment, and for all other relief to which State Farm may show itself justly entitled.

|  |  |
|---|---|
|  | Respectfully submitted, |
| **OF COUNSEL:** | By: *[signature]* Warren Taylor for |
|  | Warren Taylor |
| **TAYLOR & TAYLOR** | State Bar No. 19727200 |
|  | Federal I.D. No. 1354 |
|  | Beth M. Taylor |
|  | State Bar No. 13336787 |
|  | Federal I.D. No. 14601 |
|  | 815 Walker, Suite 250 |
|  | Houston, Texas 77002 |
|  | (713) 615-6060 Telephone |
|  | (713) 615-6070 Facsimile |
|  |  |
|  | Rene O. Oliveira |
|  | State Bar No. 15254700 |
|  | Federal I.D. No. 4033 |
|  | Roerig, Oliveira & Fisher, L.L.P. |
|  | 855 West Price Road, Suite 9 |
|  | Brownsville, Texas 78520-8718 |
|  | (956) 542-5666 Telephone |
|  | (956) 542-0016 Facsimile |
|  |  |
|  | ATTORNEYS FOR DEFENDANT STATE FARM LLOYDS |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant State Farm Lloyds' Reply to Plaintiffs' Amended Response to Defendant State Farm Lloyds' Motion for Summary Judgment has been forwarded to all counsel of record by certified mail, return receipt requested, on this 22nd day of November, 2005.

Gustavo Ch. Garza
705 W. Highway 100, Suite A
Los Fresnos, Texas 78566

David L. Rusnak
Scoggins & Goodman, P.C.
245 Peachtree Center Ave. NE, Suite 2800
Atlanta, GA 30303-1227

_____
Warren Taylor