IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED
NOV 2 2 2005
Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| LUIS C. MUNOZ AND | § | C.A. NO B-04-141 |
| CARMELA MUNOZ | § | |
| | § | |
| VS. | § | |
| | § | |
| STATE FARM LLOYDS | § | |

## DEFENDANT STATE FARM LLOYDS' MOTION
## TO EXCLUDE AFFIDAVIT TESTIMONY

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant State Farm Lloyds ("State Farm") files this Motion to Exclude Affidavit Testimony, seeking the exclusion of certain affidavit testimony of Yolanda Perez, Raul Pena, Sr., and Karen Barnett, as follows:

### I. Introduction

1.  On September 30, 2005, Plaintiffs Luis C. Munoz and Carmela Munoz filed a number of affidavits of nonparty witnesses. On October 25, 2005, State Farm filed its Unopposed Motion for Leave to Conduct Additional Discovery and called these affidavits into question. Plaintiffs re-filed these affidavits on October 27, 2005, even though by that time they were aware that State Farm had questioned the veracity of these affidavits. Plaintiffs did not follow up with the witnesses to verify the accuracy of their affidavits.

2.  State Farm respectfully moves the Court to exclude in their entirety the affidavits of Yolanda Perez and Raul Pena, Sr., and a portion of the affidavit of Karen Barnett. In the alternative, State Farm moves the Court to exclude certain statements contained in the affidavits of Yolanda Perez, Raul Pena, Sr., and Karen Barnett.

## II. Argument

A.  **The affidavit of Yolanda Perez should be excluded in its entirety because the manner in which it was created is not trustworthy. In the alternative, certain statements from Perez's affidavit should be excluded because Perez has retracted her testimony or the evidence contradicts her testimony.**

3.  Perez testified that counsel for the Munozes, Gustavo Garza, was responsible for writing her affidavit. Exhibit B, pp. 61, ll. 9-14. Perez did not recall if Garza or Garza's secretary brought her the affidavit to sign. Exhibit B, pp. 62, ll. 2-25. Perez testified that she read the affidavit before signing it, but admitted that when asked to sign the affidavit, she was at the store and in between customers. Exhibit B, pp. 62, ll.2-pp. 63, ll. 12. She admitted that if the same affidavit she signed on September 14, 2005, were presented to her again, she would not sign it. Exhibit B, pp. 63, ll. 17-pp. 64, ll. 9.

4.  The September 14, 2005, affidavit stated that Perez had never spoken to any State Farm representatives, agents, or adjusters regarding the Munoz accounts. Exhibit A. Plaintiffs used this affidavit to argue that State Farm adjuster Tom Reed "fabricated" his claim file log entry regarding his having met with Ms. Perez, an argument Plaintiffs still assert. In her November 9, 2005, deposition, Perez retracted this statement in her affidavit and admitted to having met with State Farm Claim Representative Tom Reed:

> Q: So let me ask you this: Under oath in front of the Judge and jury, had you spoken with Mr. Tom Reed before September 14, 2005?
>
> A: Yes, I had.
>
> Q: Where?
>
> A: There at the store, at Jano's. There at the store.
>
> Q: And your conversation with him was about, in general?

2

> A: Yeah. The Munozes.
>
> Q: Okay. The Munoz account.
>
> A: Yeah. The Munoz account.

Exhibit B, pp. 59, ll. 3-14. Perez went on to testify that she spoke with Reed and that she had Reed's business card stapled to her file for the Munozes. Exhibit B, pp. 12, ll. 16-pp. 13, ll. 3.

    5.    Perez verified that the Jano's Superstore business card contained in State Farm's original claim file (pre-suit) bears her original signature. Exhibit B, pp. 18, ll. 21-pp. 20, ll. 25; Exhibit C. Perez verified that copies of the Munozes' account records contained in State Farm's original claim file bear her original signature and the date of October 29, 2003. Exhibit B, pp. 16, ll. 15-pp. 18, ll. 16. Perez testified that Reed could not have obtained these documents with her signature from anyone else. Exhibit B, pp. 17, ll. 12-15; pp. 20, ll. 20-25. State Farm asks the Court to exclude Yolanda Perez's September 14, 2005, affidavit, or, in the alternative to exclude paragraph 8.

