# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LUIS C. MUNOZ AND        )(
CARMELA MUNOZ            )(
        Plaintiffs       )(
                         )(  CAUSE NO. B-04-141
VS.                      )(  JURY DEMANDED
                         )(
STATE FARM LLOYDS        )(
        Defendant        )(

---

ORAL AND VIDEOTAPED DEPOSITION OF
YOLANDA PEREZ
NOVEMBER 9, 2005

---

ORAL AND VIDEOTAPED DEPOSITION OF YOLANDA

PEREZ, produced as a witness at the instance of the

DEFENDANT, taken in the above styled and numbered cause

on NOVEMBER 9, 2005, reported by DONNA McCOWN,

Certified Court Reporter No. 6625, in and for the State

of Texas, at the Best Western Executive Inn, 118 North

Expressway 77, Raymondville, Texas, pursuant to the

Federal Rules of Civil Procedure.

Page 2

**APPEARANCES**

COUNSEL FOR PLAINTIFFS:

GUSTAVO CH. GARZA
LAW OFFICE OF GUSTAVO CH. GARZA
705 West Highway 100, Suite A
Los Fresnos, Texas 78566

COUNSEL FOR DEFENDANT:

RICARDO MORADO
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520

ALSO PRESENT:
Joshua Claudio, Videographer
Tom Reed

Page 3

**INDEX**

                                    PAGE
Appearances .................................... 2

YOLANDA PEREZ
Examination by Mr. Morado ..................  4
Examination by Mr. Garza .................... 68
Examination by Mr. Morado ................... 92
Examination by Mr. Garza ................... 101

Errata Sheet/Signature Page .................... 105

Reporter's Certificate ......................... 107

Attached to the end of the transcript: Stipulations

**EXHIBITS**

                    PAGE
NUMBER  DESCRIPTION              IDEN.

1   Affidavit ............................... 21

2   Munoz Store File ........................ 100

3   Account Card #302265 .................... 102

4   Account Card #302055 .................... 102

Page 4

1       VIDEOGRAPHER: Today is Wednesday,
2   November 9th, the deposition of Yolanda Perez. The
3   time is 8:08. We're on the record.
4           YOLANDA PEREZ,
5   having been duly sworn, testified as follows:
6           EXAMINATION
7   BY MR. MORADO:
8       Q.  You can put your hand down.
9           State your name, please.
10      A.  Yolanda -- Yolanda G. Perez.
11      Q.  Okay. Ms. Perez, my name is Ricardo Morado.
12  You and I have met once before today, correct?
13      A.  Yes, sir.
14      Q.  And do you understand that I am an attorney?
15      A.  Yes.
16      Q.  And you understand that I represent State Farm
17  Lloyds in the lawsuit filed by Luis Munoz and Carmela
18  Munoz.
19      A.  Yes.
20      Q.  Okay. We're here this morning at the Best
21  Western conference room for the purposes of taking your
22  deposition.
23          Have you ever given testimony by
24  deposition like what you're doing here this morning?
25      A.  No.

Page 5

1       Q.  Okay. Let me go over a few ground rules with
2   you so that you understand the procedures. Do you
3   understand, for example, that you've just taken an oath
4   to tell the truth?
5       A.  Yes.
6       Q.  Okay. Because you've taken the oath to tell
7   the truth, the testimony that you give during the
8   course of the deposition has the same effect as if we
9   were in a courtroom in front of the judge and jury
10  right now.
11          So it becomes very important for you and I
12  to communicate clearly and effectively. Do you
13  understand that?
14      A.  Yes.
15      Q.  I'm going to be asking you a series of
16  questions during the course of this deposition. Your
17  responsibility is to answer each question truthfully
18  and completely. Will you do that?
19      A.  Yes.
20      Q.  Okay. If I should ask you a question, ma'am,
21  that doesn't make any sense to you or you don't hear it
22  or you don't understand it, please ask me to repeat it
23  or to rephrase it before you answer.
24      A.  Okay.
25      Q.  Okay? I want you to feel comfortable that you

2 (Pages 2 to 5)

