# EXHIBIT E

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| LUIS C. MUNOZ AND CARMELA MUNOZ<br>    Plaintiffs<br><br>VS.<br><br>STATE FARM LLOYDS<br>    Defendant | )(<br>)(<br>)(<br>)(  CAUSE NO. B-04-141<br>)(  JURY DEMANDED<br>)(<br>)(<br>)( |

ORAL AND VIDEOTAPED DEPOSITION OF
RAUL PENA, SR.
NOVEMBER 9, 2005
VOLUME 1

ORAL AND VIDEOTAPED DEPOSITION OF RAUL PENA, SR., produced as a witness at the instance of the DEFENDANT, taken in the above styled and numbered cause on NOVEMBER 9, 2005, reported by DONNA McCOWN, Certified Court Reporter No. 6625, in and for the State of Texas, at the Best Western Executive Inn, 118 North Expressway 77, Raymondville, Texas, pursuant to the Federal Rules of Civil Procedure.

Page 2

APPEARANCES

COUNSEL FOR PLAINTIFFS:

GUSTAVO CH. GARZA
LAW OFFICE OF GUSTAVO CH. GARZA
705 West Highway 100, Suite A
Los Fresnos, Texas 78566

COUNSEL FOR DEFENDANT:

RICARDO MORADO
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520

ALSO PRESENT:
Joshua Claudio, Videographer
Julio Galvan, Interpreter
Tom Reed

Page 3

INDEX

PAGE
Appearances ........................... 2

RAUL PENA, SR.
Examination by Mr. Morado .......... 4

Errata Sheet/Signature Page .......... 42

Reporter's Certificate ............... 44

Attached to the end of the transcript: Stipulations

EXHIBITS

PAGE
NUMBER  DESCRIPTION                    IDEN.

1  Invoices .................  12

2  Affidavit ................  24

Page 4

1  VIDEOGRAPHER: Today is Wednesday,
2  November 9th, at the deposition of Raul Pena. The time
3  is 1:40. We're on the record.
4       MR. MORADO: Let's go off the record for
5  just a minute.
6       (Brief recess).
7       RAUL PENA, SR.,
8  having been duly sworn, testified through the duly
9  sworn interpreter as follows:
10      EXAMINATION
11 BY MR. MORADO:
12   Q. State your name, please.
13   A. Raul Trevino Pena.
14   Q. And are you known also as Raul Pena, Sr.?
15   A. Yes. Raul Pena, Sr. Yes.
16   Q. And, Mr. Pena, we're here this afternoon to
17 take your deposition. Do you understand that you've
18 taken an oath to tell the truth?
19   A. Yes, sir.
20   Q. Okay. Since you've taken the oath to tell the
21 truth, do you understand that you are required by law
22 to respond truthfully to each of my questions?
23   A. Yes.
24   Q. If I ask you a question which doesn't make any
25 sense or which you do not understand, please ask me to

Page 5

1  repeat it or rephrase it before you answer it.
2    A. Yes, sir.
3    Q. If at any point you want to take a break to
4  rest or do whatever, let me know, and we'll afford you
5  that opportunity.
6    A. Fine.
7    Q. Now, Mr. Pena, where do you live?
8    A. The house address or -- or what?
9    Q. Yes. What's your home address?
10   A. 871 West Riggs.
11   Q. And that's in Raymondville?
12   A. Yes, sir.
13   Q. How long have you lived there?
14   A. Three years.
15   Q. Who lives with you there?
16   A. My common-law wife.
17   Q. What is her name?
18   A. Juanita Vasquez.
19   Q. You refer to Ms. Juanita Vasquez as your
20 common-law wife. How -- how long have you and she been
21 married by common law?
22   A. Five years.
23   Q. Where did you live, sir, before you lived at
24 870 -- 871 West Riggs?
25   A. Okay. 334 East Yturria.

Page 6

1  Q. Also Raymondville?
2  A. Yes, sir.
3  Q. And how long did you live there?
4  A. About 30 years.
5  Q. How old a man are you?
6  A. 69.
7  Q. Are you employed?
8  A. I'm the owner of a tire shop.
9  Q. And what tire shop is that?
10 A. R.T. Tires.
11 Q. Where is R.T. Tires located?
12 A. 964 West Main. Yes, sir.
13     MR. MORADO: Off the record.
14     (Brief recess)
15 Q. You say that you are the owner of R.T. Tires.
16 How long have you owned this business, sir?
17 A. 1980 to the present, present time.
18 Q. So you've owned it about 25 years?
19 A. More or less, yes.
20 Q. Do -- does R.T. Tires have any employees other
21 than, perhaps, yourself?
22 A. Yes, sir.
23 Q. Who are the employees of R.T. Tires?
24 A. Raul Pena, Jr., Renaldo Garcia, Bruce Pena.
25 That's it.

