IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| LUIS C. MUNOZ AND | : CAUSE NO. B-04-141 |
| CARMELA MUNOZ | : |
| | : |
| | : |
| VS. | : |
| | : |
| STATE FARM LLOYDS | : |

_____

ORAL DEPOSITION OF

THOMAS LEE REED

VOLUME

OCTOBER 20TH, 2005

_____


        ORAL DEPOSITION of THOMAS LEE REED, VOLUME 1, taken on

the 20th of October, 2005, from 9:52 a.m. to 4:28 p.m.,  at the

offices of Taylor & Taylor, 815 Walker, Suite 250, Houston,

Harris County, Texas, pursuant to Notice and the Federal Rules
of Civil Procedure, Rule No. 30.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 2

1                          I N D E X

2

3                                                    PAGE

4    Appearances ........................................  3

5    THOMAS LEE REED

6          Examination by Mr. David L. Rusnak ............  4

7    Changes and Signature ............................174

8    Reporter's Certification .........................176

9

10

                           E X H I B I T S

11

     NO.        DESCRIPTION                          PAGE

12   1 ................................................  45
                    Insurance policy

13   2 ................................................  47
                    Affidavit of Tom Reed

14   3 ................................................  63
                    Statement

15   4 ................................................  75
                    Recorded statement of Ben Capetillo

16   5 ................................................ 131
                    Phone call information

17   6 ................................................ 143
                    Statement

18

19

20

21

22

23

24

25

FRANCESCON REPORTING SERVICE  281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 3

```
 1                    A P P E A R A N C E S
 2
      FOR THE PLAINTIFFS:
 3          Mr. David L. Rusnak
            SCOGGINS & GOODMAN, P.C.
 4          2800 Marquis One Tower
            245 Peachtree Center Avenue, N.E.
 5          Houston, Texas 30303
                  - and -
 6          Mr. Gustavo Ch. Garza
            ATTORNEY AT LAW
 7          705 W. Highway 100, Suite A
            Los Fresnos, Texas 78566
 8
 9      FOR THE DEFENDANT:
            Mr. Warren Taylor
10          TAYLOR & TAYLOR
            815 Walker, Suite 250
11          Houston, Texas 77002
12
13      ALSO PRESENT:
            Mr. Kyle Hambright
14
15
16
17
18
19
20
21
22
23
24
25
```

Deposition of Thomas Lee Reed taken on October 20, 2005

1  THOMAS LEE REED,

2  having been first duly sworn, testified as follows:

3  MR. RUSNAK:  This will be the deposition

4  of Tom Reed in Civil Action No. B-04-141.  The style of

5  the case is Luis C. Munoz and Carmela Munoz versus State

6  Farm Lloyds.

7  EXAMINATION

8  BY MR. RUSNAK:

9  Q.  Mr. Reed, would you state your full name for

10  the record, please?

11  A.  Thomas Lee Reed.

12  Q.  Do you spell that with an "H"?

13  A.  Spell what?

14  Q.  Do you spell "Thomas" with an "H"?

15  A.  Correct.  T-h-o-m-a-s.

16  Q.  And let me start by going over a few rules of

17  the road.

18  Well, first of all, how many times have

19  you been deposed?

20  A.  Six or eight.

21  Q.  Well, let me be brief, then, about the rules

22  of the road.  The rules of the road are simply designed

23  to ensure that we have a clear deposition.

24  First, if for any reason you do not

25  understand my question, a phrase that I've used, a term

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 5

1    that's needs to be defined, anything, please ask me to

2    restate it, define, or refine my question.  Is that

3    okay?

4        A.    Okay.

5        Q.    I would ask you to allow me to complete my

6    question before you start answering.  I may pause for a

7    moment; but give me a moment, if you will, to complete

8    my question.  Is that okay?

9        A.    Sure.

10       Q.    And if for any reason you need to complete

11   your answer, if I have started to ask a question before

12   you were done, let me know so we can have your full

13   answer on the record.  Is that okay?

14       A.    Okay.

15       Q.    Also, I would ask that you answer in words as

16   opposed to gestures or noises such as "uh-huh" or

17   "huh-uh" so we can be sure what, in fact, you meant when

18   you answered.  Is that all right?

19       A.    Okay.

20       Q.    When and where were you born?

21       A.    I was born June 4th, 1958, in Kingsville,

22   Texas.

23       Q.    What county is Kingsville in?

24       A.    Kleberg.

25       Q.    And you understand here that your testimony

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 6

1    here today is under the penalty of perjury?

2         A.    Correct.

3         Q.    Are you on any medications or any other

4    physical treatment that might interfere with your giving

5    a deposition here today?

6         A.    No, sir.

7         Q.    Are you aware of any reason why you can't give

8    a full, truthful, and complete deposition here today?

9         A.    No, sir.

10        Q.    Some abbreviations.  If I say "State Farm," I

11   mean the defendant, State Farm Lloyds.  Is that

12   understood?

