Deposition of Thomas Lee Reed taken on October 20, 2005

1    Q.   And that's the first letter specifying

2  information to Mr. Munoz?

3            Let me help speed this process.  Exhibit D

4  to the Defendant's, State Farm Lloyds, Motion For

5  Summary Judgment and Supporting Brief is the March 18th,

6  2003 letter that is Exhibit D.  Let me show you the

7  letter.  The Bates stamp number on the letter is

8  SF000527 through 530.

9            Is that the letter, sir (indicating)?

10   A.   That is the letter you're making reference to,

11  yes, sir.

12   Q.   And there were no prior letters specifying

13  information?

14   A.   That's what I'm looking for.  You want me to

15  say that there was no information requested prior to

16  that, and I'm looking that up.

17   Q.   In writing, sir.

18   A.   On January the 24th, there was a letter

19  indicating that -- pertinent records and documents.

20   Q.   My question, sir, is specification of

21  particular documents.

22   A.   You're talking -- which were specifically

23  requested?

24   Q.   Yes, in writing.

25   A.   Those were requested on --

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 41

1      Q.    March 18th?

2      A.    -- March 18th.

3      Q.    You find no other correspondence that you or

4  anyone else from State Farm wrote that specifically

5  requested documents prior to March 18th; is that

6  correct?

7      A.    I do know that -- well, let me finish my

8  review here.

9      Q.    Well, keep in mind my question is limited only

10 to writing.

11     A.    In the Loss of Use section, it does indicate

12 that any loss of use payments would need to be verified

13 with original receipts for the expense incurred.

14     Q.    I'm talking about letters that you wrote --

15 not within the policy itself, but letters that you wrote

16 specifying information to be provided to State Farm, you

17 or any other investigator or any other party on behalf

18 of State Farm.  I find none other than March 18th, 2003.

19     A.    Well, in my letter of March 11, it discusses

20 loss of use and that expenses must be documented with

21 original receipts.

22     Q.    Other than that.  Is that it?

23     A.    That's all that I can find right at this

24 moment.

25     Q.    Okay.  Take all the time you need.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 42

1      A.    Okay.

2      Q.    We need to be certain that a specification of

3  information such as exists in the March 18th, 2003

4  letter was not given prior to that date.

5      A.    As far as specifically which documents were

6  being requested, the March 11 and March 18 is correct;

7  but the January 24 outlines the conditions and what --

8      Q.    I didn't ask you --

9      A.    -- types of records would be requested.

10      Q.    Sir, I asked you for a specific list.  Because

11  of the March 18th, 2003 letter, there is a list of 22

12  documents.

13      A.    That is correct.

14      Q.    And no such list was provided to Mr. Munoz

15  prior to March 18th, 2003; is that correct?

16      A.    Not written, no, sir.

17      Q.    Okay.  My question was, sir, only written.

18  There were no written ones?

19      A.    That's what I just answered, no written -- no,

20  other than -- other than written, no, sir.

21      Q.    There were no written lists provided prior to

22  March 18th, 2003; is that correct?

23      A.    That's correct.

24      Q.    Was it your understanding that State Farm had

25  an obligation to specify information -- your

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 43

1    understanding at the time, of course, of the fire --

2    that State Farm had an obligation to provide a written

3    list specifying documents to Mr. Munoz within 15 days of

4    the claim?

5        A.    My understanding is that the 15 days is to

6    acknowledge receipt of a claim and to begin a request

7    for information.

8        Q.    You have no understanding that State Farm's

9    own policy specifies that information shall be specified

10   within 15 days of receiving notice of a claim?

11              MR. TAYLOR:    Objection; form.

12       Q.    (BY MR. RUSNAK) Do you, sir?

13       A.    I do know that State Farm did request

14   information.

15       Q.    Okay.   Specifying specific information?

16       A.    Correct.

17       Q.    Okay.   How do you know that?

18       A.    Because we have records that were submitted by

19   Mr. Munoz.

20       Q.    Within 15 days -- no, no.   Let me start this

21   over again so we can just be sure we're on the same page

22   here.

23              Is it your understanding that the policy

24   has no requirement that State Farm specifically

25   identified the information it is seeking from an insured

FRANCESCON REPORTING SERVICE 281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 44

1    within 15 days of receiving notice of a claim?

2                    MR. TAYLOR:  Objection; form.

3        A.    And the initial claim representative did

4    request --

5        Q.    (BY MR. RUSNAK) I'm asking for your

6    understanding, sir, your understanding as the lead

7    investigator.

8        A.    My understanding is, yes, that we are to --

9    that the company acknowledges receipt of the claim and

10   begins the investigation by requesting information.

11       Q.    And that 15 days is the time frame specified

12   in the company's policy for doing so?

13       A.    That is the guideline.

14       Q.    It's not a policy requirement?

15       A.    It's not a policy -- it's not an insurance

16   policy requirement.

17                    MR. RUSNAK:  Off the record, please, for

18   a moment.

19                    (Brief recess taken)

20                    MR. RUSNAK:  Let's go back on the record,

21   please.

22                    Can you read me the last question and

23   answer, please?

24                    (Question and answer read)

25       Q.    (BY MR. RUSNAK) All right.  I'm going to show

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 45

1    you -- we'll have to find it -- it's on Page 15, I

2    believe, of the policy.  Here we are.  I'm going to hand

3    you --

4                   MR. RUSNAK:  Actually, let's mark that as

5    an exhibit, please.

