Deposition of Thomas Lee Reed taken on October 20, 2005

Page 160

1  HEB, the store at which lighter fluid was apparently

2  purchased from that was deemed the incendiary in the

3  fire at the Munoz house?

4      A.   Yes, sir.

5      Q.   Are you aware that they had previously been to

6  HEB that day?

7      A.   Yes, sir.

8      Q.   Are you aware that Mr. Cavazos refused to take

9  a polygraph?

10     A.   I'm not aware of that.

11     Q.   Did you ask Mr. Cavazos to take a polygraph?

12     A.   No, sir.

13     Q.   Did you ask Mrs. Cavazos to take a polygraph?

14     A.   No, sir.

15     Q.   Did you ask any of the children to take a

16  polygraph?

17     A.   No, sir.

18     Q.   The only person that took a polygraph was Luis

19  Munoz?

20     A.   And we didn't request that.

21     Q.   But that's the only person who submitted, to

22  your knowledge, to a polygraph?

23     A.   No, sir.

24     Q.   Who else submitted to a polygraph?

25     A.   Mrs. Munoz.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 161

1      Q.    So, the Munozes agreed to a polygraph and

2  submitted themselves, correct?

3      A.    That, I wouldn't know.  I don't know if they

4  agreed to it.  I know they did -- I know a polygraph was

5  taken, but I don't know the circumstances.

6      Q.    Did you ask the Cavazoses for fingerprints?

7      A.    No, sir.

8      Q.    You're aware that there were fingerprints

9  found on the windows on the east side of the Munoz

10  house?

11      A.    Correct.

12      Q.    Did you ask the Cavazoses for fingerprints to

13  compare them to the fingerprints found on the windows on

14  the east side of the house?

15      A.    No, sir.

16      Q.    Why not?

17      A.    Because we don't know when those fingerprints

18  were placed on the window or why they were on the

19  window.

20      Q.    Would it not be suspicious if Mr. or

21  Mrs. Cavazos or their children's fingerprints were on

22  the windows near the point of entry, apparently?

23      A.    It would be, but the police department had

24  taken the fingerprints and they were running them

25  through their system.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 162

1      Q.   The police department took Mr. and

2  Mrs. Cavazos' fingerprints?

3      A.   The fingerprints from the window.

4      Q.   Okay.  And according to the criminal check you

5  ran on Mr. and Mrs. Cavazos, they had never been

6  arrested before.  So, it was unlikely that they would

7  have fingerprints on file?

8      A.   And I don't -- that's correct.

9      Q.   Okay.  You took a surveillance tape -- or,

10  rather, a surveillance tape was delivered in January

11  from the Munoz home that had been running at the time of

12  the fire, correct?

13      A.   I believe Mr. Munoz said that it was from the

14  day before.  I'm not sure.  I would have to go back and

15  look, but we do have a tape.

16      Q.   A person that comes to the -- did you pick up

17  a copy of the Cavazos videotape from their security

18  camera?

19      A.   No, sir.

20      Q.   Did you know they had a security camera?

21      A.   Yes, sir.

22      Q.   Why didn't you pick up their tape?

23      A.   I just didn't.

24      Q.   Did you go to HEB where the lighter fluid was

25  purchased and ask for their security tapes?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 163

1     A.   No, sir.

2     Q.   Did you intend to and you just didn't do it?

3     A.   I didn't think about it.

4     Q.   Well, sir, I'll represent to you that I found

5 a note in your handwriting --

6     A.   Oh, I did -- go ahead.

7     Q.   -- that indicated that you were going to go

8 get those tapes.  Does that jog your memory now, that

9 you intended to go get those tapes?

10    A.   That may have been a thought, but I didn't do

11 it.

12    Q.   And you didn't follow up with Watson City

13 Drugs to get Ms. Munoz's employment records after you

14 sent the initial letter?

15    A.   I would have to go back and look, but I

16 thought I sent a second request.

17    Q.   I find none in the file, sir; and if there

18 isn't one in the file, you didn't follow up, correct?

19    A.   I would have to look through it.

20    Q.   It's a fair assumption that if there's not a

21 follow-up letter in the file, then you didn't follow

22 you?

23    A.   That's a possibility.

24    Q.   Is it a fair assumption?

25    A.   If it's not in there, it's a fair assumption.

Deposition of Thomas Lee Reed taken on October 20, 2005

1    Q.   And you failed to copy the financial records

2    of Mr. Garza's office by bringing a copier down with

3    personnel and copying them after Mr. Garza offered to

4    let that happen?

5    A.   To me to bring a copier down there and copy

6    them?

7    Q.   Yes, yes.

8    A.   That's correct.  I did not go -- I did not

9    take a copier down there, but I agreed to pay for the

10   copies to be made.

11   Q.   That's not what I asked you, sir.

12            You just didn't go down and make the

13   copies?

14   A.   I didn't make them personally, no, sir.

15   Q.   And you didn't send anyone from State Farm

16   with a copier down there to do it?

