Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 200

1              MR. RUSNAK:  I'm just waiting for

2    Mr. Reed to complete his review.

3              MR. TAYLOR:  Yeah, he's flipping

4    through the notes.

5              MR. RUSNAK:  If for any reason this

6    is something that may have been conducted after the

7    lawsuit began and therefore is in the privileged

8    portion of the log I would like to know that because

9    I don't see it.  I've never seen it in the log, but

10   I may have missed it.

11             MR. TAYLOR:  Yeah.  He doesn't have

12   access to that portion of the log.

13             MR. RUSNAK:  Mr. Reed does not?

14             MR. TAYLOR:  No.

15             MR. RUSNAK:  Okay.

16       A    Right off I don't see it.

17       Q    (BY MR. RUSNAK)  Okay.  You have had an

18   opportunity to review your activity log, sir, and

19   your answer is you find no entry in your activity

20   log concerning a visit to H.E.B. and a discussion

21   with the manager; correct?

22       A    It's not reflected in the activity log.  I

23   don't know if it occurred after -- I don't remember

24   the time frame when it occurred, but it's not

25   reflected in the activity log.  However, it doesn't

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 201

1    mean it did not occur.

2        Q    Well, my question is, sir, was it in the

3    activity log?

4        A    That's correct.

5        Q    And it is not; correct?

6        A    That I -- that I can find, no, sir.

7        Q    Do you need to review it more thoroughly?

8        A    I'm --

9        Q    I want it to be clear.  You don't know of

10   it being in the activity log?

11       A    I don't find it, no, sir.

12       Q    Okay.  At the time of the fire did the

13   assets of Mr. and Mrs. Munoz exceed their known

14   liabilities?  And if you recall, yesterday we

15   established that State Farm does not know if the

16   moneys advanced from Mr. Capetillo were a liability

17   on that date, whether the IRS was a liability on

18   that date or whether the judgment for the State of

19   Texas in the amount of $5600 was a liability on that

20   date.  Keeping in mind that would you answer my

21   question, please?

22       A    I don't know because we were never

23   provided all of the financial documents for

24   Mr. Munoz.

25       Q    You know how much his house was worth; do

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 202

1    you not?  You have an appraisal?

2        A    Yes, sir.

3        Q    And the house was worth approximately

4    $150,000 free and clear; correct?

5        A    I don't have the appraisal in front of me,

6    but if that's what the appraisal states.

7        Q    And Mr. Munoz had certain business

8    equipment that was free and clear, correct, free and

9    clear of any debt or lien or encumbrance?

10       A    Yes, sir.

11       Q    Some of that included trucks; correct?

12       A    That is correct.

13       Q    And he had personal property within the

14   home that was free and clear of any debt, lien or

15   encumbrance; correct?

16       A    He had some personal property that was in

17   the home that was free and clear, yes, sir.

18       Q    Okay.  Using just the value of the home

19   being free and clear of any debt, lien or

20   encumbrance and Mr. Munoz knowing approximately only

21   $10,000 worth of liability at the time from various

22   taxes which had been established, it's fair to say

23   that his assets greatly exceeded his known

24   liabilities on that date; correct?

25       A    I am not a accountant or a CPA, but the

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 203

1    records that we had available were submitted to an

2    accountant, and I have not seen a report.

3        Q    Mr. Reed, not to be flippant but is this

4    not a matter of mathematics?  If he has $150,000

5    worth of assets and he has $10,000 worth of known

6    liabilities, then that's a 15 to 1 mathematical

7    ratio; is it not?

8        A    If that is all the outstanding debt that

9    he had at that time that's correct.

10        Q    And I prefaced my question by saying known

11    to Mr. Munoz at the time of the fire, as we

12    discussed at some length yesterday.

13        A    Again --

14        Q    Do you understand my question?

15        A    I understand your question.  And, again, I

16    don't know exactly what Mr. Munoz was aware of.  I

17    know what he has stated he was aware of and what

18    Ms. Barnett was -- said he was aware of.  But for me

19    to say that that is exactly what he was aware of I

20    can't do that and what his understandings were.

21        Q    Now, let me ask you this.  Even if we take

22    into consideration all the matters you know about

23    that were possibly debts, his assets still exceeded

24    his liabilities on the date of the fire; correct?

25    Just based on the house that he just finished

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1   remodeling?

2       A    If there are no -- if there are no other

3   known liabilities that we're aware of that would

4   be -- that would be a true statement, but we don't

5   know if he knew about all of the liabilities or not.

6       Q    That's right, because you didn't

7   investigate that thoroughly.  Isn't that correct,

8   Mr. Reed?

9       A    Well, if Mr. Munoz knew about the tax

10  liens -- all the tax liens and the IRS lien then it

11  would be important to him because IRS could take

12  over his business, his home and his property, and so

13  that would be very material.

14      Q    And you didn't ask Ms. Barnett at any time

15  during your investigation -- although you were

16  authorized to do so by the release provided by

17  Mr. and Mrs. Munoz in June of 2003 -- whether

18  Mr. Munoz knew about that tax lien at the time of

19  the fire.  Isn't that correct?

20      A    Well, because the -- because there were

21  unemployment -- because he knew -- he should have

22  known --

23      Q    My question is limited simply to the IRS

24  matter, sir.

