Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 240

1          MR. RUSNAK:  -- from the Texas
2  Department of Insurance.  That's 567.  A letter
3  dated February 6th, 2003 --
4          MR. TAYLOR:  I can find it from
5  there.  I can find it from there.
6          MR. RUSNAK:  Okay.
7          MR. TAYLOR:  Do you have them?  Tell
8  him you've got them.  They're consecutive, 67, 68
9  and 87, 88.
10     A    Okay.
11     Q    (BY MR. RUSNAK)  All right.  Do you have
12  those documents?
13     A    Yes, sir.
14     Q    All right.  587 and 588 is the subpoena
15  from the fire marshal; correct?
16     A    Yes, sir.
17     Q    And that asks for any and all insurance
18  records including but not limited to payment
19  arrangement, claims submitted, claims paid off on
20  Luis Carlos Munoz who resided at the address of the
21  house.  Do you see what I'm reading?
22     A    Yes, sir.
23     Q    Okay.  Now, if you will look at 568, you
24  reply, "Pursuant to your subpoena in our agreement
25  please find the enclosed additional responsive

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1    documents."

2                    What agreement?

3        A    I did not respond pursuant to that letter.

4        Q    Mr. Reed, I'm asking you what agreement.

5        A    I don't know.  That was not -- I was not

6    responsive or responding in regard to the subpoena,

7    and that's not -- that's not my letter.

8        Q    That's the letter of Gretchen Sonnier May?

9        A    Correct.

10       Q    Okay.  Do you know of a subpoena other

11   than the subpoena 587, 588?

12       A    The only -- the only documents I'm aware

13   of are contained within the file.

14       Q    Okay.  Do you -- do you not know what

15   agreement was entered into?  Because it says carbon

16   copy Tom Reed, claim representative without

17   attachments at the bottom of the --

18       A    I don't -- I don't know.  Gretchen Sonnier

19   May is our claim attorney and handles all -- handled

20   that.

21       Q    I previously asked you if there were any

22   agreements between State Farm and the state fire

23   marshal.  Did you not consider this an agreement or

24   not know of this or what?

25       A    I don't know what the agreement that she's

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 242

1  referring to is.

2      Q    You know of no other subpoena?

3      A    Sir?

4      Q    You know of no other subpoena from the

5  fire marshal?

6      A    Other than those that we're discussing

7  right here, no.

8                  MR. RUSNAK:  Hold one second, please.

9                  (Short recess.)

10     Q    (BY MR. RUSNAK)  Mr. Reed?

11     A    Yes, sir.

12     Q    Do you know if Ms. May, the claim

13  attorney, ever spoke with Deputy Garcia?

14     A    Yes, I believe she did.

15     Q    And how do you know that?

16     A    I believe that Ms. Sonnier May told me

17  that she had been in communication with Mr. Garcia.

18     Q    Do you know the date of that

19  communication?

20     A    No, I do not.

21     Q    Any record you know of of what the

22  agreement is between State Farm Lloyds or Ms. May

23  and Deputy Garcia?

24     A    I have no knowledge of that.  I don't have

25  anything in regard to that agreement.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1          MR. RUSNAK:  Warren, are there any

2    additional documents concerning that agreement that

3    you're not aware of?

4       A     That I don't know.

5          MR. TAYLOR:  The question was to me.

6             I'm not aware of any, and I will

7    check with Gretchen.  I would be surprised if the

8    agreement referred to anything other than the timing

9    because the subpoena said January 10th was the

10   response date.  But I have no problem with talking

11   to Gretchen and finding out what she referred to.

12          MR. RUSNAK:  Would you please?

13          MR. TAYLOR:  Yeah.

14          MR. RUSNAK:  Thank you.

15      Q     (BY MR. RUSNAK)  All right, then.  Let's

16   move on.

17             Do you recall a conversation with

18   Barbara Keefer?

19      A     Yes, sir.

20      Q     Okay.  Do you recall your testimony

21   yesterday when I asked you about handwritten notes

22   of conversations that were subsequently transcribed

23   to memos regarding Barnett, Pena, Perez, Martinez

24   and Adame?  Do you remember that discussion

25   yesterday?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 244

1        A    Yes, sir.

2        Q    Okay.  Do you remember testifying that you

3    may have discarded your handwritten notes after

4    having transcribed the notes into a memo?

