1
2
3

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 0 6 2006

Michael N. Milby
Clerk of Court

```
                                    )
4   LUIS C. MUNOZ AND CARMELA MUNOZ )
              Plaintiffs,           )
5                                   ) CIVIL ACTION NO.
    VS.                             ) B-04-141
6                                   )
    STATE FARM LLOYDS               )
7               Defendant.          )
                                    )
```

PRETRIAL CONFERENCE
BEFORE THE HONORABLE HILDA G. TAGLE
OCTOBER 25, 2004

APPEARANCES:

For the Plaintiffs:          MR. GUSTAVO CH GARZA
                             Attorney at Law
                             705 West Hwy. 100
                             Los Fresnos, Texas   78566
                             (956)233-5614

For the Defendant:           MR. WARREN ROYAL TAYLOR
                             Taylor and Taylor
                             815 Walker, Suite 250
                             Houston, Texas   77002
                             (713)615-6060
                                  - AND -
                             MR. RENE O. OLIVEIRA
                             Roerig Oliveira & Fisher
                             855 West Price Road, Suite 9
                             Brownsville, Texas   78520
                             (956)631-8049

Transcribed by:              HEATHER HALL
                             Official Court Reporter
                             600 East Harrison, Box 16
                             Brownsville, Texas   78520
                             (956)548-2510

Proceedings recorded by mechanical stenography, transcript
produced by computer.

**ORIGINAL**

1          *(Call to Order of the Court.)*

2          THE COURT:  Good morning.  Please be seated.  All right.

3     I'll call 04-CV-141, *Luis C. Munoz and Carmela Munoz versus*

4     *State Farm Lloyds of Texas.*

5          Counsel, those of you who are here asking to be heard,

6     please announce your name for the record and whom you represent.

7          MR. GARZA:  Good morning, Your Honor.  Gustavo Garza for

8     the Munozes.

9          MR. TAYLOR:  Your Honor, I'm Warren Taylor for

10    State Farm.

11         MR. OLIVEIRA:  Good morning, Your Honor.  Rene Oliveira

12    for State Farm.

13         THE COURT:  All right.

14      And, Mr. Taylor, will it be you or Mr. Oliveira who will be

15    addressing the Court on behalf of State Farm?

16         MR. TAYLOR:  This morning that would be me, Your Honor.

17         THE COURT:  All right.  And then the other individuals

18    named, I guess for the time being are you going to be addressing

19    the Court on their behalf or on behalf of State Farm in

20    connection with them?

21         MR. TAYLOR:  Your Honor, we filed a motion to have them

22    dismissed as defendants, and if the Court wants to hear that

23    this morning, I would be addressing that.

24         THE COURT:  All right.

25      Mr. Garza, let me first ask you some questions if you'll

1    take your place at the lectern.

2        And please be seated.

3        Does State Farm and the Court have your current address,

4    please?

5            MR. GARZA:   I believe so, yes, Your Honor.

6            THE COURT:   Okay.  Because I think that from what I hear

7    or what I read there seems to be a problem with having received

8    things or things being sent to you.  But you have an address

9    that's been updated and a current fax number as well?

10           MR. GARZA:   Yes, ma'am.

11           THE COURT:   Okay.  And also, can you tell me:  What

12   claims in your amended state petition are you relying on to

13   apply to the individual defendants or that can be -- something

14   that can be construed -- tell me what can be construed as a

15   claim against one or more of these individual defendants.

16           MR. GARZA:   Yes, ma'am.  Your Honor, this case arises

17   out of a fire at the home of Mr. and Mrs. Munoz's home on

18   January the 1st, 2003.  Mr. Munoz had a policy of insurance

19   insuring against fire paid up to then, and State Farm proceeded

20   to investigate the claim with regards as to whether they were

21   going to pay on the damages or not.  And that process, till now,

22   has not been determined.

23       Mr. Munoz came to me about nine or ten months after the fire

24   because according to him State Farm had been very dilatory.  He

25   claimed that he had provided State Farm anything they had asked

1  for, had signed authorization documents so they could get

2  records from IRS, whatever they needed, had given them numerous

3  statements, had provided all of his employees for State Farm and

4  their agents to investigate and interview, and frankly it got to

5  the point where he was exasperated and came to me.

