```
                    IN THE UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF TEXAS
                          BROWNSVILLE DIVISION
```

                                                   United States District Court
                                                   Southern District of Texas
                                                           FILED
                                                        JUL 0 6 2006
                                                      Michael N. Milby
                                                      Clerk of Court

LUIS C. MUNOZ AND CARMELA MUNOZ   )
         Plaintiffs,              )
                                  )   CIVIL ACTION NO.
VS.                               )   B-04-141
                                  )
STATE FARM LLOYDS                 )
         Defendant.               )
                                  )

                              JURY TRIAL
               BEFORE THE HONORABLE HILDA G. TAGLE
                          FEBRUARY 9, 2006
                             VOLUME 1

APPEARANCES:

For the Plaintiffs:        MR. GUSTAVO CH GARZA
                           Attorney at Law
                           705 West Hwy. 100
                           Los Fresnos, Texas   78566
                           (956)233-5614

For the Defendant:         MR. WARREN ROYAL TAYLOR
                           Taylor and Taylor
                           815 Walker, Suite 250
                           Houston, Texas   77002
                           (713)615-6060
                               - AND -
                           MR. RENE O. OLIVEIRA AND
                           MR. RICARDO MORADO
                           Roerig Oliveira & Fisher
                           855 West Price Road, Suite 9
                           Brownsville, Texas   78520
                           (956)631-8049

Transcribed by:            HEATHER HALL
                           Official Court Reporter
                           600 East Harrison, Box 16
                           Brownsville, Texas   78520
                           (956)548-2510

Proceedings recorded by mechanical stenography, transcript produced by computer.



EXHIBIT 1

ORIGINAL

1  Q   Okay.  If -- if the stack is in the evidence and it's 21 --
2  A   Then that would -- correct.
3  Q   Were you aware, during this investigation, that on
4  November 1st of 2002 that Mr. Munoz had received a threatening
5  call from Minerva Cavazos at his office that she was going to
6  burn his house down?
7  A   Can you ask the question again?
8  Q   Were you aware --
9  A   Uh-huh.
10 Q   -- during this investigation, January 1st, 2003 arson, that
11 on November 1st, 2002, Mrs. Cavazos had made a threatening phone
12 call to Mr. Munoz at his office telling him she was going to
13 burn the "blank" house down?
14 A   I recall that there was a -- a recorded conversation of
15 Mr. Munoz's office recorded on his -- on his answering service,
16 but I don't recall the -- exactly what the information was on
17 there.
18 Q   Did -- are you aware that the police department went to the
19 office of Mr. Munoz and looked at his phone and saw --
20     THE COURT:  Excuse me just a second.  Mr. Garza, what is
21 going to be the relevance of whether he knew the police
22 department had gone and that -- and I could kind of see what you
23 were doing with something that Mr. Reed had discovered, but I'm
24 not going to allow you to just go on and --
25     MR. GARZA:  This is the last time I have, Judge, on him.

1   houses to be built and you -- there was no partnership between
2   Munoz and Capetillo, did he not ask you for -- for you to repay
3   his money back?
4   A   Yes.
5   Q   Did you and he not sit down with your attorney and his
6   attorney and work out the differences and the credits that were
7   owed and due -- and due?
8   A   Yes, sir.
9   Q   And in that July meeting, what was the agreed amount that
10  you owed Mr. Capetillo, more or less?
11  A   30, 35,000.
12  Q   Of that amount, have you paid some back?
13  A   Paid him $28,000.
14  Q   Now, eventually you were sued by Mr. Capetillo and an
15  attorney named David Joe, correct?
16  A   Yes, sir.
17  Q   Did that figure stay at $28,000, or did that figure increase
18  with attorney's fees and other expenses?
19  A   I didn't understand your question.
20  Q   You told us that on July of '03, when you and Mr. Capetillo
21  decided you were going to go your different ways, that you had a
22  debt to Mr. Capetillo for approximately $35,000?
23  A   Yes, sir.
24  Q   Of that $35,000, up to date you have paid back $28,000?
25  A   That's correct.

1  Q   Okay. I'm asking you: That $28,000, did it increase with
2  the addition of attorney's fees and other costs?
3  A   Yes, sir.
4  Q   Okay. So as you sit here today, more or less how much do
5  you owe Mr. Capetillo?
6  A   With attorney's fees that he charged, I want to say 25,000.
7  Q   Have you attempted, as best as you have been able since July
8  of '03, to repay Mr. Capetillo as best as you can?
9  A   Yes, sir.
10 Q   Now, sir, you've heard the testimony of Mr. Reed stating
11 that there was a tax lien against you filed in the
12 Willacy County court records in December of '02. Do you recall
13 that?
14 A   Yes, sir.
15 Q   Were you aware of that tax lien?
16 A   No, sir.
17 Q   Okay. So on January 1st of '03, Mr. Munoz, tell the ladies
18 and gentlemen of the jury if you knew that IRS wanted you to pay
19 them $23,000.
20 A   No, I didn't.
21 Q   At that time who was your bookkeeper?
22 A   Barnett Bookkeeping.
23 Q   Okay. And was she the one that you had trusted to prepare
24 your income tax returns?
25 A   Yes, sir.

