```
 1        THE COURT:  Okay.  But when you questioned -- when that
 2   information came out, did she testify -- I mean, she testified
 3   that she only had that limited information, right?  I mean, when
 4   she came up with those figures and those statements, this is
 5   what she was given.
 6        MR. GARZA:  She said that that's what she had obtained
 7   from Mr. Tom Reed.
 8        THE COURT:  Okay.  That's what she was given.  That's
 9   what she was relying on.
10        MR. GARZA:  And she also said she didn't have the
11   complete bank statements; in other words, a second page.
12   However, on cross it was pointed out that the front page would
13   give her the total debits and total deposits for that month, and
14   she had no excuse for not having the cash flow because the
15   second page would not add or subtract from the amounts of
16   deposits or debits.
17        THE COURT:  No.  We're talking of giving me a figure of
18   100-whatever deposit.  And where is your -- your -- that witness
19   going to testify that that money was shown as -- you know, that
20   there's a record of?
21        MR. GARZA:  In the affidavit that she provided to
22   State Farm.
23        THE COURT:  No.  I mean, what is she -- what would she
24   testify to that she's relying on for that figure?
25        MR. GARZA:  Mr. Munoz's bank accounts.
```

1  THE COURT: The same bank accounts that Rusnak testified
2  from?
3  MR. GARZA: The same bank accounts that we provided
4  State Farm.
5  THE COURT: Okay. I need -- you need for me -- you need
6  to show me that Rusnak had one account -- I mean a statement and
7  that your -- your witness is going to testify that this
8  statement -- she has the same copy and her figures are different
9  from the figures that this witness testified about. If she's
10 got a statement that is going to refute what the witness
11 testified to, she can testify but you have to show it to me.
12 You have to show me what the witness was relying on to come up
13 with that $2.07 in that particular statement, and you are going
14 to have to show me what your witness is going to testify to as
15 "The same statement, but I have different figures showing." You
16 are not going to be able to do indirectly what you should have
17 done directly. We're in recess.
18     (Lunch recess taken from 12:14 p.m. to 1:34 p.m.)
19 THE COURT: Thank you. Please be seated.
20 MR. OLIVEIRA: Your Honor, may I step out to see if I
21 can find the witness? I don't know --
22 THE COURT: Yes, but I think I need to take up a matter
23 before he's back on the stand.
24 MR. GARZA: Judge, I'm sorry, the rubber band busted,
25 but in Defendant's Exhibit No. 47 that's in evidence,

1  Luis Carlos Munoz dated 11/29/02 Texas State Bank account.
2         THE COURT: Okay. Is there, like, a Bates stamp number?
3         MR. GARZA: PL005887.
4         THE COURT: I'm sorry. What was that number again? I
5  didn't catch it on the --
6         MR. GARZA: Yes, Your Honor. PL005887.
7         THE COURT: And then how many pages is that?
8         MR. GARZA: It says three pages, Judge, and I think it's
9  more. It's got the checks -- the checks attached to it.
10        THE COURT: Okay. How many pages is it?
11        MR. GARZA: One, two, three, four, five -- six.
12        THE COURT: Okay. And what dates are those for?
13        MR. GARZA: This is for date 11/29/02.
14        THE COURT: To?
15        MR. GARZA: I'm sorry. The last date is 10/31/02. This
16 statement 11/29/02.
17        THE COURT: Okay. So it covers what period of time?
18        MR. GARZA: It covers November -- all of November '02.
19        THE COURT: So 11/1/02 through 11/29 --
20        MR. GARZA: '02.
21        THE COURT: Okay. And what is the next -- the one for
22 December, what pages?
23        MR. GARZA: I haven't found December, Judge.
24        THE COURT: Okay.
25        MR. GARZA: I was scrounging around and I found this