**B.    The affidavit of Raul Pena, Sr. should be excluded in its entirety because the manner in which it was created is not trustworthy. In the alternative, certain statements from Pena's affidavit should be excluded because Pena has retracted his testimony or the evidence contradicts his testimony.**

    6.    Similarly, Pena testified that he did not write his affidavit, but that Garza was responsible for writing it. Exhibit D, Exhibit E, pp. 24, ll. 8-pp. 26, ll. 1. Pena testified Garza asked him to come to Garza's office, and that, when he did, he met with Garza and Mr. Munoz:

> Q: Okay. Well, you went to his office to discuss with him the things that eventually became this affidavit, correct?
>
> A: I went because I was called to go over there.
>
> Q: Okay.

3

> A: And I was not prepared. And I was not prepared. And they asked me – he asked me questions and questions, and I was not prepared, but he asked me to raise my hand.
>
> \*\*\*
>
> Q: Was Mr. Munoz in Mr. Garza's office when you went over there?
>
> A: Yes.
>
> Q: And *it was Mr. Munoz who told you that on December 31 you had repaired two tires for him?*
>
> A: More or less, yes.
>
> Q: Okay.

Exhibit E, pp. 29, ll. 21-pp.30, ll. 4; pp. 31, ll. 2-7 (emphasis added). Pena then testified that he did not consult or review any documents to confirm whether or not what Mr. Munoz told him about the date of the repairs, which subsequently was incorporated into Pena's affidavit, were true. Exhibit E, pp. 38, ll. 13-21.

7. In the September 14, 2005, affidavit prepared by Garza, Pena averred that he did not speak to Reed or anyone associated with State Farm on June 23, 2003. Exhibit D. At his recent deposition, however, Pena admitted that his statement might be incorrect, and that Reed may, in fact, have been at his shop:

> Q: Okay. Why do you say maybe he was out there a couple of times?
>
> A: I have never seen him, and most probably I have seen him several times. There are a lot of clients that go over there.
>
> Q: So are you saying that it is possible for him to have been there, you just don't remember?
>
> A: Maybe that's true.

4

\*\*\*

Q: If Mr. Reed gets up in front of the Federal Judge and swears under oath that he spoke with you in June of 2003, are you going to get up in front of the Federal Judge and swear under oath to the Judge that he did not speak to you in June 2003?

A: In June 2003?

Q: Yes, sir.

A: This is the first time I met him personally. Whether he went to the shop or not, I don't know. He spoke to me, probably did. A lot of people spoke to me.

Exhibit E, pp. 52, ll. 9-20; pp. 77, ll. 11-21. Pena could not testify with any certainty that he had never spoken to Reed as alleged in the affidavit.

8. Additionally, State Farm's original claim file contains two business cards from Pena's Tire Service. One of the cards bears a handwritten line stating: "Owner: Raul Pena, Sr. 06/23/03." Exhibit F. Pena verified that: a) the Pena's Tire Service business card contained in State Farm's original claim file was the card he would have been using in 2003 (Exhibit F, Exhibit E, pp. 59, ll. 23-pp. 60, ll. 9); b) his office was the only place a person could pick up his business card in 2003 (Exhibit E, pp. 60, ll. 10-19); and c) his building was small enough that if someone came inside the shop, he would be able to see them (Exhibit E, pp. 9, ll. 5-12). Pena further confirmed that he did not advertise with his full name, Raul Pena, Sr., or have his full name posted in the tire shop. Exhibit E, pp. 9, ll. 13-pp. 10, ll. 6. These facts all support Reed's testimony that he visited Pena's shop in 2003. Combined with Pena's retraction of several statements in the affidavit, State Farm moves the Court to exclude Pena's September 14, 2005, affidavit, or, in the alternative paragraph 5.