Page 10

1     Q. Okay. Water heater. And let's say that they
2  came in then in --
3        MR. GARZA: Good morning.
4        MR. MORADO: Good morning.
5        THE WITNESS: Good morning.
6        MR. MORADO: Off the record.
7        (Brief recess)
8        MR. GARZA: My name is Gustavo Garza. I'm
9  here on behalf of Luis and Carmela Munoz.
10     Q. (By Mr. Morado) All right, Ms. Perez.
11  Mr. Gustavo Garza, the attorney for -- for Mr. and
12  Mrs. Munoz has joined us now.
13        Before he arrived, you were explaining to
14  me that these cards are created when the customer came
15  in and purchased something.
16     A. Yes.
17     Q. Okay. And so in February of 1995, they came in
18  and purchased the water heater.
19     A. Water heater.
20     Q. All right. And a card was made.
21     A. Yeah.
22     Q. And then, let's say, for example, that later on
23  that same year they come in and purchase something
24  else, anything. Would you start a new card, or would
25  you put it on the same card?

Page 11

1     A. No. We start a new card.
2     Q. You start a new card?
3     A. Yes.
4     Q. So there's a card started for every purchase.
5     A. For every purchase, if it's going to be
6  financed by the store. If it's cash, it just gets
7  the -- the customers have a cash item.
8     Q. Okay. So these cards then reflect transactions
9  that were financed?
10     A. By finance, yes.
11     Q. All right. What else does your file contain
12  besides the -- the account cards?
13     A. Their contracts.
14     Q. Okay.
15     A. Each contract reflects a card.
16        THE COURT REPORTER: I'm sorry. Could you
17  speak up a little bit?
18        THE WITNESS: Each contract reflects a
19  card. There has to be a contract made before we do the
20  card.
21     Q. Okay. So there should be, then, a contract
22  that corresponds to the account card?
23     A. Yes, yes.
24     Q. All right. Go ahead.
25     A. Except for cash items.

Page 12

1     Q. I understand.
2     A. Cash. That's it.
3        MR. MORADO: Off the record.
4        (Brief recess)
5     Q. Now, in addition to the account cards and the
6  contracts, what else is in the Munoz file?
7     A. That's it.
8     Q. Well, flip through it and --
9     A. Yeah. That's it. There's -- there's the
10  contracts and the cards, all their records.
11     Q. All right. Well, let's -- you have the
12  contracts and the cards.
13     A. Uh-huh. That's the contract.
14     Q. These are contracts?
15     A. Uh-huh.
16     Q. Okay. Now, what about these items that are on
17  the cover of the -- of the -- of the file?
18     A. The business card that Tom Reed, the business
19  card that your office.
20     Q. Okay. So you have my business card.
21     A. Uh-huh.
22     Q. And you have Tom Reed's business card.
23     A. Uh-huh.
24     Q. How did you get Tom Reed's business card to
25  place it on this jacket?

Page 13

1     A. He went to the store. He went to the store.
2     Q. Okay. And did Mr. Reed speak with you?
3     A. Yes.
4     Q. Okay. You see the gentleman that's seated to
5  my right? Do you recognize him?
6     A. No.
7     Q. Okay. You don't recognize him as Tom Reed?
8     A. No.
9     Q. All right.
10     A. I don't. It was -- he was there maybe -- I
11  don't know -- not more than 30 minutes. I know that
12  for a fact.
13     Q. Okay. All right. Now, you have another file,
14  ma'am. What is the other file?
15     A. This is all the paperwork that your office has
16  sent me and --
17     Q. Okay.
18     A. -- you know, just -- I've just kept it.
19     Q. The subpoena, the --
20     A. Yes.
21     Q. -- letter.
22     A. And copies of everything you --
23     Q. Okay.
24     A. That's all it is.
25     Q. All right.

4 (Pages 10 to 13)

## Page 14

1  A. This is mine. All the letters that you -- your
2  office has sent me, Mr. Garza.
3  Q. Now, ma'am, when -- when you and I met at the
4  Jano's Superstore --
5  A. Let me ask you one question.
6  Q. -- last month -- hold on. When you and I met
7  at the Jano's Superstore last month, I recall that the
8  file contained a letter from State Farm. Do you know
9  where that is?
10  A. It's here.
11  Q. All right.
12  A. That one.
13  Q. Now, this -- this appears to be a copy. Do you
14  have an original?
15  A. This is not a copy. Well, okay. It should be
16  here. That's all I have. This is the one that I've
17  always had. This is a copy too.
18  Q. Uh-huh.
19  A. This is what I've always been given.
20  Q. Okay. All right. So you've shown me -- you've
21  shown me what appeared to be a copy of the letter from
22  State Farm Lloyds dated August 7, 2003, addressed to
23  Jano's Superstore, correct?
24  A. Yeah.
25  Q. And it -- it references the customer Luis and