Page 7

1  Q. And how would you describe the nature of your
2  business at R.T. Tires?
3  A. Fix every kind of tires. Yes, sir. All sizes,
4  new and used.
5  Q. Do you know a man by the name of Luis C. Munoz?
6  A. Yes, sir.
7  Q. How long have you known Mr. Munoz?
8  A. About four or five years.
9  Q. How did you meet him?
10 A. At work in my tire shop.
11 Q. He came in as a customer?
12 A. Yes, sir.
13 Q. So you met Mr. Munoz, maybe, in 2000 or 2001?
14 A. More or less.
15 Q. Do you know Carmela Munoz?
16 A. Not really. What I want to say is I have met
17 her once or twice, but I do not know her personally.
18 Q. All right. Now, do you recall that I was at
19 your place of business sometime last month, October of
20 2005?
21 A. Yes, they were.
22 Q. Okay. And as I recall, your business is
23 located on a corner lot?
24 A. Yes.
25 Q. And it appears to be, maybe, it used to be a --

Page 8

1  a -- a gas station?
2  A. Texaco, yes. It used to be there.
3  Q. Okay. So -- and so there is an area that you
4  walk into in this building which is, essentially, your
5  office, has a counter in it.
6  A. Correct.
7  Q. And then there appeared to be, maybe, two
8  stalls where you -- you could have driven automobiles
9  into.
10 A. Correct. Yes, sir.
11 Q. How -- do you know what the size of the
12 building is where you have your business?
13 A. No, I do not know.
14 Q. Is it possible for somebody to walk into your
15 business building when you are there and you not notice
16 it?
17 A. Yes, because sometimes I'm not there, and
18 nobody is there, or somebody else is there, but I'm
19 usually there for four hours only.
20 Q. Well, forgive me. I didn't make my question
21 clear.
22     MR. GARZA: Hold on. Hold on. I
23 believe -- I believe the witness said that I'm not
24 there 24 hours.
25     THE INTERPRETER: Oh, I'm sorry.

Page 9

1     MR. GARZA: Not four.
2     THE WITNESS: I'm not there 24 hours.
3  It's not possible for me to know who walks in and who
4  walks out.
5  Q. When you are at your business, Mr. Pena, is it
6  possible for a -- a customer or a person to walk into
7  the building and you not notice them?
8  A. I don't think so. I'm going to be there.
9  Q. So, in other words, the building is small
10 enough where if you're there and somebody walks into
11 the building, you'll see them?
12 A. Yes, sir.
13 Q. Now, do you go by Raul Pena, Sr., or do you go
14 by any other name or nickname?
15 A. Raul Pena.
16 Q. Okay. Do you have your name posted anywhere at
17 your business?
18 A. There's a big wooden plaque that says "Pena
19 Tire Services," and there's one inside also that says
20 "R.T. Tire Service" -- "Tire Shop."
21 Q. Is there any type of sign or posting that says
22 "Raul Pena, Sr."?
23 A. No, sir.
24 Q. Do you advertise in the telephone Yellow Pages?
25 A. Only in the telephone directory, the little

3 (Pages 6 to 9)

Page 10

1  one.
2     Q. And what -- how do you identify your business
3  in that little telephone directory?
4     A. R.T. Tires.
5     Q. And does the R.T. stand for Raul Trevino?
6     A. Yes, sir.
7     Q. Do you have any daughters that work for you or
8  with you?
9     A. Temporarily.
10    Q. Who -- who has worked for you temporarily from
11 your family?
12    A. Camelia Pena.
13    Q. Anybody else?
14    A. (Moving head side to side)
15    Q. How old is Camelia?
16    A. She's about 38, 39.
17    Q. And you say that she works for you temporarily?
18    A. Yeah.
19    Q. Is she working for you now?
20    A. No. She works at H&R Block.
21    Q. When was the last -- I'm sorry.
22    A. In Harlingen.
23    Q. When was the last time that Camelia Pena worked
24 for you temporarily?
25    A. This week, yes.

Page 11

1     Q. Okay. How about before this week? When was
2  the last time she worked for you temporarily?
3     A. What is it that you are asking me that you want
4  me to understand?
5     Q. I'm trying to determine when was the last time
6  that your daughter Camelia worked for you on a
7  temporary basis. You told me it was this week, and so
8  I'm trying to learn was there -- when was the last time
9  before then.
10    A. Way back.
11    Q. No. The -- the next time going back in time
12 from this week.
13    A. About three, four weeks ago.
14    Q. Okay. So does -- does your daughter work for
15 you temporarily off and on every three to four weeks,
16 maybe?
17    A. Yes. She comes to work for me about -- for
18 three or four days, she works on my papers.
19    Q. Is she basically your -- your bookkeeper at the
20 office?
21    A. Right. She takes care of the computer.
22    Q. Did Camelia work for you at any time during the
23 year 2003?
24    A. No.
25    Q. Anybody other than the three fellows that you

Page 12

1  identified for me: Raul Pena, Jr., Renaldo Garcia, or
2  Bruce Pena?
3     A. They have always been with me.
4     Q. In response to the subpoena that was served on
5  you, did you look for records or did Camelia look for
6  the records?
7     A. Camelia was the one that looked for them. She
8  looked for them, and she had them printed out, copies.
9     Q. Were all of these records kept at your business
10 there at -- at R.T. Tires, or were some kept elsewhere?
11    A. Almost all of them are there.
12    Q. Now, you brought with you a stack of documents
13 that includes the subpoena for today's deposition.
14    A. That's what they told me.
15    Q. Okay. And then you also brought with you a
16 subpoena that had been delivered to you in September of
17 2005 asking you for the Munoz records.
18    A. These are it.
19    Q. Okay. Is this stack of documents that I'm
20 holding in my hands all of the Munoz records that you
21 or your daughter were able to find?
22    A. Correct.
23    Q. I'm going to mark this stack as Exhibit No. 1
24 to your deposition.
25        Now, does Camelia do all of your record