13        A.    Correct.

14        Q.    If I refer to Munoz Roofing, I mean the sole

15   proprietorship of Luis C. Munoz.

16        A.    Okay.

17        Q.    If I refer to policy, I'm referring to State

18   Farm Lloyds Policy No. 83-J4-5565-2, which I'll

19   represent to you is the policy in this case.

20        A.    I see it on the claim form.

21        Q.    So, my definition is correct?

22             MR. TAYLOR:  Yeah.  You're specifying the

23   policy in effect at the time of the fire?

24             MR. RUSNAK:  Yes, I am.

25        Q.    (BY MR. RUSNAK) And when I refer to the house

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 7

1    or the home, I mean the structure at 829 West White

2    Avenue, Raymondville, Texas.  Is that understood?

3         A.    Correct.

4         Q.    Have you ever been a party to a lawsuit,

5    Mr. Reed?

6         A.    Yes, I have.

7         Q.    How many times?

8         A.    I don't know how many times.

9         Q.    Have you been a party to a lawsuit as a

10   defendant?

11        A.    Yes, sir.

12        Q.    Have you been a party to a lawsuit as a

13   defendant outside of your insurance adjusting practice?

14        A.    No, sir.

15        Q.    Have you been a defendant more or less than

16   ten times?

17        A.    Probably ten times; roughly, ten times.

18        Q.    Okay.  State or Federal court?

19        A.    Both.

20        Q.    Have you been a defendant in the United States

21   District Court for the Southern District of Texas,

22   Brownsville Division?

23        A.    I believe I have, yes, sir.

24        Q.    Do you have any sort of lists or record of the

25   cases to which you've been a party as a defendant while

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 8

1    acting as an insurance adjuster?

2         A.    No, sir, I don't.

3         Q.    Were any of these lawsuits while you were

4    working for State Farm?

5         A.    Yes.

6         Q.    Were they all for State Farm?

7         A.    Yes, sir.

8         Q.    How would we go about finding the cases you've

9    been a defendant in?  Is there any records at State Farm

10   that would reflect this?

11        A.    That, I wouldn't know.

12        Q.    Have you been a plaintiff before?

13        A.    I don't know if you would call it a

14   "plaintiff," but I filed a Lemon Law action with the

15   state of Texas.

16        Q.    Any other time in which you filed a lawsuit?

17        A.    Not that I remember, no, sir.

18        Q.    Any records you would need to consult in order

19   to determine that?

20        A.    Other than that one -- that one incidence, I

21   can't think of any.

22        Q.    Do you recall the counties of the State law

23   actions where you were in Federal court where you were a

24   defendant?

25        A.    It would have been the Brownsville and

FRANCESCON REPORTING SERVICE 281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 9

1  San Antonio.

2      Q.   Any other counties?

3      A.   Not that I remember.

4      Q.   The counties incorporating --

5      A.   Plus Nueces.

6      Q.   So, that would be Cameron and Bexar counties?

7      A.   Correct.

8      Q.   And when you were a defendant in Federal

9  court, where were these actions held, in Brownsville in

10 Houston?  Where were these cases being conducted?

11     A.   One of them was to be tried in Brownsville,

12 one was in Corpus, and another was to be tried in

13 San Antonio.

14     Q.   Any other Federal actions?

15     A.   Can you redefine your question?

16     Q.   Certainly.

17          You've identified three Federal lawsuits:

18 one in Brownsville, one ine Corpus Christi, and one in

19 San Antonio, leaving approximately seven State court

20 actions.  Is that about right?

21     A.   That's -- that's what I remember, yes, that's

22 correct.

23     Q.   Who was the plaintiff in the Brownsville

24 action?

25     A.   Brenda Hamilton.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 10

1    Q.    Why was she suing you?

2    A.    It was an intentionally set fire that was

3    denied by State Farm.

4    Q.    What did she allege you did wrong?

5    A.    She alleged that there was bad faith.

6    Q.    What did she allege you personally did that

7    led to this lawsuit with Ms. Hamilton?

8    A.    I don't remember the specifics of the

9    petition.

10   Q.    What year was that?

11   A.    It would have been between '90 and '93, I

12   think.

13   Q.    What was the outcome of that lawsuit?

14   A.    The plaintiff filed a -- he withdrew the

15   lawsuit.

16   Q.    Was it settled or withdrawn?

17   A.    Withdrawn a week before trial.

18   Q.    It was dismissed?

19   A.    Correct.  He filed a dismissal.

20   Q.    Was your deposition taken in that case?

21   A.    Yes, it was.

22   Q.    Do you remember the attorney who took your

23   deposition?

24   A.    I remember the last names, Ellis and Ash.

25   Q.    That was the plaintiff's firm?

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 11

1      A.    Correct.

2      Q.    Okay.  In the Corpus Christi action, who was

3  the plaintiff?