6                   (Exhibit No. 1 marked)

7        Q.   (BY MR. RUSNAK) I'm going to hand you what has

8    been marked as Exhibit No. 1 in this deposition.  This

9    is a document I've taken from the documents produced by

10   State Farm.  There are a number of nonBates stamped

11   pages -- there are four -- and then the Bates stamps

12   begins 001013 through 1056.

13                  On Page 15 in Item 14 --

14       A.   I see what you're referring to, and I was

15   not -- I was not clear on the question you were trying

16   to ask.

17       Q.   Okay.  You'll agree with me now, sir, that it

18   is a requirement of the policy that State Farm specify

19   the information it wants within 15 days of notice?

20       A.   I see that under 14, Subsection B, it does say

21   that, "After we receive the information we request, we

22   must notify you in writing whether the claim will be

23   paid or has been denied."

24       Q.   That's not my question, sir.

25                  My question is:  Under Section 14(a)(3),

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 46

1   does it not say, "Specify the information you must

2   provide in accordance with your duties after a loss";

3   and that is under Subsection A, "15 days after we

4   receive your written notice," correct, sir?

5         A.   And we also may ask request --

6                  MR. TAYLOR:  You need to answer his

7   question.

8         A.   Yes, yes.

9         Q.   (BY MR. RUSNAK) Please don't volunteer.

10        A.   Okay.

11        Q.   We're just going to end up being here all day,

12   Mr. Reed.

13                  Is that also an requirement of the Texas

14   Insurance Code, Section 2155?  Do you know that code

15   section, sir?

16        A.   Not by heart, no, sir.

17        Q.   All right.  In keeping with the term of the

18   policy, did State Farm request specific documents from

19   Mr. Munoz within 15 days of notice of the loss?

20                  I think we previous established, sir, that

21   there was no written list given until March 18th; and

22   you have a March, I believe, 11th letter asking for

23   receipts.

24                  Prior to those dates, did State Farm ask

25   for any documents in writing?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 47

1        A.    That, I'd have to go back through and look
2   through again.
3        Q.    We previously identified that there were no
4   writings other than the request for receipts on March
5   11th and the list specified in the March 18th letter,
6   correct, sir?
7              MR. TAYLOR:  Objection; form.  Go ahead.
8        A.    That's what I -- that's the request that I
9   sent out, yes, sir.
10       Q.    (BY MR. RUSNAK) And you know of no others?
11       A.    Not right off, no, sir.
12       Q.    You sent no others?
13       A.    No, sir.
14       Q.    Okay.  Did you orally request documents from
15  Mr. Munoz before that time?
16       A.    I specifically spoke with Mr. Munoz and let
17  him know what information would be requested, yes, sir.
18       Q.    On what date?
19       A.    I know it was -- let's see the activity log.
20             MR. RUSNAK:  Let's mark that as Exhibit
21  No. 2.  Maybe we can short-circuit this.
22             (Exhibit No. 2 marked)
23       Q.    (BY MR. RUSNAK) Mr. Reed, perhaps we can move
24  this process along here.  I have your affidavit that you
25  filed in this case.  Can I show this to you, sir?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 48

1      A.    Sure.

2      Q.    Will you look at Item No. 5 of your affidavit?

3            And for the record, this was filed in

4  connection with Defendant, State Farm Lloyds, Motion for

5  Partial Summary Judgment on Plaintiffs Extracontractual

6  Claims; and this is Exhibit A to that motion.

7            Can I direct you, sir, to your

8  affidavit --

9      A.    Sure.

10     Q.    -- Paragraph 5?

11     A.    Yes, sir.

12     Q.    In the third sentence beginning, "I explained

13  that" -- on the third line, "I explained that because of

14  the intentional nature of the fire, State Farm would

15  need to conduct an addition investigation and

16  examination of the Munozes financial condition,

17  Mr. Munoz's financial condition, and other matters."

18            Do you see what I'm referring to, sir?

19     A.    Yes, sir.

20     Q.    Okay.  Was that the date in your recollection

21  you spoke with Mr. Munoz about needing documents?

22     A.    That's when I spoke to him, yes, sir.

23     Q.    Okay.  And did you give him a letter on that

24  time telling him he needed to -- or you would be

25  investigating his financial condition and the financial

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 49

1    condition of his business?

2        A.    I know -- I don't remember if I hand delivered

3    a letter at that time or not.

4        Q.    Well, according to your affidavit, sir, you

5    said you do -- you did.  A true and correct copy of that

6    letter dated January 28th, 2003, is attached as Exhibit

7    Q.

8        A.    Okay.  Then I did.

9        Q.    Okay.  Let me direct you to Exhibit Q, that

10   letter; and would you read the Bates stamp number where

11   it begins?

12       A.    SF000574.

13       Q.    That letter doesn't specify documents like

14   your March 18th letter does?

15       A.    But I believe that there were two letters that

16   I delivered to Mr. Munoz, this one and a -- let me look.

17       Q.    Your affidavit indicates, sir, that the only

18   letter you delivered on that date was Exhibit Q

19   (indicating).  Did you leave another letter off your

20   affidavit?

21       A.    Do you have Exhibit Q?

22       Q.    Sir, I'm going to show it to you again

23   (indicating).

24       A.    Okay.

25       Q.    Exhibit Q doesn't specify financial

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 50

1    information.  It doesn't break it out, does it, sir?