17   A.   No, sir.

18   Q.   Do you know why Ms. Yolanda Perez at Jano's

19   Super Store is denying that you interviewed her?

20   A.   Did you say did I know?

21   Q.   Yes.  Do you know why?

22   A.   Do I know why?  No, sir.

23   Q.   Do you know go talk to anyone at Alamo Lumber

24   concerning Mr. Munoz's credit?

25   A.   Not that I remember, no, sir.

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 165

1    Q.    Do you know who Alamo Lumber is with respect
2    to Mr. Munoz?
3    A.    I believe that's where he bought some of his
4    materials for his house.
5    Q.    For the Cavazos' house?
6    A.    I think that was -- what I remember is that's
7    where he bought materials.  I'm not certain what job it
8    was for.
9    Q.    Did you talk to anyone at Alamo Lumber
10   concerning his credit worthiness?
11   A.    Not that I remember, no, sir.
12   Q.    And you didn't actually go over and talk to
13   Homer Rodriguez?
14   A.    Not in person, no, sir.
15   Q.    Now, if you directed an investigation
16   specifically towards the prosecution of Mr. Munoz, that
17   would be in violation of State Farm's own policies,
18   would it not?
19   A.    That was not done, no, sir.
20   Q.    But it would be a violation of State Farm's
21   own policies?
22   A.    That is not a policy of State Farm, to go
23   after anybody.
24   Q.    So, if you intentionally directed in a
25   malicious manner an investigation towards obtaining the

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

1    prosecution of Mr. Munoz and Mrs. Munoz -- now

2    Mrs. Villareal -- then that would be a violation of

3    State Farm's policies, correct?

4        A.    The policies of State Farm are not to go after

5    anybody.

6        Q.    So, if you did that, you would be in violation

7    of your employer's own policies?

8        A.    That would not be a proper investigation.

9        Q.    Did you volunteer information to Detective

10   Adame without a subpoena or without a Texas Insurance

11   Code Section 5.46 request?

12       A.    Not that I know of.

13       Q.    Did you seek the prosecution of Munoz with

14   Detective Adame?

15       A.    No, sir.

16       Q.    Did you seek the prosecution of anyone with

17   Detective Adame?

18       A.    No, sir.

19       Q.    Did you provide information to the State Farm

20   marshal without a clear request or a subpoena -- a clear

21   request under Section 5.46 or a subpoena?

22       A.    No, sir.

23       Q.    Did you provide unrequested information to the

24   fire marshal in advance of a subpoena or request under

25   Section 5.46?

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 167

1    A.    No, sir.

2    Q.    Do you ever inform Mr. and Mrs. Munoz -- now

3    Mrs. Villareal -- that they were a suspect in an arson

4    investigation?

5    A.    During conversations with them, I mentioned

6    that there would be a complete investigation and that we

7    were going to obtain all different kinds of records.  I

8    don't think I ever used "suspect," but that we would be

9    interviewing witnesses and other individuals and

10   following up on information and names that they

11   provided; but I didn't use "suspect."

12   Q.    Did you ever say words to the effect, "Luis

13   Munoz, we think you committed this fire"?

14   A.    No, sir.

15   Q.    "You committed this arson"?

16   A.    No, sir.

17   Q.    Now, there was no delayed ignition device

18   found in the context of this fire, was there?

19   A.    Not that I'm aware of, no, sir.

20   Q.    And witnesses placed Mr. Munoz at his office

21   at the time of the fire; is that correct?

22   A.    There are witnesses that place him when the

23   fire was reported by the -- or when it was acknowledged

24   on the card -- the 9-1-1 card -- at 8:47.

25   Q.    Do those witnesses not also place him there

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 168

1    for a period of hours before that time?

2        A.    That's what the witnesses say.

3        Q.    Do you have any reason to disbelieve those

4    witnesses who saw Mr. Munoz at his office?

5        A.    There's a question regarding the exact

6    timeline, yes.

7        Q.    What question?

8        A.    Well, some of the neighbors mentioned that

9    Mr. Munoz was at or around the residence as late as

10   7:30, within 45 minutes of the fire being reported.

11       Q.    Which witness, sir, because I've only seen a

12   report as late as 6:30?

13       A.    Mrs. Cavazos.

14       Q.    Oh, Mrs. Cavazos.

15       A.    And one of the neighbors said that after dark,

16   she was coming home and noticed Mr. Munoz in the

17   neighborhood.  So, you know, there's some questions

18   regarding timelines.  So, one person is saying one time

19   and another person saying something else.

20       Q.    Mrs. Cavazos is also a suspect in this fire,

21   is she not?

22       A.    We discussed -- or we contacted Ms. Cavazos

23   and questioned her and discussed the fire and where she

24   was at the time of the fire, yes, sir.

25       Q.    And witnesses place Carmela Munoz in Florida

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 169

1  at the time of the fire; isn't that true?

2      A.   That's what they've indicated, yes, sir.

3      Q.   Any reason to believe she wasn't in Florida?

4      A.   I don't know; but in one of the police

5  reports, it said that she learned about the fire.  It

6  may have -- I don't know what they're referring to, but

7  in one of the police reports it indicated that she

8  became aware of the fire through a scanner.