25      A    I'm getting to that.  But if he was aware

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1  of the Texas unemployment taxes and the liens then

2  he would -- he should have some idea that his tax

3  liability was not being paid or that they were not

4  being submitted.  And there would be a connection

5  between the -- the employee tax and his -- and his

6  IRS tax.

7      Q    What kind of a connection?

8      A    Well, if his unemployment tax is not being

9  paid then he should question whether or not his IRS

10  taxes are being paid.

11      Q    Mr. Munoz told you in January of 2001 that

12  he had not yet filed for 2000 -- I'm sorry, 2001 and

13  2002; correct?

14      A    Correct.

15      Q    So he knew that there was an issue, but he

16  did not know of the levy; correct?

17      A    I can't say whether he did or not.  That

18  is what he has said.

19      Q    Okay.  And you didn't confirm or deny that

20  by asking Ms. Barnett, his bookkeeper, any questions

21  to that effect; correct?

22      A    I would have -- I did not ask her

23  specifically but I would have assumed that he would

24  have known --

25      Q    I didn't ask you, sir, what you assumed.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 206

1    I asked you what you asked.

2        A    That is correct.

3        Q    All right, then.  Let's move forward.

4            In your affidavit, sir, that you

5    submitted in connection with one of the State Farm

6    motions for summary judgment you stated under oath

7    that you were waiting for partnership agreements to

8    be provided concerning the partnership with Ben

9    Capetillo; correct?

10            MR. TAYLOR:  David, we don't have

11    those affidavits in here.  Do you want me to go get

12    them?

13            MR. RUSNAK:  Well, I will go ahead

14    and read this subject to you confirming it.  This is

15    Paragraph 39 from Exhibit A, page 6 to Defendant

16    State Farm Lloyds' Motion for Summary Judgment and

17    Supporting Brief.  If you'd like to take a break and

18    go get it it would be helpful.  If not I can simply

19    read it to you.

20            MR. TAYLOR:  I'm going to E-mail my

21    secretary and ask her to bring them in.

22            MR. RUSNAK:  Okay.  Why don't we --

23    why don't I simply read it and then we can have --

24    you can have a copy in front of you.

25        Q    (BY MR. RUSNAK)  Mr. Reed, you swore under

FRANCESCON REPORTING SERVICE 281-996-7881

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 207

1    oath on the 9th day of September, 2005 in connection

2    with one of the State Farm motions now filed before

3    this Court that at the time Mr. and Mrs. Munoz filed

4    suit State Farm was still waiting for Mr. and

5    Mrs. Munoz to provide copies of their personal and

6    business financial records, Mr. Munoz's calendar

7    book -- I'm sorry, Mrs. Munoz's calendar book, all

8    contracts or agreements regarding partnership

9    agreements with Mr. Ben Capetillo, all of

10   Mrs. Munoz's employment records including requests

11   for vacation or sick leave, and documents

12   specifically identifying Mrs. Munoz and evidencing

13   that she was in Florida at the time of the fire.

14           Do you recall swearing to that under

15   oath before this Court, sir?

16       A    I will be happy to review it when it's --

17   when it's brought into the room here.

18       Q    I'm asking you do you recall swearing to

19   that?

20           MR. TAYLOR:  David, I think the

21   witness has asked for the opportunity to look at the

22   document, so stay on the phone.  Let me walk down

23   the hall and get it.

24           MR. RUSNAK:  Warren, I -- he'll have

25   an opportunity.  I just want an answer to my

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 208

1  question, does he recall swearing to that, his

2  independent recollection.

3              MR. TAYLOR:  Hey, David, I don't mean

4  to play games here, but if the witness says that he

5  wants to look at a document and we all have the

6  document, I don't see what the problem is with

7  letting him look at it.

8              MR. RUSNAK:  I understand.  I just

9  want to ask does he recall swearing to it.  Then he

10  can look at the document and confirm or deny that

11  that's what it was.  My question is one of

12  recollection.

13              MR. TAYLOR:  Do you recall what the

14  affidavit says?

15              THE WITNESS:  Not word for word, no,

16  sir.

17              MR. RUSNAK:  All right.  Let's have a

18  look at the document, then.

19              MR. TAYLOR:  Hey, David, which

20  affidavit were you reading from?

21              MR. RUSNAK:  This is the affidavit

22  which is Exhibit A to Defendant's Motion for Summary

23  Judgment --

24              MR. TAYLOR:  What paragraph?

25              MR. RUSNAK:  Paragraph 39, Exhibit A,

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 209

1   page 6.

2                  MR. TAYLOR:  Okay.  He's got it.

3        Q    (BY MR. RUSNAK)  All right.  Now,

4   Mr. Reed?

5        A    Yes, sir.

6        Q    If you will read that paragraph, and let

7   me know when you've read it.

8        A    Okay.  I've read it.

9        Q    And, now, the phrase here, "all contracts

10  or agreements regarding partnership agreements with

11  Mr. Ben Capetillo," do you see what I'm saying --

12  I'm referring to?

13       A    Yes, sir.

14       Q    And it's your testimony that State Farm

15  was still waiting for those to be provided; correct?