5        A    What I remember saying is -- is normally I

6    transcribe those or type them out and then discard

7    the notes.  There may be occasions when notes are

8    left in the file.  I wouldn't say that every time

9    they're discarded, but if they're in the file

10   they're in there.  But my normal practice is once

11   I -- once I type them out then there is no reason

12   for me to keep the -- keep the handwritten notes.

13       Q    Yet you kept the handwritten note

14   involving the interview with Barbara Keefer,

15   SF003333.  So this would have been against your

16   normal practice as you just testified to it?

17       A    No, sir.  It's -- I -- what I testified to

18   was normally I type them out and discard the --

19   discard the notes, and I said there may be occasion

20   when they're not discarded or they're still in the

21   file.  Sometimes I -- sometimes I don't discard

22   them.

23       Q    And it's against State Farm's policy for

24   you to discard any of your notes because those are

25   file material.  Isn't that correct?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 245

1      A      Once they -- once they're typed out or --

2    or transcribed then that becomes the official --

3    that becomes the official document.

4      Q      I'm talking about your handwritten notes,

5    the first and best evidence of what the discussion

6    was.  You -- don't you believe that those should be

7    retained in the file based on State Farm's policies?

8      A      I don't believe they're -- they're against

9    the policy.

10     Q      The destruction of documents that you have

11   gathered in the context of your investigations is

12   not against State Farm's policy?

13     A      As long as you retain -- as long as you

14   retain the document that's -- that's for the file.

15     Q      Wouldn't those handwritten notes be proof

16   of some sort that you actually conducted the

17   interview or conversation?

18     A      Well, those would -- those would have been

19   transcribed and put in the file, and that would be

20   the record.  But it's -- those were just field

21   notes, and sometimes I keep field notes and

22   sometimes I don't.  It's...

23     Q      You ever receive information concerning

24   Ben Capetillo, that he is involved with smuggling

25   aliens or is a drug dealer?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1      A      I believe that I did hear that, but I

2    don't have anything to support that.

3      Q      Where did you hear it from?

4            MR. TAYLOR:  David, I need to confer

5    with him for the purpose of determining whether

6    there is a privilege to assert, so I'm going to talk

7    to him strictly limited to whether or not there's a

8    privilege that's implicated by the question.

9            MR. RUSNAK:  Okay.  You might want to

10   look at it in the context of this question,

11   FS000993, which is a note that appears to be in his

12   handwriting saying Ben Capetillo is smuggling aliens

13   and drug dealer.  That's what I'm coming off of

14   here.

15           MR. TAYLOR:  Okay.

16           THE WITNESS:  00993?

17           MR. TAYLOR:  Yeah.

18           Okay.  David, as long as your

19   question is related to 993 obviously we're not going

20   to assert any kind of privilege.

21     Q      (BY MR. RUSNAK)  My question is where did

22   you get that information?

23     A      That was a -- a rumor that was disclosed

24   during a conversation with Mr. Garcia.

25     Q      Do you know where Mr. Garcia heard that

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 247

1    rumor?

2          A     No, I do not.

3          Q     He didn't disclose that to you?

4          A     No, sir.

5          Q     Do you have any information that would

6    tend to show Mr. Capetillo is not a truthful person?

7          A     Not at -- not up to this time, no, sir.

8          Q     When you say not up to this time you mean

9    that you've developed none in your investigation and

10   you know of none; correct?

11         A     That is correct.

12         Q     In the canvas that took place of the

13   neighborhood on February 11th of 2003 conducted in

14   this case by Scott Kemp -- this is SF001596, 1596.

15   Have you found it, sir?

16         A     I'm still looking.

17         Q     Also pull out 1597 while you're at it.

18   Are we ready?

19         A     Almost.  Okay.

20         Q     All right.  Do you have 1596?

21         A     Correct.

22         Q     Under the entry for the canvas of the

23   address 840 West White Avenue --

24         A     Yes, sir.

25         Q     -- there is a notation about speaking to

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 248

1   an Hispanic male, 5'6", 170 pounds.  On 1597 for the

2   same address there is a canvas note for a interview

3   with a Maria Olvara.  Do you see that as well?