6       We looked at the policy, and we communicated with State Farm

7  and inquired as to why they wanted his business income tax

8  returns.  They responded that they were looking at the financial

9  bases.  It was clear that State Farm was considering Mr. Munoz

10  having set his house on fire because of his financial situation.

11  So we made arrangements for State Farm to meet with Mr. Munoz's

12  bookkeeper, a lady by the name of Karen Barnett.

13       THE COURT:  Karen what?

14       MR. GARZA:  Barnett.  And we drove the agents to

15  State -- to Ms. Barnett's office.  On that day, which was

16  February 12th of 2004, Tom Reed, State Farm's lead investigator

17  or lead adjustor, and myself drove to Ms. Barnett's office and

18  found out that Mr. Munoz's income tax returns for '99, 2000,

19  2001 and 2002 had not been prepared or filed.

20       We continued to communicate with State Farm, and they still

21  insisted on getting records about his business so we put

22  together numerous receipts -- boxes of receipts that he had kept

23  for the previous four years.  We organized them by month and by

24  year, and then we wrote to State Farm and advised them, "Here

25  are the receipts.  Since we don't have the income tax returns

1    and you are questioning whether Mr. Munoz was in business and

2    was profitable, you can come look at his receipts."

3        After -- after they found out that State Farm -- that

4    Munoz's income tax return had not been filed, Tom Reed came to

5    my office, met -- went through all the receipts two, three

6    hours, and then asked for copies of everything.  At that time

7    they had an issue -- State Farm had an issue whether or not

8    Mr. Munoz was actually working on the date of the fire, which

9    was January 1st, 2003.

10        I provided Mr. Reed with affidavits from the lady living in

11    the home that was repaired, the man who hired him to repair the

12    roof and the man who paid him for that roof repair, and Mr. Reed

13    still insisted on getting copies of all of his receipts.  At

14    that time I became upset, and I said, "We don't -- we're not

15    obligated to give you copies.  Bring your person that I, you

16    know, approve of.  Bring him here and they can make copies, but

17    I'm not going to give you all these receipts for you to take and

18    do as you please."  And it was clear to me that there -- it was

19    a delay.

20        Subsequent to that, Mr. Munoz's rent check, his cost of

21    living expense that State Farm was paying under the contract for

22    Mr. Munoz and his family to rent a home and, you know, live

23    while State Farm decided whether to pay the claim or not, that

24    was levied on by IRS.  And when we received the -- the notice of

25    levy from IRS, we noticed that on that levy was his State Farm

6

1   insurance policy, his claim policy and pertinent information

2   that could have only come from State Farm.

3       At that point Mr. Munoz and I decided that, you know, we

4   were waiting in vain.  I filed a petition -- a simple petition

5   alleging breach of contract, and I filed it in district court in

6   the 357th in Willacy County on May 11th, 2004.  I sent a

7   certificated copy to State Farm's attorney, Mr. Lawrence Kurth.

8   He received it on May 13th, 2004.

9       THE COURT:  Let me ask you -- you really haven't

10  answered my question, but I've allowed you to -- you know,

11  latitude so that you can maybe fill in some of the things that I

12  had questions about, and you're -- I guess you're getting to the

13  point where I am going to find out.  But the thing that I also

14  want for you to touch on is:  Has there been a formal

15  prosecution filed against your client by Willacy County DA?

16      MR. GARZA:  Formal, no, ma'am.

17      THE COURT:  Formal -- tell me informal then.

18      MR. GARZA:  Informal, yes, ma'am.

19      THE COURT:  Tell me about that.

20      MR. GARZA:  He was investigated by the police

21  department.  He was questioned.  He was polygraphed.  His

22  employees were questioned.  They examined his home.  They

23  brought in fire investigators, fire marshals, and at one time he

24  was threatened with indictment and arrest.