1  Q   After you discharged Ms. Barnett as your bookkeeper, how
2  soon after did you hire a professional CPA?
3  A   Within days.
4  Q   Okay. And do you recall whether or not you were requested
5  to go and reconstruct all your bank records?
6  A   Yes.
7  Q   Okay. Do you remember if you had to go to each bank and pay
8  them, the banks, to recopy every deposit, every withdrawal,
9  every check?
10 A   Yes, sir.
11     MR. GARZA:  May I approach, Your Honor?
12     THE COURT:  Yes.
13 BY MR. GARZA:
14 Q   I'm showing you Defendant's Exhibit No. 47. It has been
15 admitted into evidence. Do you see this?
16 A   Yes, sir.
17 Q   This Defendant's 47, is this your bank records, checks,
18 statements, et cetera, that you had to purchase after you hired
19 the CPA?
20 A   That's correct. Yes.
21 Q   This is defendant's exhibit, Defendant State Farm. If
22 State Farm tells the jury that they have not received your bank
23 statements, your accounts for the years '99 to 2002, 2003, is
24 that a true statement?
25 A   No.

```
 1  Q    Does this speak for itself?
 2  A    Yes, sir.
 3  Q    Sir, do you recall the date that you went to Ms. Barnett to
 4  retrieve your bank records?
 5  A    Yes, sir.
 6  Q    What day was that?
 7  A    That was on February.
 8  Q    What year?
 9  A    2000 -- that was after the fire.  I can't remember the exact
10  date.
11  Q    On that day earlier, had -- do you know whether Mr. Tom Reed
12  had been driven to Ms. Barnett's office to go get your tax
13  returns?
14  A    Yes, sir.
15  Q    That was on the same date?
16  A    Correct.
17  Q    And if the evidence is clear that that date was
18  February 12th of '04, you would agree with that?
19  A    Correct.
20  Q    So early in the morning of February 12th, '04, Mr. Reed for
21  State Farm traveled to Mr. Barnett's to get your 1040s, correct?
22  A    Correct.
23  Q    And they were not prepared, correct?
24  A    Correct.
25  Q    And she had not prepared them?
```

1  A    The rear of the trailer.

2  Q    Why couldn't you stop sooner, sir?

3  A    I was just -- I was worried about all the papers. The
4  income tax hadn't been filed. My papers were incomplete. I was
5  distracted.

6  Q    Mr. Munoz, did you end up in the hospital that day?

7  A    Yes, sir.

8  Q    Do you remember whether or not sometime in the early summer
9  of 2004 you retrieved or you obtained from the different banks
10 all of your bank records that your CPA had asked you to collect?

11 A    Yes, sir.

12 Q    Do you recall whether or not shortly thereafter, a month,
13 maybe a month-and-a-half thereafter, your first income tax
14 return that was late was prepared and filed?

15 A    Yes, sir.

16 Q    Sir, you've heard testimony about a problem that existed
17 between the Cavazoses and the Munozes?

18 A    Yes, sir.

19 Q    And we're not going to go over all the mechanic's lien and
20 the bankruptcy and so forth, but you have heard all that
21 testimony, correct?