1  one, but I will continue to look for December.  Can I pull this
2  out?
3          THE COURT:  Kind of put it at a point where you can see
4  it, maybe crosswise instead of lengthwise.  And the reason that
5  I am asking about this is because nobody has pointed out to
6  me -- you specifically have not pointed out the fact that, you
7  know, it's in here but -- because they're saying that they
8  didn't -- your client didn't comply because they did not give
9  them all the information, and you kept saying it's in there,
10 those two months are there.
11 And so I now try to get you to find both months if your --
12 if Mrs. Galarza is -- Mrs. Galarza is testifying that she has
13 those statements, I want to know:  Where are they?  So --
14 because the witness that you're wanting her to -- to rebut
15 testified that that was not made available to her and -- leaving
16 the impression that it was not given to her by Tom Reed, but you
17 have said all along that you gave it to them.  But I want you to
18 show it to me.
19         MR. GARZA:  I've shown you one.  I'm not -- I've already
20 sent Mrs. Galarza back to her office because I didn't think I
21 was going to overcome the Court's ruling, and I wasn't going to
22 argue with the Court.
23         THE COURT:  No, I'm not reconsidering my position.  I
24 want you to show it to me.
25         MR. GARZA:  But now what I'm asking the Court is allow

```
 1   me to use the affidavit that was referred to --
 2        THE COURT:  Okay.  I'm still asking you about my point.
 3        MR. GARZA:  Okay.
 4        THE COURT:  I know there's an agreement as to some of
 5   the contents and -- but I am inclined to, you know, let you-all
 6   stipulate to whatever they can agree but not to whatever is in
 7   the affidavit they did not agree to.  I'm not inclined to allow
 8   it.
 9        MR. GARZA:  So may I continue to look for December?
10        THE COURT:  Yes.
11     Okay.
12        MR. TAYLOR:  May I make one comment, Your Honor?
13   Remember, there's two accounts.  There's a regular business
14   account and there's a payroll account, and Ms. Rusnak's
15   testimony was that November of the payroll account was present.
16   And the documents he showed was from the payroll.
17        THE COURT:  Okay.  Thank you for reminding me of that.
18   So I need -- well, you know, since they're both -- since
19   apparently everything is Bates-stamped, then what I need for you
20   to pull is all statements for those two accounts, not just the
21   one account.
22        MR. GARZA:  Judge, I have to see it -- it says
23   payroll -- because I myself personally don't know the difference
24   between the payroll account and the --
25        THE COURT:  Well, do you have account numbers?
```

1  MR. GARZA: I'm sure there's account numbers, but I'll look for them, everything I can find.

3  THE COURT: Okay. Do you have your secretary who could help you with that?

5  MR. GARZA: Once -- once she comes in, yes.

6  MR. OLIVEIRA: Your Honor, may I make an inquiry? I think when I was sick and out once the Court indicated that the grand jury no bill would not be discussed. And I certainly don't want to open the door, but I was told that I could ask a witness if he was allowed to participate in the grand jury proceeding.

12  THE COURT: Right.

13  MR. OLIVEIRA: And that's the only question I will ask of that matter to this witness.

15  THE COURT: Or if he was -- not if he was allowed because it makes it sound like somebody --

17  MR. OLIVEIRA: He was not invited.

18  THE COURT: -- that he was not aware of a presentation or potential presentation to the grand jury and he did not prepare anything for presentation to the grand jury.

21  MR. OLIVEIRA: Well, the facts from this witness will be he wasn't -- didn't even know about it and was not allowed to -- or did not -- therefore was not able to present anything.

24  MR. GARZA: Your Honor, I would like to make a record of my objection of this witness testifying as an expert. I know

1  MR. GARZA: The police department.

2  THE COURT: Yeah. Well, if -- if the police chief can
3  say they did get back to him, that would be a rebuttal, but you
4  better be sure that he is prepared to testify, "I did get back
5  to him. I told him that they were available, and that's all I
6  know." If -- and, you know, "If they didn't follow up with my
7  offer or my -- that information," that's -- you know, that would
8  have been problematic.

9  MR. GARZA: I'll go ask him outside. If he doesn't say
10 that, I won't call him.

11 THE COURT: Okay.

12 MR. TAYLOR: As I understand it, the question would be
13 whether Chief Zamora advised Ramon Garcia whether they were
14 available as opposed to whether Mr. Garza had a conversation
15 with Mr. Zamora.

16 THE COURT: Right. Exactly.

17    You can't use the -- Chief Zamora to testify about what you
18 may have done. He has to be the one who can say, "I told this
19 marshal -- fire marshal that they were available for it." I
20 don't see your secretary looking for anything, so you might want
21 to let her know what we're looking for. And just so that we're
22 clear, what is the account number for the payroll account, and
23 what is the number for the business account?

24 MR. GARZA: Your Honor, the payroll account number is
25 Texas State Bank 53014170.

1   THE COURT: And what is the business account? Oh, and
2   the -- that 11/29/02 -- or that 11/1/02, the 11/29/02, was it
3   the payroll account or another account?
4   MR. GARZA: Your Honor, that account number is 53014170
5   which is the payroll account.
6   THE COURT: Okay.
7   MR. GARZA: And the -- the address shows Luis Carlos
8   Munoz, D/B/A Munoz Roofing, payroll account.
9   THE COURT: Okay. So what's the account number for the
10  business account?
11  MR. GARZA: I'll keep looking, Judge.
12  MR. OLIVEIRA: Your Honor, may I be excused for a
13  moment?
14  THE COURT: Yes.
15  MR. GARZA: Your Honor, may I? The account number for
16  Luis Carlos Munoz, D/B/A Munoz Roofing, account number 51111608.
17  THE COURT: And that's the business account?
18  MR. GARZA: That's the business account. Same bank,
19  Texas State Bank.
20  THE COURT: Okay. So Mrs. Galarza would testify that
21  the deposits into his business account, that would be account
22  number 51111608, were for $27,410, and for December they were
23  29,218?
24  MR. GARZA: Let me look at the affidavit, Judge. Judge,
25  in her statement she says the business account. She doesn't

1 distinguish between payroll and business account.