9. Pena's deposition testimony contradicts other portions of his affidavit (as well as Mr. Munoz's deposition testimony). Paragraphs 4 and 6 of Pena's affidavit claim that his shop repaired two rear tires on Mr. Munoz's all terrain vehicle on December 31, 2002; that Pena did not recall giving Mr. Munoz a receipt because he paid cash; and that Mr. Munoz brought a four wheeler to his shop for tire repairs on December 31, 2002. Exhibit D. Mr. Munoz testified at his October 6, 2005, deposition that he took the four wheeler to Pena's shop on December 31, 2002, paid in cash, and did not get a receipt. Exhibit G, pp. 62, ll. 18-pp.63, ll. 21. Somehow, since the time Pena signed the affidavit and Mr. Munoz was deposed, the Munozes produced a document which purports to be a receipt for the repairs allegedly completed on Mr. Munoz's four wheeler. The receipt is dated December 30, 2003, not December 31, 2003. Exhibit H. Pena could not locate any document that reflected work done for Mr. Munoz on December 31, 2003. Instead, the sole receipt for work done was dated December 30, 2003. Pena testified that his recollections of the events was solely based on his review of the receipts. Thus, the statement in his affidavit regarding the repairs being performed on December 31, 2003, is incorrect and/or unsupportable.

10. Pena's affidavit prepared by Garza was specific as to the repairs completed Mr. Munoz's four-wheeler. However, since the receipt produced by the Munozes did not contain any detailed information regarding the repairs, Pena's affidavit statements as to repairs would have had to be supported by his own independent recollection of events. However, at his deposition, Pena did not have such an independent recollection of the repairs completed on December 31, 2002, to which he testified in his affidavit, but instead claimed he was relying on the receipt:

(Question by Mr. Garza):

Q: Now, as – as you recall, granted that we're now in November 2005 and all this activity supposedly occurred December 2002, as best as you can recall, did your shop service the tires of an ATV for Mr. Munoz before January 1st, 2003?

A: Yes. It's – have to be. We show one. I don't know if that's for the RV or not, but it was one for the tires. It didn't say what size.

Exhibit E, pp. 71, pp. 9-16.

(Question by Mr. Morado):

Q: All right. Now, you told Mr. Garza here that the receipt documenting the service that you provided to Mr. Munoz's ATV is right there. Are you referring to Exhibit No. 92 –

A: No, I didn't say that. I didn't say there were – I said he told me these are the tickets taken in. Okay. Maybe it was something else, flat or something, but he didn't – he didn't say to me that they were AV, no. He was talking about – this is another tire maybe. Maybe it is, maybe it's not. I don't know.

Q: You don't – you don't know?

A: I don't remember because it don't say there. You know, tickets have to say this was done for so many vehicles or something, but it don't say there, so I don't remember. Okay?

Q: Okay. You don't remember what?

A: What the work was done on this ticket. All I'm – all it says here was $6. Okay?

Q: Uh-huh

A: For what purpose, I don't know. Maybe a tire or a proof of something.

Q: Okay. So if you don't remember what work was done as reflected in this ticket for December 30, 2002, how do you remember that on December 31, 2002, your shop repaired two tires on an ATV?

7

> A: I didn't say. They brought the tires in there because the shop was open. Okay? Now they told me that we repaired something. Maybe they did, pay cash or made a ticket. I don't know. But the ticket – there's the ticket. It talks by itself, so that's all I'm saying.

Exhibit E, pp. 74, ll. 13-pp. 75, ll. 19. Therefore, State Farm asks the Court to exclude Pena's September 14, 2005, affidavit, or, in the alternative, to exclude paragraphs 4 and 6.

**C. Certain statements from the affidavit of Karen Barnett should be excluded because Barnett has retracted her testimony or the evidence conclusively contradicts her testimony.**

11. State Farm adjuster Tom Reed testified in his affidavit that he met with Mr. Munoz's bookkeeper Karen Barnett on August 12, 2003, and that she relayed specific information to him regarding Mr. Munoz's finances.[1] Paragraph 4 of Barnett's September 16, 2005, affidavit specifically denies any meeting with Reed or discussing Mr. Munoz's business, income taxes, or payroll taxes with Reed. Exhibit I. However, Barnett now admits that she did speak to Reed on August 12, 2003:

> Q: But isn't it true, ma'am, that before then, in August of 2003, you had a telephone conversation with Mr. Reed?
>
> A: He called the office.
>
> Q: Okay. He called the office. And how do you know that?
>
> A: Phone log.

---

[1] Counsel for State Farm conceded that the use of "met" in Reed's affidavit was a poor word choice, to the extent it implies an in-person meeting. It is clear from both State Farm and Barnett's records that Reed's August 12, 2003, conversation with Barnett occurred over the telephone.