## Page 15

1  Carmela Munoz?
2  A. Uh-huh.
3  Q. Okay. And it's -- it purports to be signed by
4  Tom Reed?
5  A. Tom Reed.
6  Q. All right. And then you showed me -- excuse
7  me, it's right here -- an authorization issued on -- on
8  a State Farm form purportedly signed by Luis Munoz.
9  Yes?
10  A. Yes.
11  Q. Okay. And these are -- these are documents
12  that are contained in your file on Mr. and Mrs. Munoz.
13  A. Yes.
14  Q. And did you receive this letter of August 7,
15  2003, sometime around then, August 2003?
16  A. Yes. And I kept it in the file.
17  Q. All right. Now, do you have any memory about
18  your visit with Mr. Reed at the Jano's Superstore?
19  A. In the first place, you know, does he remember
20  me as the lady being there? Does he? I mean, he
21  was -- he was there, and it was a short visit, and I
22  remember he was there, and he left his business card.
23  As -- as far as -- I mean, detail by detail, I don't
24  remember.
25  Q. Do you remember anything you discussed with

## Page 16

1  him?
2  A. The file of Carmela and Luis Munoz. That was
3  his visit -- that was his purpose for the visit.
4  Q. Do you recall, Ms. Perez, whether you gave him
5  any documents or any copies?
6  A. I honestly don't remember.
7  Q. Okay.
8  A. I don't.
9  Q. Let me show you some -- some documents that I
10  have. And these are originals, so I will -- I'm going
11  to keep --
12  A. No. Those are copies. I have the original.
13  Q. No, no. Originals for my purposes.
14  A. Oh.
15  Q. So I need to keep these, but let me show you
16  what I have here. This document. It's -- it bears --
17  it's got a stamp on it No. 003641. Do you see that?
18  A. Uh-huh.
19  Q. Okay. Do you recognize this?
20  A. Yes.
21  Q. What is it?
22  A. It's merchandise that they purchased.
23  Q. Okay. When you say "they," you're referring to
24  the Munozes?
25  A. The Munoz, Carmela and Luis, yes.

## Page 17

1  Q. Okay. Now, if you look at the -- at the lower
2  right corner of this document 003641, there appears to
3  be a signature.
4  A. That's my signature.
5  Q. That is your signature?
6  A. That is my signature, and I'm with sales.
7  Q. Okay.
8  THE COURT REPORTER: What?
9  THE WITNESS: I'm in sales.
10  Q. Okay.
11  A. Yolanda G. Perez, sales.
12  Q. Is there any way for Mr. Reed to have
13  obtained this document with your signature other than
14  from you?
15  A. No.
16  Q. Let me show you something else. Looking again
17  at -- at the very same document, 003641, and here's
18  another page, 003640.
19  A. Uh-huh.
20  Q. Do you see that? Is that also -- well, what is
21  this?
22  A. These are my cards. These are the cards, and
23  these are the -- the things that they bought there
24  at the store.
25  Q. Okay. Is this your handwriting on this

5 (Pages 14 to 17)

**Page 18**

1   document?
2       A. Yes.
3       Q. All right.
4       A. Yes.
5       Q. Now -- now, I want you to notice the -- the
6   type of paper --
7       A. Fax.
8       Q. -- that this is -- this is --
9       A. Fax paper.
10      Q. -- printed on. Right.
11      A. Fax paper.
12      Q. Would you have had a machine at the store that
13  could make a copy?
14      A. I have a fax machine.
15      Q. That uses this type of paper?
16      A. Yes.
17      Q. All right.
18          MR. GARZA: May I see those, please?
19          MR. MORADO: Yes.
20          MR. GARZA: Thank you.
21      Q. Let me show you another document that's marked
22  003634.
23      A. That's --
24      Q. It's got the little stamp on it.
25      A. That's my initial, and that's Raymondville,