Page 13

1  filing at the -- at the business?
2     A. Sometimes, and sometimes I do it.
3     Q. You mentioned that you have a computer at
4  the -- at your business?
5     A. Yes, I do.
6     Q. Okay. Do you work with the computer, or is
7  that Camelia's business?
8     A. I wish I could. No, I do not know it. No.
9     Q. Camelia is the one that works with the
10 computer.
11    A. Yes. It has all the files there.
12    Q. Are you certain, Mr. Pena, that Camelia did no
13 work for you at the tire shop in the year 2003?
14    A. No, because she was not here.
15    Q. Do you have any other daughters that would have
16 helped you with your records or --
17    A. No. I had a secretary.
18    Q. Okay. In 2003?
19    A. Are we talking of 2000, or what are we talking
20 about?
21    Q. No. We're talking of 2003.
22    A. I think that Terri Tamez was working with me.
23    Q. Terri Tamez was your secretary?
24    A. In those days, she was my secretary. She -- I
25 do not know where she is right now.

**Page 22**

1 letter knowing what he purchased, and the other one
2 stays right here in the file.
3    Q. Okay. So when you send the bill out, another
4 copy goes to the customer?
5    A. To match what you have.
6    Q. Okay. And at that point, you, as the business,
7 only have two copies.
8    A. Right.
9    Q. Mr. Pena, would you ever prepare a receipt and
10 not give a copy to the customer?
11    A. When I do one of the receipts, I have to give a
12 copy to the client, because, otherwise, I would have
13 problems.
14    Q. Now, you've told me, Mr. Pena, that at least
15 from the year 2000, you had Munoz Roofing on an
16 account.
17    A. Correct.
18    Q. And you produced for us copies of receipts.
19    A. Correct.
20    Q. Would you have any copies of the bills that
21 went out to Munoz Roofing on a monthly basis?
22    A. That's going to be very hard because this ones
23 are here for that, for that purpose.
24    Q. Okay. I understand that you produced this; but
25 when you send out a bill, is that something that's

**Page 23**

1 generated by hand or by computer?
2    A. The computer does it.
3    Q. Okay.
4    A. And then the receipt is sent. The customer
5 needs to see what he took out, what -- what he had done
6 so that he can pay. And if it is not right, he will
7 give me a call, yes.
8    Q. Before Camelia began working for you doing your
9 books, was Terri Tamez preparing the monthly bills?
10    A. Correct.
11    Q. Was she using a computer?
12    A. The one that's there.
13    Q. So you've been using the same computer for the
14 last four or five years?
15    A. Correct.
16    Q. When your business sends a bill at the end of
17 the month or monthly, which color copy of the receipts
18 gets sent with it?
19    A. Any one, because either way, one is going to
20 remain there.
21    Q. Okay. Do you always keep the white original at
22 your business?
23    A. Yes, because that's the one that's on the book.
24    Q. Okay. So the bill may have a yellow one or it
25 may have an orange one.

**Page 24**

1    A. Yes.
2    Q. Okay.
3       MR. MORADO: Let's take a brief break.
4       (Brief recess)
5    Q. Mr. Pena, we took a brief break. Are you
6 prepared to continue?
7    A. Yes.
8    Q. Let me show you what I've marked as Exhibit
9 No. 2 to your deposition. Do you recognize this
10 document?
11    A. Yes, sir.
12    Q. Okay. What is it?
13    A. It's an affidavit of what I said or whatever,
14 what's here, that I'm an American citizen; that I have
15 no convictions, and that I live at my address, that I'm
16 the owner of the R.T. Tires, and I have -- that I have
17 made business -- had business with Mr. Munoz for
18 approximately eight years it says here.
19    Q. Did you write this affidavit, or did somebody
20 else write it for you?
21    A. Somebody wrote it for me.
22    Q. Okay. Who contacted you for purposes of
23 eventually preparing this affidavit?
24    A. I think it was Mr. Munoz's attorney.
25    Q. Mr. Gus Garza?

**Page 25**

1    A. Yes.
2    Q. Did you know Mr. Gus Garza before he approached
3 you about preparing an affidavit?
4    A. Yes, I've known him.
5    Q. How long have you known him?
6    A. For about five or six years since he has been
7 here.
8    Q. Okay. And where were you when he first --
9 Mr. Garza first approached you to discuss any -- any
10 part of this affidavit?
11    A. I was at the store.
12    Q. Do you remember when that was, sir?
13    A. No, not exactly. I do not know. I do not
14 remember.
15    Q. Okay. If we look at the affidavit, it appears
16 that it was signed on September 14th, 2005.
17    A. Probably.
18    Q. Do you have any recollection of how long before
19 September 14, 2005, Mr. Garza came and spoke to you
20 about the matters addressed in the affidavit?
21    A. No. He only said that he wanted to talk to me,
22 for me to come -- come to his office or -- to discuss
23 this matter.
24    Q. Okay. So did you go to his office, or did he
25 come to your business?