4      A.    It was Delma Donovan.

5      Q.    Del?

6      A.    Delma, D-e-l-m-a, Donovan.

7      Q.    And why was Ms. Donovan suing you?

8      A.    Basically, the same.  Well, she was suing

9  State Farm.

10     Q.    Did she sue you as an individual person?

11     A.    I don't believe she did, no, sir.

12     Q.    Did you give a deposition in that case?

13     A.    Yes, I did.

14     Q.    Do you recall who the plaintiff's attorneys

15 were?

16     A.    It was -- right off, I don't remember.

17     Q.    When was that case?

18     A.    It was last year or -- let me think.  It

19 was -- may have been the first -- it was rescheduled a

20 couple of times.  I believe it was January or February

21 of this year.

22     Q.    Was it filed in 2004?  The case started in

23 2004?

24     A.    I believe it was, yes, sir.

25     Q.    Is that case ongoing?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 12

1       A.    No, it's not.

2       Q.    And you gave your deposition?

3       A.    Yes, I did.

4       Q.    Did you testify in court?

5       A.    No, I did not.

6       Q.    And has that case not resolved yet?

7       A.    It's resolved.

8       Q.    How was it resolved?

9       A.    The plaintiff's attorney filed a -- he
10  withdrew the -- he withdrew the lawsuit after the first
11  day of trial.

12      Q.    Was it settled?

13      A.    What's your definition of "settled"?

14      Q.    Did State Farm agree to a resolution of the
15  case that caused the case to end, pay money or agree to
16  some sort of compensation for Ms. Donovan?

17      A.    No, sir.  He went down and filed with the
18  court to withdraw while we were at lunch.

19      Q.    The third Federal case in San Antonio, what
20  was the name of the plaintiff in that case?

21      A.    That was -- I believe it was Sparks.

22      Q.    Do you remember the first name?

23      A.    Cheryl, Cheryl Sparks.

24      Q.    And when was that case started?

25      A.    It would have been '93 -- '92 to '93, I

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 13

1    believe.

2         Q.    Did you give a deposition in that case?

3         A.    Yes, I did.

4         Q.    Did you testify at trial in that case?

5         A.    No, I did not.

6         Q.    How was that case resolved?

7         A.    It was negotiated before trial.

8         Q.    So, there was a settlement in that case?

9         A.    Correct.

10        Q.    Who were the plaintiff's attorneys?

11        A.    I don't remember right off.

12        Q.    Do you remember the names of the plaintiffs in

13   the approximately seven other cases which were in

14   Brownsville, San Antonio, and Nueces?  And if you do

15   remember, name them, please.

16        A.    Right off, I don't remember.

17        Q.    Were you a individual defendant in those

18   cases, which is to say, you were named as a party; or

19   were you simply appearing as a witness for State Farm?

20        A.    Specifically I couldn't tell you on each of

21   them.  I don't remember.

22        Q.    Did you deliver reports to State Farm about

23   those cases so we could ask State Farm and then

24   determine who those plaintiffs were?

25        A.    When you say "deliver reports," what --

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 14

1    Q.   You worked on those cases?

2    A.   That's correct.

3    Q.   Okay.  So, if we were to ask State Farm to

4  produce a log of the cases you've worked on, would you

5  be able to identify those plaintiffs?

6    A.   I don't know what records the company keeps.

7    Q.   You produced an activity log for each of these

8  cases?

9    A.   That is correct.

10    Q.   Did you deliver reports in these cases to

11  State Farm, such as to claims review boards or claims

12  committees?

13    A.   There would have been some reports in there.

14  Specifically what reports they were, I don't remember.

15    Q.   But there would have been an activity log for

16  each of these cases?

17    A.   That's correct.

18    Q.   Are you paid a weekly salary as an employee or

19  on a case-by-case basis?

20    A.   Salary.

21    Q.   Did you give your depositions -- give a

22  deposition -- I believe you answered you gave a

23  deposition in each of those cases in Brownsville,

24  San Antonio, and Nueces?

25    A.   That is correct.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 15

1       Q.    Do you keep a copy of depositions that you

2    give?

3       A.    No, sir.

4       Q.    Have you ever testified in court?

5       A.    Yes, sir.

6       Q.    In which cases?

7       A.    It wasn't any -- it was a case in Kingsville,

8    and State Farm was not a party.

9       Q.    Why were you giving testimony in that case?

10      A.    It was -- I was brought in as a witness on

11   construction.

12      Q.    Construction of what?

13      A.    Reconstruction of a home, repairs.

14      Q.    Were you an expert witness?

15      A.    That's why I was brought in.

16      Q.    What party brought you in to testify?

17      A.    The defendant.

18      Q.    And their name was what?

19      A.    I don't remember.

20      Q.    When was this?

21      A.    It was between '86 and '88.

22      Q.    Do you have a construction background?

23      A.    Just a claims background.

24      Q.    Have you ever been arrested?

25      A.    No, sir.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 16

1       Q.   Have you ever been indicted?

2       A.   No, sir.

3       Q.   Ever pled guilty to a misdemeanor or a felony?

4       A.   No, sir.

5       Q.   What did you do in preparation for your

6   deposition here today?