2         A.    No, sir.

3              (Discussion held off the record)

4         Q.    (BY MR. RUSNAK) By March 18th, State Farm had

5    already determined that arson was the likely cause of

6    this fire, was it not, sir?

7         A.    By March 18?

8         Q.    Yes.

9         A.    Yes, sir.

10        Q.    In fact, early in January it was suspected

11   that arson was the cause of this fire?

12        A.    I would have to look to see when the origin

13   and cause report was received.

14        Q.    Paragraph 15 of your affidavit, sir, says that

15   a true and correct copy of the January 20, 2003, Fire

16   Origin and Cause Investigation Report of National Loss

17   Consultants is Exhibit F to that motion.

18              Would that be the correct date for when

19   State Farm had a report in hand stating that arson was

20   likely?  That's Exhibit F, sir (indicating).

21        A.    I don't see a date when -- what date is that

22   referring to?  Is that the date of the report or when it

23   was received?

24        Q.    The next page is a letter dated January 20th.

25        A.    And what was this date?

Deposition of Thomas Lee Reed taken on October 20, 2005

1     Q.    January 20th.

2     A.    Okay.  It's referring to the -- to the date of

3  the report.  I don't know when --

4     Q.    State Farm received it?

5     A.    Correct.

6     Q.    By the time you interviewed Mr. Munoz for the

7  first time in January, did you suspect that arson was

8  involved?

9     A.    What was your question again?

10     Q.    By the time you interviewed in Mr. Munoz in

11  January of 2003, did you suspect that arson was

12  involved?

13     A.    It would have been after the C&O report, yes,

14  sir.

15     Q.    Did you have any suspicion prior to that

16  date -- not knowledge, but suspicion that arson was

17  involved?

18     A.    I didn't have any information at that time to

19  base an opinion on.

20     Q.    Exhibit Q, Page 1 in Point 1 says, "Our

21  preliminary investigation leads to conclude the fire was

22  intentionally set."

23           This letter is dated January 28th, 2003.

24  So, by that date, sir, State Farm had some suspicion

25  that arson was involved?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 52

1      A.    Correct, but that -- correct.

2      Q.    And State Farm did not ask Mr. Munoz for a

3  specific list of documents from that date until March

4  18th; is that correct?

5      A.    In writing, that's correct.

6      Q.    Okay.  Why didn't State Farm do that?

7      A.    Because it was an ongoing investigation, and

8  at that time we didn't know exactly what records we

9  would need.

10     Q.    Doesn't State Farm understand what documents

11 it wants, generally, in financial condition

12 investigations?

13     A.    It just depends on the type of claim and what

14 kind of information that is provided up front by the

15 insured.  It also depends on the information provided

16 during a recorded interview.  There's a lot of factors

17 that determine what records will be requested.

18     Q.    Okay.

19     A.    You don't know until you have further

20 information.

21     Q.    Are tax returns a basic request?

22     A.    It can be.

23     Q.    Okay.  And a tax return request was not made

24 until after March 18th?

25     A.    I don't know.  I'd have to look.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 53

1     Q.   Please do.

2            Look at the March 18th letter, sir.   Does

3   it not request tax returns?

4     A.   Could you restate your question?

5            MR. RUSNAK:   Could you reread the

6   question, please?

7            (Previous testimony read)

8     A.   The March 18 letter does request tax returns.

9     Q.   (BY MR. RUSNAK) And doesn't request any other

10  information related to a financial nature; isn't that

11  correct, sir?

12    A.   Well, there's cellular records and billing

13  statements.

14    Q.   You didn't ask for bank accounts; you didn't

15  ask for anything regarding their income or their debts

16  at that time, did you, sir?

17    A.   Well, the tax records should have -- should

18  have --

19    Q.   Other than the tax returns.

20    A.   -- should have all attachments, schedules, and

21  have income and expense documents with it.

22    Q.   That first request was March 18th?

23    A.   Correct.

24    Q.   In April Mr. Munoz told you that he did not

25  have -- at an interview -- he did not have those tax

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 54

1    returns prepared for 2001, 2002; is that correct?

2         A.    What I remember is he said that all of his

3    records were with his accountant.

4         Q.    That would be Ms. Barnett?

5         A.    Correct.

6         Q.    And he did not have his tax returns prepared

7    at that time?

8         A.    That's what -- if that's what my notes

9    indicate, that's what he told me.  Is there a Bates

10   stamp on that?

11        Q.    Well, I'm looking for a particular document,

12   sir.

13              Okay.  Would you look at Bates stamp

14   page -- here, I'll just go ahead and show it to you,

15   sir.  It's SF107 and has -- this is I'll represent to

16   you is Mr. Munoz's handwriting and it bears a State Farm

17   Insurance Company time date stamp of April 22nd, 2003,

18   park Green CSO, Corpus Christi, Texas.  Do you recognize

19   this document, sir?

20        A.    Yes, sir.

21        Q.    Okay.  No. 17, does that not say, "This tax

22   return forms will be provided to you when my bookkeeper

23   provides them to me.  Thank you"?

24        A.    Yes, sir.

25        Q.    This was Mr. Munoz -- as well as Item No. 16

FRANCESCON REPORTING SERVICE 281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 55

1    saying the same thing -- that as of April 22nd, 2003,

2    you were aware that he didn't have the tax returns done

3    for 2001 and 2002?

4        A.    Well, I will acknowledge that he indicated he

5    did not have them himself personally.  I don't know what

6    Ms. Barnett had at that time.

7        Q.    Did you call Ms. Barnett following the April

8    22nd receipt of this document and ask her?