9      Q.   Do you have any evidence that she was in Texas

10  at the time of the fire?  Are you aware of any evidence?

11      A.   At one time Mr. Cavazos that lives on the

12  corner, Harry's father, said that he saw Ms. Munoz at

13  the residence -- it was either the day before or the day

14  of the fire.

15      Q.   And he later corrected that in a subsequent

16  statement to be 10:00 p.m. the date following the fire,

17  did he not?

18      A.   Correct.

19      Q.   Any witnesses to the removal of personal

20  property prior to the fire other than the four-wheeler

21  that was with Mr. Pena or the truck that he swapped out?

22      A.   The Expedition and his F-250?

23      Q.   Yes.

24      A.   A neighbor noticed the Ford Expedition backed

25  into the garage.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 170

1    Q.   That was the Cavazoses, was it not?

2    A.   Correct.

3    Q.   And they claim that they were loading things

4    into it a couple of days before?

5    A.   That's correct, or sometime before the fire.

6    Q.   And you confirmed that Mr. Munoz was doing

7    work on January 1st and January 2nd, as he had stated he

8    was?

9    A.   He submitted affidavits from the owner of the

10   home and also the tenants.

11   Q.   You have no reason to believe that he wasn't

12   doing work on those days?

13   A.   No, sir.

14   Q.   There was also evidence that there was broken

15   windows -- I'm sorry.  Let me start again.

16        There was evidence there were broken

17   windows on the east side of the house --

18        MR. GARZA:   South side.

19   Q.   (BY MR. RUSNAK) -- south side?  I'm sorry.

20   A.   There were windows that the glass was out of,

21   yes, sir.

22   Q.   Has an investigation been conducted as to how

23   those windows were broken?

24   A.   My understanding from the firemen was that

25   they thought it was from the heat, heat of the fire.

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

1    Q.   Did State Farm conduct an investigation to
2    determine whether or not those windows had been broken
3    by the fire or someone had broken those windows to get
4    entry into the house?
5    A.   There was a cause and origin expert that
6    looked at the fire, and he did not -- he determined that
7    he could not find any forced entry into the home.
8    Q.   Was there a specific determination as to
9    whether those windows had been broken in or broken out?
10   A.   I wasn't there at the time of that
11   investigation.  So, it would be contained in his report.
12   Q.   By the way, as there evidence of an open
13   window?
14   A.   Yes, there was.
15   Q.   Okay.  And was that near the point of
16   ignition?
17   A.   It was in a separate room.
18   Q.   In the opening days of this investigation on
19   January 2nd or January 3rd, you made a comment to Lee
20   Levo that he shouldn't attend a police interview of
21   Mr. Munoz to avoid malicious prosecution.  Why did you
22   tell Mr. Levo -- why did you warn Mr. Levo about
23   malicious prosecution?
24   A.   Mr. Levo had called and said that the
25   detective was going to be visiting with Mr. Munoz and he

Deposition of Thomas Lee Reed taken on October 20, 2005

1  wanted -- Mr. Levo wanted to know if it would be proper

2  for him to attend.  And I told Mr. Levo that, no, that

3  the police the police and fire, they conduct their own

4  investigation; and State Farm, we conduct our own

5  investigation; and I said it would not be proper for him

6  to attend any proceedings involving the police

7  investigation.

8      Q.   You don't depend on the police investigation

9  to make your own determinations, do you?

10     A.   Not our own determination, but it is a -- if

11 they have any evidence that they share with us, then

12 that could be part of the -- used in the evaluation, but

13 not their determination.

14     Q.   But it's State Farm's obligation under the

15 policy to make its own independent determination,

16 correct?

17     A.   Correct.

18              MR. RUSNAK:  It is now approximately

19 4:30.  I have run out of time, and I still have more to

20 go.

21              MR. TAYLOR:  I recognize the court

22 reporter has to leave and that you have a flight to

23 catch.  Are you in the office tomorrow?

24              MR. RUSNAK:  I am.

25              My proposition is this, is that we

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 173

1   continue this by telephone.

2                    MR. TAYLOR:  When?

3                    MR. RUSNAK:  Friday or Monday.

4                    MR. TAYLOR:  Can you stay an extra day,

5   or can you do it from Corpus?

6                    THE WITNESS:  I can stay.

7                    MR. TAYLOR:  Let's just pick up in the

8   morning.

9                    MR. RUSNAK:  I think that's the only

10  reasonable way.  If you would return in the morning

11  and --

12                   MR. TAYLOR:  What time do you want to

13  start?

14                   MR. RUSNAK:  How about 11:00 o'clock,

15  10:00 o'clock your time?

16                   MR. TAYLOR:  10:00 o'clock is fine.

17                   MR. RUSNAK:  I don't see another way to

18  do that.

19                   MR. TAYLOR:  Off the record.

20              (Deposition adjourned at 4:28 p.m.)