16       A    We were waiting to see -- we were waiting

17  to obtain all the records pertaining to contracts

18  with Mr. Capetillo, yes, sir.

19       Q    You have been told by both Mr. Capetillo

20  and Mr. Munoz that no partnership agreement ever was

21  formalized in writing; correct?

22       A    There was a -- I -- to our knowledge it

23  was -- it was -- it was never finalized, is my

24  understanding.

25       Q    Mr. Capetillo told you in his recorded

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 210

1  statement in December of 2003 and Mr. Munoz told you

2  in several of his statements that the agreement had

3  never resulted in a written document; correct?

4      A    I know there were written documents

5  regarding the partnership.

6      Q    What written documents?

7      A    Well, there were -- we did have some

8  written documents, but we were not aware if we had

9  all the written documents regarding the partnership.

10     Q    What written documents?

11     A    Well, I believe there were some written

12 documents that discussed partnerships.  I believe

13 part of it was the money that had been provided to

14 Mr. Munoz, if I recall correctly.

15     Q    I found nothing to that effect in the

16 State Farm file in the file regarding Mr. Capetillo

17 or anywhere else.  Can you describe these documents

18 so I can go look for them?

19     A    Let me -- let me look.

20     Q    Are you talking about something other than

21 the court documents that were retrieved from the

22 file regarding the lawsuit in December of 2003?

23     A    I believe that's -- I believe that's what

24 I'm referring to.

25     Q    Okay.  That would be the handwritten

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 211

1    settlement agreement from earlier in 2003, I

2    believe -- well, we can look at the date, but it was

3    in June or July, and then the lawsuit itself and

4    then the subsequent motion.  Are those the documents

5    you're referring to?

6         A    Yes, sir.

7         Q    Okay.  What I am trying to determine here

8    since there was -- you've been told that there never

9    was a written agreement between the parties.  Why do

10   you say you were waiting on contracts or agreements

11   regarding partnership agreements?

12        A    My understanding that there were -- that

13   they were in the process of working on a contract

14   but they never could come to an agreement, and we

15   were wanting to see the documents in preparation for

16   the partnership.  Now, whether they -- whether they

17   actually existed or not we did not know.

18        Q    Okay.  The only letters I've seen ask for

19   contracts and agreements, not drafts, not work

20   papers, not attorney-client work product.  So you're

21   saying now that you were asking for drafts?

22        A    Whatever existed regarding the

23   partnership.

24        Q    Okay.  Is there a letter that asks for

25   anything other than contracts and agreements?

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 212

1    A    Not that I'm aware of.  That's what we
2  were asking for were any documents.
3    Q    And how did you ask for that?  What letter
4  specifies you want work papers and drafts?
5    A    Well, I don't know that those specific
6  items were requested, but we were asking for the
7  documents pertaining to the contracts.
8    Q    Where did you ask for that in writing
9  other than the contracts and agreements themselves
10  which you were told by both parties never existed?
11    A    I don't know of any that -- that I'm aware
12  of.
13    Q    Then what was the basis of your comment in
14  your affidavit under oath that you were waiting for
15  contracts and agreements for a partnership agreement
16  that you knew didn't exist?
17    A    Well, we were looking to see what kind of
18  agreements were -- to answer your question we wanted
19  to see what -- I believe Mr. Garza said he would
20  supply those, and we were -- I believe we were
21  waiting on those, any documents that he would be
22  submitting.
23    Q    When did Mr. Garza say that, and is this
24  confirmed in writing by either you, Mr. Kurth or
25  Mr. Garza?  Because I haven't seen it.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 213

1      A    I believe it was in the recorded interview
2   when we were discussing the partnership.  I can
3   look.
4      Q    Well, if you're saying that you requested
5   drafts and work papers I'd like to know when and
6   where.  If you'd like to take a break and look for
7   it, let's take a break and look for it.
8      A    I'm not saying specifically drafts and
9   worksheets or work papers were requested.  We were
10  asking for documents -- for contracts and documents
11  relating thereto.
12     Q    Documents and contracts relating thereto.
13          Where did -- where did you make a
14  written request for that?
15     A    Well, when we requested the contracts
16  between -- between Mr. Munoz and Mr. Capetillo.
17     Q    And you were told that there were no
18  contracts.  So why are you asking for contracts or
19  agreements regarding partnership agreements?  You're
20  not asking in your affidavit, sir, for documents
21  pertaining thereto or drafts or work papers.  You're
22  asking for contracts or agreements.  So why are you
23  asking for contracts or agreements that you know
24  didn't exist?
25     A    My -- again, my answer is I would have

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 214

1  thought we would have been provided the documents

2  that were being prepared for the contracts and

3  agreements.

4      Q    And where did you ask for those?

5      A    I -- this may be one of those instances

6  when we're not going to agree on my answer.  But

7  when we were requesting the contracts between the

8  two parties that was my understanding, we wanted

9  any -- any documents that went toward the -- the

10  final document of the contract.

11      Q    And how did we know that Mr. Munoz and

12  Mr. Garza know what your understanding was, the

13  understanding you're testifying to now?  Where did

14  you communicate that to us and how and when?