4       A    Yes, sir.

5       Q    Okay.  In the middle of the paragraph on

6   1596 it says, starting with he described, "He

7   described Harry Cavazos' 17-year-old son as crazy

8   and his son would throw rolled up newspapers at his

9   85-year-old mother."  Do you see that comment, sir?

10      A    Yes, sir.

11      Q    Did that give you any reason to be

12  concerned about the 17-year-old Cavazos boy?

13      A    That's information all to be considered.

14  As far as did it specifically indicate a problem

15  with the Cavazos boy, not -- not really.

16      Q    A neighbor's opinion that he's crazy and

17  violent towards elderly women wouldn't cause you to

18  be concerned that he might commit another violent

19  act such as arson?

20      A    That's somebody's -- that's just

21  somebody's opinion.

22      Q    And opinion is not to be considered?

23      A    Well, opinions are just that, just

24  opinions, and, you know, everything -- everything

25  that -- in the file was evaluated and, you know, a

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 249

1   decision made upon.  So, you know, one specific item

2   is just -- this one specific item is -- is

3   somebody's opinion.

4        Q    My question was did it cause you concern

5   that the Cavazos boy, the 17 year old, might commit

6   other crimes?

7        A    He might, but to my knowledge there were

8   no criminal records.  There were no records to

9   indicate that he had any involvement.  He didn't

10  have a key.  I don't have any information that he

11  was involved regarding -- regarding the fire.

12       Q    Now, in an interview on 2/12/03 Minerva

13  Cavazos, otherwise known as Mini Cavazos, stated to

14  you -- and I'm reading from a handwritten note of

15  yours on -- which is 3258.  Mr. Munoz said he had

16  their home insured for over $80,000, and he said he,

17  paren, Munoz, closed paren, had someone who could

18  burn their, paren, Cavazos, closed paren, home.

19  They would pay him the $23,500.

20            What was done to determine whether or

21  not Mrs. Cavazos was lying to you about that or

22  telling the truth about that?

23       A    What was the number?

24       Q    $80,000.

25       A    No.  What was the page number?

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 250

1      Q      3258.   The date on that is 2/12/03.

2      A      Other than the policy on the -- on the

3  home, on the Munoz home I'm not aware of any other

4  policies that Mr. Munoz had.

5      Q      That's a very serious statement.  Don't

6  you agree, Mr. Reed?

7      A      I guess -- I guess it could be viewed as

8  very serious.

9      Q      You didn't view it as a very serious

10 statement?

11     A      I said it could be viewed as a very

12 serious statement.

13     Q      Did you view it as a very serious

14 statement?

15     A      I viewed it as -- as a comment by

16 Mr. Munoz as -- you know, there had been comments

17 back and forth by both parties, and, you know,

18 it's -- it was just an ongoing basic feud between --

19 between two parties.

20     Q      Well, she's accusing him of being an

21 arsonist or someone who would engage in arson for

22 money, is she not, in that comment?

23     A      So was -- so did Mr. Munoz accuse the

24 Cavazoses --

25     Q      Don't -- Mr. Reed, I'm asking you

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 251

1    specifically about Mrs. Cavazos.  She's accusing in

2    the note -- she's accusing Mr. Munoz in a

3    conversation with you in which you have taken a

4    handwritten note on 2/12/03 that Mr. Munoz is an

5    arsonist.  Is she not?

6         A    This was something that she said that

7    Mr. Munoz told her and it does not -- to me it does

8    not say he's an arsonist.

9         Q    And if this, in fact, is a bald-faced lie,

10   wouldn't it be reasonable to assume she was trying

11   to cast suspicion on Mr. Munoz?

12        A    I -- I don't have any information to

13   answer that either way.

14        Q    It didn't strike you as odd that shortly

15   after the fire they are claiming that Mr. Munoz is

16   an arsonist?

17        A    Well, Mr. Munoz also indicated that he

18   felt the Cavazos --

19        Q    I'm asking you only, sir, about

20   Mrs. Cavazos, someone who has the motive, the

21   opportunity and probably the incendiary in the arson

22   triangle is trying to throw you off her track and on

23   to Mr. Munoz by claiming Mr. Munoz is an arsonist.