25      And -- and I'm sorry that I'm taking a long time, but the

1   facts have evolved this way.  We filed a petition and we sent it
2   to Mr. Kurth saying, "Look.  We're willing to settle, just pay
3   the claim."  We never got any response.  No -- not a response.
4            THE COURT:  Okay.  Well, in connection with that, was
5   Mr. Kurth --
6            MR. GARZA:  Kurth.
7            THE COURT:  -- Kurth someone you had been negotiating
8   with or in contact with on behalf of State Farm?
9            MR. GARZA:  Yes, ma'am.  Yes, ma'am.  He had already
10  taken my client's sworn statement.  According to the policy,
11  they call the deposition a statement under oath.  But he had
12  already taken a lengthy deposition of both Mr. Munoz and
13  Mrs. Carmela Munoz.
14           THE COURT:  Well, it seems to me that -- was it a
15  face-to-face because usually the claims adjusters are the ones
16  that telephonically sometimes take a statement?  But this was an
17  attorney?
18           MR. GARZA:  This was an attorney, and both Mr. Munoz and
19  Carmela Munoz had already provided several interviews and
20  recorded -- tape-recorded discussions with Mr. Tom Reed.  When
21  State Farm asked for the sworn statement, I asked State Farm,
22  "Well, go ahead and transcribe all the recordings you already
23  have.  Send them to us, and we'll serve it to them."  They
24  didn't do that.  They sent me 15 or so cassettes of
25  conversations that Tom Reed and other agents had had with

1  Mr. Munoz and Mrs. Munoz.

2      So after I filed the petition, I sent it to Mr. Kurth, and I

3  have no word.  "I received your petition.  I'm going to deny it.

4  We're not going to pay."  We didn't receive any word whatsoever,

5  so I started --

6          THE COURT:  How much time had elapsed between the time

7  that you had last spoken to this attorney and the time that you

8  attempted service by sending him a copy of the petition?

9          MR. GARZA:  I would say no more than two weeks,

10  Your Honor, because we met in my office.  He took the deposition

11  in October, I believe, of 2003, and then we communicated

12  regarding the income tax returns.  We finally determined that

13  they did not exist, so I offered for them to review the

14  receipts.  That review happened after February 12th of 2004, and

15  we kept communicating in writing.  So after I filed the petition

16  and I hear no answer then, you know, I'm wondering, well, what

17  is it that State Farm has?

18          THE COURT:  And let me ask you:  Is there any reason

19  that you did not serve State Farm by serving their registered

20  agent for service?

21          MR. GARZA:  The -- what I did, Judge, is this:  I filed

22  the petition.  I sent it to him certified mail.  And I believe

23  in my letter I indicated, "If you call me within ten days and we

24  settle it, then I won't serve everybody else."  I believe that's

25  the gist of my letter.

1      Having not heard anything from State Farm, then it occurred

2   to me that State Farm's defense was that Mr. Munoz was going to

3   be indicted for arson.  So I proceeded to the police station,

4   spoke to the officers, spoke to the chief, and sure enough

5   State Farm Agent Tom Reed had been to the police station, had

6   shared information, had taken photographs.  I have an affidavit

7   from Police Chief Uvaldo Zamora that talks about that.

8      When that happened, then I took my client to the police

9   station, and I told the chief and the chief investigator,

10  "Here's my client.  Whatever you-all need, if you want a

11  document, you want a statement, you want to polygraph again,

12  whatever you-all need, let's get it done.  This thing has

13  protracted too long.  My client's already got a divorce.  His

14  wife already left him.  Part of the divorce was because of this

15  unstable situation, and she blames him for something that

16  Tom Reed told her."

17      According to Ms. Munoz -- Mrs. Munoz, Tom Reed told her,

18  "What makes you think that your husband didn't burn down the

19  house?"  So at that point we decided that State Farm was not

20  going to respond to the petition, and we started to prepare our

21  amendments.  We also realized that Tom Reed had been meeting

22  with IRS Agent Pedro Suarez, had --

23      THE COURT:  I'm sorry.  Repeat that part again.

24      MR. GARZA:  We realized that Thomas Reed, the lead

25  adjustor for State Farm, had met -- we suspected had met -- with

1    IRS Agent Pedro Suarez, had divulged information that pertained

2    to Mr. Munoz, and that information was then used by Mr. Suarez

3    to levy on some tax deficit that Mr. Munoz had, which we already

4    knew because all of us had learned that his income tax returns

5    were not filed on February 12th, 2004.  And it wasn't anything

6    we were keeping from State Farm.  It was a problem between

7    Mr. Munoz and his bookkeeper.

8        So what we have that defeats the allegation that Tom Reed

9    and Mr. Robinson and the other agents were fraudulently joined

10   is that we expect to allege slander, malicious prosecution and

11   abuse of process.  We feel that we're going to show that

12   Mr. Reed met with Pedro Suarez -- and as we speak right now I've

13   already sent a criminal information disclosure to IRS and

14   Nancy Williamson in Austin, and she's supposed to send me some

15   records.  I can't tell the Court what the records are because

16   they're not going to tell me over the phone, but she did ask

17   that I ask for them certified, which I did.