22 A    Yes, sir.

23 Q    Okay. And that's true and correct?

24 A    Yes, sir.

25 Q    Did you eventually pay off all of the money that you had

1  for me.  I want to know -- I mean I want for you-all to give me
2  your best charge that you can come up with together, and then I
3  will hear argument only on those things you cannot agree to.
4      And if the evidence can be concluded by Tuesday, I have
5  sentencings on Tuesday afternoon.  I will reschedule those or
6  work around -- you know, hear those at the very first part of
7  the afternoon and hear arguments the next day.  But as you know,
8  I've got a trial starting on Monday -- on Wednesday, rather, and
9  so, you know, I would prefer to conclude with the argument to
10 the jury on Wednesday -- I mean on Tuesday afternoon.  Thank
11 you.
12     *(Lunch recess taken from 12:04 p.m. to 1:38 p.m.; jury in.)*
13     THE COURT:  Thank you.  Please be seated.
14 Mr. Garza, you may continue.
15     MR. GARZA:  Thank you, Your Honor.
16                       **AFTER RECESS**
17 BY MR. GARZA:
18 Q  Mr. Munoz, do you recall the testimony of your ex-wife,
19 Mrs. Villarreal --
20 A  Yes, sir.
21 Q  -- when we're talking about what property you owned free and
22 clear and what debts you had?  Do you recall?
23 A  Yes, sir.
24 Q  The building at 363 West Kimball, who is the owner of that
25 building?

```
1   A    I'm purchasing that building from Rodriguez Ford.
2   Q    Okay.  And how much did you buy it for?
3   A    I believe it was over $70,000.
4   Q    How much have you paid on it -- or how much did you owe on
5   it as of December of '02?
6   A    I would say about -- a little bit over 35,000.
7   Q    Did you have a Mustang?
8   A    Yes, sir.
9   Q    Did you owe money on a Mustang?
10  A    About $3,200.
11  Q    On your F-250 diesel pickup, more or less how much money did
12  you owe on that as of December 2002?
13  A    About 15,000.
14  Q    Fifteen?
15  A    Yes, sir.
16  Q    Do you recall at the time of the wreck in '04 the payoff?
17  A    I don't recall the payoff.
18  Q    The four-wheeler, how much did you owe on that?
19  A    About 5,000.
20  Q    Property taxes?  We're going to December '02 and back.
21  A    About 6,000.
22  Q    You had a white truck for your job.  What model was that?
23  A    One was a 1998.
24  Q    How much did you owe on that?
25  A    About $2,400.
```

```
1    A    Oh, yes, I own them.
2    Q    And what would you say the value of those lots were before
3    the fire?
4    A    About $20,000.
5    Q    How many lots, sir?
6    A    Three-and-a-half lots, sir.
7    Q    How much equity do you believe you had in your building?
8    A    About $100,000.
9    Q    The Tahoe, when you traded it in, how much did you get for
10   it?
11   A    $9,000.
12   Q    And the furniture of your home, how much do you think the
13   value was?
14   A    Of all the contents or --
15   Q    All the contents.  Everything in the house.
16   A    Over $80,000.
17   Q    Over 80,000?
18   A    Yes, sir.
19   Q    Do you remember your wife saying about 85?
20   A    Yes, sir.
21   Q    What figure are you going to go with?
22   A    That's fine.  80.
23   Q    Eighty or 85?
24   A    Eighty-five is fine.
25   Q    Did you have any cash on hand?
```

MR. GARZA: Okay. The other matter, Judge, if I may with all due respect -- I don't want to cut you short -- is Shannon Rusnak injected Mrs. Galarza's affidavit and didn't explain the affidavit, didn't discuss all the affidavit. She just said, "I received it, and I didn't consider it and Mr. Munoz could not pay his bills because of 11/02, or whatever, he had $2 in his account."

Well, Mrs. Galarza's going to testify, "I had given them an affidavit. I have looked at the November '02 accounts" -- which she has -- "I have looked at the December '02 accounts" -- which she has, "and the total for six months is 177,000," or whatever figure she has for the last six months of '02.

THE COURT: Okay. So you can point to me in the testimony of Ms. Rusnak, or whatever her name is --

MR. GARZA: Rusnak.

THE COURT: -- that she testified to something that is going to be rebutted specifically as far as numbers are concerned for November and December 2002?

MR. GARZA: For sure, Your Honor, Ms. Rusnak said she didn't have complete records and couldn't formulate an accurate cash flow or give a complete opinion. But more importantly she said she never had the bank records of 11/02 and 12/02.

THE COURT: Okay. And would Mrs. Galarza testify -- before you respond --

MR. GARZA: I'm sorry.

```
 1        THE COURT:  So you're saying that Mrs. Galarza will
 2   testify that the witness did have those reports?
 3        MR. GARZA:  No.  No, that she has them.
 4        THE COURT:  Okay.  That is not rebuttal.
 5        MR. GARZA:  Well, then she's also going to testify, if
 6   the Court allows her, that Mr. Munoz had deposited
 7   170-something-thousand dollars into his account prior to the
 8   fire, and then the jury can conclude whatever they want.  That's
 9   a fact.
10        THE COURT:  Okay.  But didn't this witness called by
11   the -- by State Farm already testify to that total?
12        MR. GARZA:  No, ma'am.
13        THE COURT:  Okay.  Did she testify to a totally
14   different amount?
15        MR. GARZA:  She didn't mention the amount.
16        THE COURT:  Okay.  If -- you know, she can only -- a
17   witness can only rebut something that has been testified to
18   differently, and you can't call her for something that you could
19   have put on in your case in chief.
20        MR. GARZA:  Your Honor, Ms. -- Ms. Rusnak created the
21   false impression under the guise of State Farm that Mr. Munoz
22   was broke, that his accounts had $2 at one month end and minus
23   $3 another month's end and that he could not pay his bills as of
24   December of '02.  That is incorrect.  That is wrong.  That is a
25   false statement.
```