2 THE COURT: Okay. So do you -- what I want you to do,
3 then, is find three statements, the December payroll account and
4 the two business accounts for November and December of 2002.

5 MR. GARZA: So you basically want four business -- four
6 accounts?

7 THE COURT: Well, you found one out of four.

8 MR. GARZA: Yes.

9 THE COURT: And -- well, let's talk about this -- the
10 witness Galarza's testimony.

11 So I understand, Mr. Taylor, that you would be willing to
12 stipulate from -- beginning with that portion of the affidavit
13 that begins, "Mr. Munoz's deposits to his business account were
14 as follows," and then the amounts?

15 MR. TAYLOR: I need to look at it, but that sounds
16 right. It's about two-thirds of the way through the affidavit.
17 Everything ahead of that I would object to, and everything after
18 that. That's correct. I have no objection to him -- I don't
19 want the affidavit in as an exhibit, but I have no objection to
20 him reading, "Mr. Munoz's deposits for his business account for
21 the last six months of 2002 were as follows," and then the
22 amounts on each of the dates, the totals given in the next
23 paragraph and then the next paragraph with the totals on the
24 business return, and then the paragraph that says "Munoz Roofing
25 Operating Expenses," and then stopping with the 28,533 and just

1 the --

2 THE COURT: Yes. And also -- well, I want to give the
3 jury a break now.

4 Members of the jury, you are in recess for 20 minutes.
5 During this recess, you are still under my admonishment that you
6 must not form or express any opinion about the facts of this
7 case. Thank you.

8 (Jury out at 3:13 p.m.)

9 THE COURT: The first question is: Did you find those
10 statements?

11 MR. GARZA: I found one, Your Honor.

12 THE COURT: Another one or --

13 MR. GARZA: The same one, Judge.

14 THE COURT: Okay. So after looking at all those records
15 that you said contained these statements, they're not in there?

16 MR. GARZA: I found one, the Defendant's Exhibit 47.

17 THE COURT: And that would be the payroll account
18 53014170 for the month of November '02?

19 MR. GARZA: Yes, ma'am.

20 THE COURT: Okay. That's all I wanted to know. So my
21 question is back to this: Can you tell me what she would -- you
22 know, would have relied on for those figures?

23 MR. GARZA: On her own copies of the bank statements,
24 but she has them. And she had them herself, but --

25 THE COURT: But they were not provided to State Farm?

1   MR. GARZA:  Everything that she had I provided to
2   State Farm.
3   THE COURT:  Okay.  Well, where are they?
4   MR. GARZA:  I don't know, Judge.  There's thousands and
5   thousands and thousands of pages.
6   THE COURT:  Okay.
7   MR. TAYLOR:  If I can weigh in briefly, Your Honor, not
8   only did we request them before suit, we filed a request for
9   production during suit.  And you may recall in our motion for
10  summary judgment we specifically pointed out that they're
11  missing, and he's had several months to get them.
12     The thing that bothered me was they claim they had them.
13  They claim they went and got them.  They claim that's what the
14  tax returns are based on.  What he wants to read into evidence
15  is that they have them.  But the record is undisputed that they
16  were never provided to State Farm.
17  MR. GARZA:  Your Honor, this is the Defendant's
18  Exhibit 47.
19  THE COURT:  I know, Mr. Garza.  That doesn't tell me
20  these figures, how she came up with these figures.  If you
21  provided them -- you know, if she has them, why were they never
22  provided?
23  MR. GARZA:  Your Honor, I cannot testify for her.  She
24  is a CPA.
25  THE COURT:  Okay.  I know.  I just -- you know, I have a

problem with the stipulation where there is no -- I mean, I have been told time and again -- I don't know how many times -- during the pendency of this trial that these records were provided, and that's what I was asking you to -- to tell me, show me where were they provided, and how did she come up with these figures.

    MR. GARZA: Your Honor --

    THE COURT: But that's okay. You know, I'm not going to beat a dead horse. I'm just telling you that it's exasperating.

    MR. GARZA: I found one, and that's enough.

    THE COURT: Right. Well, the thing is that that doesn't account for these figures. That's -- and I -- you don't have to tell me any more.

    MR. GARZA: May I step out and talk to my witness, please?

    THE COURT: Yes. I have a plea to take up, and if you're preparing to rest, then I'll hear any motions and -- in anticipation of that so I don't have to bring in the jury for purposes of that announcement.

    But, you know, go ahead and talk to your witness for purposes of rebuttal.

    MR. OLIVEIRA: Is it all right if we leave our things here during the plea?

    THE COURT: Oh, yes. I just wanted for him to tell me something before I started.