8

> Q: Okay. And what does your phone log reflect regarding a call – a call from Mr. Reed?
>
> A: It has the time, Tom Reed, dash, State Farm, dash, Munoz.
>
> \*\*\*
>
> Q: All right. And did the telephone log provide any other information about that telephone call, either what may have been discussed or the duration of the call or – or anything about that call other than it occurred?
>
> A: No, sir.
>
> Q: All right. Do you have any independent recollection of that telephone call?
>
> A: I believe I spoke to the man.
>
> Q: All right. Aside from a belief that you spoke to him, do you have any other recollection of the call itself? Any memory of what was said or – or discussed?
>
> A: I remember – yeah, I believe I did speak to him because I think he said that he was with State Farm.
>
> Q: Uh-huh.
>
> A: Because, yes, I went back in there, and I – I wrote on there "State Farm, Munoz" on the phone log. It was my handwriting after his name.

Exhibit J, pp. 58, ll. 14-pp. 24; pp. 59, ll. 15-pp. 60, ll. 9. In addition to Barnett's own phone log of the call, State Farm's long distance phone records confirm that Reed had a five-minute conversation with Barnett that day. Exhibit K.

12.   Moreover, only Barnett could have given Reed the information that Mr. Munoz was behind in paying his taxes, was not providing her with the necessary records to file his tax returns, and was not sending in his employee payroll taxes, all of which he recorded in his log on August 12, 2003. Barnett testified she or perhaps Internal Revenue Service ("IRS") personnel were the only ones who had knowledge of the tax liens against Mr. Munoz. Exhibit J, pp. 64, ll. 4-11. However,

9

Reed did not receive a valid IRS authorization from the Munozes, or a subsequent response to his inquiry with the IRS, until after August 12, 2003.[2] Though Barnett claimed Reed could have found out from some other source, she could not identify any person who might have had access to Mr. Munoz's financial information. Exhibit J, pp. 64, ll. 12-17; pp. 66, ll. 8-16. In light of Barnett's admission that she did in fact speak with Reed on August 12, 2003, as well as the specificity of the information Reed noted after his conversation with Barnett that was true and could not have come from anyone else, State Farm moves to exclude paragraph 4 of Barnett's affidavit.

### III. Conclusion and Prayer

13.     The affidavits of Perez and Pena should be excluded in their entirety because the manner and circumstances in which they were created are not trustworthy. Paragraph 4 of Barnett's affidavit should be excluded because Barnett has retracted her testimony and the evidence is conclusively contradictory to her testimony. In the alternative, the referenced portions of Perez, Pena, and Barnett's affidavits should be excluded because of the witnesses' retractions and contradictory deposition testimony, as well as contradictory evidence.

For these reasons, State Farm respectfully moves the Court to exclude the affidavit testimony of Yolanda Perez, Raul Pena, Sr., and Karen Barnett.

---

[2] State Farm did not receive a signed tax return authorization until February 6, 2004, and received no response to its Internal Revenue Service inquiry until April 5, 2004.

Respectfully submitted,

OF COUNSEL:

TAYLOR & TAYLOR

By: _____
Warren Taylor
State Bar No. 19727200
Federal I.D. No. 1354
Beth M. Taylor
State Bar No. 13336787
Federal I.D. No. 14601
815 Walker, Suite 250
Houston, Texas 77002
(713) 615-6060 Telephone
(713) 615-6070 Facsimile

Rene O. Oliveira
State Bar No. 15254700
Federal I.D. No. 4033
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520-8718
(956) 542-5666 Telephone
(956) 542-0016 Facsimile

ATTORNEYS FOR DEFENDANT
STATE FARM LLOYDS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant State Farm Lloyds' Motion to Exclude Affidavit Testimony has been forwarded to all counsel of record by certified mail, return receipt requested, on this 22nd day of November, 2005.

Gustavo Ch. Garza
705 W. Highway 100, Suite A
Los Fresnos, Texas 78566

David L. Rusnak
Scoggins & Goodman, P.C.
245 Peachtree Center Ave. NE, Suite 2800
Atlanta, GA 30303-1227

_____
Warren Taylor