**Page 19**

1   that's --
2           THE COURT REPORTER: I can't hear you.
3           THE WITNESS: That's my -- I'm sorry.
4   That's my name, and I circle Raymondville when I give
5   out these business cards.
6       Q. Okay. Now, on this page that has the stamp
7   003634, there is stapled a business card.
8       A. A business card.
9       Q. Is this your card?
10      A. That's -- well, that's the store's -- all three
11  stores have this card, and we sign it. Michael signs
12  it. I sign it. If I signed it, that is my signature,
13  and there's Raymondville, because it's the Raymondville
14  store.
15      Q. So what you're telling me is, the store uses a
16  common card.
17      A. Yeah.
18      Q. The store has offices where -- or locations
19  where?
20      A. Weslaco, Harlingen, and Raymondville.
21      Q. Okay. And this same form of the card is used
22  throughout the three stores.
23      A. Uh-huh.
24      Q. Okay. And there's a blank for the store
25  representative --

**Page 20**

1       A. Yes.
2       Q. -- to identify himself or herself.
3       A. Yes.
4       Q. In this case, that blank is filled with?
5       A. Yolanda.
6       Q. Which is?
7       A. Mine -- me.
8       Q. That -- is that your signature, your --
9       A. Yes. That's my signature.
10      Q. Okay. Now, in order for someone to obtain a
11  Jano's Superstore card like this signed by Yolanda,
12  you, how would they get it?
13      A. There at the store.
14      Q. In Raymondville?
15      A. In Raymondville.
16      Q. Okay. Could they get it from somebody else, or
17  would they have to get it from you?
18      A. Well, I mean, these cards are in all three
19  stores, and it's -- it's my -- my card.
20      Q. I understand that, ma'am, but what I'm saying
21  is, if somebody goes to the Raymondville store, for
22  example, can they get this card with your signature
23  from somebody else, or do they have to get it from you?
24      A. They'd have to get it from me, because Michael
25  and I, you know, we don't sign our names.

**Page 21**

1       Q. All right.
2       A. Just us.
3           MR. MORADO: Let's go ahead and have this
4   marked as Deposition Exhibit No. 1.
5       Q. Now, Ms. Perez, let me show you what has been
6   marked as Perez Exhibit No. 1. It's a two-page
7   document.
8       A. Yes.
9       Q. Take a minute and take a look at it. Do you
10  recognize it?
11      A. Yes.
12      Q. Okay. This is the affidavit that you signed
13  previously --
14      A. Yes.
15      Q. -- in this lawsuit.
16      A. Yes.
17      Q. Okay. And it's also the affidavit that you and
18  I discussed when I went to speak with you at the Jano's
19  Superstore.
20      A. Yes.
21      Q. Okay. Now, tell the ladies and gentlemen of
22  the jury who contacted you for purposes of obtaining
23  this affidavit originally at the very beginning.
24      A. Mr. Garza, Mr. Gustavo Garza.
25      Q. Okay. Mr. Garza who's here present today?

**BRYANT & STINGLEY, INC.**

McAllen (956) 618-2366    Harlingen (956) 428-0755    Brownsville (956) 542-1020

9292a63d-0297-4d72-b44f-4a902d023cf.

Page 58

1  Q. Okay. And then you say, "I've provided a list
2  of items that Mr. and Mrs. Munoz have purchased at the
3  store in the past. Please see Exhibit A."
4      And I don't have Exhibit A, but that's
5  fine. We'll go on to the next item.
6      Take a look at the second page of your
7  paragraph.
8      THE COURT REPORTER: I'm sorry?
9  Q. I'm sorry. I misspoke. Let me start over.
10     Let's look at the second page of your
11 affidavit. The very first paragraph -- the only
12 paragraph really -- says, "As of today" -- and this is
13 September 14, 2005, "no State Farm representatives,
14 agents, or adjustors have spoken to me in reference to
15 any accounts belonging to Mr. and Mrs. Munoz."
16 A. Well, I -- they did. He -- well, I didn't
17 recognize him when I came in, but did he recognize me?
18 Q. Uh-huh.
19 A. No. I mean, I --
20 Q. That's inaccurate.
21 A. Yes.
22 Q. That's wrong.
23 A. Yes. Yes, it is, because I had his business
24 card here, and, you know, I remember him coming by the
25 store. And we're talking about two -- two years ago.