Page 26

1  A. He called so that I would go to his office.
2  Q. Okay. And did you?
3  A. Yes.
4  Q. The 14th of September 2005?
5  A. Correct. I think so.
6  Q. Now, who actually prepared the wording of the
7  affidavit? Was that you? Was it Mr. Garza, or was it
8  somebody else?
9  A. It was Mr. Garza. And he told me what was the
10 truth and that's what I told him, and that's what we
11 prepared, and that's what I signed.
12      MR. GARZA: Correction.
13      THE INTERPRETER: Excuse me, sir.
14      MR. GARZA: (Spanish)
15      THE INTERPRETER: "He told me to say the
16 truth."
17      Sorry.
18      MR. MORADO: I accept the correction.
19 Q. Mr. Pena, a little earlier in the deposition, I
20 saw you pick up the affidavit, and you were reading it.
21 Do you have the ability to read this -- this document?
22 Do you understand English enough to read the document?
23 A. A little, yes.
24 Q. Okay. Well, I want you to take a look at it.
25 And is there anything on this document that you cannot

Page 27

1  read because of your command of the English language?
2  A. You want me to read it or just to look at it?
3  Do I tell it to you in English or in Spanish?
4  Q. You don't have to read it out loud. All I'm
5  asking you is, is there any part of this affidavit that
6  you don't -- you can't understand because you can't
7  actually read it?
8  A. I understand everything that's here.
9  Q. Okay.
10 A. Correct.
11 Q. Okay. So you can read the whole thing then.
12 A. Do you want me to read it?
13 Q. No. I just want to know if you can.
14 A. Yes. Correct.
15 Q. Okay. Now, when the affidavit was originally
16 prepared, did you have the opportunity to read it
17 carefully before you signed it?
18 A. Correct.
19 Q. Did you have to make any corrections or
20 changes?
21 A. I don't think so. I don't think so.
22 Q. Okay. So once it was prepared, you read it,
23 you found it to be correct, and you signed it.
24 A. Correct.
25 Q. In this affidavit, you say that you're the

Page 28

1  owner of R.T. Tires and that you have been in business
2  for 33 years.
3  A. More or less, yes, sir.
4  Q. Okay. But earlier in the deposition today, you
5  told me that you have been the owner of R.T. Tires
6  since 1980 or only about 25 years.
7  A. That's when I started.
8  Q. Okay.
9  A. If they can put 40 years, then you can put it;
10 but I started in 1980.
11 Q. Okay. Before 1980 were you doing business
12 under some other name?
13 A. No, sir. At that time, I was working as an
14 employee for John Handy Tire Service.
15 Q. So in your affidavit when you say that you have
16 been in business for 33 years, that's not really true.
17 You've been in business for about 25 years.
18 A. That can be because I started in 1980.
19 Q. Okay. So let's do the math. If you started in
20 1980, and right now it is the year 2005, that's --
21 that's a period of 25 years, correct?
22 A. Correct.
23 Q. Okay. And so in this affidavit where you say
24 you've been in the business for 33 years, that's not
25 correct, is it?

Page 29

1  A. If they ask -- if they suddenly ask you all of
2  a sudden -- I'm human, and I made a mistake because
3  they asked me suddenly, and I said about 33 years.
4  Q. I understand that. That's why I -- I'm asking
5  you, have you been in business 33 years or 25 years?
6  A. 25 years.
7  Q. Now, looking down two paragraphs below that,
8  the affidavit says that on December 31, 2002, one of
9  your employees at your shop repaired two rear tires on
10 Mr. Munoz's ATV.
11 A. That might be there also.
12 Q. Okay. My first question is, where did you get
13 the information at the time you made this statement for
14 this affidavit?
15 A. That's what they asked me. They asked me if I
16 had fixed some tires of Mr. Munoz, and I told them I do
17 not know, you know, in what years. And I said we can
18 look at the book.
19 Q. Who asked you that?
20 A. Mr. Garza.
21 Q. Okay. Well, you went to his office to discuss
22 with him the things that eventually became this
23 affidavit, correct?
24 A. I went because I was called to go over there.
25 Q. Okay.

BRYANT & STINGLEY, INC.

McAllen (956) 618-2366    Harlingen (956) 428-0755    Brownsville (956) 542-1020

Page 30

1    A. And I was not prepared. And I was not
2  prepared. And they asked me -- he asked me questions
3  and questions, and I was not prepared, but he asked me
4  to raise my hand.
5    Q. When you went to his office, did you take any
6  documents with you?
7    A. No, sir.
8    Q. Okay. So Mr. Garza asked you questions about
9  your business with Mr. Munoz.
10    A. Correct.
11    Q. Including whether or not you had provided any
12  tire repair services on December 31, 2002.
13    A. Correct.
14    Q. And you didn't know one way or another off the
15  top of your head, did you?
16    A. No.
17    Q. You had to go -- you had to go back to your
18  business records to see what they showed.
19    A. It was this way. Because Mr. Munoz told me
20  that he had repaired some tires there, some winter or
21  something like that, and I said yes. And I got ahold
22  of a telephone and I called.
23        And we talked on the telephone concerning
24  the records of -- of what year it was, on what date it
25  had happened. And it was there on that date that he