7       A.   Reviewed file materials and spoke with my

8   attorney.

9       Q.   What file materials did you review?

10      A.   The material that's been produced.

11      Q.   Can you describe it?  Are you talking about

12  the activity log?

13      A.   The claim file itself.

14      Q.   Did you review all approximately 6,000 pages

15  that have been produced to Mr. and Mrs. Munoz in this

16  case?

17      A.   Not all of it, no, sir.

18      Q.   What portion of the file did you specifically

19  review?

20      A.   Correspondence, activity log, most of the

21  recorded interviews.

22      Q.   These are interviews done by both you,

23  Mr. Lerma, Mr. Robinson, others --

24      A.   Correct.

25      Q.   -- acting at your request?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 17

1          A.    Correct.

2          Q.    What else did you review?

3          A.    I skimmed through most of the file, most of

4    the file itself; but what parts I didn't go through, I

5    don't remember.  I didn't read it word for word, but I

6    just glanced through it.

7          Q.    Did you read the activity log word for word?

8          A.    No, I did not.

9          Q.    Did you read the correspondence word for word?

10         A.    No, sir, I did not.

11         Q.    You did a cursory review?

12         A.    Correct.

13         Q.    Was anyone present when you were talking to

14   your attorney?

15         A.    Not -- yes, sir.

16         Q.    Who was present --

17         A.    Well, by phone.

18         Q.    Who was present by phone?

19               MR. TAYLOR:  Other counsel.

20               MR. RUSNAK:  Other attorney?

21               MR. TAYLOR:  Yes.

22         Q.    (BY MR. RUSNAK) Other than counsel for State

23   Farm or a State Farm representative such as

24   Mr. Hambright, was anybody present during your interview

25   with your attorney?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 18

1     A.    No, sir.

2     Q.    When you say "your attorney," you're referring

3  to State Farm's attorney?

4     A.    And he's also my attorney as well.

5     Q.    He's your personal attorney?

6     A.    Correct.

7     Q.    Do you have a contract with Mr. Taylor to

8  represent you?

9     A.    Not a written contract.

10    Q.    Then why do you say he's your attorney?

11    A.    I've asked him to represent me.

12    Q.    And when did you do this?

13    A.    Yesterday.

14          MR. TAYLOR:  No, that's not right.  You

15  were sued in the case.

16          THE WITNESS:  Oh, that's correct.

17          MR. RUSNAK:  The State court suit?

18          MR. TAYLOR:  Yeah, he was an original

19  defendant in the case, and I've represented him since

20  then.

21          THE WITNESS:  That's correct.

22          MR. TAYLOR:  And then we discussed it

23  again yesterday to go over it.

24    Q.    (BY MR. RUSNAK) Are you paying for your

25  representation out of your own pocket?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

1    A.    No, sir.

2    Q.    Other than State Farm's attorneys, who have

3    you spoken with about your deposition?

4    A.    My boss.

5    Q.    Who is?

6    A.    Cary Tuscon.

7    Q.    Anyone else?

8    A.    I'm sure that -- when you say "talked with,"

9    what -- in what capacity?

10   Q.    Have you had a discussion with someone other

11   than your attorney concerning matters relating to this

12   case?

13   A.    Any matters or --

14   Q.    Anything.

15   A.    Well, I know there are those that know that

16   I'm here for my deposition today.

17   Q.    Okay.  Such as?

18   A.    My wife.

19   Q.    Outside of your family.

20   A.    My co-workers.

21   Q.    Which co-workers have you spoken with?

22   A.    Scott Kemp in Corpus knows I'm here; Danny

23   Lerma knows I'm here; my secretary, Annabelle Maldonado,

24   knows I'm here.

25   Q.    Anybody outside the State Farm employ?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 20

1    A.   Not that I'm aware of.  Well, I should say,
2  you know, friends, like people at church know I'm out of
3  town.
4    Q.   Have you talked about the facts of this case
5  with anybody --
6    A.   No, sir.
7    Q.   -- whether it be a friend or somebody you went
8  to church with?
9    A.   No, sir.
10   Q.   Have you talked about the facts of this case
11  with your wife?
12   A.   She knows that there was a fire in the valley
13  and that's about it.
14   Q.   Now, how long have you been an investigator
15  for State Farm?
16   A.   What do you classify as investigator?
17   Q.   How long have you provided investigatory
18  services to State Farm in any capacity?
19   A.   Well, I started with State Farm in 1986; and
20  in 1996, I went to Bloomington and then returned to the
21  Special Investigative Unit in 2000 and then up to today.
22   Q.   From 2000 to today, you were with SIU?
23   A.   Correct.
24   Q.   And that is Special Investigative Unit?
25   A.   Correct.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

1      Q.    What's the purpose of that unit?

2      A.    To investigate claims.

3      Q.    All claims or a specific category of claims?

4      A.    Claims that are assigned to SIU.

5      Q.    Does SIU get every claim?

6      A.    (Nodding)

7      Q.    Why would someone within the State Farm

8  organization refer a case to SIU?