9        A.    I did.

10       Q.    In April?

11       A.    I don't think it was April.

12       Q.    May?

13       A.    I don't know.  I'd have to look.

14       Q.    In your affidavit, Item No. 7, which is

15   Exhibit No. 2, you have a notation of an August 12th,

16   2003 phone call.  Would that be the date your

17   testimony -- would that be the date you called her?

18       A.    I talk to her, yes.

19       Q.    Why didn't you talk to her in April, May,

20   June, or July to get those records?

21       A.    Because based on his response, he was going to

22   provide them to me once he obtained them.

23       Q.    Well, this was a matter that required serious

24   and prompt investigation, was it not, sir?

25       A.    It was a serious matter, yes, sir.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 56

1      Q.   But you didn't do anything in April, May,
2  June, or July to seek those records, did you?
3      A.   I was asking Mr. Munoz for them.
4      Q.   Other than asking Mr. Munoz for them, what did
5  you do?  Other than asking Mr. Munoz, what did you do in
6  those months to obtain these records?
7      A.   To obtain specifically the IRS records?
8      Q.   Yes.
9      A.   I continued to ask Mr. Munoz for them.
10      Q.   I asked you other than Mr. Munoz.
11      A.   Nothing.  I would have to look and see when
12  the Form 4506 was requested.
13      Q.   And that would be?
14      A.   The IRS tax request form.
15      Q.   Why didn't you go see Ms. Barnett to obtain
16  the records directly?
17      A.   Because Mr. Munoz said he would provide them.
18      Q.   No other reason, sir?
19      A.   Not that I can think of.
20      Q.   You ultimately went to see Ms. Barnett in
21  January of 2004 -- is that correct, sir -- with
22  Mr. Garza?  I'm sorry.  February.
23      A.   February, 2004?
24      Q.   Yes, sir.
25      A.   I see where we went on February the 16th,

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 57

1   2004.

2        Q.   And you went to Ms. Barnett's office?

3        A.   Correct.

4        Q.   And she did not have the records in an

5   organized form for review at that time?

6        A.   Correct.  She said she didn't know we were

7   coming until --

8        Q.   That wasn't my question, sir.

9        A.   Correct.

10       Q.   My question was:  She didn't have the records

11  in an organized form.  Is that not correct?

12       A.   Well, she said she did not have the records,

13  correct.

14       Q.   Okay.  Those records were subsequently taken

15  from Ms. Barnett and brought to Mr. Garza's office;

16  isn't that correct?

17       A.   I don't know if -- I don't know what records

18  she had on hand, but I did review some records at

19  Mr. Garza's office.

20       Q.   That was in April of 2004, was it not, sir?

21  The date March 29th, sir, is that correct for the date

22  of review at Mr. Garza's office?

23       A.   I'm looking for that.  Hang on just a second.

24            Yes, sir, I believe that's correct, March

25  29th.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 58

1      Q.    At that time you reviewed two banker boxes
2    full of receipts and other documents?
3      A.    There were two boxes of documents, yes, sir.
4      Q.    Okay.  What documents that you were requesting
5    were not provided to you at that time concerning his
6    financial affairs?
7      A.    Income.
8      Q.    What do you mean by "income"?
9      A.    Documents to support his income.
10      Q.    What kind of documents were you looking for --
11    had you requested and weren't provided of that date?
12      A.    We were trying to get a full picture of an
13    income, expenses, total picture of the financial
14    condition of Mr. Munoz; and I'm not an accountant, but
15    what I was wanting to do was to have an accountant take
16    a look at those records.
17      Q.    Okay.  And did you copy those records?
18      A.    Did I copy them?
19      Q.    Yes.
20      A.    No, sir.
21      Q.    Did you send anybody to copy them?
22      A.    I asked if we could copy them, yes, sir.
23      Q.    And when did you ask?
24      A.    Sir?
25      Q.    When did you ask that, at that meeting?

FRANCESCON REPORTING SERVICE 281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 59

1       A.    That day.

2       Q.    Okay.  You asked if Mr. Garza would copy them,

3   not you?

4       A.    No, sir, that's incorrect.

5       Q.    We'll come back to that.

6             Let me show you what is attached to the

7   Defendant's, State Farm Lloyds, Motion for Summary

8   Judgment and Supporting Brief as Exhibit N.  Is this the

9   letter in which you request the forms for the IRS be

10  filled out and returned?

11      A.    It is the letter -- what is the date of that

12  letter?

13      Q.    The letter is July 1st, 2003; and it's

14  SF000464, Exhibit N to that motion.

15      A.    I know there were several requested.  I would

16  have to go back and look through to see when the first

17  one was requested.

18            What is the date on that form -- or

19  letter?

20      Q.    July 1, 2003.

21      A.    I believe that was the first request for the

22  4506.

23      Q.    Okay, sir.  And it's your understanding that

24  you were asking, yourself, to copy documents at that

25  March 29th, 2004 meeting in Mr. Garza's office?

FRANCESCON REPORTING SERVICE 281-996-7881

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 60

1      A.   That is my understanding, yes, sir.

2      Q.   Did you write a letter to that effect?

3      A.   We -- not a letter, but I followed up with a

4 phone call.

5      Q.   To whom?

6      A.   Mr. Garza's secretary.

7      Q.   That would be Veronica Coronado?  I'll tell

8 you that was Mr. Garza's secretary's name.