21

22

23

24

25

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 174

1              CHANGES AND SIGNATURE OF THOMAS LEE REED

2                           VOLUME 1

3                    TAKEN OCTOBER 20TH, 2005

4      PAGE    LINE    CHANGE                        REASON

5      _____

6      _____

7      _____

8      _____

9      _____

10     _____

11     _____

12     _____

13     _____

14     _____

15     _____

16     _____

17     _____

18     _____

19     _____

20     _____

21     _____

22     _____

23     _____

24     _____

25     _____

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 175

1    I, THOMAS LEE REED, have read the foregoing

2 deposition and hereby affix my signature that same is

3 true and correct, except as noted above.

4

5

6
                              _____
7                                THOMAS LEE REED

8 THE STATE OF        )

9 COUNTY OF           )

10

11    Before me,                              on this

12 day personally appeared THOMAS LEE REED, known to me (or

13 proved to me under oath or through

14                    )(description of identity card or

15 other document) to be the person whose name is

16 subscribed to the foregoing instrument and acknowledged

17 to me that they executed the same for the purposes and

18 consideration therein expressed.

19

20    Given under my hand and seal of office this
         day of            ,       .

21

22                    _____
                      NOTARY PUBLIC IN AND FOR
23                    THE STATE OF _____

24

25 My Commission Expires_____

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 176

1    STATE OF TEXAS          )

2    COUNTY OF HARRIS        )

3                    REPORTER'S CERTIFICATION

4                    TO THE DEPOSITION OF

5                      THOMAS LEE REED

6                         VOLUME 1

7               TAKEN ON OCTOBER 20TH, 2005

8        I, Karen M. Kane, Certified Shorthand Reporter in

9    and for the State of Texas, hereby certify that this

10   deposition transcript is a true record of the testimony

11   given by the witness named herein, after said witness

12   was duly sworn by me.

13       I further certify that I am neither attorney nor

14   counsel for, nor related to, nor employed by any of the

15   parties or attorneys in the action in which this

16   proceeding was taken.  Further, I am not a relative or

17   employee of any attorney of record in this cause, nor do

18   I have a financial interest in the action.

19       Certified to by me this        day of

20   _____, _____.

21

22                      _____
                        Karen M. Kane, CSR
23                      Texas CSR 4186
                        Expiration Date: 12-31-2005
24                      FRANCESCON REPORTING SERVICE
                        1506 East Broadway, Suite 200
25                      Pearland, Texas 77581

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 177

1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
2                         BROWNSVILLE DIVISION

3    LUIS C. MUNOZ AND              : CAUSE NO. B-04-141
     CARMELA MUNOZ                  :
4                                   :
                                    :
5    VS.                            :
                                    :
6    STATE FARM LLOYDS              :

7

8            CERTIFICATE TO THE ORAL DEPOSITION OF

9                      THOMAS LEE REED

10              TAKEN OCTOBER 20TH, 2005

11       I, Karen M. Kane, a Certified Shorthand Reporter in

12   and for the State of Texas, hereby certify pursuant to

13   the Federal Rules and/or agreement of the parties

14   present to the following:

15       That this deposition transcript is a true record of

16   the testimony given by the witness named herein after

17   said witness was duly sworn by me;

18       That the amount of time used by each party at the

19   deposition is as follows:

20            Mr. David L. Rusnak, 05:07

21            Mr. Warren Taylor, 00:00

22       That a copy of the deposition transcript along with

23   the original changes and signature pages were submitted

24   on _____ to the witness and/or

25   his/her attorney of record for examination, signature,

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed taken on October 20, 2005

Page 178

1   and return of the original pages to FRANCESCON

2   REPORTING, SERVICE by _____ ;

3       That the original pages were _____ were not _____

4   returned to the deposition officer.  All changes made by

5   the witness, if any, are attached hereto;

6       That on _____ the original

7   deposition transcript, or a copy thereof, together with

8   copies of any exhibits was delivered to the custodial

9   attorney, Attorney for _____ ;

10      That pursuant to information given to the deposition

11  officer at the time said testimony was taken, the

12  following includes all parties of record:

13      Mr. David L. Rusnak, Attorney for Plaintiffs;

14      Mr. Warren Taylor, Attorney for Defendant

15      That a copy of this certificate was served on all

16  parties shown herein.

17      Certified to by me this      day of

18  _____, _____.

19                              _____
                                Karen M. Kane, CSR
20                              Texas CSR 4186
                                Expiration Date: 12-31-2005
21                              FRANCESCON REPORTING SERVICE
                                1506 East Broadway, Suite 200
22                              Pearland, Texas 77581
                                (281) 996-7881
23

24

25

c9adc9d7-033a-42fb-b66f-03b59692729d

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DIVISION
BROWNSVILLE DIVISION

LUIS C. MUNOZ AND CARMELA :
MUNOZ,                       :
                             :
          Plaintiffs,        :
                             :
V.                           :   CIVIL ACTION B-04-141
                             :
STATE FARM LLOYDS            :
                             :
          Defendants.        :

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF THOMAS LEE REED

OCTOBER 21, 2005

VOLUME 2 of 2

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION of THOMAS LEE REED, taken on the

21st day of October, 2005, beginning at 10:13 a.m., at

the offices of Taylor & Taylor, 815 Walker, Suite 250,

Houston, Harris County, Texas, pursuant to the

Federal Rules of Civil Procedure, Rule No. 30.