15      A    I can't give you a specific date.

16      Q    Is there a letter?  You've asked for these

17  things in letters.  You've got a lot of letters that

18  were sent out by you and Mr. Kurth asking for

19  documents.  Do you know of a letter in which you

20  asked for these work papers and underlying

21  documents?

22      A    Specifically I -- I don't recall any

23  letter saying drafts or underlying documents, no,

24  sir.

25      Q    Okay.  So how are we to know that's what

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 215

1    you wanted and that's what you meant in

2    Paragraph 39?

3        A    That was my assumption.

4        Q    And how did you communicate your

5    assumption?

6        A    We just -- we've just gone over that,

7    Mr. Rusnak.  That was my assumption that in

8    requesting the contracts that we would be provided

9    documents that were being prepared for the agreement

10   between Mr. Capetillo and Mr. Munoz.

11       Q    Okay.  So for the record, you know of no

12   actual request for documents that exist that you

13   weren't provided regarding this partnership

14   agreement that failed?

15       A    Could you repeat that?

16       Q    Well, let me put it to you this way.  Do

17   you know of a request for the specific work papers

18   that you're now testifying are referenced by this

19   request or the statement in your Paragraph 39?  And

20   the answer is, no, you don't know of any actual

21   requests; isn't that correct?

22       A    I don't know of any requests for

23   specifically draft or underlying documents, no, sir.

24       Q    So State Farm could not have been waiting

25   for those documents, couldn't have reasonably been

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1    waiting for those documents at the time of the

2    lawsuit?

3        A    Again, I go back to say that that request

4    in my -- in my own personal opinion would be in

5    regard to that request.

6        Q    Okay.  You didn't communicate your

7    understanding or your personal opinion to us;

8    correct?

9        A    That's what I -- that's my personal

10    thought on that request, yes, sir.

11        Q    That's what you're testifying now you

12    meant by that request; correct?

13        A    That is correct.

14        Q    All right.

15            MR. RUSNAK:  One second, please.

16        Q    (BY MR. RUSNAK)  Continuing on with that

17    paragraph where it says, "State Farm was still

18    waiting for Mr. and Mrs. Munoz to provide copies of

19    their personal and business financial records," are

20    we talking about the records that were reviewed at

21    Mr. Garza's office on the 29th of March, 2003?

22        A    No, sir, not specifically.

23        Q    Not specifically?  What -- since you

24    didn't specifically state in your affidavit what

25    State Farm was waiting for, what is your

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 217

1  understanding that you're going to testify to now as

2  to what those records meant, what you meant by that

3  statement?

4      A    Well, it included copies that were

5  requested at that time but it also -- we were never

6  provided any income or sources of -- documents to

7  support sources of income for Mr. Munoz and Munoz

8  Roofing.

9      Q    You weren't provided the contracts that he

10  had performed between 1999 and 2002?

11     A    We were looking for -- those -- those --

12  we did receive some contracts, but the financial

13  documents that showed -- that supported the income

14  were not received.

15     Q    And those would be the records that

16  Mr. Garza provided to you for review at your office

17  on March 29th, 2003 which you did not copy; correct?

18     A    I don't recall specifically what was in

19  those boxes.  I did --

20     Q    Didn't you make a detailed memo as to what

21  was in those boxes and place that detailed memo in

22  the file, sir?

23     A    That's what I was going to say I did.  I

24  did prepare a list of documents that I did see in

25  there.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 218

1       Q     And, now, these are the documents that
2  could have been used in combination with the
3  previously provided contracts and checks and bank
4  records to determine the Munoz Roofing income;
5  correct?
6       A     But there were -- there were no income --
7  income documents or income records.  No income
8  information was provided.
9       Q     No income information?  Proof of what he
10  earned through contracts wasn't provided to you?
11      A     The contracts were provided, but we were
12  looking for the financial documents from Mr. Munoz
13  specifically that he had turned -- said he had
14  turned over to Ms. Barnett.
15      Q     And you were provided with everything they
16  retrieved from Ms. Barnett at that meeting, correct,
17  sir, to your knowledge?
18      A     That is correct.  But I don't --
19      Q     You're also aware that Ms. Barnett lost or
20  destroyed certain documents of Mr. Munoz forcing him
21  to go to the bank to reconstruct his bank records?
22  Are you not also aware of that, sir?
23      A     I just became aware of that.
24      Q     How and when did you just become aware of
25  that?

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 219

1            MR. TAYLOR:  That -- that question

2  implicates attorney-client privilege.

3            MR. RUSNAK:  Well, is this the

4  interview that was conducted of Ms. Barnett today by

5  your co-counsel?

6            MR. TAYLOR:  No.  He has no

7  information about that.

8            MR. RUSNAK:  Well, very well.

9            Well, if he has no information

10  about that then how did he just become aware of it?

11  Is this something that you spoke to him about,

12  Warren?

13            MR. TAYLOR:  I'm the attorney that

14  I'm talking about with the attorney-client

15  privilege.

16            MR. RUSNAK:  Okay.

17      Q    (BY MR. RUSNAK)  Let me ask the question.

18  Is the information that you just discussed something

19  you received today from your attorney?