24   Isn't that what that statement indicates?

25        A    I read that as -- as one comment made by

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 252

1  Mr. Munoz.  It doesn't say that -- in there that

2  Mr. Munoz set fire to the Cavazos' home.

3      Q    And if that's a bald-faced lie then you

4  should have been looking at Mrs. Cavazos and her

5  family because they were trying to throw you off the

6  scent.  Wouldn't that be a fair reading of that?

7      A    And I think we did look at the Cavazoses.

8      Q    Based on everything you told me yesterday?

9      A    Correct.

10      Q    Mrs. Cavazos also made the statement in, I

11  believe that same interview -- this would be at

12  page 3261, if you can find it, sir.

13      A    I have it.

14      Q    "Since Christmas Day the motion sensor

15  lights were turned off.  No exterior lights were

16  ever turned on."  You see what I'm saying?

17      A    Yes, sir.

18      Q    What other neighbors confirmed that, of

19  the people you talked to, people in the canvas?

20      A    I don't recall in the canvas, but the fire

21  department personnel indicated that when they

22  arrived at the scene there were no -- there were no

23  lights on on the outside of the home.

24      Q    How high up are those lights?

25      A    They're -- what lights?  The motion

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

1    sensor?

2        Q    Yes.

3        A    They're at the eaves of the home.

4        Q    How high is that?

5        A    Eight feet?

6        Q    Within reach of a full-grown man?

7        A    No, sir.

8        Q    Full-grown man can't reach up 8 feet?

9        A    Well then it would be higher than 8 feet.

10    Maybe 10, 11, 12 feet, without -- out of somebody's

11    reach.

12        Q    Somebody with, say, a step ladder reach

13    them?

14        A    Yes, sir.

15        Q    Somebody, say, bring a step ladder over

16    and unscrew the bulbs?

17        A    Yes, sir.

18        Q    Any of the other neighbors confirm that

19    since Christmas Day the motion sensor lights were

20    turned off?

21        A    I don't recall.

22        Q    Or that no exterior lights were ever

23    turned on?

24        A    I -- I'd have to -- I'd have to go back

25    through the canvas.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 254

1      Q    She also stated, I believe at page 3263,
2  that her uncle was the bricklayer for the job at the
3  Munoz house, never got paid for the job.  Do you see
4  what we're talking about?  Middle of the page,
5  Mr. Huerta, H-U-E-R-T-A.
6      A    Oh.  I see it.
7      Q    You went looking for that bricklayer to
8  confirm that; didn't you?
9      A    Yes, sir.
10      Q    And you never found that bricklayer
11 because the address was a vacant lot?
12      A    Well, I believe the bricklayer -- the name
13 of the bricklayer was different that Mr. Munoz gave
14 me.
15      Q    Did you ever find the bricklayer,
16 Mr. Huerta, that supposedly was never paid?
17      A    No, sir.
18      Q    What did you do to try and find him?
19      A    I went on the information that Mr. Munoz
20 gave me, and I couldn't find that -- that
21 bricklayer.
22      Q    Well, what about the information that
23 Mrs. Munoz gave you?  She's accusing Mr. --
24           MR. GARZA:  Mrs. Cavazos.
25      Q    (BY MR. RUSNAK)  I'm sorry, Ms. Cavazos

FRANCESCON REPORTING SERVICE 281-996-7881

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 255

1    gave you -- Mrs. Cavazos is accusing Mr. Munoz of

2    stiffing her uncle.   Surely she knew where her uncle

3    was.

4         A     She probably did.

5         Q     What did you do to find her uncle to

6    confirm that he had not been paid?

7         A     Well, when Mr. Munoz -- when I asked

8    Mr. Munoz who his bricklayer was or who he used as a

9    bricklayer I just -- I tried to find that individual

10   and couldn't find him.

11        Q     Why didn't you try to find the name of the

12   person that was given to you by Mini Cavazos?

13        A     Because I relied on the information by

14   Mr. Munoz.

15        Q     Well, wouldn't Mrs. Cavazos' name be the

16   one you needed to go track down since she gave it to

17   you?