18       THE COURT:  These were facts that were known to you

19   before that -- you filed this petition?

20       MR. GARZA:  No, ma'am.  No, ma'am.  I filed the

21   petition.  I waited for their response and had no word from

22   them, so it made me wonder:  What is it that State Farm has that

23   they're so strong that they don't even have to acknowledge my --

24   my request?

25       THE COURT:  Okay.  Let me ask you this:  So now is the

1    Willacy County District Attorney giving you an indication

2    whether this is a case that could be indicted, they anticipate

3    getting -- presenting for indictment or whether they are totally

4    not going to do anything with it?

5         MR. GARZA:  My client has been no-billed, Your Honor.

6    After I met with the police chief and his investigators and the

7    chief fire marshal out of Austin that was investigating this

8    case and I produced my clients -- and they, in fact, did

9    polygraph Mrs. Munoz after that meeting.  I had asked that

10   whatever they do they move on it and not sit on it.

11        They did.  The police chief and the DA called for the case.

12   District Attorney Juan Angel Guerra presented the case to the

13   grand jury, and on June 14th, I believe -- I have a letter from

14   him in my file -- he told me or he wrote to me that the grand

15   jury had no-billed Mr. Munoz because there was no evidence of

16   him committing the arson.

17        THE COURT:  Okay.  Let me ask you one more -- about one

18   more name.  The name Fred J. Marsh is listed as the defendant's

19   attorney for service.  Who is that person?

20        MR. GARZA:  He is their service agent that we were able

21   to get off the records, and I asked my secretary to call and --

22   call State Farm and find out who was their service agent, and

23   it's supposed to be a person in Dallas.

24        THE COURT:  Okay.  Now he was listed, then, in your

25   original petition as well --

1      MR. GARZA:  Yes, ma'am.

2      THE COURT:  -- and -- but the -- you did nothing to

3  attempt to effectuate service on him.  You only sent the

4  petition to the person you had been dealing with; is that right?

5      MR. GARZA:  With their attorney of record,

6  Mr. Lawrence Kurth, that's correct.  And all of that was in an

7  effort to settle the case and not to proceed with any litigation

8  because I feel that my letter was clear.  I filed the petition.

9  You know, "You-all have" --

10      THE COURT:  I understand.

11      MR. GARZA:  -- "delayed.  We'll settle within ten days.

12  You know, pay us $300,000" --whatever I asked for -- "and we

13  won't serve."

14      THE COURT:  And just one more bit of information.  The

15  petition, was it a copy that was shown to be stamped as filed

16  with the clerk's office?

17      MR. GARZA:  I'm sorry, Your Honor?

18      THE COURT:  The copy that you sent to the attorney, was

19  it a copy of a petition that had showed a stamp mark as having

20  been filed with the clerk's office?

21      MR. GARZA:  Yes, ma'am.  Yes, ma'am.

22      THE COURT:  All right.  Anything else you want to tell

23  me, Mr. Garza?

24      MR. GARZA:  Yes, Your Honor.  I feel that State Farm's

25  motion to remove was untimely.  I feel that it was not, you

1  know, on a fraudulent joinder.  I think that that's erroneous.

2  We filed our petition on May 11th.  We served it according

3  to Rules of Civil Procedure 21A by certified mail, return

4  receipt requested, on their attorney.  He received it.

5  THE COURT:  Okay.  By the way, how do you know that he

6  received it?

7  MR. GARZA:  I have the -- I have the returns, which I

8  believe I attached to my -- our motion, and I have my --

9  THE COURT:  Okay.  Let me ask you this:  Under what

10  theory is it -- are you entertaining the possibility of bringing

11  a class action?

12  MR. GARZA:  I have -- I have not entertained that

13  possibility, Your Honor.  I have said that that is undetermined

14  because I don't have enough facts, and the initial projection in

15  my mind was to file the petition, serve, take some

16  depositions -- take the deposition of Tom Reed, get his file and

17  see why he did what he did with Mr. Munoz because Tom Reed knew

18  clearly that on the date of the fire Mrs. Munoz and their son

19  were in Florida vacationing, and he knew that Mr. Munoz was

20  barbequing in his shop -- in his construction shop with his

21  brother and other employees.  And they've interviewed all of

22  those people and there's no connection.