Page 59

1  Q. Yes.
2  A. You know, so it's like --
3  Q. So let me ask you this: Under oath in front of
4  the judge and jury, had you spoken with Mr. Tom Reed
5  before September 14, 2005?
6  A. Yes, I had.
7  Q. Where?
8  A. There at the store, at Jano's. There at the
9  store.
10 Q. And your conversation with him was about, in
11 general?
12 A. Yeah. The Munozes.
13 Q. Okay. The Munoz account.
14 A. Yeah. The Munoz account.
15 Q. And so when you signed this affidavit that's
16 here as Exhibit No. 1 --
17 A. Yes.
18 Q. -- why did you sign it when it has this
19 statement that says, "As of today" --
20 A. I -- I made a mistake, you know. I -- there it
21 is.
22 Q. It's just an error?
23 A. Yeah.
24 Q. Okay. And --
25 A. You're not answering my question. When I say

Page 60

1  that, you know, when I walked in here and you told me
2  if I recognized him, no, I didn't.
3  Q. Right.
4  A. Okay. But did he recognize me as being the
5  lady that he talked to? Now, do you know where --
6  where I'm trying to get at? You know, would he have
7  pointed me out of five different women that she's the
8  one that I talked to? Now, do you know what I mean?
9  Q. Well, I'm not really sure.
10     Let me ask you this question, Ms. Perez.
11 You -- you still don't recognize him.
12 A. No.
13 Q. Okay.
14 A. I don't.
15 Q. Okay. But based on the information that's in
16 your file, based on the records that you reviewed --
17 A. Because of his business card that he left
18 there.
19 Q. Okay. That tells you what?
20 A. That somebody -- I mean, that Tom Reed came to
21 the store and talked to me.
22 Q. Okay.
23 A. He gave me his business card.
24 Q. Okay. And when I showed you the original
25 records that have your signature --

Page 61

1  A. Uh-huh.
2  Q. -- like, for example, this document --
3  A. Yes.
4  Q. -- 003641 that has your signature, right?
5  A. Uh-huh.
6  Q. Mr. Reed could only have gotten that from you,
7  correct?
8  A. Yes.
9  Q. Okay. So who wrote this affidavit?
10 A. What do you mean who wrote it?
11 Q. Yeah. Who -- who wrote it? Who wrote --
12 A. Mr. Garza and his secretary.
13 Q. Okay. Were you present when it was written?
14 A. No.
15 Q. Okay. It was brought back to you?
16 A. It was brought back to me, and I --
17 Q. At the store?
18 A. Yeah. And I -- and I read it.
19 Q. Okay. And at the time you read it, you just
20 simply overlooked the top sentence of page 2.
21 A. (Moving head up and down)
22 Q. True?
23 A. Well, yes. Yes. Yes.
24 Q. Okay. Now, this is not an original, but you
25 signed the original of the affidavit, correct?

16 (Pages 58 to 61)

BRYANT & STINGLEY, INC.
McAllen (956) 618-2366    Harlingen (956) 428-0755    Brownsville (956) 542-1020

## Page 62

1  A. Yes.
2  Q. Where did you sign it?
3  A. There at the store.
4  Q. Okay. Who was there when you signed it?
5  A. Just Mr. Garza and me.
6  Q. Okay. Was there a notary there?
7  A. No, but I'm trying to -- I mean -- I think I'm
8  messing up again. Mrs. Veronica, I think she's the one
9  that took it. I'm not sure.
10  Q. Okay. You -- you don't remember?
11  A. I'm in between customers and this and that, and
12  it's not, you know --
13  Q. Remember my instructions to you. If you don't
14  remember --
15  A. Yes.
16  Q. -- it's perfectly fine for you to tell me that.
17  A. Yes.
18  Q. Okay. Let me ask you the question -- let me
19  ask you the question again. Do you remember who was at
20  the store with you when you signed the affidavit?
21  A. No.
22  Q. Do you know who Veronica Coronado is?
23  A. I met her once with Mr. Garza.
24  Q. Where?
25  A. There at the store.

## Page 63

1  Q. Was it during his first visit or the second
2  visit?
3  A. I think it was the second visit. I think it
4  was the second visit.
5  Q. Okay. When -- when the affidavit was brought
6  to you so that you could read it and sign it, did you
7  have plenty of time to read it carefully and make sure
8  everything was accurate, or were you -- or were you in
9  any way rushed?
10  A. Of course, I was there at the store, and I just
11  went to the desk, and I read it. I remember reading
12  it. And -- and that was it.
13  Q. Okay. Do you have any memory, any recollection
14  of having read this paragraph on the top of page 2 of
15  Exhibit No. 1 before you signed it?
16  A. No.
17  Q. Now, thinking back and knowing what you know
18  today, would you have signed this affidavit with the
19  very same paragraph?
20  A. Well, you brought up some -- some important
21  issues, you know. You bring this up, and you don't
22  bring this cash item, and then you say this on what
23  they're paying now and -- yeah, I mean, and -- I don't
24  have any experience with this or with that. And it's
25  like, you know --