Page 31

1  had gone there. That's the reason that I said yes.
2    Q. Was Mr. Munoz in Mr. Garza's office when you
3  went over there?
4    A. Yes.
5    Q. And it was Mr. Munoz who told you that on
6  December 31 you had repaired two tires for him?
7    A. More or less, yes.
8    Q. Okay.
9    A. But I wanted to be sure because I did not know
10  if they were there.
11    Q. All right.
12    A. Yes. And I think that they are there.
13    Q. I want you to turn to the tab page on your --
14  on Exhibit No. 1, the receipts you produced. This
15  document -- this page shows two receipts, correct?
16    A. Yes.
17    Q. One receipt is dated January 2, 2003, and one
18  receipt is dated December 30, 2002; is that correct?
19    A. Yes, sir.
20    Q. Okay. Is this page the documents that you
21  referred to to confirm your representation that on
22  December 31, 2002, one of your employees repaired two
23  rear tires for Mr. Munoz?
24    A. Correct. It's there.
25    Q. Okay. Which one is it, Mr. -- Mr. Pena?

Page 32

1    A. It should be this one.
2    Q. Okay. And you're pointing to the receipt that
3  is part of Exhibit No. 1 that is numbered 9272,
4  correct?
5    A. Correct. That's it.
6    Q. Okay. And this receipt, 9272, is dated
7  December 30, 2002, correct?
8    A. Correct.
9    Q. Now, is this receipt prepared in your
10  handwriting?
11    A. Yes. That one, yes.
12    Q. Okay. And it's made to Munoz Roofing?
13    A. Right.
14    Q. Okay. And here where it says "vehicle license
15  number," it says SN9 something 603 or 5. What is that
16  number?
17    A. I do not know. That most probably is the
18  vehicle number that he had. Yes, sir. Maybe it was
19  the AT rider, something that it had. It may be their
20  license. I do not know. It is -- it goes way back,
21  and I do not -- I cannot understand -- I cannot keep
22  track of that. That's right.
23    Q. Did you fix the flat on December 30, 2002, or
24  did somebody else do it?
25    A. Let me -- let me answer that question. We have

Page 33

1  employees that work on the tires.
2    Q. Okay. So it would have been one of your
3  employees?
4    A. Yes. Who it was, I do not know.
5    Q. All right. But you know it wasn't you. It was
6  one of your employees.
7    A. It was one of my employees.
8    Q. Now, let's take a look at this receipt again.
9  It says -- in the quantity column, it says "one." Then
10  in the description it says -- well, you tell me what it
11  says. What -- what does that say?
12    A. It's the size of the tire. It's a flat repair,
13  but it's a size.
14    Q. Okay.
15    A. It's a 6, but it's a size of the tire.
16    Q. So this says, "One flat repair." Then you have
17  a tire size.
18    A. Yes.
19    Q. And you charged $6.
20    A. Right.
21    Q. Is $6 what you normally charge to repair one
22  tire, one flat?
23    A. It -- it depends on what it needs. Right there
24  we put Stop Leak. That's it. Because sometimes there
25  it does -- RVs, you put Stop Leak because they're very

9 (Pages 30 to 33)

Page 38

1  2002, to have two tires repaired.
2       Did you look at any documents to confirm
3  that before you signed the statement that said, "Yes.
4  On December 31, 2002, we repaired two rear tires on
5  Mr. Munoz's ATV"?
6       A. At that time, we, looking back -- at that
7  time -- at that back time, speaking about the December
8  31st of 2002, he did take two tires and we did repair
9  them. That was true on the truck, the truth that he
10 had on the pickup.
11      MR. MORADO: I'm going to object to your
12 response as not being responsive to my question.
13      Q. My question is, did you consult or review any
14 documents to confirm whether or not what Mr. Munoz said
15 and what you said in your affidavit was true?
16      A. That if I talked to some --
17      Q. No.
18      A. -- spoke with somebody?
19      Q. No. Did you review any documents to confirm
20 the truth of that statement?
21      A. No.
22      Q. Who was the employee who you maintain repaired
23 two tires for Munoz on December 31, '02?
24      A. I can say that it was the three that I have
25 there.

Page 39

1       Q. What time of day was it that the repair was
2  made?
3       A. I do not know. I cannot tell you.
4       Q. How long was Munoz there for the repair?
5       A. Munoz didn't go. It was his workers that went.
6       Q. Who?
7       A. Good question. He has many workers.
8       Q. So you can't identify?
9       A. No, because I do not know who it was.
10      Q. Okay. Where is the receipt for the work that
11 was done on December 31?
12      A. I need to look for it because you're telling me
13 that this is not it, so I have to look for it.
14      MR. MORADO: Let's go off the record.
15      (Brief recess)
16      Q. Mr. Pena, you have informed me that you're
17 under the belief that there may be some additional
18 documents that are responsive to my subpoena. I'm
19 going to -- I'm going to recess this deposition now to
20 afford you the opportunity to go look for those
21 records.
22      We will then resume the deposition at a
23 time that is convenient as possible. It will likely be
24 as early as sometime next week. Do you understand
25 that?