9      A.    It depends on the circumstances; but in this

10 particular case, when there's a cause and origin that

11 comes back that it's an incendiary or intentional fire,

12 those are generally sent over to SIU.

13     Q.    Are cases where fraud is suspected sent to

14 SIU?

15     A.    They could be, yes, sir.

16     Q.    Would a fraud case not be sent to SIU?

17     A.    There could be a -- I wouldn't say every fraud

18 case is submitted to SIU.  I'm sure there's occasion

19 where they may not be.

20     Q.    Is there a policy manual or document of any

21 kind generated by State Farm that you could refer me to

22 that would define the purpose of SIU?

23     A.    There is a guideline for SIU.

24     Q.    We'll get back to that.

25           Now, you've been with SIU from 2000 to the

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 22

1   present?

2        A.   No, sir.

3        Q.   You were with SIU before that?

4        A.   Correct.

5        Q.   And when did you start with SIU?

6        A.   In -- I believe it was 1989.

7        Q.   And you were with SIU in Bloomington in 1996

8   through 2000?

9        A.   No, sir.

10       Q.   Why don't we start with:  Did you go to

11  college?

12       A.   Yes, sir.

13       Q.   Where did you go to college?

14       A.   Abilene Christian University.

15       Q.   And when did you graduate?

16       A.   December of '80.

17       Q.   What was your degree?

18       A.   Degree in management; degree in marketing.

19       Q.   After that, who employed you?

20       A.   Luby's.

21       Q.   What did you do with Luby's?

22       A.   I was a manager.

23       Q.   How long were you a manager with Luby's?

24       A.   I was a manager from '81 to about '82, I

25  believe.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 23

1    Q.    Why did you leave Luby's?

2    A.    The life-style, the hours.  Most of the

3 managers were divorced and remarried, and that just was

4 not -- that was not the life-style that I nor my family

5 wanted to be involved with.

6    Q.    What did you do after Luby's for a living?

7    A.    I became a stockbroker.

8    Q.    Where?

9    A.    In Beeville, Texas.

10    Q.    How long were you a stockbroker in Beeville,

11 Texas?

12    A.    From about '82 to about the middle of '83, I

13 believe.

14    Q.    Did you receive your Series 7 certification?

15    A.    Yes, I did.

16    Q.    When did you receive that?

17    A.    It would have been in -- before I opened the

18 office.

19    Q.    First of all, for whom did you work?

20    A.    Edward Jones.

21    Q.    And you said you opened an office for Edward

22 Jones?

23    A.    Correct.

24    Q.    And you worked there until 1987?

25    A.    No, sir.  Until about mid-'83, I believe.

Deposition of Thomas Lee Reed taken on October 20, 2005

1    Q.    Why did you leave that employ?

2    A.    In the early Eighties or right after I opened

3 the business, that's when oil field and cattle prices

4 went down; and that was the main income of Beeville.

5 And, so, financially it was not a real good -- not a

6 real good situation.  So, I closed that office.

7    Q.    After you closed that office, what did you do

8 for a living?

9    A.    I went to work as a manager for a grocery

10 store in Oklahoma.

11    Q.    What store?

12    A.    Cantwell's Grocery.

13    Q.    Where in Oklahoma?

14    A.    It was in Ratliff City, Oklahoma.

15    Q.    How long were you there?

16    A.    It was less than a year.

17    Q.    What did you do after?

18    A.    I bought a grocery store.

19    Q.    The name of which is what?

20    A.    Circle R Foods.

21    Q.    Did you run that store?

22    A.    Correct.

23    Q.    How long did you run that store?

24    A.    From approximately -- sometime in late '80 --

25 or sometime in '84 to about '86 or close to the end

c9adc9d7-033a-42fb-b66f-03b59692729d

1    of -- beginning of '86.

2         Q.    What happened to that store?

3         A.    I sold it.

4         Q.    What did you do after you sold it?

5         A.    Went to work for State Farm.

6         Q.    Prior to going to work for State Farm, did you

7    have any investigative training or background?

8         A.    No, sir.

9         Q.    That would be 1986?

10        A.    Correct.

11        Q.    Where were you first employed by State Farm?

12        A.    In Corpus.

13        Q.    And what were you doing for them in 1986 in

14   Corpus?

15        A.    When I was first hired, I investigated -- I

16   handled claims.

17        Q.    What kind of claims?

18        A.    Water losses, roof claims, slip-and-falls,

19   foundation, just any claim that came in that needed to

20   be handled.