9      A.   If that was his secretary's name at that time,

10 that's who it was.

11     Q.   So, that call was after the meeting?

12     A.   Yes, sir, I believe it was.

13     Q.   Can you refer to your activity log and tell me

14 what date that call was made?

15          Well, let me direct you to Entry No. 269

16 in your activity log, enter date 3-30-04; the date of

17 the event being 3-29-2004.

18     A.   Yes, sir.

19     Q.   And does it not read, "Met with Gustavo Garza

20 at his office.  Reviewed all records Mr. Garza said were

21 for Munoz roofing.  Records were obtained from Barnett's

22 Bookkeeping Service.  Requested a copy of some records,

23 records contained in the brown box"?

24          That's your entry for the date?

25     A.   Correct.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 61

1    Q.   Did you have an independent recollection of
2  requesting that you be personally allowed to copy
3  documents at that time?

4    A.   Not myself personally, no, sir.  I didn't ask
5  for myself to personally copy them.

6    Q.   You ask Mr. Garza that they be copied or his
7  secretary?

8    A.   I didn't ask -- no, sir, that's not accurate.

9    Q.   Did you ask for records to be copied at that
10 time?

11   A.   Yes, sir.

12   Q.   How did you do so?

13   A.   I asked Mr. Garza if we could get a copy of
14 those records, and Mr. Garza -- bottom line, I said I
15 would be happy to pay for a service to copy those
16 records, and Mr. Garza did not agree to that.

17   Q.   Where is that reflected in a letter or an
18 entry in your log?

19   A.   Let me -- let me find -- February 16 of '04,
20 it says it occurred on February the 11th of '04, Log No.
21 238, "Contacted office of Gustavo Garza.  Asked
22 secretary if she discussed Kinko's option with
23 Mr. Garza."

24   Q.   Okay.

25   A.   "She said she did not; and since I was

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 62

1    calling, she would guess he did not call me back."

2        Q.   Now, that isn't the date of the meeting with

3    Mr. Garza on May 29th, is it?

4        A.   No, sir.

5             MR. GARZA:   March 29th.

6        Q.   (BY MR. RUSNAK) March 29th -- I'm sorry --

7    March 29th, 2004.

8             So, that conversation didn't occur at the

9    meeting as you just testified?

10       A.   It did occur at both occasions.  I had already

11   asked about copying of records from Mr. Garza and then

12   when I met with Mr. Garza on that day, I again mentioned

13   that I would be glad to have a service pick them up and

14   copy them; and Mr. Garza said, no, that they would not

15   leave his office.

16       Q.   And you accurately reported that somewhere in

17   the file?

18       A.   I don't know if every single detail of that

19   conversation or meeting is reflected.

20       Q.   You would have reported something that

21   important as a material item in your file, would you not

22   have, Mr. Reed?

23       A.   I know I spoke to our attorney about it.

24       Q.   No, Mr. Reed.  My question was:  You would

25   have reported it in your file, something material and

FRANCESCON REPORTING SERVICE 281-996-7881

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 63

1  important like that, someone refusing to provide

2  documents, would you not have?

3       A.   I can't say that that detail might -- I can't

4  say everything would be recorded.

5       Q.   Would that not have been an important item to

6  report, that Mr. Garza had refused?  Would that not be

7  something important to put in your file sir?

8       A.   It may be recorded; it may not.  I can't say

9  that it is.  I'd have to review the -- I'd have to

10 review all the entries.

11      Q.   Did you not make an entry in your file

12 concerning your visit on March 29th, 2004, at 9:45 a.m.

13 concerning your review of the records?

14           I'll specifically ask you to look at

15 SF003284.  Would you like to see it, sir?  Why don't I

16 just hand you a copy I have here in my hand?

17      A.   I have it.

18      Q.   Okay, sir.

19           MR. RUSNAK:  Let's mark that.

20           (Exhibit No. 3 marked)

21      Q.   (BY MR. RUSNAK) SF003284 has now been marked

22 "Exhibit No. 3."  Is this a memorandum you placed in the

23 file?

24      A.   I placed that in the file, yes, sir.

25      Q.   And this reads that, "A request was made for a

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 64

1    copy of some records, records contained in the brown
2    box.  Mr. Garza wanted to know what the records had to
3    do with Mr. Munoz's claim.  Mr. Garza said Munoz was
4    solvent.  I advised they had to do with financial
5    aspects as it relates to the claim.  Mr. Garza said they
6    were just jerking him around.  Mr. Garza said that he
7    will not copy the records or have them copied.  If we
8    want copied of the records, we will have to have someone
9    come down with their own copier and copy the requested
10   documents.  He will not deny us any records and
11   information we want, but when it is his turn, we will
12   have to do the same."
13        A.    Correct.
14        Q.    Is that what you accurately stated in the
15   file?
16        A.    That's what this reads, yes, sir.
17        Q.    Mr. Garza never refused to allow you to copy
18   the documents that he presented to you on March 29th,
19   2004, on behalf of Mr. Munoz, correct?
20        A.    When you -- specify when you say "you," you
21   mean me personally?
22        Q.    You personally.
23        A.    He said -- that's correct.
24        Q.    And he didn't refuse State Farm, either?
25        A.    State Farm personnel to copy them?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 65

1    Q.    Yes.

2    A.    That's correct.

3    Q.    By the way, why did you run a criminal

4  background check on Mr. Garza?