FRANCESCON REPORTING SERVICE 281-996-7881

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 180

1                  EXAMINATION INDEX

2

3    WITNESS:          THOMAS LEE REED

4

5    EXAMINATION                                      PAGE

6

7        Continued by Mr. Rusnak.................  183

8

9

10

11   SIGNATURE REQUESTED                              267

12   REPORTER'S CERTIFICATION                         269

13

14

15                    EXHIBIT INDEX

16

17   NO.          DESCRIPTION

18          * * NO EXHIBITS MARKED * *

19

20

21

22

23

24

25

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 181

1                    A P P E A R A N C E S

2

3    FOR THE PLAINTIFFS, APPEARING TELEPHONICALLY:
          Mr. David L. Rusnak
4         Of Counsel
          SCOGGINS & GOODMAN, P.C.
5         2800 Marquis One Tower
          245 Peachtree Center Avenue, N.E.
6         Atlanta, Georgia  30303-1227
               and
7         Mr. Gustavo Garza
          ATTORNEY AT LAW
8         705 West Highway 100, Suite A
          Los Fresnos, Texas  78566

9

10   FOR THE DEFENDANT:
          Mr. Warren Taylor
11        TAYLOR & TAYLOR
          815 Walker, Suite 250
12        Houston, Texas  77002

13

14

15

16

17

18

19

20

21

22

23

24

25

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 182

1          MR. TAYLOR:  Okay.  What I'd suggest

2     we do is everybody make appearances on the record by

3     phone so we know who all is in on the call.  And

4     then, David, you were asking questions, so you can

5     pick up wherever you want.

6          MR. RUSNAK:  Good.  One second.  All

7     right.  Let me pick up so it's clearer.

8          This is David Rusnak who along

9     with Gustavo Garza are counsel for the plaintiffs.

10    Gus, identify yourself, please.

11         MR. GARZA:  This is Gustavo Garza,

12    counsel for plaintiff, listening loud and clear.

13         MR. TAYLOR:  Okay.  And this is

14    Warren Taylor here on behalf of State Farm, and the

15    witness, Tom Reed, is here.

16         Is anybody else in on the phone

17    call?

18         MR. RUSNAK:  Not at my end.

19         MR. TAYLOR:  Okay.

20         MR. RUSNAK:  Are we ready to proceed?

21         MR. TAYLOR:  Yeah.  Go ahead, David.

22         MR. RUSNAK:  Okay.  This is the

23    continuation of the deposition of Thomas Reed,

24    commenced yesterday and continued by agreement by

25    telephone this date 11:00 o'clock a.m. Eastern,

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 183

1    10:00 o'clock Central.

2                    EXAMINATION CONT.

3    BY MR. RUSNAK:

4        Q    Mr. Reed, are you there?

5        A    Yes, sir.

6        Q    And did you have a good night sleep?

7        A    Yes, sir.

8        Q    Having slept well is there anything you

9    need to change in terms of an answer or amend in

10   terms of an answer having had a chance to think on

11   it overnight?

12       A    Not that I'm aware of, no, sir.

13       Q    Very well.  Mr. Reed, yesterday we were

14   looking at a memorandum.  It has no Bates number.

15   It is Exhibit 6, though I don't know if you have the

16   exhibits in front of you.

17       A    No, sir.

18       Q    Okay.  Do you have a copy of that

19   memorandum?

20            MR. TAYLOR:  Do you not have it?

21   What Bates number?  Is it that August 12th --

22            MR. RUSNAK:  This is the August 12th,

23   2004 memorandum purportedly of a conversation with

24   Armin Martinez.

25       Q    (BY MR. RUSNAK)  Do you recall that

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1    exhibit, sir?

2        A    Yes, sir.

3        Q    Okay.  For the record, sir, it is your

4    testimony under oath that there has been nothing

5    fabricated or embellished about your conversations

6    that purportedly took place on August 12th, 2004

7    with Detective Armin Martinez of the Raymondville

8    Police Department?

9        A    That is correct.

10       Q    Let's see where we were.  Let me pick up

11   with some questions concerning Mr. Munoz and the

12   former Mrs. Munoz now Mrs. Villareal.

13            Are there any facts that you are

14   aware of that Mr. Munoz personally set the fire?

15       A    He did not state that he set the fire, but

16   there are -- there are circumstances that would

17   indicate that Mr. Munoz did set the fire.

18       Q    Okay.  I'm asking you are there any facts

19   that Mr. Munoz personally set the fire other than

20   circumstantial evidence?

21       A    There is no witnesses or no facts that

22   would point that Mr. Munoz was -- was seen setting

23   the fire, no.