20      A    Just today?

21      Q    Yes.

22      A    No, sir.

23      Q    When did you receive this information?

24            MR. TAYLOR:  Okay.  I'm going to

25  object to any further communication -- any further

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 220

1    questions on this line on attorney-client privilege.

2            MR. RUSNAK:  I'd like to know the
3    date that he became aware that records had been
4    destroyed.

5            MR. TAYLOR:  That's the privilege.

6            MR. RUSNAK:  And I'd like to know
7    specifically whether or not it was before the date
8    of this affidavit or not, this affidavit's date
9    being September 9th of 2005.  That goes to his
10   voracity, and I don't believe the date of his
11   information is privileged.

12           MR. TAYLOR:  You can take it up --

13           MR. RUSNAK:  The content of it is.

14           MR. TAYLOR:  You can take that up
15   with the Court.  I'm asserting the privilege.  I
16   believe the privilege is correct, and I don't think
17   that your question about the date justifies a waiver
18   of the attorney-client privilege.

19       Q    (BY MR. RUSNAK)  Okay.  Mr. Reed, are you
20   refusing to answer this question based on the
21   instruction of your counsel and the counsel of State
22   Farm?

23       A    I am going to follow the instruction of my
24   attorney.

25       Q    So other than the records that were

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 221

1    available for copy at Mr. Garza's office, to the

2    extent that those represent all the documents which

3    were retrieved from Ms. Barnett, what other

4    documents were you waiting for?

5        A    Financial documents for Mr. and

6    Mrs. Munoz.

7        Q    What specifically?

8        A    Income records.

9        Q    What kind of income records?  Like W-2s?

10       A    Mrs. Munoz did submit W-2s.

11       Q    So you knew what her income was for the

12   preceding years?

13       A    Well, I don't recall how many W-2s she

14   submitted or for what years, but not all of the

15   financial records regarding income were provided by

16   Mr. and Mrs. --

17       Q    What specifically wasn't provided that

18   they had possession, custody or control over and

19   could provide to State Farm?

20       A    Documents that were -- would have been

21   used to complete their IRS tax forms, bank records,

22   any financial documents that would have been in the

23   possession of Ms. Barnett that Mr. Munoz and

24   Mrs. Munoz had provided.

25       Q    Okay.  And if they gave you everything

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 222

1   from Mrs. Barnett -- Ms. Barnett, rather, and had

2   nothing further then they would have satisfied the

3   documents from Ms. Barnett issue; correct?  If

4   Ms. Barnentt and Mr. Munoz both testified that they

5   provided for your review all the documents that she

6   had in her possession, custody or control then there

7   would be no issue concerning that category of

8   documents; correct?

9        A    Well, if Ms. Barnett said that she

10  misplaced or destroyed the records then we could not

11  have been in a position to review them.

12       Q    That wasn't my question, sir.

13            Once again, Mr. Munoz isn't under an

14  obligation, is he, to provide documents that he

15  doesn't have; correct?

16       A    At that time I didn't know he didn't have

17  them.

18       Q    Did you ask him?

19       A    Yes, sir.

20       Q    And did anybody tell you that

21  Ms. Barnett -- these were all of the documents that

22  had been retrieved from Ms. Barnett?

23       A    I --

24       Q    Were you not told at the time of the

25  inspection on March 29th, 2004 that these were all

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 223

1    the documents which had been retrieved?

2         A     That Mr. Garza had picked up from

3    Ms. Barnett, that is correct.

4         Q     Okay.  And did you go back to Ms. Barnett

5    at that time and ask her why there weren't

6    additional documents?

7         A     I did not, no, sir.

8         Q     I'm sorry.  You did not do so?

9         A     Correct.

10        Q     Why didn't you do so?

11        A     I didn't know if there were any -- I

12   didn't know if there were any other documents, but

13   Mr. Garza had indicated that those were all the

14   documents that he had picked up from Ms. Barnett

15   that were available at that time.

16        Q     Available at that time or available

17   period?

18        A     That is correct.

19        Q     Which was it, Mr. Reed?

20        A     Well, available at that time.  That's all

21   that he said that she had or that she provided to

22   him.

23        Q     Why didn't you then go to Ms. Barnett and

24   seek the additional documents that you say were

25   important?

FRANCESCON REPORTING SERVICE 281-996-7881

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 224

1      A    Well, I didn't -- I looked through the
2    box.  I didn't know if that was -- if there were any
3    other records, but I did not go back and confirm
4    with her that that was all in total.
5      Q    So you didn't confirm.
6              All right.  As to the IRS documents,
7    what did you mean by that, documents you were
8    waiting for involving the IRS?  Tax returns?
9      A    Are you back to that paragraph?
10     Q    Well, you mentioned the missing documents,
11   the documents you were looking for, you wanted bank
12   records, IRS documents and anything Barnett had.
13   We're back to the IRS documents.
14             What were you looking for
15   specifically that we might now understand what you
16   meant or you now say you meant about business and
17   personal records that you were waiting for?
18     A    Well, I believe that Ms. Barnett had
19   indicated to me she had prepared taxes or tax forms
20   for Mr. Munoz but they had not been -- he didn't
21   send in the -- send in a check or apparently file
22   the returns.
23     Q    And she supposedly said this to you in
24   that 8/12, 2003 interview which she has denied under
25   oath?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 225

1      A     If that's -- let's see.  That is correct.

2      Q     And if Ms. Barnett were to testify that at

3  the time of the turnover of the records she had not

4  prepared those returns then we would know, sir,

5  that, in fact -- well, strike the question.