18        A     Well, I figured Mr. Munoz would know who

19   he had used as a bricklayer and -- and Mrs. Cavazos

20   may have thought that it was her uncle and

21   apparently --

22        Q     You never confirmed that Mrs. Cavazos'

23   uncle was unpaid?

24        A     That is correct.

25        Q     Did you ever confirm that Mr. Munoz was

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 256

1    wearing clean, fresh clothes every day since the

2    fire, which is the statement at the top of

3    page 3263?

4        A    I didn't -- I don't recall.

5        Q    Whether you did or you didn't?

6        A    Well, Mr. Munoz never indicated that --

7    Mr. Munoz was always wearing work uniforms, and I

8    didn't have any knowledge that he didn't have any --

9    any clothes that he couldn't wear.

10       Q    So you never confirmed or denied that

11   accusation?

12       A    Well, I -- just because somebody's wearing

13   clean clothes every day that's not real relevant to

14   me.

15       Q    Isn't the accusation she is making that he

16   took clothes out of the house and therefore had

17   them?  And wouldn't that be something you'd want to

18   go check to make sure she wasn't, say, lying to you?

19       A    Well, most people, if they sustained a --

20   a severe fire and their -- and their clothes --

21   their clothes are destroyed, you know, they either

22   go buy some or -- or --

23       Q    Did you check it out?

24       A    I didn't -- I didn't go to any stores, no,

25   sir.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 257

1    Q    Did you check out why Mr. -- why she was
2  claiming he had clean, fresh clothes after the fire?
3    A    That really wasn't a -- a big factor to
4  me.
5    Q    On page 3266 she also said that Luis Munoz
6  leased the truck in a 2-year lease, possibly the
7  lease truck was over mileage, leased truck through
8  Homer Rodriguez Ford.  Did you go check that out?
9    A    I requested documents from Rodriguez Ford.
10   Q    Did you ever get them?
11   A    No, sir.
12   Q    Did you go over there and personally ask
13 for them?
14   A    No, sir.
15   Q    Did you send anybody over there to
16 personally ask for them?
17   A    No, sir.
18   Q    On 6/3/03 you have another interview with
19 Mini Cavazos, full name Minerva Cavazos.  At
20 page 3186 there is a statement, and I'll wait for
21 you to get the document.
22        Have you found the page?
23   A    I'm there right now.
24   Q    3186.  It says, "Wrecker driver said he
25 was there to repossess vehicles belonging to Mr. and

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 258

1    Mrs. Munoz, truck and Mustang.  The driver asked

2    Mrs. Cavazos if Munoz was turning in the two

3    vehicles voluntarily.  Mrs. Cavazos said she did not

4    know anything about the situation."

5                  You see what I just read?

6        A    Yes, sir.

7        Q    That's an accusation that she made

8    concerning Mr. Munoz; is it not?

9        A    That is a -- a statement she made, yes,

10   sir.

11       Q    And what did you do to confirm that she

12   wasn't lying to you?

13       A    I asked Mr. Munoz.

14       Q    You didn't go to Homer Rodriguez and ask

15   him if he was repossessing vehicles?

16       A    That would have been in the request for

17   the records from -- that was specifically requested

18   in the records to Rodriguez Ford.

19       Q    Which you never obtained because you

20   didn't follow up; correct?

21       A    Well, I didn't go over there, no, sir.

22       Q    And it would have been pretty important to

23   know if she was lying to you one or more times in an

24   effort to cast doubt or suspicion on Mr. Munoz and

25   Mrs. Munoz; wouldn't it?

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 259

1    A    Well, it -- it could either be casting
2    doubt or she was just misinformed or uninformed
3    about the agreement on the -- on the pick up.
4    Q    Well, she says here, "Wrecker driver said
5    he was there to repossess."
6              It would be pretty easy to check if
7    somebody actually came to repossess the vehicles.
8    There was supposedly a human being there.  There is
9    no misunderstanding.  Would there be?
10    A    Well, that's -- this is just information
11    that she had -- had provided.  But the records were
12    never provided by Rodriguez Ford to determine one
13    way or the other.
14    Q    You never -- you never went over there
15    yourself or sent Mr. Lerma, Mr. Kemp, Mr. Robinson
16    or Mr. Levo to just go ask?
17    A    That is correct.
18    Q    Now, if you'll look at page 3120.  Tell me
19    when you're there.
20    A    I'm there.
21    Q    This is a part of a 6/22/03 interview with
22    Harry J. Cavazos.  Is it not?
23    A    Yes, sir.
24    Q    And in the middle of the page it says,
25    "Harry and neighbor tried to connect the water hose

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 260

1    in a faucet at the Munoz residence.  They were

2    unable to connect the hose.  Saw a hole in the glass

3    window about the size of a baseball."