23  THE COURT:  Okay.  Also -- so let me just clarify this.

24  So although the individual defendants were listed in your

25  original petition, you did not become aware of facts that you

| | |
|---|---|
| 1 | are now -- you know, are reciting to me as a basis for liability |
| 2 | against them; that is, slander, malicious prosecution, and you |
| 3 | listed something else and I -- and I've forgotten it. |
| 4 | MR. GARZA:  Abuse of process. |
| 5 | THE COURT:  Abuse of process. |
| 6 | MR. GARZA:  I became aware of the malicious prosecution |
| 7 | and the abuse of process after -- |
| 8 | THE COURT:  Well, you haven't answered my question.  My |
| 9 | question was:  Although those individual defendants were listed |
| 10 | in your original petition, you did not become aware of facts |
| 11 | that would, in your mind, give rise to claims against them for |
| 12 | malicious prosecution, abuse of process and slander until |
| 13 | sometime thereafter? |
| 14 | MR. GARZA:  No, ma'am.  Mrs. Munoz had already told me |
| 15 | early on that Mr. Reed had -- had basically stated that her |
| 16 | husband had set fire to her house, so we had a basis for the |
| 17 | slander. |
| 18 | THE COURT:  Okay.  But you did not allege that in your |
| 19 | petition? |
| 20 | MR. GARZA:  No, ma'am.  We did not, no. |
| 21 | THE COURT:  Okay.  And other persons who were listed, |
| 22 | Bryan Robinson, Greg Drott, Lee Olivo and Mark Brown, you've not |
| 23 | mentioned them.  You've mentioned Tom Reed. |
| 24 | MR. GARZA:  Lee Olivo, Your Honor, was the very first |
| 25 | adjuster that appeared at the scene of the fire.  Lee Olivo's |

1    history is that he had dealt with Mr. Munoz previously.  And as

2    a little background, State Farm's position with the police

3    department was that Mr. Munoz had established a pattern and

4    practice of filing claims against the insurance policy and --

5    and that he had a motive.

6         Lee Oliva had -- had investigated and resolved one or two

7    claims that Mr. Munoz had filed, Your Honor.  One of them was a

8    stove that had burned in his home.  And Mr. Munoz had bought the

9    stove, you know, a very recent purchase.  They had a

10   Thanksgiving meal, and the stove or the oven caught on fire.

11   And that stove is still in his -- in his shop.  State Farm paid.

12        The other claim -- the other was Mr. Munoz and his wife and

13   his son were asleep in their home, and in the backyard they had

14   a shed that was about 20 or 30 feet -- this is on a city lot --

15   behind their home, and it was set on fire and it burned down to

16   the ground.  Mr. Olivo resolved that for him, paid him $2,700

17   for it.

18             THE COURT:  Okay.  What about Mark Brown?  Who is he?

19             MR. GARZA:  Mark Brown in the local agent who sold the

20   policy.

21             THE COURT:  Okay.

22             MR. GARZA:  And the reason why he is named, Your Honor,

23   is because State Farm supposedly is claiming that Mr. Munoz was

24   going to make a lot of money off his claim.  The facts are that

25   Mr. Munoz had bought this house in 1990.  It was a small 1,000

1    frame [sic] home.

2        He himself -- he's a roofing construction business person.

3    He remodeled it into a $150,000 home or whatever with tile roof

4    or, you know, cantera columns and so forth, expanded it, you

5    know, quite a bit.  Mr. Mark Brown -- and he's a good agent --

6    drove by, saw that Mr. Munoz had remodeled his home and

7    suggested, "You know, you need to upgrade your policy."  Because

8    of the insistence of Mark Brown, Mr. Munoz eventually went and

9    upgraded his policy.

10        THE COURT:  Okay.  What about Greg Drott and

11   Bryan Robinson.

12        MR. GARZA:  Greg Drott was a person in Corpus Christi

13   who wrote Mr. Munoz letters telling him that State Farm had not

14   determined whether to pay on the claim.  They were going to

15   continue to investigate, and they were requesting more

16   information.  He was acting more as a supervisor in my

17   opinion -- I may be totally wrong -- for Tom Reed.