## Page 64

1  Q. So my question, ma'am, is, knowing what you
2  know today about the Munoz accounts, knowing what you
3  know today about Mr. Reed's visit, would you sign this
4  affidavit today if it were presented to you in
5  identical language?
6  A. Just like it is right now?
7  Q. Yes.
8  A. Well, no, because now I know some things like
9  this one right here.
10  Q. Okay. Once the affidavit was signed by you --
11  A. Uh-huh.
12  Q. -- how did it get back to Mr. Garza? Do you
13  know?
14  A. She took it back. Veronica took it back.
15  Q. So you just signed it and gave it to the young
16  lady?
17  A. Yeah.
18  Q. And she took it. All right.
19      Have you had any contact with Mr. Garza
20  since -- since the time of the -- of the affidavit,
21  September 14 of '05?
22  A. I think he was at the store once.
23  Q. When? When?
24  A. (Spanish)
25      THE COURT REPORTER: I'm sorry?

## Page 65

1      THE WITNESS: I don't remember. I spoke
2  in Spanish. I'm sorry.
3      I don't remember exactly when.
4  Q. Is this something recent or something -- well,
5  September '05 is recent, so forget that. That's a bad
6  question.
7      Do you remember anything about that visit
8  that you just -- you remember happened? Anything about
9  what you talked about or maybe documents that were
10  exchanged, anything like that?
11  A. No.
12  Q. Okay. Other than myself or Mr. Garza, has
13  anyone else contacted you since September of -- of '05
14  to discuss the Munoz account or Munoz issues?
15  A. Yes. These people here, Team -- Team -- Team
16  Legal?
17  Q. Team Legal?
18  A. Uh-huh.
19  Q. That's the subpoena that you received?
20  A. Uh-huh.
21  Q. Okay. Anybody else?
22  A. No. Were --
23  Q. I'm sorry?
24  A. No, no. What were you going to ask me?
25  Q. After my visit to you, which I recall happening

17 (Pages 62 to 65)

BRYANT & STINGLEY, INC.
McAllen (956) 618-2366    Harlingen (956) 428-0755    Brownsville (956) 542-1020

Page 106

1           SIGNATURE OF YOLANDA PEREZ
2       I have read the foregoing transcript of my
3    deposition and it is a true and accurate record of my
4    testimony given on NOVEMBER 9, 2005, except as to any
5    corrections I have listed on page 105 herein.
6                    _____
7                      YOLANDA PEREZ
8
9    THE STATE OF TEXAS
10   COUNTY OF WILLACY
11       SUBSCRIBED AND SWORN TO BEFORE ME, the
12   undersigned authority on this the _____ day of
13   _____, 2005.
14
15                    _____
                        Notary Public in and for
16                        The State of Texas
17   My commission expires:
18   _____
19
20
21
22
23
24
25

Page 107

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                    BROWNSVILLE DIVISION
2
3    LUIS C. MUNOZ AND       )(
     CARMELA MUNOZ           )(
4       Plaintiffs          )(
                            )( CAUSE NO. B-04-141
5    VS.                    )( JURY DEMANDED
                            )(
6    STATE FARM LLOYDS       )(
        Defendant           )(
7
8            REPORTER'S CERTIFICATE
9    I, Donna McCown, Certified Court Reporter, certify
10   that the witness, YOLANDA PEREZ, was duly sworn by me,
11   and that the deposition is a true and correct record of
12   the testimony given by the witness on NOVEMBER 9, 2005;
13   that the deposition was reported by me in stenograph
14   and was subsequently transcribed under my supervision.
15      I FURTHER CERTIFY that I am not a relative,
16   employee, attorney or counsel of any of the parties,
17   nor a relative or employee of such attorney or counsel,
18   nor am I financially interested in the action.
19      WITNESS MY HAND on this the _____ day of
20   _____, 2005.
21
              _____
22            DONNA McCOWN, CSR NO. 6625
              Expiration Date: 12/31/07
23            Bryant & Stingley, Inc.. CRN No. 41
              2010 East Harrison
              Harlingen, Texas 78550
24            (956) 428-0755
25

                                    28   (Pages 106 to 107)