Page 40

1       A. Yes.
2       Q. And do you understand that you'll have to
3  present yourself for your deposition when it resumes?
4       A. Correct.
5       MR. MORADO: All right. Then we'll recess
6  at this time.
7       MR. GARZA: For the record, I have
8  district court on Monday the 14th. I may have a jury
9  trial.
10      MR. MORADO: Okay.
11      MR. GARZA: So you promised convenient.
12 Call me.
13      MR. MORADO: Sure.
14      MR. GARZA: We can agree on a date. I
15 mean, let's not do what happened here.
16      MR. MORADO: Sure.
17      MR. GARZA: You set the time and I just
18 appeared. Let me know, because I may have a problem
19 and I may not be able to be here Monday or Tuesday of
20 next week.
21      MR. MORADO: Yeah. No. That's not --
22 that's not an issue for me.
23      MR. GARZA: Okay.
24      MR. MORADO: We'll coordinate with your
25 office and try to find a date that -- that works for

Page 41

1  you as well.
2       MR. GARZA: I'll be glad to come.
3       MR. MORADO: Okay. All right. We'll
4  recess then.
5       (Deposition recessed)

11 (Pages 38 to 41)

Page 42

```
 1        RAUL PENA, SR. - ERRATA SHEET
 2   Reasons for changes: (1) Clarify the record
                          (2) Conform to the facts
 3                        (3) Correct transcription errors
 4   PAGE LINE  CHANGE FROM/CHANGE TO        REASON
 5   ___  ___  _____    _____
 6   ___  ___  _____    _____
 7   ___  ___  _____    _____
 8   ___  ___  _____    _____
 9   ___  ___  _____    _____
10   ___  ___  _____    _____
11   ___  ___  _____    _____
12   ___  ___  _____    _____
13   ___  ___  _____    _____
14   ___  ___  _____    _____
15   ___  ___  _____    _____
16   ___  ___  _____    _____
17   ___  ___  _____    _____
18   ___  ___  _____    _____
19   ___  ___  _____    _____
20   ___  ___  _____    _____
21   ___  ___  _____    _____
22   ___  ___  _____    _____
23   ___  ___  _____    _____
24   ___  ___  _____    _____

25        RAUL PENA, SR.
```

Page 43

```
 1              SIGNATURE OF RAUL PENA, SR.
 2        I have read the foregoing transcript of my
 3   deposition and it is a true and accurate record of my
 4   testimony given on NOVEMBER 9, 2005, except as to any
 5   corrections I have listed on page 42 herein.
 6        _____
              RAUL PENA, SR.
 7
 8
 9   THE STATE OF TEXAS
10   COUNTY OF WILLACY
11        SUBSCRIBED AND SWORN TO BEFORE ME, the
12   undersigned authority on this the _____ day of
13   _____, 2005.
14
15        _____
              Notary Public in and for
16            The State of Texas
17   My commission expires:
18   _____
19
20
21
22
23
24
25
```