21        Q.    Did you handle fire claims?

22        A.    Yes, sir.

23        Q.    How long did you do that general investigative

24   work?

25        A.    Until '89.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 26

1        Q.    And then in 1989, you moved to the SIU unit?

2        A.    Correct.

3        Q.    Why did you move to the SIU unit?

4        A.    There was an opening, and I applied for it.

5        Q.    And you worked in the SIU unit at what

6    location?

7        A.    At the Bandera office in San Antonio -- well,

8    first it was Westlake's office and then we were moved

9    over to the Bandera office in San Antonio.

10       Q.    How long were you in the office in

11   San Antonio?

12       A.    Until the summer of 1996.

13       Q.    In 1996, you previously testified you went to

14   Bloomington?

15       A.    Correct.

16       Q.    That's the home office?

17       A.    Correct.

18       Q.    What did you do in the home office?

19       A.    I worked for general claims, doing various

20   projects.

21       Q.    What kind of projects?

22       A.    One was the computer system.  We were going

23   from desktop computers to laptops.  I worked on that

24   project.  I worked on our E-mail system, worked on -- we

25   had a -- at one time there was a program called

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 27

1  Discovery.  It was ideas that could be submitted to the

2  company for various things.  I worked on that project.

3       Q.   Anything other than general administrative

4  work?

5       A.   I worked on a claim review committee.

6       Q.   What did that committee do?

7       A.   It reviewed various claims from different

8  regions.

9       Q.   What kind of claims?

10      A.   All different kinds of claims.  They were

11  randomly selected, and there were just all kinds of

12  claims.

13      Q.   Was it to decide the treatment of the claim,

14  or was it to review the acts of the parties

15  investigating the claims?

16      A.   It was just a review of all the activities

17  involving the claim.  It entailed the investigation; it

18  entailed correspondence; it entailed payments.

19      Q.   What was the purpose of this review body, to

20  do what?

21      A.   Just to make sure that claims were being

22  handled properly and in a reasonable time.

23      Q.   So, this was an internal --

24      A.   Correct.

25      Q.   That is to say, it was an internal body for

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 28

1    the purpose of reviewing State Farm's own practices?

2        A.    Correct.

3        Q.    And you did that until 2000?

4        A.    I didn't do that full time the whole time I

5    was there.  That was --

6        Q.    By you did that until 2000, I was referring to

7    you were in Bloomington, working in the home office?

8        A.    Oh, correct.

9        Q.    In 2000 you came back to the SIU unit in

10   Texas?

11       A.    Correct.

12       Q.    Which unit -- which location?

13       A.    I came back to Corpus.

14       Q.    And you've been there ever since?

15       A.    Correct.

16       Q.    Do you have any law enforcement training?

17       A.    Yes, sir.

18       Q.    Have you ever been employed as a law

19   enforcement officer?

20       A.    Not full time, no, sir.

21       Q.    Describe your part-time law enforcement

22   employment.

23       A.    Reserve.

24       Q.    Reserve for whom?

25       A.    I started reserve for a little bit in Nueces

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 29

1    County, Nueces County Sheriff's Department, and also

2    the -- it was Sheriff's posse in Nueces County.  And

3    then in San Antonio it was -- I was with the Constable's

4    office for a short period of time, and then most of my

5    time in reserve was with Leon Valley Police Department.

6        Q.    So, you've been a reserve deputy sheriff in

7    Nueces County; is that correct?

8        A.    Correct.

9        Q.    What is a Sheriff's posse?

10       A.    It's the Nueces County mounted posse.  That's

11   just a different -- it's a reserve part of the Sheriff's

12   department.

13       Q.    What is the purpose of a posse?

14       A.    To assist the Sheriff's department.  Most of

15   them ride horses and they go up and down the beach or go

16   where a vehicle can't go.  They do parades and that sort

17   of thing as well, different functions.

18       Q.    You grew up on a ranch or are familiar with

19   horses?

20       A.    I have a ranch, yes, sir -- or my family has a

21   ranch.

22       Q.    Where is that ranch?

23       A.    Kennedy.

24       Q.    How big a spread?

25       A.    It's 1,000, 1100 acres.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 30

1      Q.    Now, you've been a constable in San Antonio?

2      A.    Just for a short period of time.

3      Q.    Was that the city of San Antonio?

4      A.    Yes, sir.

5      Q.    And you're now a reserve officer with the Leon

6   Valley Police Department?

7      A.    No, sir.

8      Q.    How long were you -- was that the last police

9   entity you were involved with?

10     A.    Correct.

11     Q.    And what did you do for the Leon Valley

12  Police?

13     A.    Whatever the lieutenant or the chief

14  assignment was.

15     Q.    Was it investigative?

16     A.    It was mainly patrol and initial contact with

17  the public.

18     Q.    Did you have investigative duties for any of

19  these police bodies?

20     A.    What do you mean by --

21     Q.    Did you --

22     A.    Can you define "investigative"?

23     Q.    Sorry for talking over you.

24           Were you asked to investigate a crime as a

25  detective would?