5    A.    At the time I didn't know -- was unclear who

6  he was.  I thought he was an employee of Mr. Munoz.

7    Q.    Did you or anyone else on behalf of State Farm

8  go and copy the records pursuant to Mr. Garza's offer?

9    A.    No, sir.

10   Q.    Why not?

11   A.    Because I had requested a service do it and --

12   Q.    Is that the only reason?

13   A.    Yes, sir.

14   Q.    Okay.  And you requested that service in that

15  February conversation, your testimony is, that February

16  conversation with Ms. Coronado, the secretary?

17   A.    And with Mr. Garza that day.

18   Q.    Okay.

19   A.    That's what reflects in that document, that we

20  would have to do it personally; that he would not allow

21  anyone else to make the copies.

22   Q.    You didn't send personnel in order to get

23  copies of these documents that were reviewed on the

24  29th; is that correct?

25   A.    That's correct.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 66

1    Q.   Okay.  When you say that's what's reflected in

2    the memo, what specifically are you saying reflects

3    that, what wordage?

4    A.   Where it says, "Mr. Garza will not copy the

5    records or have them copied."

6    Q.   So, you're saying that "or have them copied"

7    is a reference to a third-party copy service?

8    A.   That is correct.

9    Q.   Why didn't you say "third-party copy service"

10   in here, this Exhibit No. 3?

11   A.   That's just the way I summarized the

12   conversation.

13   Q.   "He will not copy the records or have them

14   copied."  It doesn't say, "Or have them copied for State

15   Farm."  It doesn't say, "Or have them copied by a third

16   party," that's correct, my reading of that letter?

17   A.   That is correct, that that was my

18   interpretation.

19           MR. RUSNAK:  Okay.  Object to the

20   nonresponsive portion.

21   Q.   (BY MR. RUSNAK) My statement is correct as I

22   made it?

23   A.   It's correct, but there's additional

24   information.

25           MR. RUSNAK:  Objection to the

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 67

1    nonresponsive portion.

2        Q.    (BY MR. RUSNAK) My statement is correct.

3    Isn't that not the truth, Mr. Reed?

4        A.    That's correct.

5        Q.    And the State Farm policy only requires that

6    the documents be made available for copying, not that

7    Mr. Munoz or his attorney or anyone on his behalf

8    actually perform the copying.  Is that not correct?

9        A.    It's a broad request, but they're to be made

10   available for copying.  It doesn't designate who.

11       Q.    And Mr. Munoz made them available for copying,

12   correct?

13       A.    On a limited basis, that's correct.

14       Q.    On any basis he made them available, correct,

15   sir?

16       A.    I wouldn't agree with that, no, sir.

17              MR. TAYLOR:  Are you changing topics?

18              MR. RUSNAK:  Do we need to take a break?

19              MR. TAYLOR:  We've been going about an

20   hour and a half.

21              MR. RUSNAK:  A break is good.

22                   (Recess taken)

23       Q.    (BY MR. RUSNAK) Mr. Reed, after the meeting on

24   March 29th of 2004, you spoke to your counsel,

25   Mr. Kurth, concerning the issues regarding the copies,

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 68

1    did you not?

2        A.    Yes, sir, I believe I did.

3        Q.    And Mr. Kurth wrote a letter to Mr. Garza

4    dated April 5th, 2004, requesting copies, did he not?

5    I'll show it to you, sir.

6        A.    If you have that.

7        Q.    Yes.  It's Exhibit BB dated April 5th, 2004.

8    The Bates number is State Farm 000328, and this is

9    Exhibit BB to Defendant, State Farm Lloyds, Motion for

10   Summary Judgment and Supporting Brief.  You can look at

11   my copy, sir.

12       A.    Thank you.

13       Q.    In that Mr. Kurth does not ask for the

14   documents to be sent to a third-party copy service.  He

15   asks in the last line for Mr. Garza to make the copies

16   himself and then present a bill; is that correct?

17       A.    It requests copies of the materials, that's

18   correct.  It requests copies of the materials, and it

19   says State Farm agrees to pay reasonable photocopy

20   charges.

21       Q.    It doesn't say, "Send them to a third-party

22   copy service," does it, sir?  I mean, the letter says

23   what it says?

24       A.    It's -- correct.  The letter stands on its

25   own.

FRANCESCON REPORTING SERVICE 281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 69

1    Q.   And as it stands, there's no request in it for
2  a third-party copy service?
3    A.   They're not specifically named, but my
4  understanding is that's what the very last sentence of
5  that paragraph where it says, "State Farm will pay
6  reasonable copy charges."
7    Q.   But the letter itself doesn't say, "Send them
8  out to a third-party service"?
9    A.   That's correct.
10   Q.   And there is no letter that actually says,
11  "Send them out to a third-party copy service"?  I'll
12  represent to you, sir, that I've found none; but take
13  your time and look for one if you think there is one.
14   A.   And what was the date?  Excuse me.  What was
15  the date of that letter?
16   Q.   April 5th, 2004, Exhibit BB to the State Farm
17  motion.
18           MR. RUSNAK:  We can go off the record
19  while he's looking.
20             (Brief recess taken)
21             (Question read)
22   A.   In Mr. Kurth's letter, it did not reflect a
23  third-party copier.
24   Q.   (BY MR. RUSNAK) And you found no other letter
25  in your review of the file?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 70

1      A.   None, no, sir.

2      Q.   No, sir.  You're agreeing with me that you

3  found a letter?