24       Q    Are there any facts that would -- any

25   facts that Mrs. Munoz or now Mrs. Villareal

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 185

1    personally set the fire?

2        A    No, sir.

3        Q    Are there any facts that would show that

4    their son Carlos personally set the fire?

5        A    No, sir.

6        Q    Are there any facts that a third person

7    working with or for Mr. Munoz, his former wife or

8    his son set the fire?

9        A    Not that I'm aware of.

10       Q    Okay.  The evidence that State Farm

11   gathered that has led it to believe that arson was

12   committed by Mr. Munoz or Mrs. Munoz would be based

13   on the observations of others, neighbors, concerning

14   the conduct of Mr. and Mrs. Munoz; is that correct?

15       A    It would be based on others -- did you --

16   was your question limiting it to just neighbors

17   or --

18       Q    Well, let me re-ask the question and

19   perhaps solve your issue.

20            With regard to conduct -- hello?

21       A    Yes.

22       Q    Okay.  There was a click.

23            With regard to conduct that might be

24   considered circumstantial evidence concerning

25   Mr. and Mrs. Munoz's activities in the days

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 186

1   surrounding the fire, this evidence comes from whom?

2       A    It comes from neighbors.  It comes from

3   the police officials.  It comes from other

4   witnesses.

5       Q    Who would be the neighbors?

6       A    It would be the Torres family, the

7   Cavazoses, the -- I believe that's it.

8       Q    Okay.  Let's take the Torres family.  What

9   behavior or act did they report that you would

10  believe would tend to show Mr. or Mrs. Munoz was

11  responsible for this fire?

12      A    Well, short -- before the fire Mrs. Torres

13  was arriving home and saw Mr. Munoz coming from the

14  direction of the alley behind her house accompanied

15  by his dogs.  And that was -- that was before the

16  fire.

17      Q    And that was, according to her recorded

18  testimony, between 6:00 and 6:30?

19      A    The time frame is -- is in the -- between

20  6:00 and 6:30, general area, yes, sir.

21      Q    Okay.  And this fire was reported to the

22  police at 8:47 by Mr. Cavazoses?

23      A    That's the time stamp on the card.

24      Q    Okay.  So we're talking approximately two

25  to two and a half hours -- rather a little over

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 187

1   two hours prior to the fire was reported; correct?

2       A    If the -- we know what the time stamp is

3   and Mrs. Torres was estimating her time frame, but

4   those were the times that we have available.

5       Q    What else did -- did you -- did anyone

6   else besides -- I believe you testified yesterday

7   Mrs. Cavazos -- see Mr. Munoz or Mrs. Munoz at the

8   property -- let me ask it different.

9                Was anyone seen at the property after

10  6:30 by anyone other than Mini Cavazos?  Because I

11  believe yesterday you testified she said something

12  around 7:30.

13      A    If Mrs. -- you know, Mrs. Torres could

14  be -- have her times off a little.  It could have

15  been a little after 6:30.  We don't know.  But other

16  than Mrs. Torres it was Mrs. Cavazos, that's

17  correct.

18      Q    Okay.  Anything else that the Torres

19  family said that would -- that State Farm might

20  consider was suspicious?

21      A    They knew that Mr. Munoz had had previous

22  fires.

23      Q    The shed fire?

24      A    And I believe they knew that he also had a

25  kitchen fire.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 188

1    Q    Yes.  The oven fire that was a prior claim
2 with State Farm?

3    A    Correct.

4    Q    By the way, anything about the oven fire
5 incendiary?

6    A    No, sir, not that we're aware of.

7    Q    Does State Farm have any reason to believe
8 that the oven fire was an intentionally set fire for
9 fraudulent purposes?

10   A    No, sir, because that claim was paid.

11   Q    Okay.  And the shed fire claim was paid as
12 well; was it not?

13   A    That is correct, but it was a
14 intentionally set fire.

15   Q    Okay.  My question was has State Farm paid
16 that claim?

17   A    That is correct.

18   Q    Is that correct?

19   A    That is correct.

20   Q    Anything else the Torres family said to
21 State Farm that would lead State Farm to suspect
22 that Mr. and Mrs. Munoz were involved in an arson?

23   A    Not that I can recall right at this time.

24   Q    Whatever else might be would be in their
25 recorded interviews?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 189

1      A    That is correct.

2      Q    Okay.  Other than -- and, of course, the

3  Cavazoses have said a number of things.  We'll come

4  back to that.

5           You said other witnesses.  You said

6  police officials and other witnesses.  Who are the

7  other witnesses you're referring to?

8           Mr. Reed, if you are going to need to

9  refer to your documents and you are going to take

10  some time to refer to those documents, please advise

11  me what you're doing since I can't see you.

12     A    Okay.  Let me look.

13          Could you repeat your question, the

14  first question?

15     Q    The question was, based on your prior

16  testimony, when I asked you who had provided

17  testimony or evidence that might have led State Farm

18  to suspect Mr. and Mrs. Munoz, your answer was

19  neighbors, police officials and other witnesses.