6                    Bank records, you mentioned bank

7  records that you were waiting for.  Did not Mr. and

8  Mrs. Munoz turn over their existing bank records to

9  you in early 2003?

10     A     I don't recall what records were turned

11 over.

12     Q     Do you recall receiving bank records?

13     A     I remember seeing some -- some records.  I

14 don't recall where the records were from.

15     Q     And if your file reflects that they did in

16 fact produce bank records to you in the spring or

17 summer of 2003 and that's all the records you had,

18 then you couldn't have been waiting for bank records

19 among these generic personal and business financial

20 records.  Isn't that correct?

21     A     Well, my understanding is that

22 Mr. Munoz -- that Ms. Barnett did not have all the

23 bank records, that she had either lost or destroyed

24 those.  So I don't think he could have turned those

25 in.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 226

1      Q      And when did you come to that

2   understanding that she had lost or destroyed the

3   bank records?  Are we back to the attorney-client

4   privilege issue?

5      A      Yes, sir.

6      Q      Okay.  So you can't answer my question

7   based on the assertion of privilege.  Is that

8   correct, sir?

9      A      That is correct.

10     Q      Or rather you will not answer my question?

11            MR. TAYLOR:  That's just

12   argumentative, David.  Let's move on.

13            MR. RUSNAK:  Well, I'm having a

14   problem here, Warren.  He's testifying to knowledge,

15   and then he's claiming privilege and how he obtained

16   it and when he obtained it.  So I guess we will take

17   that up with the Court, but I'll put you on fair

18   notice of it and we'll move on.

19            MR. TAYLOR:  Well, but you're asking

20   the questions.  I'm not using that information

21   proactively, and I'm not asking the question.  I'm

22   not soliciting the information.

23            MR. RUSNAK:  Well, if he does use it

24   proactive then I'm going to be able to inquire

25   further.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 227

1          MR. TAYLOR:  It's a different ball
2    game if -- if I elicit that testimony in support of
3    our defenses in this case that's a different issue
4    than if I allow him to answer your question.
5          MR. RUSNAK:  That's probably correct,
6    but I'll have to think about it.
7          MR. TAYLOR:  Yeah.  And I'm not
8    asking you to agree with me.  I'm just -- that's
9    our -- that's our position, and I think it's
10   correct.
11         MR. RUSNAK:  Your position is your
12   position, and you're there, and you will counsel
13   your client accordingly.  And if we disagree we can
14   take it up with the Court.
15         MR. TAYLOR:  Sure.  That's fine.
16      Q    (BY MR. RUSNAK)  Now, let's talk about the
17   calendar book, Mrs. Munoz's calendar book.  When did
18   you request Mrs. Munoz's calendar book and why?
19      A    Mrs. Munoz, during her recorded interview,
20   told me that every -- every appointment, every
21   activity, everything she did was recorded in her
22   calendar book.  And I was trying to assist her in
23   showing where she was at the time of the fire, and I
24   thought that by having parts of or the entire
25   calendar book that that would help support where she

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 228

1    was on the day of the fire.

2         Q    Now, at the time of the lawsuit you had

3    already received the recorded statement of

4    Mr. Capetillo testifying that she was in Florida

5    with him at the time; correct?

6         A    That is correct.

7         Q    And she had provided some documentation

8    from Florida, receipts that she did have, a photo

9    showing her son in Florida with Mr. and

10   Mrs. Capetillo; had she not?

11        A    I don't remember seeing a photo.

12        Q    Did not Mr. Munoz drive at least into

13   Corpus Christi and hand deliver to you certain

14   receipts that they had found?

15        A    Mr. Munoz did submit some receipts.  I

16   don't know whose receipts they were.

17        Q    You weren't looking for that calendar book

18   for any financial reason showing the value of the

19   claim; were you, sir?

20        A    I don't know what's contained in the --

21   what all information would be contained in the

22   calendar book.

23        Q    And when did you make a request for the

24   calendar book?

25        A    Let me go back and look.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 229

1          MR. RUSNAK:  Does anyone need to take

2    a break?

3          MR. TAYLOR:  We can while he's

4    looking, David.

5          MR. RUSNAK:  Allow me to get a glass

6    of water, and I'll be right back in about 2 minutes.

7          MR. TAYLOR:  Okay.  I'm going to walk

8    down the hall, also, but I think Tom's going to keep

9    looking.

10          MR. RUSNAK:  Please, if Tom doesn't

11    need to take a break himself.  Thank you.

12          MR. TAYLOR:  Okay.

13          (Short recess.)

14    Q     (BY MR. RUSNAK)  All right.  Has Mr. Reed

15    concluded his review of the records?

16    A     I'm still reviewing.

17    Q     All right.

18          MR. RUSNAK:  For the court reporter

19    we're off the record while he's reviewing.

20          (Short recess.)