4              See where I'm reading from, sir?

5    A    Yes, sir.

6    Q    What window?

7    A    I would have to make an assumption on

8    that.

9    Q    Well, what's your assumption?

10   A    The window near the -- near the fire.

11   Q    A hole big enough to reach through and

12   unlock a window?

13   A    That I don't know.  I didn't see the -- I

14   didn't see the hole.

15   Q    You didn't ask Mr. Munoz the proximity of

16   the hole to the latch?

17   A    No, sir.

18   Q    Isn't it convenient that Mr. Munoz saw a

19   broken window?

20              MR. GARZA:  Mr. Cavazos.

21   Q    (BY MR. RUSNAK)  I'm sorry.  Mr. Cavazos?

22   Isn't that a convenient story, sir?

23   A    No, sir.

24   Q    Why not?

25   A    He -- he can break glass due to a fire.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 261

1       Q     He testified in another statement to the
2   police that he was told by a 911 operator -- rather
3   he stated that he was told by a 911 operator not to
4   try and open a window because it would let air into
5   the fire and might fan it.

6              Do you recall that, sir, from his
7   statement to one of the police officers?

8       A     I would have to look it up.

9       Q     So the answer is you don't recall?

10      A     I don't recall.

11      Q     If it's there it's there?

12      A     Correct.

13      Q     Correct?

14      A     Correct.

15      Q     And on that same page, sir, just above it
16  notes, "Went to H.E.B., went in his brother's truck,
17  came home, Minerva cooked burgers."

18             Did you ask him whether he was using
19  a barbecue or they were cooking inside?

20      A     I -- I don't recall.

21      Q     Now, if you'll go to page 2675.  Tell me
22  when you're there, sir.

23      A     Okay.  Almost there.  Okay.

24      Q     All right.  This is from a 1/28/03
25  interview you conducted with Luis Munoz.  Is it not?

FRANCESCON REPORTING SERVICE 281-996-7881

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 262

1    Is that correct?

2         A    I'm looking at the date, 1/28/03.  Yes,

3    sir.

4         Q    And at the bottom of the page it says,

5    "Harry Cavazos's dad called Mrs. Munoz and said they

6    needed to be careful, not to answer the door and to

7    watch out for themselves, take care of their little

8    boy and not to go outside."

9              You see where I'm reading from at the

10   bottom of the page?

11        A    Yes, sir.

12        Q    Did you or anyone on your behalf ask

13   Mr. Cavazos whether or not that call occurred?

14        A    Could you ask that question again?

15        Q    Yes.  Did any -- did you or anyone else on

16   your behalf, as far as you know, anyone else on

17   State Farm's behalf speak to Mr. Cavazos' dad and

18   ask him why he called or if he called Mrs. Munoz to

19   tell her to be careful, not to open the door, to

20   watch out for themselves, take care of their little

21   boy and not to go outside?

22        A    I don't -- I didn't speak to Mr. Cavazos.

23   I don't know what was asked or said -- well, we do

24   have an interview -- I believe two interviews with

25   Mr. Cavazos, and I will be glad to look those up.

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 263

1      Q    I can give you page and number, and I'll
2    tell you that there is no question asked about that.
3      A    Well --
4      Q    If you'll accept my representation that
5    that wasn't asked.
6      A    I -- I can't because I was not present,
7    and it's not -- it's not --
8      Q    Wouldn't that be something you would check
9    out, important matter, take a recorded statement?
10     A    Mr. Cavazos would not allow a recorded
11   interview.
12     Q    How -- if you weren't there how do you
13   know Mr. Cavazos wouldn't allow a recorded
14   interview?  That is the elder Mr. Cavazos?
15     A    That is correct.
16     Q    He's a former police officer; is he not?
17     A    I'm not aware of that.
18     Q    On page 2677 -- are you there?
19     A    I'm -- 2677?
20     Q    Yes.
21     A    What am I looking for?
22     Q    I just want you to be at the page so I can
23   ask a question.
24     A    Oh.  I was looking for the interview with
25   Mr. Cavazos.