18        And the other individual, Mr. Robinson -- once Mr. Olivo

19   initiated the investigation and was removed or replaced by

20   Mr. Reed, Mr. Robinson was the other agent who came and

21   interviewed Mr. Munoz's employees and questioned them, whether

22   or not Mr. Munoz owed them any money, whether he would pay them,

23   whether he had burned his house down, whether he had asked for

24   help to burn his house down and so forth.

25        THE COURT:  Okay.  Thank you.

1        Mr. Taylor?

2            MR. TAYLOR:  Yes, Your Honor?

3            THE COURT:  Why don't you tell me, you know, anything

4    you wish to respond -- any information that you wish to give me

5    in response to what's been said or that you are urging as a

6    basis for the motion to dismiss.

7            MR. TAYLOR:  Yes, Your Honor.  I apologize for my voice.

8    First of all, none of the facts that Mr. Garza has given this

9    morning are in the petition.  The Court asked what allegations

10   are actually in the petition.  The answer is none.

11       As to any of the individual defendants, he stated on the

12   record that he claims to be aware of facts as to Mr. Reed,

13   Mr. Drott and Mr. Brown that were known to him before May when

14   he filed the petition where he could have had the opportunity to

15   actually name facts as to them, but he chose not to do so.

16       Secondly, this is the amended petition.  We removed on the

17   amended petition, so Mr. Garza has had the opportunity twice to

18   plead a cause of action against the individual defendants, which

19   he has not done.  The Court asked a question about Mr. Kurth.

20   The policy contains a provision requiring the insured to provide

21   an examination under oath.  Typically the insurance company --

22   and I've been asked to do this myself -- will retain an attorney

23   to take the examination.  The attorney will frequently ask for

24   documents similar to a subpoena duces tecum.  That was done in

25   this case, and Mr. Kurth did do some follow-up to try to get

1    those documents.

2        Mr. Kurth was not an all-purpose attorney for the company.

3    He was retained for a very limited purpose, and Mr. Marsh is the

4    individual on file of record as the designated agent for service

5    of process.  We cited to the Court the *Murphy* case, that the

6    30 days runs from actual service, not from a courtesy copy as

7    alleged by Mr. Garza.  And so simply because he even till to

8    today has yet to file a pleading alleging anything against the

9    individual defendants and because the removal was timely, the

10   Fifth Circuit has held that diversity is determined by the facts

11   at the time of the removal.

12       And the facts at the time of the removal are:  Nothing has

13   been pled against the individual defendants, so we would urge

14   the Court -- our motion to dismiss the individual defendants was

15   filed on September the 3rd.  It's never been responded to, so we

16   would ask the Court to grant the 12B6 motion dismissing the

17   nominal defendants, deny the motion to remand and enter a

18   scheduling order.

19           THE COURT:  All right.

20       Mr. Garza, anything else you wish to say to the Court?

21           MR. GARZA:  Your Honor, I don't believe I received

22   Mr. Taylor's motion to dismiss that he's talking about.  We've

23   communicated.  We've got the addresses correct this time, and I

24   don't believe I've received that.  I have not seen it.

25       As far as the attorney for State Farm, it was represented to

1    us that Mr. Kurth was the attorney for State Farm.  He took a

2    sworn deposition with a court reporter, requested documents, and

3    the whole purpose was for them to determine whether they were

4    going to pay on the claim -- or decide the claim one way or

5    another.

6        He was served according to Texas Rules of Civil Procedure

7    21A.  Very clearly it says that it can be done by certified

8    mail, return receipt requested.  Their removal is untimely.

9        I haven't amended because my strategy was to file it, get

10   their attention, settle it, and if it wasn't going to happen,

11   then take some depositions and have the facts established

12   instead of just allegations.  That's been my -- my theory.

13   That's been my intent.  You know, unfortunately State Farm chose

14   to move to remove me to federal court, and that stopped

15   everything.

16       THE COURT:  Let me ask you something before I forget.

17   You indicated that your clients are divorced.  Do you see any

18   potential conflict of interest for you to represent both the --

19   you know, both of these ex-spouses given that, you know,

20   conceivably -- I'm not saying that that's the case -- that one

21   of them could be an innocent person and that somebody who if, in

22   fact, the evidence is convincing enough to -- for a tryer of

23   fact was responsible for intentionally setting the fire that

24   representing two people whose interest compete could be a

25   conflict of interest for you?