Page 44

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
 2                BROWNSVILLE DIVISION
 3   LUIS C. MUNOZ AND       )(
     CARMELA MUNOZ           )(
 4        Plaintiffs         )(
                             )( CAUSE NO. B-04-141
 5   VS.                     )( JURY DEMANDED
                             )(
 6   STATE FARM LLOYDS       )(
          Defendant          )(
 7
 8              REPORTER'S CERTIFICATE
 9        I, Donna McCown, Certified Court Reporter, certify
10   that the witness, RAUL PENA, SR., was duly sworn by me,
11   and that the deposition is a true and correct record of
12   the testimony given by the witness on NOVEMBER 9, 2005;
13   that the deposition was reported by me in stenograph
14   and was subsequently transcribed under my supervision.
15    I FURTHER CERTIFY that I am not a relative,
16   employee, attorney or counsel of any of the parties,
17   nor a relative or employee of such attorney or counsel,
18   nor am I financially interested in the action.
19        WITNESS MY HAND on this the _____ day of
20   _____, 2005.
21        _____
          DONNA McCOWN, CSR NO. 6625
22        Expiration Date: 12/31/07
          Bryant & Stingley, Inc., CRN No. 41
23        2010 East Harrison
          Harlingen, Texas 78550
24        (956) 428-0755
25
```

12 (Pages 42 to 44)

**BRYANT & STINGLEY, INC.**

McAllen (956) 618-2366    Harlingen (956) 428-0755    Brownsville (956) 542-1020

Nov 22 2005 12:24PM TAYLOR & TAYLOR 7136156070 p.29
Case 1:04-cv-00141 Document 59-7 Filed in TXSD on 11/22/2005 Page 11 of 20

Page 45

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| LUIS C. MUNOZ AND )( | |
| CARMELA MUNOZ )( | |
| Plaintiffs )( | |
| )( | CAUSE NO. B-04-141 |
| VS. )( | JURY DEMANDED |
| )( | |
| STATE FARM LLOYDS )( | |
| Defendant )( | |

---

ORAL AND VIDEOTAPED DEPOSITION OF
RAUL PENA, SR.
NOVEMBER 18, 2005
VOLUME 2

---

ORAL AND VIDEOTAPED DEPOSITION OF RAUL PENA,

SR., produced as a witness at the instance of the

DEFENDANT, taken in the above styled and numbered cause

on NOVEMBER 18, 2005, reported by DONNA McCOWN,

Certified Court Reporter No. 6625, in and for the State

of Texas, at the Best Western Executive Inn, 118 North

Expressway 77, Raymondville, Texas, pursuant to the

Federal Rules of Civil Procedure.

BRYANT & STINGLEY, INC.
McAllen (956) 618-2366    Harlingen (956) 428-0755    Brownsville (956) 542-1020

be3b79a9-4d15-4d42-0682-78dc62d69425

Nov 22 2005 12:24PM TAYLOR & TAYLOR 7136156070 P.30
Case 1:04-cv-00141 Document 59-7 Filed in TXSD on 11/22/2005 Page 12 of 20

Page 46

APPEARANCES

COUNSEL FOR PLAINTIFFS:

GUSTAVO CH. GARZA
LAW OFFICE OF GUSTAVO CH. GARZA
705 West Highway 100, Suite A
Los Fresnos, Texas 78566

COUNSEL FOR DEFENDANT:

RICARDO MORADO
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520

ALSO PRESENT:
Joshua Claudio, Videographer
Julio Galvan, Interpreter
Tom Reed

Nov 22 2005 12:25PM TAYLOR & TAYLOR 7136156070 P.31
Case 1:04-cv-00141  Document 59-7  Filed in TXSD on 11/22/2005  Page 13 of 20

Page 52

1  Q. And then you say, "I do not know a Mr. Tom
2  Reed."
3  A. Up to now.
4  Q. Okay. Mr. Pena, I want you to look up. Do you
5  know this man that's sitting to my right?
6  A. This is the first time that I've known him.
7  Most probably, he's been over there a couple of times,
8  but that's all.
9  Q. Why do you say he -- he's been out there a
10 couple of times?
11 A. I didn't say that he had been there a couple of
12 times. I said "maybe."
13 Q. Okay. Why do you say maybe he was out there a
14 couple of times?
15 A. I have never seen him, and most probably I have
16 seen him several times. There are a lot of clients
17 that go over there.
18 Q. So are you saying that it is possible for him
19 to have been there, you just don't remember?
20 A. Maybe that's true.
21 Q. Okay. During the last -- well, during the time
22 that we were last taking your deposition, you told me
23 that you open your shop, I believe, it was Monday
24 through Saturday working full days Monday through
25 Friday and, I believe, it was a half day Saturday; is

Nov 22 2005 12:25PM  TAYLOR & TAYLOR        7136156070                    p.32
Case 1:04-cv-00141   Document 59-7   Filed in TXSD on 11/22/2005   Page 14 of 20

Page 59

1  until this year.
2      A.  Correct.
3      Q.  All right.  Take a look at your affidavit
4  again, sir, Exhibit No. 2.  Look at the second sentence
5  of paragraph 4 where you say, "I do not recall giving
6  Mr. Munoz a receipt because he paid cash."
7          How do you -- how do you know he paid
8  cash?
9      A.  Here what Mr. Munoz -- and what you're asking
10 me, you're asking me about a thing that happened a long
11 time ago.  How -- who is going to remember?
12     Q.  So you don't remember whether he paid you cash
13 or not?
14     A.  Maybe he paid in cash.  Maybe he paid in cash,
15 maybe he put it in the account.  I do not remember.
16     Q.  Okay.  I'm going to show you an original
17 document, Mr. Munoz.  I'm not going to attach it to the
18 deposition because I'm going to keep it, but I will
19 identify it as a folder having a numerical tag on it
20 003670.  And on this folder are stapled a couple of
21 business cards.  Do you see them?
22     A.  Yes.
23     Q.  A couple of questions, sir.  Are these your
24 business cards?
25     A.  Correct.

Page 60

1   Q. Are these -- were these the same business cards
2  that you were using back in 2003?
3   A. Correct.
4   Q. Are you still using the same cards?
5   A. I think so. Well, almost the same. Right now
6  it -- they might say "RT Tires."
7   Q. Okay. But in 2003 these would have been the
8  cards you were using.
9   A. Yes.
10   Q. All right. Now, Mr. Pena, in 2003, if a person
11  wanted to obtain your business card, where could they
12  get it?
13   A. In the office.
14   Q. At your business?
15   A. Yes. Yes. It's on -- there on top of the
16  counter. I have all of them there.