FRANCESCON REPORTING SERVICE 281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 31

1       A.   No, sir.

2       Q.   Were you the officer on the scene

3   investigating certain cases?

4       A.   I made the initial contact.  Say, for

5   instance, if there was a burglary that was reported, I

6   would go and make the initial contact, obtain the

7   information, and then turn it in, and then it would be

8   investigated from that point on; but I didn't do the

9   investigation.

10      Q.   How many years have you been acting as a

11  policeman or a Sheriff's deputy?  How many total years?

12      A.   Probably total, if you took all of it

13  together, probably four, maybe five years.

14      Q.   Who was your superior at Nueces County

15  Sheriff's Department?

16      A.   I don't remember.

17      Q.   Who was your superior in the Sheriff's posse?

18      A.   I don't know -- I don't remember who was in

19  charge of it.

20      Q.   Who was in charge of -- who was your superior

21  at the Leon Valley police?

22      A.   It was Bill Standard.

23      Q.   At the San Antonio Constable's office?

24      A.   I don't remember.

25      Q.   Did any of these offices ask you to

Deposition of Thomas Lee Reed taken on October 20, 2005

1    discontinue service?

2        A.    No, sir.

3        Q.    Did you receive any investigative training

4    from any of these police bodies, training in how to

5    investigate a crime?

6        A.    Nothing more than the initial contact phase,

7    no detective training or anything like that.

8        Q.    What training did you receive from State Farm

9    on how to investigate a matter?

10        A.    Well, from the time a claim is submitted, I

11    guess you could call it you're conducting an

12    investigation; but I went to various claim schools.

13    There are various claim schools to get your license.

14    Also there was -- well, they call it a basic claims

15    school, intermediate claims schools, and then I went to

16    estimating school.  I went to a school that was called

17    SIU 1 and SIU 2, and there were other seminars and

18    continuing education, various schools that I've

19    attended.

20        Q.    Are any of these claims schools basic,

21    intermediate, estimate, SIU 1 or SIU 2, are these

22    pass/fail?

23        A.    When you say pass/fail --

24        Q.    You either pass out of the course with an

25    approval of some instructor or you are failed and you

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 33

1   have to retake the course.

2       A.   The first school is a -- you have to pass the

3   very first school.

4       Q.   Basic?

5       A.   Correct.

6       Q.   Is there any qualifications, testing involving

7   passing out of these schools?

8       A.   There is, yes, sir.

9       Q.   In basic there is?

10      A.   Correct.

11      Q.   In intermediate?

12      A.   I know there were tests.  I don't know -- if

13  you -- if you say -- I never had to worry about failing.

14  So, I don't know what the ramifications -- if a person

15  failed those tests, I don't know if they had to retake

16  it or what.  I never had to worry about it.

17      Q.   Why didn't you have to worry about it?

18      A.   Because I passed.

19      Q.   You said you have a license?

20      A.   Correct.

21      Q.   A license to do what?

22      A.   To handle claims.

23      Q.   Who issues that license?

24      A.   The State of Texas.

25      Q.   What's that license number?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 34

1      A.    The license number is 289244.

2      Q.    What body of the State of Texas issues that

3  license?

4      A.    Department of Insurance, Texas Department of

5  Insurance.

6      Q.    May I see the card, please?

7      A.    (Complies) It's the back of it.

8      Q.    You've handed me a photocopy?

9      A.    Correct.

10      Q.    Where is the original currently?

11      A.    The original is in my desk at my office.

12      Q.    What year was this issued?  Well, I don't see

13  it on here.

14            Do you know what year you were issued this

15  license?

16      A.    That license -- I've had a license since 1986.

17      Q.    Very well, then.  Let's move to the particular

18  incident here.

19            You've had an opportunity over the course

20  of approximately a year and four months to investigate

21  this matter prior to the filing of the lawsuit that

22  brought us here today; is that correct, sir?

23      A.    Let's see.  The loss occurred January of

24  '03 -- and what was the time frame?

25      Q.    You had approximately a year and four months

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 35

1   to investigate this claim before the lawsuit was filed?

2       A.   Well, I became involved in February of '03;

3   and the lawsuit was filed in May of this year.

4       Q.   Okay.  Didn't you meet with Mr. Munoz in

5   January of '03?  Specifically didn't you have a meeting

6   with him on January 24th and then again on January 28th?

7       A.   January 24th, that's correct.  I was thinking

8   February, but January.

9       Q.   Let me just rephrase the question.

10          You had over a year to investigate this

11   claim before the lawsuit was filed.  Is that not

12   correct, sir?

13       A.   Again, the claim was initiated the first part

14   of the January through -- January, '03 -- and the

15   lawsuit was filed in May of '05.

16       Q.   In fact, Mr. Munoz went to Mr. Brown's office

17   on January 2nd of 2003, and personally made the claim,

18   having previously reported it to Agent Mark Brown the

19   day before?