4      A.   No written letter, no, sir.

5      Q.   So, you're agreeing with my statement, there

6  is no written letter you found in your review?  Are you

7  agreeing with my statement?

8      A.   I agree to the point that it does not say a

9  third-party entity.

10     Q.   Good.

11     A.   But my understanding is --

12     Q.   I didn't ask for your understanding, sir.  I

13  asked whether there was a letter.  Put that in writing.

14     A.   But I would like to finish my statement.

15     Q.   Please do.

16     A.   I agree that it does not identify a third

17  party by name or a third party by entity, but that was

18  what was meant by the expenses and that was meant in my

19  memo when -- that we've already reviewed that it was

20  regarding a third party to copy those -- pick up, copy,

21  and return those original documents.

22     Q.   But Mr. Kurth did not state that what you now

23  say you meant?

24     A.   That was my understanding of what he wrote or

25  what his letter was indicating even though it was not

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 71

1    specifically stated, a third party.

2       Q.    Did you send a letter to Mr. Kurth or send a

3    memo stating that he wanted a third-party copy service?

4       A.    We discussed a third-party copy service, yes,

5    sir.

6       Q.    Is that one of the redacted entries on your

7    activity log that I have not been permitted to see

8    because of attorney-client privilege?

9       A.    It probably is.  Without reviewing it, but I

10   do know that we discussed it.

11      Q.    Okay.

12            MR. RUSNAK:  Warren, that single entry

13   that Mr. Reed is referring to that has been redacted

14   from the log which would have occurred between March

15   29th and April, 2005, if there is such an entry, to the

16   extent that there is any other advice or materials in

17   there that you wish to claim attorney-client privilege

18   to, I would like to see a redacted copy of that where --

19   if it does exist.

20            MR. TAYLOR:  And you're talking about a

21   discussion about the third-party copies?

22            MR. RUSNAK:  Yes, with Mr. Kurth.  If you

23   can look for that on a break and if it does exist, we

24   can deal with that.

25            MR. TAYLOR:  Well, I'll look on a break

FRANCESCON REPORTING SERVICE 281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 72

1  and then make a decision whether or not to waive the

2  privilege as to that entry.

3           MR. RUSNAK:  All right.  He discussed

4  that such an entry existed, and I'd like to follow up

5  with questions in that regard.  I appreciate you need to

6  preserve the privilege, and I'm not asking you to breach

7  the privilege; but to the extent that he communicated

8  that particular fact, I would like to see if such an

9  entry does exist on the activity log.

10           MR. TAYLOR:  Okay.  I understand your

11  position.

12      A.   I would like to clarify that that was not my

13  full -- that you did not restate what I said correctly.

14  You asked if I discussed that with Mr. Kurth.  I said,

15  "Yes, we had discussions."

16           And you asked, "Is that reflected in one

17  of the redacted?"

18           And I said, "I'm not sure.  I would have

19  to look."

20      Q.   (BY MR. RUSNAK) Well, that's what I would

21  like --

22      A.   But you --

23      Q.   That's what -- I'm sorry.

24      A.   But your statement was -- but your statement

25  was that it was reflected in one of the redacted --

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 73

1    Q.   Mr. Reed, I'm asking for your attorney to look
2  to see if any such entry exists.  If it doesn't exist,
3  it doesn't exist.

4    A.   Okay.  That's fair.

5    Q.   In November of 2003, you asked Mr. Robinson to
6  take a statement from a Bonito Capetillo, did you not?

7    A.   I did ask Mr. Robinson to contact
8  Mr. Capetillo.

9    Q.   Capetillo?

10   A.   Yes, sir.

11   Q.   And Mr. Capetillo's statement was taken on
12 December 3rd of 2003, was it not?

13   A.   Let me look real quick.

14        I see where there is an entry in the log,
15 December the 2nd at 6:40 p.m.; that apparently on
16 December the 2nd at 11:20, he contacted Mr. Capetillo.

17   Q.   Was Mr. Robinson's contact with Mr. Capetillo
18 State Farm's only contact within the investigation of
19 this matter?

20   A.   I don't know if it was the only contact.

21   Q.   Do you know of any other as you sit here
22 today?

23   A.   I don't know of any other.

24   Q.   And if none other is reflected in your
25 activity log, then none other would exist?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 74

1      A.    I can answer that I did not make any contact
2   with Mr. Capetillo and I didn't reflect any myself in
3   the log.
4      Q.    The only one you know of is Mr. Robinson's
5   contact with him in December of 2003?
6      A.    The only one that I'm aware of, yes, sir.
7      Q.    You asked no other person to go speak to him
8   other than Mr. Robinson, to your recollection?
9      A.    That is correct.
10     Q.    Whatever State Farm knows about
11  Mr. Capetillo's dealings with Mr. Munoz from
12  Mr. Capetillo's perspective would be reflected in that
13  interview, would it not?
14     A.    Could you repeat that?
15     Q.    Sure.
16           What State Farm knows of Mr. Capetillo's
17  dealings with Mr. Munoz would be reflected in that
18  interview conducted by Mr. Robinson on December 2nd,
19  2003?
20     A.    I would say that that is correct, that to the
21  point we may have obtained other information regarding
22  their contact communication or their dealings with one
23  another from other sources, but we did obtain
24  information regarding their dealings with one another
25  through that interview.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 75

1              (Exhibit No. 4 marked)

2      Q.   (BY MR. RUSNAK) Mr. Reed, I'm going to hand

3  you what has now been marked as Deposition Exhibit No.