20  I'm asking you to identify who you meant by other

21  witnesses.

22     A    Well, one of his employees, when he was at

23  the house, found an open window and closed it.

24  Mr. Munoz went inside the house and locked that

25  window and made sure that -- made sure that that

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 190

1    room was -- there was nothing disturbed or nothing

2    out of the ordinary and that --

3          Q     Mr. Reed, I've asked you to identify the

4    person.

5          A     Leon --

6          Q     Not to go into this at this moment.

7          A     Okay.

8          Q     Is this Mr. Cisneros?

9          A     Correct.

10         Q     Okay.  And any other witnesses that State

11   Farm is relying on in this respect?

12         A     I guess if you want to call relying on

13   information it would be the IRS.  It would be the

14   city of Raymondville.  It would be the school

15   district.

16         Q     Raymondville I.S.D.?

17         A     Correct.  It would be the Texas Employment

18   Commission.  Right off that's -- that's all I can

19   think of.

20         Q     Okay.  In terms of individuals, not --

21   because the IRS, City of Raymondville, R.I.S.D. and

22   Texas Employment Commission are all people that have

23   information concerning possible financial

24   obligations that Mr. and Mrs. Munoz may have been

25   responsible for on the date of fire.  Is that

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 191

1    correct?

2         A    That's correct.

3         Q    Okay.  Other than financial -- let's

4    narrow this down -- and other than Mr. Cisneros and

5    your rendition of the testimony that he and

6    Mr. Munoz gave, any other witnesses who delivered --

7    who provided information to State Farm that might

8    show some sort of suspicious conduct?

9         A    Do you consider Ms. Barnett in the

10   financial portion?

11        Q    Well, are you relying on the comments that

12   Ms. Barnett has denied for suspicious behavior?  If

13   that's the case then we'll put her on the list.

14        A    Okay.

15        Q    Okay.  Anyone else?  Are you relying on

16   Mr. Pena, Raul Pena, Sr. --

17        A    Yes, sir.

18        Q    Any other individuals other than police

19   officers?

20        A    I guess Yolanda.

21        Q    Yolanda Perez?

22        A    Correct.

23        Q    Anyone else?

24        A    I can't think of anybody else right at

25   this time.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 192

1      Q     The police officials who you're relying

2   on, are you relying on Detective Adame and Detective

3   Martinez?

4      A     Yes, sir.

5      Q     Anyone else?

6      A     Ramon Garcia.

7      Q     The fire marshal?

8      A     Correct.

9      Q     These were the principal investigators?

10     A     That is correct.

11     Q     Are you also relying on the police

12  officers who gave reports at the time of the fire

13  who arrived on the scene and had observations?

14     A     That is correct.

15     Q     By the way, did you have any investigative

16  cooperative agreements with Adame, Martinez or

17  Garcia?

18     A     What do you mean by --

19     Q     Agreements to cooperate in providing

20  information, exchanging information, assisting one

21  another in your investigations?

22     A     We had a subpoena and a 5.46 letter from

23  Mr. Garcia.

24     Q     Okay.  Did you have an agreement with

25  Detective Adame in writing or orally?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 193

1    A    No, sir.

2    Q    Did you have an agreement in writing or

3    orally with Detective Martinez?

4    A    No, sir.

5    Q    Did you have an agreement in writing or

6    orally with fire marshal -- State Fire Marshal

7    Garcia?

8    A    We had the subpoena and 5.46 letter.

9    Q    No.  Outside of those did you have an

10   agreement?

11   A    No, sir.

12   Q    Okay.  So those are the people who you

13   are -- State Farm, rather, in your investigation

14   provided information that State Farm is relying on;

15   correct?

16   A    That is correct.

17   Q    Okay.  Are you aware of any evidence

18   tending to show that the Cavazos family, one or more

19   of those members, set fire to the Munoz residence,

20   the house?

21   A    Other than Mr. Munoz saying that that was

22   his belief.  He accused -- he accused the Cavazos

23   family.

24   Q    Other than what Mr. Munoz might have said?

25   A    No, sir.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 194

1    Q    Okay.  Are you familiar with the arson

2    triangle?

3    A    Yes, sir.

4    Q    And that is motive, opportunity and

5    incendiary.  Is that not correct, sir?

6    A    Okay.

7    Q    Is that a correct summary of what the

8    arson triangle is?

9    A    Yes, sir.

10   Q    The arson triangle is a investigative tool

11   to determine who might have caused the fire;

12   correct?

13   A    That's correct.

14   Q    Now, with respect to the Cavozoses'

15   motive, did they have a motive that you are aware of

16   on the date of the fire for setting the fire?

17   A    Other than the ongoing dispute that had

18   been ongoing for quite a while, I can't think of

19   any.

20   Q    Did that ongoing dispute include the

21   bankruptcy case that they had filed?

22   A    That was part of it, yes, sir.

23   Q    Okay.  Are you taking into consideration

24   the reports of death threats and threats of arson?

25   A    Those were just verbal, and I didn't find

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 195

1    any other information other than what Mr. Munoz had

2    stated.