21          MR. RUSNAK:  Mr. Taylor and I have

22    agreed that Mr. Reed, if he can locate the documents

23    in question he is searching for, if it exists, will

24    provide that information after the deposition.  Is

25    that agreed?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1          MR. TAYLOR:  Yes.

2     Q     (BY MR. RUSNAK)  All right.  Mr. Reed, the

3     affidavit in Paragraph 39 also says that State Farm

4     was waiting for Mrs. Munoz's employment records

5     including requests for sick -- vacation or sick

6     leave.  Do you see where I'm saying -- see what I'm

7     pointing out to?

8     A     Yes, sir.

9     Q     See what I'm pointing to?

10          These were the very same documents

11    that you made a request for to Watson City Drugs

12    back in August of 2003?

13    A     Yes, sir.

14    Q     Okay.  And why were you asking for

15    Ms. Munoz to follow up on your request?

16    A     What do you mean?

17    Q     Well, you made a request.  We identified

18    that letter yesterday in your deposition, and you're

19    now saying that you were waiting for her to go get

20    them or waiting for Watson City to provide them?

21    A     Those had not been provided by Watson City

22    Drug.

23    Q     Okay.  So in your affidavit on

24    Paragraph 39 you were waiting for Watson City not

25    Mrs. Munoz to provide those; correct?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1    A    I would have to go back to -- through the
2    file to see if those were discussed with Mrs. Munoz.
3    Q    Well, were you waiting on it from her or
4    from Watson City, to the best of your recollection?
5    A    I do know they were requested directly
6    from Watson City Drug by correspondence.
7    Q    She gave you an authorization dated --
8    well, it's undated but received in the Park Green
9    CSO office of State Farm June 9, 2003.  I'm
10   specifically referring to a copy of it, SF000135.
11                Do you recall that authorization,
12   sir?
13   A    Yes, sir.
14   Q    And so as of that date State Farm did have
15   her authority to go get these documents?
16   A    Yes, sir.
17   Q    Did you send any one of your associates by
18   to pick up these documents or ask for them in
19   person?
20   A    No, sir.
21   Q    And by that I mean Mr. Lerma, Mr. Kemp,
22   Mr. Robinson or Mr. Levo who have all provided
23   services -- investigative services along with you on
24   this file.  Do you understand that?
25   A    Yes, sir.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 232

1    Q    By the way, the form says State Farm

2    Mutual Auto Insurance Company and Subsidiaries and

3    Affiliates or Their Authorized Claim or Legal

4    Representatives.  That's the language included.  Is

5    that the one that's normally used for State Farm

6    Lloyds?

7    A    Yes, sir.

8    Q    Okay.  You also are asking her for

9    documents specifically identifying Mrs. Munoz and

10   evidencing that she was in Florida at the time of

11   the fire.  At this point Mr. Munoz had already

12   delivered some documents and he expressed these were

13   the documents they had which were responsive;

14   correct?

15   A    There were some documents delivered, yes,

16   sir.

17   Q    What were you specifically asking for that

18   she had not or he had not already told you, the

19   Munozes had not already told you?

20   A    Any documents that would reflect any

21   recordings of their trip which could have included

22   credit card statements, something that was

23   identified as belonging to Mrs. Munoz, credit card

24   statements, could go to checks, canceled checks,

25   motel records.  It could go back to her calendar

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 233

1  book or diary, however she wanted to reflect that,

2  but something that she had in her possession that

3  was hers that could not have been provided through

4  or by some third party.

5       Q    As of the date that the lawsuit was filed

6  did you have reason to believe she wasn't in Florida

7  at the time of the fire?

8       A    We have -- at the time we were just

9  looking for all forms of support to verify that.

10 There were --

11      Q    My question was, sir, at the time the

12 lawsuit was filed did you have reason to believe she

13 was not in Florida at the time of the fire?  That's

14 a yes or no question, sir.

15      A    No, sir.

16      Q    You had no reason to believe she was or

17 was not in Florida?

18      A    Well, we only have verbal information that

19 she was in Florida, no documents to support that she

20 was in Florida that I'm aware of.

21      Q    Okay.  Do you have reason to believe that

22 she was in Florida -- I'm sorry.  Let me restate

23 that question.

24           Did you have reason to believe that

25 she was not in Florida at the time of the fire?

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1    A    I don't think that we can give a yes and
2  no on that.  We had information indicating that she
3  was in Florida but no document or written form of a
4  document to support that she was in Florida, just
5  someone's statement.

6    Q    That would be the statement of Mr. Ben
7  Capetillo?

8    A    Correct.

9    Q    Why wouldn't -- why wouldn't you believe
10 Mr. Capetillo?

11   A    At this time I -- I can't think right off
12 why we would not but there was -- we were just
13 looking for some form of document that would support
14 without question that she was in Florida.

15   Q    Did you have any reason to disbelieve
16 Mr. Capetillo's recorded statement that she and her
17 son Carlos were with him and his wife and his
18 children in Florida at the time of the fire?