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 264

1   Q    No.  This is the notes from the 1/28/03.

2   A    Because you asked me if -- if Mr. Cavazos

3   was ever asked, and I was going to review that

4   because --

5   Q    Well, we can go back to that.  Let me just

6   go forward with this, page 2677.

7            This is part of your notes from your

8   interview with Mr. Munoz, is it not, on 1/28/03?

9   A    Correct.  I believe it's a continuation.

10   Q    Okay.  And this is your notes concerning

11   the reported confession of arson as I've termed it

12   by Michael Cavazos.  Is it not?

13   A    It's a -- it's a rumor, yes, sir.

14   Q    And that rumor was that he was confessing

15   to committing arson?

16   A    I -- it's just a unfounded rumor that he

17   was bragging about a fire.

18   Q    That he was bragging about starting a fire

19   at the Munoz home.

20            Now, this was communicated to you on

21   1/28/03.  And according to your Entry 176 on the

22   activity log, you did not go attempt to visit

23   Ms. Florez until 9/9/03.  Why did you wait between

24   1/28/03 and 9/9/03 to try and speak to Ms. Florez?

25   A    That is the only -- that's the first

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 265

1    recording of it.  I don't know when the first time I
2    went by was.  But that is -- that is when there is
3    an activity log entered into the log.  I -- I do
4    know I went by the police station and they -- they
5    didn't have any information on that, either.
6         Q    And that was the interview with
7    Mr. Martinez -- rather Detective Martinez?
8         A    I believe so, yes, sir.
9         Q    And that occurred on 8/12, 2004, 1 year,
10   7 months later, according to the simple math.  Is
11   that correct?
12        A    If that's what it figures out, yes, sir.
13        Q    Why did you wait a year and seven months
14   to speak to the police about this report of a
15   confession of arson?
16        A    Well, I -- I had spoken to them before
17   that, but I don't know if that ever came up.  I
18   don't -- I don't recall.  But specifically I asked
19   about that incident, and they didn't have anything
20   to corroborate it.  They also through -- throughout
21   any conversations with them never appeared to me,
22   that I recall, very concerned about the Cavazoses.
23        Q    And if Detective Adame and
24   Detective Martinez deny that you ever spoke to them
25   about this matter, do you know why they would be

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 266

1    denying that?

2        A    No, sir, I do not.

3            MR. RUSNAK:  Gentlemen, I'm going to

4    ask you to hold for one moment while I consult with

5    my co-counsel.  We may be at the end here.  One

6    second, please.

7            MR. TAYLOR:  Yeah.  We'll wait a

8    minute.

9            (Short recess.)

10           MR. RUSNAK:  Gentlemen, no further

11   questions at this time.

12           MR. TAYLOR:  Okay.  We'll reserve our

13   questions.  And, David, I appreciate you finishing

14   out today.

15           MR. RUSNAK:  You're welcome.

16           (Conclusion of the deposition.)

17

18

19

20

21

22

23

24

25

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 267

1              CHANGES AND SIGNATURE OF THOMAS LEE REED

2                      TAKEN OCTOBER 21, 2005

3      PAGE    LINE    CHANGE                        REASON

4      _____

5      _____

6      _____

7      _____

8      _____

9      _____

10     _____

11     _____

12     _____

13     _____

14     _____

15     _____

16     _____

17     _____

18     _____

19     _____

20     _____

21     _____

22     _____

23     _____

24     _____

25     _____

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 268

1     I, THOMAS LEE REED, have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.

4

5

6                                    _____
                                     THOMAS LEE REED

7

8  THE STATE OF TEXAS          )
9  COUNTY OF _____  )

10

11     Before me, _____, on this
12  day personally appeared THOMAS LEE REED known to me
13  (or proved to me under oath or through
14  _____) (description of identity card or
15  other document) to be the person whose name is
16  subscribed to the foregoing instrument and
17  acknowledged to me that they executed the same for
18  the purpose and consideration therein expressed.
19     Given under my hand and seal of office this
20  _____ day of _____, _____.