1    MR. GARZA:  I don't see any at this time, Judge.  The

2    evidence -- and State Farm has had opportunity to develop this

3    and have interviewed many witnesses -- show that there was no

4    financial need for Mr. Munoz -- Mrs. Munoz was in Florida

5    vacationing with her son.  He was at another location working.

6    They've already --

7        THE COURT:  That's not -- that's not -- it's not up to

8    State Farm to make that determination.  It's for you to

9    determine because it seems to me at the very beginning you

10   mentioned something about the divorce, you know, having maybe

11   some issue regarding, you know, whether he might have done

12   something improper.

13       I mean, maybe I misunderstood all together, but the fact of

14   the matter is that if, you know, ethically for you you've got

15   someone who was physically not here who could conceivably claim

16   that she had no knowledge of anything that was transpiring here

17   on sight and there's a question about whether the husband, you

18   know, might have been -- I'm not saying that he is.  I'm just

19   saying that he might have been responsible, and to that extent,

20   if he was and a tryer of fact would be convinced that he was,

21   that his actions would be detrimental to any recovery by --

22   possibility of recovery by a spouse who was not present.

23       I mean, I understand you can be not present and still be

24   involved in wrongdoing by long distance or, you know, by

25   preplanning or, you know, by electronic means.  But, I mean, do

```
1    you see that -- in your mind have you considered that someone

2    who would have been -- otherwise been able to recover but for

3    the guilty -- or the criminal actions of a spouse, that there

4    might be competing interests in those two people's claim against

5    an insurance company or in the form of a cross claim or a

6    counter -- well, no, I guess it would be a cross claim bringing

7    in, you know, the --

8          MR. GARZA:  Honestly, Your Honor, I have not thought

9    about the conflict in a lot of detail and depth.  Both my

10   clients have assured me that they had nothing to do with causing

11   the fire.  We've made everything that we know available to the

12   proper authority, which was the Raymondville Police Department

13   and the district attorney.  And Mrs. Munoz has never been

14   accused or charged, although she was polygraphed, and Mr. Munoz

15   has already been no-billed.  And Mr. Juan Guerra, the district

16   attorney for Willacy County, wrote a statement -- a letter that

17   he found no evidence that Mr. Munoz was involved.

18         THE COURT:  Okay.

19         MR. GARZA:  But if it arises, I have no problem asking

20   her to go get somebody else.

21         THE COURT:  And just disabuse me of this.  Did I

22   misunderstand at the very beginning that you made some mention

23   about their -- you know, the divorce maybe having had its origin

24   in these problems that began with that fire?

25         MR. GARZA:  What I mentioned, Judge, was that in
```

1   Mr. Munoz's complacency with State Farm and doing whatever they

2   asked and in the many interviews of Mrs. Munoz, it's our

3   allegation and we intend to prove that Tom Reed basically

4   planted a bad seed in her mind -- in Mrs. Munoz's mind.  "How

5   are you so sure -- how you can be so sure that your husband

6   didn't set the house on fire?"  And ten months later, 11 months

7   later she filed for divorce.  In early 2004 she actually did get

8   a divorce.

9         THE COURT:  Okay.  And, also, is it -- is there any

10   problem in your mind in having filed a verification of

11   jurisdiction and amended motion to remand that -- in effect that

12   to you would be abandoning your claim that notice of removal was

13   not timely?

14         MR. GARZA:  I believe that -- that our amended pleading

15   alleges also that their -- their removal was untimely.  And I'm

16   familiar with their *Murphy* case that they cite, and I agree that

17   the *Murphy* case says it must be served.  But our facts show that

18   Mr. Kurth was, in fact, served.

19         THE COURT:  Okay.

20      Well, I'm concerned about Mr. Garza's having said that he's

21   not received a copy of the motion to dismiss, and so I'm going

22   to ask you to provide him a copy.  And I'll give him time to

23   respond, and then I'll just have to take your motion to dismiss

24   under advisement.  And, of course, then from there would flow my

25   ruling on the motion to remand.

1          All right.  And so are you going to give him a copy today so

2   I can note the 20-day period to respond -- or actually,

3   Mr. Garza, by when you could respond?

4          MR. GARZA:  As soon as I get it and start looking at it,

5   Judge.

6          MR. TAYLOR:  May I address the Court?

7          THE COURT:  Yes.  Well, Mr. Garza.  He's the one who

8   needs the motion.