17   Q. Would that have been the only place that a
18  person could pick up your business card in 2003?
19   A. Probably.
20   Q. Let's -- let's talk a little bit again about
21  December 31, 2002. And I only want you to tell me what
22  you remember. In this affidavit you say that your shop
23  repaired two tires on Mr. Munoz's ATV.
24   A. Correct.
25   Q. Do you remember how those tires were brought to

Page 71

1  of January 2003, one receipt.
2  A.  Correct.
3  Q.  Okay.  So tell me, sir, is the statement by Tom
4  Reed sworn to on September 5th, 2005, that you were
5  asked -- this is Pena, Sr. -- to look for receipts for
6  December '02 and January '03 for Munoz Roofing
7  Construction for Munoz, is that a true statement?
8  A.  I don't think so.
9  Q.  Okay.  Now, as -- as you recall, granted that
10 we're now in November 2005 and all this activity
11 supposedly occurred December 2002, as best as you
12 recall, did your shop service the tires of an ATV for
13 Mr. Munoz before January 1st, 2003?
14 A.  Yes.  It's -- have to be.  We show one.  I
15 don't know if that's for the RV or not, but it was one
16 for the tires.  It didn't say what size.
17 Q.  Okay.
18 A.  But we do have a ticket.
19 Q.  Okay.  Do you recall if these tires were in the
20 front or in the rear?
21 A.  Don't know.  The one on the AV was on the rear.
22 Q.  Okay.  Do you remember if it was one tire or
23 two tires?
24 A.  There were two tires.
25 Q.  Two tires.

Nov 22 2005 12:25PM  TAYLOR & TAYLOR           7136156070           p.35
Case 1:04-cv-00141   Document 59-7   Filed in TXSD on 11/22/2005   Page 17 of 20

Page 74

1    Q.  Okay.  Prior to November 9 when we were taking
2  your deposition, had you ever given me a copy of
3  Exhibit No. 1?
4    A.  There they are.
5    Q.  Before this date is what I'm asking.  Before
6  the deposition last week, had you ever given me a copy
7  of Exhibit No. 1?
8    A.  No.
9    Q.  Okay.  So the first time that I got them from
10  you was last week when we took your deposition,
11  correct?
12    A.  Correct.
13    Q.  All right.  Now, you told Mr. Garza here that
14  the receipt documenting the service that you provided
15  to Mr. Munoz's ATV is right there.  Are you referring
16  to Exhibit No. 92 --
17    A.  No, I didn't say that.  I didn't say there
18  were -- I said he told me these are the tickets taken
19  in.  Okay.  Maybe it was something else, flat or
20  something, but he didn't -- he didn't say to me that
21  they were AV, no.  He was talking about -- this is
22  another tire maybe.  Maybe it is, maybe it's not.  I
23  don't know.
24    Q.  You don't -- you don't know?
25    A.  I don't remember because it don't say there.

Page 75

1  You know, tickets have to say this was done for so many
2  vehicles or something, but it don't say there, so I
3  don't remember.  Okay?
4      Q.  Okay.  You don't remember what?
5      A.  What the work was done on this ticket.  All
6  I'm -- all it says here was $6.  Okay?
7      Q.  Uh-huh.
8      A.  For what purpose, I don't know.  Maybe a tire
9  or a proof of something.
10     Q.  Okay.  So if you don't remember what work was
11 done as reflected in this ticket for December 30, 2002,
12 how do you remember that on December 31, 2002, your
13 shop repaired two tires on an ATV?
14     A.  I didn't say.  They brought the tires in there
15 because the shop was open.  Okay?  Now they told me
16 that we repaired something.  Maybe they did, paid cash
17 or made a ticket.  I don't know.  But the ticket --
18 there's the ticket.  It talks by itself, so that's all
19 I'm saying.
20     Q.  Okay.  I understand this ticket speaks for
21 itself, but if you don't recall what type of tire was
22 being repaired on December 30 as reflected in this
23 ticket, how do you remember that on December 31 you
24 repaired two ATV tires?
25                MR. GARZA:  I'm going to object.  It's

Page 77

1  A. It says "repair" --
2  Q. -- as reflected in receipt No. 9211?
3  A. I don't remember.
4  Q. How about on December 19, 2002, as reflected in
5  receipt number -- it looks like 790? What -- what type
6  of tire was repaired?
7  A. It doesn't even have the price. Just a flat
8  repair.
9  Q. And you don't remember what was --
10 A. I don't remember what it was. Maybe --
11 Q. If Mr. Reed gets up in front of the federal
12 judge and swears under oath that he spoke with you in
13 June of 2003, are you going to get up in front of the
14 federal judge and swear under oath to the judge that he
15 did not speak to you in June 2003?
16 A. In June 2003?
17 Q. Yes, sir.
18 A. This is the first time I met him personally.
19 Whether he went to the shop or not, I don't know. He
20 spoke to me, probably did. A lot of people spoke to
21 me.
22         MR. MORADO: All right. I pass the
23 witness.
24         MR. GARZA: One more question.
25

Page 81

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LUIS C. MUNOZ AND        )(
CARMELA MUNOZ            )(
    Plaintiffs           )(
                         )(  CAUSE NO. B-04-141
VS.                      )(  JURY DEMANDED
                         )(
STATE FARM LLOYDS        )(
    Defendant            )(

REPORTER'S CERTIFICATE

I, Donna McCown, Certified Court Reporter, certify that the witness, RAUL PENA, SR., was duly sworn by me, and that the deposition is a true and correct record of the testimony given by the witness on NOVEMBER 18, 2005; that the deposition was reported by me in stenograph and was subsequently transcribed under my supervision.

I FURTHER CERTIFY that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, nor am I financially interested in the action.

WITNESS MY HAND on this the _____ day of _____, 2005.

DONNA McCOWN, CSR NO. 6625
Expiration Date: 12/31/07
Bryant & Stingley, Inc., CRN No. 41
2010 East Harrison
Harlingen, Texas 78550
(956) 428-0755

BRYANT & STINGLEY, INC.
McAllen (956) 618-2366    Harlingen (956) 428-0755    Brownsville (956) 542-1020