20          If you'll look at Entry No. 4 on your

21   activity log dated 1-2-03 -- I'm sorry -- Entry No. 7

22   dated 1-3-03.

23          MR. TAYLOR:  What are you looking for?

24          THE WITNESS:  The January activity log.

25       A.   The initial agent acknowledgement was sent on

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 36

1   January the 2nd of '03.

2        Q.   (BY MR. RUSNAK) All right.  So, that's when,

3   to your knowledge, this claim became known to State

4   Farm?

5        A.   Correct.

6        Q.   Now, as a part of your investigation you had

7   an opportunity to determine certain renovations and

8   remodeling and enlarging of the home that Mr. Munoz had

9   performed in the years preceding to the fire, the date

10  of the fire being 1-1-03?

11       A.   Did I see --

12       Q.   Did you have a chance to determine the extent

13  of the renovations, remodeling, and enlarging of the

14  home that Mr. Munoz had performed in the years preceding

15  the fire?

16       A.   Mr. Munoz did show me what additions and

17  renovations that he had done, yes, sir.

18       Q.   You had a chance to thoroughly investigate

19  that to your satisfaction?

20       A.   Well, I looked at what -- I looked at the home

21  and saw where he had been doing remodeling and he added

22  on to the home and I noticed that was not complete; but

23  up until that point, I saw what he had done.

24            MR. RUSNAK:  Object to the nonresponsive

25  portion of your answer.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 37

1    Q.    (BY MR. RUSNAK) Mr. Reed, what I asked you,
2  you had an opportunity to investigate the remodeling,
3  renovation, and enlarging of the home?
4    A.    What do you mean by "investigate the
5  renovation" or "remodeling"?
6    Q.    Did you have a chance to look into what
7  Mr. Munoz did?
8    A.    I saw what he had done, yes, sir.
9    Q.    So, you had a full and thorough opportunity --
10  full and complete opportunity to determine what had been
11  done?
12    A.    I saw what -- he showed me what he had done,
13  and I saw what he -- I saw the work that he had
14  completed up to that point.
15    Q.    My question, sir --
16          MR. TAYLOR:  He wants to know if you saw
17  everything that you needed to see or if there was more
18  information you wanted that you were not able to get as
19  it pertains to the renovation.
20          MR. RUSNAK:  That's not exactly my
21  question, but I'll --
22          MR. TAYLOR:  I thought that's what you
23  were trying to ask.  I'm just trying to help.
24          MR. RUSNAK:  I understand.  I will ask
25  you, of course, to obey with the Federal Rules to the

Deposition of Thomas Lee Reed taken on October 20, 2005

1   extent that we need to here.  I don't want you to --

2           MR. TAYLOR:  I'll be a potted plant if

3   you want.  I was just trying to help.

4           MR. RUSNAK:  No, I don't need you to be a

5   potted plant.  I just -- my questions are my questions.

6   I appreciate the effort you're trying to make.

7       Q.    (BY MR. RUSNAK) Can you answer your counsel's

8   question?  Did you see everything you needed to see

9   to --

10      A.    I saw the remodeling.  There were some

11  additions that were not finished yet, but -- I guess

12  I -- I guess I still don't understand what you're trying

13  to ask.

14      Q.    Did you see the photographs and the records of

15  the house as it was before he started the remodeling?

16      A.    I don't remember -- I don't remember seeing

17  that.

18      Q.    Did you request any?

19      A.    I don't think so.  I don't remember.

20      Q.    You are aware that he was either completing or

21  in the process of completing renovations to his home?

22      A.    Correct.

23      Q.    And you're aware that Mr. Munoz seven months

24  prior to the date of the fire, which is January 1st,

25  2003, had completed paying the mortgage on the home?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 39

1    A.    Yes, sir.  He had told me that the mortgage

2  was completely paid off.

3    Q.    What did you do to confirm that that fact was

4  true?

5    A.    Well, I noticed on the claim file that there

6  was no mortgage company listed.  So, that told me that

7  the mortgage had been paid off.

8    Q.    So, you believed Mr. Munoz?

9    A.    Correct.  And it was also confirmed by company

10  records.

11    Q.    It's also true that State Farm gave Mr. Munoz

12  in writing the first specification of information that

13  it wanted on March 18th, 2003?

14    A.    What was your question?

15    Q.    It's true that State Farm gave Mr. Munoz its

16  first specification of the information it wanted him to

17  provide on March 18th of 2003?

18    A.    Mr. Munoz was made aware of some of the

19  information that would be requested prior to that, but

20  the list -- that list that you're looking at was

21  provided to him at that time.

22    Q.    There was a letter from you on March 18th,

23  2003, specifying certain information relating to his

24  financial matters and other things, correct, sir?

25    A.    Correct.

c9adc9d7-033a-42fb-b66f-03b59692729d