4  4, which is a file cover with the name Ben Capetillo on

5  it, SF002945 through 2960.

6              Is this the recorded statement of Mr. Ben

7  Capetillo taken by Mr. Robinson on behalf of State Farm?

8      A.   Yes, sir, I believe it is, the recorded

9  interview.

10     Q.   Do you have any reason to believe that this is

11 not the full and complete interview of Mr. Capetillo?

12     A.   No, sir, I do not.

13     Q.   State Farm subsequently went out and obtained

14 lawsuit records of the suit that Mr. Capetillo filed in

15 December of 2004 against Mr. Munoz, did it not?

16     A.   Yes, sir.

17     Q.   Okay.  Other than obtaining those lawsuit

18 records from that action filed in December of 2004 --

19 I'm sorry -- it would have been filed in December of

20 2003 -- allow me to correct myself -- did State Farm

21 conduct any other contact or investigation into the

22 relationship between Mr. Capetillo and Mr. Munoz?

23              (Discussion held off the record)

24     Q.   (BY MR. RUSNAK) I'm corrected by counsel.  It

25 was 2004.  Would you like me to restate the question?

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 76

1    A.    Please.

2    Q.    Other than the interview with Mr. Capetillo --

3    A.    Okay.

4    Q.    -- that's Exhibit No. 4, and the lawsuit

5    records involving the suit filed by Mr. Capetillo in

6    December of 2004, what else did State Farm do under your

7    direction or to your knowledge to investigate the

8    relationship between Mr. Munoz and Mr. Capetillo?

9    A.    Spoke with Mr. Munoz about the relationship,

10    spoke to Mrs. Munoz regarding the relationship.  There

11    was information obtained from others regarding the

12    relationship.

13    Q.    Who?

14    A.    I believe it was -- the Cavazos mentioned

15    Mr. Capetillo.

16    Q.    You obtained information concerning that

17    relationship from Harry and Minnie Cavazos?

18    A.    I believe, yes, sir.

19    Q.    Anything else?

20    A.    I don't want to limit myself to saying that

21    was all of it, but that's all I can think of right now.

22    Q.    Are there any documents you would need to

23    review other than the entire file in order to determine

24    what else was done?

25    A.    I'd have to go through and review to see if

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 77

1    there were any entries or anything else that was

2    obtained.

3        Q.    In your activity log?

4        A.    Through the file.

5        Q.    Okay.  Does your activity log accurately

6    reflect the acts that you performed, the people you

7    interviewed, the things that you did in the

8    investigation of this file?

9        A.    The activity log is a communication tool that

10   reflects -- that way if someone were to have a question,

11   they would be able to review the activity log and see

12   what most of the activities conducted.

13       Q.    My question is:  Does it accurately reflect

14   what you've done in this file investigating this claim?

15       A.    It accurately reflects.  There -- not

16   everything may be reflected in activity log, but it

17   accurately reflects what the entries are.

18       Q.    You're saying that there may be things that

19   you did that you didn't put in there?

20       A.    I may have forgot to or somebody else may have

21   forgotten to put something in there or it may not have

22   explained or listed everything that was done.

23             For instance, if you go to the courthouse,

24   you may not put every record that you obtained in there,

25   but you may put in stuff by the courthouse.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 78

1    Q.   But every record you obtained from the
2  courthouse would be in your file somewhere, in the State
3  Farm file in the investigation of this claim?

4    A.   Correct.

5    Q.   None of the entries in the activity log, to
6  your knowledge, are not true and correct?

7    A.   I'm not aware of any inaccuracies.

8    Q.   You didn't falsify any entries, did you,
9  Mr. Reed?

10   A.   No, sir.

11   Q.   You didn't intentionally embellish or add to
12 any of the entries, did you?

13   A.   No, sir.

14   Q.   None of the entries contains a record of a
15 statement or an interview that wasn't actually
16 conducted?

17   A.   To my knowledge, no, sir.

18   Q.   Do you know of adding anything to the activity
19 log that did not, in fact, occur?

20   A.   No, sir.

21   Q.   Do you know of any entry in there that might
22 reflect that you conducted an interview that, in fact,
23 was not conducted?

24   A.   No, sir.

25   Q.   Do you know of any telephone conversation

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 79

1   that's reflected in that activity log that was not, in

2   fact, conducted?

3         A.    No, sir.

4         Q.    And you didn't record anything in the activity

5   log that is not, to the best of your knowledge, true and

6   correct?

7         A.    That is correct.

8         Q.    You didn't intentionally falsify anything in

9   that activity log?

10        A.    No, sir.

11        Q.    And you didn't intentionally omit anything

12  from that activity log that might be an indication of

13  some act in your investigation?

14        A.    No, sir, nothing was ever added or omitted

15  intentionally that I'm aware of.

16        Q.    Do you know of anything that was unfair or

17  unreasonable about this investigation?

18        A.    No, sir.

19        Q.    Is it your understanding this investigation

20  was thorough and complete?

21        A.    It was -- go ahead.

22        Q.    No.  Please, go ahead.  My question is over.

23        A.    As far as the investigation, I believe it was

24  a complete and thorough investigation, yes, sir.  We

25  were not able to obtain all the records, but I feel it

FRANCESCON REPORTING SERVICE 281-996-7881

c9adc9d7-033a-42fb-b66f-03b59692729d