3        Q    What did you do to look for other

4    information besides talk to the Cavazoses and the

5    Munozes?

6        A    Well, we had the police reports.

7        Q    Other than that?

8        A    I didn't know of any other -- any other

9    place -- well, we had neighbors that knew about the

10   problems in the neighborhood, but other than that, I

11   didn't know where to look.

12       Q    Opportunity, the second leg of the

13   triangle -- or second point of the triangle,

14   rather -- the Cavazoses were at home.  That's an

15   established fact; is it not?

16       A    That is correct.

17       Q    And that is -- they were home at the time

18   of the fire; correct?

19       A    Correct.

20       Q    So they had a motive, and they had an

21   opportunity being present at the time of the fire;

22   correct?

23       A    They had opportunity.  I don't know if --

24   I don't know if I would put a lot of weight in the

25   motive factor.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 196

1      Q    I didn't ask you whether you personally
2  weighed it.  I asked you whether or not you were
3  aware of a motive, and you have agreed there was a
4  motive.
5      A    I agree that there were problems between
6  the two parties.  I --
7      Q    And personal disputes can be a motive,
8  especially when they involve the possible loss of a
9  home for an arson.  Would you not agree with me,
10 sir?
11     A    That could be -- that could be considered.
12          Oh.  You asked -- you asked if I had
13 looked at anything else.  We checked criminal
14 records, and I didn't find any criminal records,
15 either.
16     Q    That's true for the Munozes as well?
17     A    Well, I believe that Mrs. Munoz had been
18 arrested.
19     Q    Yes.  And isn't it true that neither of
20 those arrests, which were both -- which were both
21 instigated by Mini Cavazos, neither resulted in a
22 conviction or a plea.  Isn't that correct?
23     A    That is correct.
24     Q    Now, so we have a motive for the
25 Cavazoses.  We have the opportunity for the

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 197

1  Cavazoses.  And now we have the incendiary point of

2  the triangle.

3                Now, earlier that day, according to

4  your own notes, Mr. Reed, the Cavazos -- one or more

5  of the Cavazos family had gone to H.E.B. to shop for

6  food to cook burgers; correct?

7       A    That is correct.

8       Q    And you testified previously you did not

9  obtain the security videos for H.E.B. for that day;

10 correct?

11      A    That is correct.

12      Q    And you didn't obtain the cash register

13 receipts from that day; did you?

14      A    No, sir.

15      Q    And you didn't obtain from the Cavazoses

16 their receipts from H.E.B. for that day indicating

17 what they purchased; correct?

18      A    That is correct.

19      Q    And the Cavazoses have a barbecue pit;

20 correct?

21      A    I don't recall.  I would have to go back

22 and look at photographs if they -- if they do.  I

23 don't recall.

24      Q    So the Cavazoses were at the store from

25 which the incendiary, according to the various

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 198

1    casualty reports indicate was the probable

2    incendiary source.  They were there.  They could

3    have purchased the lighter fluid but you didn't

4    check out whether they did.  Is that about correct?

5         A    I don't know if they did or not.

6         Q    Because you didn't look.  Isn't that

7    correct?

8         A    I didn't -- as -- as stated I did not

9    obtain the -- any records from H.E.B.

10        Q    Or from the Cavazoses; correct?

11        A    That is -- we didn't have any records from

12   H.E.B. from the Cavazoses, no, sir.

13        Q    Okay.  Wouldn't a prudent investigator

14   wanted to have seen the cash register or charge

15   receipts from H.E.B. in the possession of the

16   Cavazoses to determine whether at or about the time

17   of the fire they bought a charcoal start fluid can

18   that might later have been found at -- in the Munoz

19   residence?  Wouldn't that be something prudent to

20   do, sir?

21        A    I guess.  I guess at this point we could

22   say there were a lot of things that would be prudent

23   or could have been done.  You know, there is

24   always --

25        Q    Why didn't you?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 199

1      A    There is always a stone that's -- that's

2  not overturned but that just -- I just -- I didn't

3  do it.

4      Q    Your answer as to why you didn't seek the

5  H.E.B. security tapes or the cash register receipts

6  or do anything to confirm that the Cavazoses had or

7  had not purchased lighter fluid used in the fire at

8  or about the time of the fire was I just didn't do

9  it?  Is that correct?

10     A    I didn't think of it.  I believe I did go

11  by H.E.B. and -- and spoke with their loss -- or

12  spoke with one of the managers and checked into the

13  video but --

14     Q    And where is that in the activity logs?

15     A    I would have to go through it.

16     Q    Please do.

17          MR. TAYLOR:  Hey, David, are you

18  still there?

19          MR. RUSNAK:  I am.

20          MR. TAYLOR:  What about Gus, is he

21  there?

22          MR. RUSNAK:  Gus, are you there?

23          MR. GARZA:  I'm listening.

24          MR. TAYLOR:  Okay.  There was a call

25  coming in.  I don't know why that was.

4a174834-97cd-4c52-bab4-d84042694db4