19   A    We didn't have anything other than his
20 statement, no, sir.

21   Q    And you didn't take the statement of
22 Mrs. Capetillo or any of the children; did you?

23   A    No, sir.

24   Q    Why not?

25   A    Because we had Mr. Capetillo's statement.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 235

1      Q    And you deemed that sufficient to prove
2  that she was in Florida?
3      A    We didn't -- I didn't think that we would
4  have any other information other than what
5  Mr. Capetillo had -- had provided to us.
6      Q    So you didn't take the remainders --
7  remainder of the family members on that basis?
8      A    Yes, sir.
9      Q    Okay.  Did you ask Mr. and Mrs. Capetillo
10 to produce evidence that Mrs. Munoz and her son were
11 with them in Florida?
12     A    I did not ask directly, I -- myself.
13     Q    Did Mr. Robinson ask at your request?
14     A    I don't recall.  I would have to go
15 through the statement.
16     Q    One second, please.  I have to go off the
17 record and put you on hold.  One second, please.
18              (Short recess.)
19     Q    (BY MR. RUSNAK)  Mr. Reed, did not Mr. and
20 Mrs. Munoz provide phone records and phone messages
21 indicating that Mrs. Munoz was in Florida at the
22 time of the fire?
23     A    It indicated that there was a telephone
24 call to Florida, yes, sir.
25     Q    And to what number was that call made?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 236

1    Was that the cell phone to Mrs. Munoz?

2        A    I would have to look at the records, but

3    all the phone records were in the name of Ben

4    Capetillo.

5        Q    So it was a call to Mr. Capetillo's cell

6    phone?

7        A    I would -- like I said, I would have to

8    look at the records, but I believe it was to his --

9    his cell phone.

10       Q    Any phone messages provided as well?

11       A    Written phone messages?

12       Q    Yes.

13       A    Not that I'm aware of.

14       Q    Were any documents supporting the value of

15   the loss requested by State Farm not provided by

16   Mr. and Mrs. Munoz?

17       A    Right off at this time I can't think of

18   any.

19       Q    I notice that none were incorporated in

20   your Paragraph 39.  You'll agree with me, sir, that

21   none of the documents that are listed in

22   Paragraph 39 of your affidavit relate to the value

23   of the loss that Mr. and Mrs. Munoz were claiming

24   under their policy; correct?

25       A    I don't believe so.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 237

1     Q    Are you agreeing with my statement?

2     A    I don't see any in there that to my

3 knowledge would be regarding the value of the loss.

4     Q    Sir, what safeguards does State Farm

5 employ to assure that the activity log cannot be

6 altered?

7     A    My understanding is that it cannot be

8 altered, but that would be something -- the

9 specifics regarding the activity log I'm not aware

10 of.  My understanding is it cannot be altered.

11     Q    Were there any independent alibi witnesses

12 for the Cavazoses on the date of the fire, that is

13 someone outside their immediate family who was

14 present with them at or about the time the fire

15 occurred?

16     A    None that we haven't discussed, I don't

17 believe.

18     Q    Who have we discussed were present with

19 them at the time of the fire outside their immediate

20 family?

21     A    The Capetillos --

22     Q    No.  I'm talking about -- I'm sorry.  I

23 meant the Cavazoses.  Anybody see that the Cavazoses

24 didn't come across the fence and burn the house?

25 Can anybody testify to that outside of the Cavazos

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1    family?

2         A    The only person that I know of that saw

3    the Cavazoses were the neighbors behind --

4    diagonally behind the Munoz residence, and I believe

5    it's directly behind the Cavazos' residence.  They

6    saw them after the fire was discovered, but I don't

7    know of anyone that saw the Cavazoses before or

8    after the fire -- well, other than the neighbors

9    behind.

10         Q    What did the neighbors behind see?

11         A    They saw a fire at the -- at the Munoz

12    residence and also saw -- they were in communication

13    with Mr. Cavazos -- I believe it was Mr. Cavazos

14    when they also apparently discovered the fire.

15         Q    Do you know of anyone who can vouch that

16    the Cavazos family did not start the fire who are

17    not a member of the Cavazos family?

18         A    Not that I'm aware of.

19         Q    How did the Internal Revenue Service learn

20    of State Farm's payments to Mr. Munoz under the

21    policy?

22         A    You mean in reference to the tax levy?

23         Q    Yes, the levy that they sent to State Farm

24    seeking to levy upon the payments that State Farm

25    was providing as benefits to Mr. Munoz.  How did, to

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1  your knowledge, the Internal Revenue Service learn

2  that State Farm was making payments to Mr. Munoz and

3  Mrs. Munoz?

4      A    When I became aware of it they were

5  already aware of the -- of the claim.  I -- I don't

6  know.

7      Q    How did they become aware of the claim?

8      A    That I don't know.

9      Q    Did you, sir, inform the Internal Revenue

10  Service that moneys were being paid to Mr. and

11  Mrs. Munoz for the purpose of allowing them to levy

12  upon them?

13      A    No, sir, I did not.

14      Q    I think I may have asked this before.  Did

15  you provide any information to State Fire Marshal

16  Garcia in advance of a subpoena or a Texas Insurance

17  Code Section 5.46 request?

18      A    No, sir, I did not.

19      Q    Okay.  Would you pull out the following

20  documents:  567, 568, 587 and 588?

21          MR. TAYLOR:  Can you give me dates on

22  those?

23          MR. RUSNAK:  Sure.  It's a letter

24  dated 2/12/03 --

25          MR. TAYLOR:  Okay.