21

22                                   _____
                                     NOTARY PUBLIC IN AND FOR
                                     THE STATE OF _____
23

24

25  My Commission Expires _____

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 269

1   STATE OF TEXAS        )
    COUNTY OF HARRIS      )
2

3                  REPORTER'S CERTIFICATION
                   TO THE DEPOSITION OF
4                     THOMAS LEE REED
                  TAKEN ON OCTOBER 21, 2005
5

6        I, Stacy L. Thomas, Certified Shorthand Reporter
7   in and for the State of Texas, hereby certify that
8   this deposition transcript is a true record of
9   the testimony given by the witness named herein,
10  after said witness was duly sworn by me.
11       I further certify that I am neither attorney
12  nor counsel for, nor related to, nor employed by
13  any of the parties or attorneys in the action in
14  which this proceeding was taken.  Further, I am
15  not a relative or employee of any attorney of
16  record in this cause, nor do I have a financial
17  interest in the action.
18       Certified to by me this _____ day of
19  _____, _____.
20

21

22                    _____
                      Stacy L. Thomas, Texas CSR 7015
                      Expiration Date:  12/31/2006
23                    FRANCESCON REPORTING SERVICE
                      CRCB Registration Number: 208
24                    1506 East Broadway, Suite 200
                      Pearland, Texas  77581
25                    (281) 996-7881

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 270

1        IN THE UNITED STATES DISTRICT COURT
                    SOUTHERN DIVISION
2                 BROWNSVILLE DIVISION

3    LUIS C. MUNOZ AND CARMELA     :
     MUNOZ,                        :
4                                  :
              Plaintiffs,          :
5                                  :
     V.                            :   CIVIL ACTION B-04-141
6                                  :
     STATE FARM LLOYDS             :
7                                  :
              Defendants.          :
8

9

         CERTIFICATE TO THE ORAL DEPOSITION OF
10
                   THOMAS LEE REED
11
               TAKEN OCTOBER 21, 2005
12

13       I, Stacy L. Thomas, a Certified Shorthand
14   Reporter in and for the State of Texas, hereby
15   certify pursuant to the Federal Rules and/or
16   agreement of the parties present to the following:
17       That this deposition transcript is a true
18   record of the testimony given by the witness named
19   herein after said witness was duly sworn by me;
20       That the amount of time used by each party
21   at the deposition is as follows:
22       Mr. David L. Rusnak, Attorney for
23   Plaintiffs - 2:25;
24       That a copy of the deposition transcript along
25   with the original changes and signature pages was

4a174834-97cd-4c52-bab4-d84042694db4

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 271

1    submitted on _____ to the attorney

2    for the witness for examination, signature, and

3    return of the original changes and signature pages

4    to FRANCESCON REPORTING SERVICE, by

5    _____;

6         That the original changes and signature pages

7    were/were not returned to the deposition officer.

8    All changes made by the witness, if any, are attached

9    hereto;

10        That on _____ the original deposition

11   transcript, or a copy thereof, together with copies

12   of any exhibits was delivered to the custodial

13   attorney, attorney for plaintiffs;

14        That pursuant to information given to the

15   deposition officer at the time said testimony was

16   taken, the following includes all parties of record:

17             Mr. David L. Rusnak, Attorney for

18   Plaintiffs

19             Mr. Gustavo Garza, Attorney for

20   Plaintiffs

21             Mr. Warren Taylor, Attorney for

22   Defendant;

23        That a copy of this certificate was served on

24   all parties shown herein.

25

Deposition of Thomas Lee Reed, Volume 2, taken on October 21, 2005

Page 272

1

2          Certified to by me this _____ day of

3    _____, _____.

4

5

6                    _____

7                    Stacy L. Thomas, Texas CSR 7015
                     Expiration Date:  12/31/2006
                     FRANCESCON REPORTING SERVICE
8                    CRCB Registration Number: 208
                     1506 East Broadway, Suite 200
9                    Pearland, Texas  77581
                     (281) 996-7881

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4a174834-97cd-4c52-bab4-d84042694db4