9          MR. TAYLOR:  Yes, Your Honor.  I just want to the record

10  to reflect that I'm handing him a copy of the motion as we

11  speak.

12         THE COURT:  All right.

13     And so you're going to file the response no later than

14  November 15th, Mr. Garza?

15         MR. GARZA:  Yes, ma'am.

16         THE COURT:  All right.

17     Anything else either one of you needs to tell me?

18     Yes.

19         MR. TAYLOR:  I apologize, Your Honor.  Just for

20  completion of the record, our records indicate that we served

21  Mr. Garza at the address that we had at that time.  We've since

22  filed two pleadings that he does have that refer to that motion?

23  Today was the first day I was aware that he didn't have it, so

24  he has it now.  But I just wanted the Court to know we did serve

25  him.

1          THE COURT:  Okay.

2      Mr. Garza, did you receive this motion before?

3          MR. GARZA:  Your Honor, I -- I recall reading in one of

4  his documents to me -- I'll tell you -- I'm sorry.  Excuse me.

5  When we were talking about the conference, the initial

6  conference, in there I -- I had an issue with the motion to

7  remand back to state court, and I noticed that Mr. Warren had an

8  issue -- a pending motion, a motion dismiss.  And I made a note

9  in my mind that I had not received it and I hadn't seen it,

10  and --

11          THE COURT:  Okay.  That's fine.  You represented that

12  you haven't gotten it.  I'm going to rely on that.

13      All right.  Then unless there's something further, you're

14  excused and we're in recess in this case.  Thank you.

15          MR. TAYLOR:  Thank you.  May I ask one more question,

16  Your Honor?

17          THE COURT:  Yes.

18          MR. TAYLOR:  Will the Court be entering a scheduling

19  order at this time?

20          THE COURT:  Let me get the response and then,

21  thereafter, I will give you whatever time line you may need.

22  Thank you.

23          MR. OLIVEIRA:  Your Honor, may I approach?

24          THE COURT:  Yes.

25          MR. OLIVEIRA:  Your Honor, I know the Court doesn't have

1    to be concerned with my legislative duties, but if -- we have

2    asked I think for a fall trial date.  That will, I think, work,

3    and if the Court does enter a scheduling order without us having

4    a hearing, just for the record I wanted to say September and

5    October looked good and hopefully Governor Perry won't be

6    keeping us up there all next year.  I know the Court doesn't

7    have to defer to that, but I wanted to make a personal plea.

8            THE COURT:  Okay.  And, also, if y'all at this point in

9    time are -- got some dates that we could plug in, I mean, we

10   could even give you I guess a scheduling order now.  And usually

11   we give you a deadline by which to file dispositive motions,

12   but, you know, if -- I mean, I'm not saying I don't want to do

13   it.  I'm just saying that if --

14           MR. OLIVEIRA:  Your Honor, we would be glad to wait.

15   It's just I just wanted to alert the Court about the problem and

16   ask the Court's deference if it's possible.

17           THE COURT:  Okay.  Thank you.

18           MR. OLIVEIRA:  Thank you, Your Honor.

19           MR. GARZA:  May I ask one request, Judge?

20           THE COURT:  Yes, sir.

21           MR. GARZA:  Is the Court going to consider the remand

22   back to state first and then the dismissal or the dismissal

23   first, and where am I at with my ability to amend my pleadings

24   because, you know, I have been working and I have an amended

25   petition with the allegations of abuse of process and malicious

1    prosecution and slander.  I haven't filed it, so I don't want to

2    waive my right to be --

3            THE COURT:  Okay.  Well, you know, I can rule on the

4    motion to remand right now.  Do you want me to do that?  Do you

5    wish to -- you know, to respond first to the motion to dismiss?

6            MR. GARZA:  I don't think it would hurt me, Judge.

7            THE COURT:  Pardon?

8            MR. GARZA:  I don't believe it would hurt me to respond

9    to the motion to dismiss first.

10           THE COURT:  Okay.  All right.  Thank you.

11           MR. GARZA:  Thank you, Judge.  May we be excused?

12           THE COURT:  Yes.

13                              *  *  *

14       *(End of requested transcript.)*

15                             -oOo-

16       I certify that the foregoing is a correct transcript from

17   the record of proceedings in the above matter.

18

19   Date:  June 26, 2006

20

21                          Signature of Court Reporter

22

23

24

25